# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE CATTLE AND BEEF
ANTITRUST LITIGATION

This Document Relates To:

COMMERCIAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTION

Case No. 22-md-3031 (JRT/JFD)

**Memorandum in Support of Motion
for Preliminary Approval of Class
Action Settlement Between the
Commercial and Institutional
Indirect Purchaser Plaintiffs and
JBS and for Leave to Disseminate
Notice**

# Table of Contents

Page

I.      Introduction...................................................................................................1

II.     Background and Basic Settlement Terms.................................................1

III.    Preliminary Approval of the Settlement Should be Granted................6

    A.      The Proposed Settlement Is the Result of Arm's-Length Negotiations............7

    B.      The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ........................8

IV.    The Court Should Certify the Proposed Settlement Class.................12

    A.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).......13

        1.      Numerosity ...............................................................................13

        2.      Commonality ............................................................................13

        3.      Typicality ..................................................................................14

        4.      Adequacy of Representation ...................................................14

    B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3)............................................................15

V.      The Court Should Approve the Form and Manner of Notice to the Proposed Settlement Class Members.......................................17

    A.      The Proposed Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(e) and Due Process.................19

    B.      The Proposed Manner of Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(c) ....................22

    C.      The Proposed Notice Provides Class Members with Sufficient Information About the Details of the Settlement .................23

        1.      Plan of Allocation ....................................................................23

i

        2.     Costs, Attorneys' Fees, and Service Awards ............................................24

    D.    The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.............................................25

VI.    Conclusion  ......................................................................................................................26

## Table of Authorities

### Cases

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996) ........................................................ 14

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................................ 12, 16, 17

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 1971) ......... 13

*Blades v. Monsanto Co.,* 430 F.3d 562 (8th Cir. 2005) ........................................................ 13

*Bryant v. Bonded Account Serv./Checking Recovery,* 208 F.R.D. 251 (Minn. 2000) ...................... 16

*Califano v. Yamasaki,* 442 U.S. 682 (1979) ........................................................ 17

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC,* 984 F.3d 595 (8th Cir. 2020) .............. 16

*DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995) ........................................................ 13, 14

*Grunin v. Int'l House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) ................................................ 7, 19

*In re Ampicillin Antitrust Litig.,* 82 F.R.D. 652 (D.D.C. 1979) ........................................................ 11

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) ............................... 8, 9, 10

*In re Chambers Dev. Sec. Litig.,* 912 F. Supp. 822 (W.D. Pa. 1995) ........................................... 9

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)............ 10, 11

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.,*
    481 F.3d 1119 (9th Cir. 2007) ........................................................ 9

*In re Hartford Sales Practices Litig.,* 192 F.R.D. 592 (D. Minn. 1999) ...................................... 13

*In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631 (E.D. Pa. 2003)............................... 8, 10, 11

*In re Packaged Ice Antitrust Litig.,* 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ................ 10, 11

*In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)................... 8, 9

*In re Potash Antitrust Litig.,* 159 F.R.D. 682 (D. Minn. 1995)........................................................ 16

*In re Pressure Sensitive Labelstock Antitrust Litig.,* 584 F. Supp. 2d 697 (M.D. Pa. 2008).............. 11

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..............................................10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ..............................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) .........19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........7, 17

*Jones v. Flowers*, 547 U.S. 220 (2006) .....................................................................................................19

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) .............................13

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) ...............................................................6, 8

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................................19

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ..............................................................15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...............................................................19

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ..........................................................9

*Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992 (8th Cir. 2016).........................16

*Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) ......................................12, 19

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ...........................................................................6

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ...........................................6, 7

**Statutes & Rules**

28 U.S.C. § 1715 ...........................................................................................................................6

Fed. R. Civ. P. 23.................................................................................................................*passim*

Fed. R. Civ. P. 23(e)(2).................................................................................................................6

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................................11

**Other Authorities**

Class Actions Fairness Act of 2005, 28 U.S.C. § 1715 ................................................... 6

Manual for Complex Litigation (Third) (1995) ...................................................... 7, 23

4 Newberg on Class Actions (4th ed. 2002) .......................................................... 7, 16

## I.    Introduction.

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")[1] respectfully request the Court's preliminary approval of the settlement of their claims against JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., and JBS S.A. ("JBS"). The proposed settlement is the result of extensive arm's length negotiations and provides the CIIPPs with substantial monetary relief of $25,000,000 ($25 million) as well as non-monetary relief like cooperation in the prosecution of claims against the remaining, non-settling defendants.

The Court should grant preliminary approval of the proposed settlement because it is well within the range of possible approval and is in the best interest of the class members. The Court should also certify the proposed Settlement Class for settlement purposes. The Court should also grant CIIPPs leave to disseminate notice according to the proposed form and manner of notice.

## II.    Background and Settlement Terms.

This case alleges that Defendants engaged in a conspiracy to artificially constrict the supply of beef[2] products in the domestic market of the United States. The CIIPPs allege that

---

[1] As used herein, "CIIPPs" shall mean Erbert & Gerbert's, Inc. and any of its predecessors, successors, assigns, affiliates, and any and all past, present, and future parents, owners, subsidiaries, divisions, or departments.

[2] For this Settlement, "Beef" means boxed and case-ready meat that has been processed from cows and cattle by Defendants and other smaller, nondefendant producers, including but not limited to primals; trim or sub-primal products; further processed and value added products; offal or variety products; rendered product and byproducts. "Beef" excludes ground beef made exclusively from culled cows. (*See* Settlement Agreement ¶ 1b, attached as Exhibit A to the Declaration of Shawn Raiter).

Defendants[3] conspired to constrain the supply, and fix the price, of beef from at least 2015 through the commencement of the present action. (*See* CIIPP Second Amended Class Action Complaint (Case No. 20-cv-1319, Dkt. 262)). The CIIPPs allege that Defendants conspired to artificially restrict supply and fix prices. (*Id.* ¶¶ 2–3). The CIIPPs allege that Defendants agreed among themselves to reduce live cattle purchasing and slaughter volumes for the purpose and effect of increasing their margins. (*Id.* ¶ 6). The CIIPPs allege that Defendants accomplished and perpetuated this agreement through collusion at trade association conferences and industry events between executives and key employees, and through ensuing collusive relationships. (*Id.* ¶ 12). Defendants' own transaction and slaughter data, their public calls for industrywide slaughter and capacity reductions, and measurable market conditions confirm the existence of the unlawful price fixing agreement. (*Id.* ¶¶ 6, 13–16). The effect of this anti-competitive behavior was to increase Defendants' margins at the expense of other market participants. (*Id.* ¶¶ 23–25). The CIIPPs allege that the putative class members paid artificially and illegally inflated prices for beef during the Class Period.[4] (*Id.* ¶ 26).

On March 1, 2022, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Case No. 20-cv-1319, Dkt. 423). During the ongoing discovery and prosecution of this case, Interim Co-Lead Counsel negotiated the proposed settlement with JBS. This is the first settlement the CIIPPs have negotiated in this action. This settlement with

---

[3] Defendants include JBS, Cargill, Inc., Cargill Meat Solutions Corporation, National Beef Packing Company, Tyson Foods, Inc., and Tyson Fresh Meats, Inc.

[4] "Class Period" means January 1, 2015 until the date of the order granting Preliminary Approval of the Settlement Agreement and Settlement Class (*See* Settlement Agreement ¶ 1t).

JBS has come after substantial adversarial litigation with Defendants in this MDL and much investigation. The CIIPPs' counsel was well-informed, and the Settlement Agreement with JBS arose from months-long, arm's-length, and good-faith negotiations with the assistance of a nationally recognized mediator.

The Settlement Agreement defines the "Settlement Class" as:

> All persons and entities who during the Settlement Class Period indirectly purchased for business use in commercial food preparation in the United States, from any of the Defendants or their respective subsidiaries and affiliates, boxed or case-ready Beef processed from Fed Cattle[5], excluding ground beef made exclusively from culled cows.

> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which any Defendant has a controlling interest; purchasers that purchased directly from any Defendant, including those that directly purchased for resale in an unmodified and untransformed form (except to the extent they made indirect purchases that fall within the class definition); and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

(Settlement Agreement ¶ 5).

**Settlement Fund:** JBS will pay $25,000,000 (twenty-five million United States dollars) to the CIIPP Settlement Class by paying, or causing to be paid, such sum into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class. *(Id.* ¶ 1u). From the Settlement Fund, and subject to Court approval, JBS shall not object to Interim Co-Lead Counsel withdrawing up to $500,000 to pay the costs for notice and for

---

[5] "Fed Cattle" means steers and heifers raised in feedlots on a concentrated diet for the production and sale of Beef. (Settlement Agreement ¶ 1c).

Preliminary and Final Approval of the Settlement Agreement. (*Id.* ¶ 6b). Those notice costs up to $500,000 are nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court. (*Id.* ¶ 6c). Interim Co-Lead Counsel may apply to the Court for a fee award, reimbursement of incurred or anticipated expenses, and service awards to the representative CIIPPs to be paid from the proceeds of the Settlement Fund. (*Id.* ¶ 13).

**Cooperation:** Cooperation by JBS is a material term of the Settlement Agreement, and JBS agrees to the following:

a. JBS's counsel shall provide a reasonably detailed description of the principal facts known to JBS that are relevant to the alleged conduct, market, and industry participants at issue, including any facts previously provided to the Department of Justice or any other U.S. government investigative authority in response to subpoenas or otherwise related to the allegations in the Second Amended Class Action Complaint by providing the same attorney proffer provided to class counsel for direct purchaser plaintiffs for up to a total of approximately eight hours.

b. JBS agrees to provide the CIIPPs with any future structured data productions made to other plaintiffs in *In re: Cattle and Beef Antitrust Litigation*, No. 22-md-3031 (JRT/JFD) (D. Minn.).

c. JBS agrees to provide data, documents, and contact information necessary to facilitate class notice and settlement administration provided such data, documents, and contact information are (1) reasonably accessible, (2) within JBS's immediate possession, custody or control, and (3) can be provided without unreasonable burden.

d. JBS agrees to provide a reasonably detailed recitation of the factual information that was provided to class counsel for direct purchaser plaintiffs in interviews of up to six current JBS employees.

e. JBS shall not object to the CIIPPs noticing the depositions of up to six current JBS employees, including under Fed. R. Civ. P. 30(b)(6), regarding the factual allegations underlying the claims in the *In re: Cattle and Beef Antitrust Litigation*, including general industry knowledge.

f. JBS agrees to use its best efforts to make available up to three current employees of JBS at Interim Co-Lead Counsel's choosing as live witnesses at trial.

g. JBS agrees to use reasonable efforts to authenticate, and lay an evidentiary foundation for admissibility to, documents or things produced by JBS where the facts indicate that the documents or things are authentic as may be necessary for the admission of such information in the litigation.

*(Id.* ¶ 10).

**Released Claims:** In consideration for the $25,000,000 payment and cooperation, the

CIIPPs agree, upon Final Judgment, to release JBS from:

> [A]ny and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Beef produced, processed or sold by JBS or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

*(Id.* ¶ 14). The Released Claims, however, do not include:

> (i) claims asserted against any Defendant or co-conspirator other than the JBS Released Parties; (ii) any claims made by direct purchasers of Beef as to such direct purchases; (iii) any claims made by consumers that are indirect purchasers of Beef for their personal use as to such indirect purchases for personal use; (iv) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases of Beef; (v) claims wholly unrelated to the allegations in the Action involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim relating to Beef; (vi) claims concerning any product other than Beef; (vii) claims under laws other than those of the United States relating to purchases of Beef made outside of the United States; and (viii) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State.

*(Id.)*

5

**Termination:** The Settlement provides JBS the right to terminate or reduce the Settlement amount if potential members of the Settlement Class representing more than a specified portion of relevant transactions opt out of the Settlement Class. (*Id.* ¶ 19).[6]

**Notice:** The Settlement Agreement also requires JBS—within ten days of the filing of the Settlement Agreement with the Court in connection with the motion for preliminary approval—to submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (*Id.* ¶ 23).

## III. Preliminary Approval Should be Granted.

When parties propose to settle a class action, the Court must review the settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in evaluating a class-action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). Review of a proposed class-action settlement typically proceeds in two stages. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). At the preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement.[7] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). The purpose of a court's

---

[6] The details of this provision are set out in a confidential agreement between the CIIPPs and JBS, which can be provided to the Court upon request.

[7] In making a final determination of settlement approval, the district court ultimately is required to consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). But, at the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted).

preliminary evaluation of proposed settlements is simply to determine whether it is within the range of reasonableness and, thus, whether notice to the class of the terms and conditions of the settlement, and scheduling a formal fairness hearing, are worthwhile. 4 Newberg on Class Actions § 11.26.

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." Manual for Complex Litigation (Third) § 30.41 at 237 (1995). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White*, 822 F. Supp. 2d at 1416. The proposed settlement between the CIIPPs and JBS should be granted preliminary approval because the settlement is well within the range of reasonableness and possible approval.

## A. The Proposed Settlement Agreement Is the Result of Arm's-Length Negotiations.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41 (4th ed. 2005) (collecting cases); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The preliminary determination establishes a presumption of fairness when a settlement "has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). The court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *Id.*

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted). The Settlement here is within the range of possible approval because there are no glaring substantive or procedural deficiencies. The CIIPPs have developed and assessed both their claims and JBS's defenses. The CIIPPs and JBS are represented by experienced counsel, and the Settlement was reached after significant litigation. The Settlement Agreement is the product of extensive and vigorous arm's-length negotiations, which included the assistance of a mediator.

**B. The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process has been and will be complex.[8]

---

[8] Because Interim Co-Lead Class Counsel may have to litigate against other Defendants through trial and appeal, their duties preclude a more detailed discussion of the potential litigation risks.

JBS asserted various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 WL 6209188, at *12 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages").[9] Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce

---

[9]    Indeed, as reflected in the Settlement Agreement, "JBS has not admitted any liability and continues to deny the allegations in Plaintiffs' Complaint[.]" (Settlement Agreement, p. 2).

still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time."). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. JBS's $25 million payment provides compensation that will be available years earlier than if litigation against JBS continued through trial and appeal. Settlements of this type create value beyond their direct pecuniary benefit to the class. *See Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, *16 (S.D. Tex. June 4, 1981).

Moreover, the Settlement Agreement requires JBS to provide cooperation to the CIIPPs by providing transactional data and documents, among other cooperation. (Settlement Agreement ¶ 10). This cooperation is valuable and will afford access to transactional data, documents, witnesses, and other information without further litigation and expensive discovery—a significant class-wide benefit. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No.

08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation."); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The Settlement Agreement does not alter joint and several liability of any non-settling Defendant or future Defendants for the full damages caused by the alleged conspiracies. (*See* Settlement Agreement ¶ 1m, 14). In this regard, the Settlement Agreement is similar to the settlements in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from other current or future defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also* ; *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability).

The Settlement Agreement provides significant relief to CIIPP class members, far greater than the threshold "adequate" relief required by Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement requires JBS to pay $25,000,000 into an escrow account within 14 business days of the Court's preliminary approval. (Settlement Agreement ¶ 9). The Settlement Fund will be used to compensate the Settlement Class for damages suffered and expenses incurred, and potentially for the benefit of pursuing claims against non-settling Defendants.

In addition to the monetary relief it offers, the terms of the Settlement Agreement require JBS to provide significant cooperation to the CIIPPs for use in their pursuit of claims against the non-settling Defendants. The Settlement therefore provides more than "adequate" relief required for preliminary approval.

## IV.    The Court Should Preliminarily Certify the Settlement Class.

At the preliminary stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a), and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015).

The CIIPPs seek certification of a Settlement Class defined as:

> All persons and entities who during the Settlement Class Period indirectly purchased for business use in commercial food preparation in the United States, from any of the Defendants or their respective subsidiaries and affiliates, boxed or case-ready Beef processed from Fed Cattle, excluding ground beef made exclusively from culled cows.

> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which any Defendant has a controlling interest; purchasers that purchased directly from any Defendant, including those that directly purchased for resale in an unmodified and untransformed form (except to the extent they made indirect purchases that fall within the class definition); and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members

of his/her immediate family and judicial staff, any juror assigned to this action.

(Settlement Agreement ¶ 5). The proposed Settlement Class satisfies the threshold requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1. Numerosity

Rule 23(a)(1), Fed. R. Civ. P., requires that the class be "so numerous that joinder of all members is impracticable." The CIIPPs estimate that there are many thousands of Settlement Class members. This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

#### 2. Commonality

Rule 23(a)(2), Fed. R. Civ. P., requires that there be "questions of law or fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005).

The CIIPPs contend that common questions prevail here about whether Defendants illegally conspired to fix the supply and price of Beef in the United States and as to whether

the CIIPPs were injured because of Defendants' anti-competitive conduct. The Settlement Class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs allege claims that arise out of the same alleged conduct of Defendants— whether they illegally conspired to reduce the supply and thereby raise the price of Beef in the United States. (*See* Case No. 20-cv-1319, Dkt. 262). The representative Plaintiff of the CIIPP Settlement Class alleges that they paid artificially inflated prices for Beef, which exceeded the amount they would have paid if the price for Beef had been determined by a competitive market. (*Id.*) The CIIPPs contend that each individual class member has the same interests as the class representatives, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class

representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representatives have common interests with the members of the Settlement Class. They share interests in obtaining the best possible monetary recovery and securing cooperation against non-settling Defendants. The named representative has and will vigorously pursue this matter through qualified counsel. Collectively, the undersigned counsel have significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Interim Co-Lead Counsel and Plaintiffs' Steering Committee for Commercial and Institutional Indirect Purchaser Plaintiffs, Case No. 20-cv-1319, Dkt. 413). The Court has recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Interim Co-Lead Counsel, Case No. 20-cv-1319, Dkt. 423). Counsel thus far has vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations.

## B. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under

that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

The Rule 23(b) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

The CIIPPs contend that questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, which the CIIPPs believe are subject to common proof, include whether Defendants engaged in anticompetitive conduct and/or conspired to artificially lower Beef output and raise prices, and whether the CIIPPs paid artificially inflated prices for Beef during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.") Therefore, the CIIPP class satisfies the predominance requirement.

Plaintiffs seeking class certification must also show that a class action is superior to individual claims. Rule 23(b)(3) provides four pertinent considerations: (A) the interest of the

class members in individually controlling the prosecution or defense of separate actions; (B) whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at \*5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b)(3) are satisfied in this case.

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23 (b)(2) where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Claims for non-monetary relief, like those asserted under federal law which does not recognize claims for money damages by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2).

## V.    The Court Should Approve the Form and Manner of Notice to the Proposed Settlement Class Members.

Class members are entitled to reasonable notice of a proposed settlement under Federal Rule of Civil Procedure 23, which provides that "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Co-lead Counsel for the CIIPPs has retained Epiq Class Action & Claims Solutions, Inc. ("Epiq"), an experienced class-action notice consultant, to design and implement the notice plan. Hilsoft Notifications ("Hilsoft") is a business unit of Epiq, which specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. (Declaration of Cameron Azari, p. 1 ¶¶ 3, 4 ("Azari Decl.")). Hilsoft has been involved in more than 575 cases, including experience in more than 70 multi-district litigations and some of the most complex and significant notice programs in recent history. (*Id.* ¶ 4). Cameron Azari, a nationally recognized expert in the field of legal notice, is a Senior Vice President with Epiq and the Director of Legal Notice for Hilsoft. (*Id.* at p. 1-2, ¶¶ 3-6). Counsel for the CIIPPs has worked with Mr. Azari and his team to develop both the proposed form of class notice and the plan for dissemination of the notice.

The proposed comprehensive notice plan is reasonably expected to reach a minimum of 70% of the Settlement Class through direct Email Notice to approximately 145,000 to 155,000 restaurants, supplemental media, digital advertising, and the establishment of a Settlement Website. (Azari Decl. at pp. 9-13, ¶¶ 17-34). The proposed form of notice satisfies the requirements under Federal Rule of Civil Procedure 23 and comports with due process.

## A. The Proposed Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(e) and Due Process.

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). A notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin*, 513 F.2d at 121.

The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notices where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *8; *see also Smith v. SEECO, Inc.*, 965 F.3d 1021, 1025-26 (8th Cir. 2017) (stating that best notice practicable "is essentially an interest in due process"). Furthermore, in addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The CIIPPs propose providing notice through several different channels. Individual notice (the "Email Notice") will be emailed to approximately 145,000 to 155,000 restaurants nationwide as potential members of the Settlement Class. (Azari Decl., pp. 9-10, ¶¶ 18-20; Attachment 2). The Email Notice will be drafted in such a way that the subject line, the sender,

and the body of the message overcome SPAM filters and ensure readership to the fullest extent practicable. (*Id.*) The Email Notice will provide an embedded link to the Settlement Website where recipients may obtain additional information about the Settlement with JBS. (*Id.*)

The notice plan further provides for the creation of a Settlement Website to allow class members to obtain detailed information about the case and review key documents, including: Complaints, Long Form Notice, Settlement Agreement, Preliminary Approval Order, Motions for Attorneys' Fees and Expenses, Final Approval Order, as well as answers to frequently asked questions (FAQs). (Azari Decl. at pp. 13-14, ¶¶ 32). The website address will be displayed prominently on all notice documents. (*Id.*) The proposed notice plan also provides a toll-free telephone number for Settlement Class members to call for additional information, listen to answers to FAQs, and request that a notice be mailed to them. (*Id.* ¶ 33). The toll-free number will also be prominently displayed on all notices, and the automated phone system will be available 24 hours per day, 7 days per week. (*Id.*) Finally, the proposed notice plan establishes a post office box and email address for correspondence about the case, allowing the Settlement Class members to contact the Settlement Administrator with any specific requests or questions. (*Id.* ¶ 34).

To supplement direct Email Notice, the proposed notice includes a comprehensive media plan. The notice plan includes targeted banner advertising networks, which will be targeted to Settlement Class members nationwide. (Azar Decl. at pp. 10-13). The internet Banner Notices will link directly to the Settlement Website, thereby allowing visitors easy access to relevant information and documents. (*Id.*) The proposed Banner Notices (*Id.,* Attachment 4) will be placed on the advertising networks Google Display Network and Yahoo

Audience Network, which together cover 90% of the United States' population that is online. (*Id.* at p. 11, ¶ 24). The proposed notice plan also includes advertising on social media websites Facebook and LinkedIn, which have more than 175 million and 190 million members, respectively, in the United States. (*Id.* at p. 11, ¶ 25). In total, the proposed comprehensive media plan is expected to generate over 159 million impressions nationwide over the course of approximately 31 days. (*Id.* at pp. 11–13, ¶¶ 24-27). On top of these impressions, the proposed notice plan includes sponsored search listings on the three most highly visited search engines: Google, Yahoo!, and Bing. (*Id.* at p. 13, ¶29).

To further supplement the direct Email Notice and comprehensive digital advertising, the proposed notice plan includes an Information Release to be issued broadly over PR Newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States, as well as approximately 4,500 websites, online databases, internet networks, and social networking media. (*Id.* at p. 13, ¶ 30). This Informational Release also will be distributed to more than 690 journalists that report specifically on restaurants and the food industry. (*Id.*)

The methods of notice proposed here are the best available under the circumstances. The proposed methods are well-designed to reach potential Settlement Class members and to comply with due process. The proposed notice program is expected to reach at least 70% of the Settlement Class, with an average frequency of 2.6 times. (Azari Decl. at p. 9, ¶ 17). This "reach" for potential class members easily exceeds due process requirements and notice reach approved in other cases. *See, e.g., Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2009 WL

1228443, at *11 (D.N.J. Apr. 30, 2009) ("No case stands for the proposition that a publication notice reach of 49-53 percent is disallowed.")

**B.    The Proposed Manner of Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(c).**

For a class proposed under Rule 23(b)(3), whether litigated or by settlement, the notice must "clearly and concisely state in plain, easily understood language" seven types of information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

Both the Email Notice and Long Form Notice satisfy the requirements under Federal Rule of Civil Procedure 23(c)(2)(B). The proposed notices state in clear and concise plain language the nature of the action, the definition of the class certified, and the class claims, issues, and defenses. (See "Long Form Notice" Azari Decl., Attachment 3). Mr. Azari has attested that the proposed notices are designed to be "noticed" and reviewed by class members, and they are written in plain language so the notices will be understood by Settlement Class members. (Azari Decl. at pp. 14-15, ¶¶ 35-38). The proposed notices follow the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov and are written in simple, plain language to encourage readership and comprehension. (*Id.*) The proposed notice plan informs the class that they may—but are not required to—speak at the final fairness hearing by following certain procedures, and it clearly

identifies the class members' right to opt out of the class if they desire. (Azari Decl. Attachments 2 & 3). The proposed notice plan clearly identifies the time and way a class member may opt out, in addition to the binding effect of a class judgment on members under Rule 23(c). (*Id.*)

At final approval, the CIIPPs will show that the form and content of the notices, together with the manners of dissemination, were reasonably calculated to reach the members of the Settlement Class and were the best form of notice available under the circumstances, in satisfaction of federal law and due process.

### C. The Proposed Notice Provides Class Members with Sufficient Information About the Details of the Settlement.

The notice plan provides potential members of the Settlement Class with information about the benefits available under the Settlement, their options, and the attorneys' fees, costs, and service awards that may be requested at final approval. The notice also advises that a proposed plan of allocation will be submitted for consideration by the Court.

### 1. Plan of Allocation.

The notice plan will advise Settlement Class members that information about a plan of allocation will be published on the Settlement Website when sufficient information is available to issue such a plan. In this motion, the CIIPPs do not ask the Court to approve a plan of allocation, but the Court may grant final approval before approving a plan of allocation. *See, e.g.*, Manual for Complex Litigation (Fourth) § 21.312 ("Often … the details of allocation and distribution are not established until after the settlement is approved."). Information about how the Settlement funds will be allocated through one or more plans of allocation will be

published after the CIIPPs and any allocation consultants have determined how settlement proceeds should be allocated and the Court has approved the plan.

## 2. Costs, Attorneys' Fees, and Service Awards.

Counsel for the CIIPPs will seek reimbursement of certain litigation expenses already incurred during this litigation. *See, e.g.*, Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and untaxable costs that are authorized by law or by the parties' agreement."); *In re Endotronics, Inc.*, Civ. No. 4-87-130, 1989 WL 6746, at *1 (D. Minn. Jan. 30, 1989) (citing *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 723 (1974)).

The notice plan advises Settlement Class members that the CIIPPs' counsel will request that a portion of the Settlement be used for a service award for businesses that have served as class representatives. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2008) (Class representatives are "an essential ingredient of any class action" and incentive awards are appropriate to induce a business or consumer to participate in worthy class action lawsuits). The CIIPP representative plaintiff has shouldered a substantial discovery burden and continues to face discovery and a trial with the non-settling Defendants. Considering the substantial benefits provided to the Settlement Class, an award from the Court recognizing the class representative's efforts will be appropriate.

The proposed notice plan also provides the Settlement Class with notice of Settlement Class Counsel's intent to request that the Court allow them to set aside a portion of the Settlement to be used for future litigation expenses incurred in pursuing additional claims against non-settling Defendants on behalf of the Settlement Class. Allowing a portion of the settlement funds to be used for future expenses is well accepted. *See, e.g., Newby v. Enron Corp.*,

394 F.3d 296, 302–03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *see also* Alba Conte, 1 Attorney Fee Awards § 2:20 (3d ed. 2004) (courts have "permitted class plaintiffs who have settled with fewer than all defendants to expend class-settlement monies, or a portion thereof, for litigation expenses to prosecute the action against remaining, non-settling defendants") (collecting cases).

**D.    The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.**

The CIIPPs respectfully request that the Court hold a final approval hearing in connection with the Settlement. At the hearing, the Court should consider: whether the Settlement is fair, reasonable, and adequate; whether to approve a request for attorneys' fees and reimbursement of litigation expenses; whether to approve a request to set aside a portion of the Settlement monies to fund future litigation expenses on behalf of the Settlement Class against non-settling Defendants; and whether to approve a request for service awards for the named class representatives. At the final fairness hearing, members of the Settlement Class, and counsel, may offer argument in support of the Settlement's approval. And members of the Settlement Class may be heard regarding the proposed Settlement and objections if they choose.

The CIIPPs propose the following schedule of events necessary for disseminating notice to the Settlement Class and the final fairness hearing:

| DATE | EVENT |
|------|-------|
| Within 21 days from order directing notice | Settlement Administrator to provide direct mail and email notice, and commence implementation of the publication notice plan |

| DATE | EVENT |
|---|---|
| 60 days after the commencement of Notice | Last day for Settlement Class members to request exclusion from the Settlement Class; for Settlement Class members to object to the Settlement; and for Settlement Class members to file notices to appear at the Final Fairness Hearing |
| 7 days after last day to request exclusion from the Settlements | Co-Lead Counsel to provide JBS with information concerning all persons and entities who have timely and adequately requested exclusion from the Settlement Class |
| 14 days before the Final Settlement Fairness Hearing | Co-Lead Counsel shall file a motion for final approval of the Settlement and all supporting papers, and Co-Lead Counsel and JBS may respond to any objections to the proposed Settlement |
| 40 days after last day to request exclusion from the Settlement or as soon thereafter as the matter may be heard by the Court | Final Fairness Hearing |

## VI.    Conclusion.

The CIIPPs respectfully request that the Court preliminarily approve the Settlement Agreement with JBS and preliminarily certify the Settlement Class. In addition, the Court should authorize Interim Co-Lead Counsel for the CIIPPs to disseminate notice of the Settlement with JBS. The notice plan complies with Rule 23 of the Federal Rules of Civil Procedure and with notions of due process and fairness.

Dated: April 14, 2023         **Larson • King, LLP**

By   *s/ Shawn M. Raiter*
Shawn M. Raiter (#240424)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com


Blaine Finley (admitted *pro hac vice*)
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
(202) 789-3960

bfinley@cuneolaw.com

Sarah Sterling Aldridge (*pro hac vice*)
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488 Telephone
saldridge@barrettlawgroup.com

**Interim Co-Lead Counsel for the Commercial
and Institutional Indirect Purchaser Plaintiffs**