# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE CATTLE AND BEEF                    Case No. 22-md-3031 (JRT/JFD)
ANTITRUST LITIGATION

This Document Relates To: ALL CASES              **ORDER**

This matter is before the Court on the Cattle and Specht Plaintiffs'[1] Motion for Protective Order (Dkt. No. 237). The Cattle and Specht Plaintiffs seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) precluding Defendants Cargill Incorporated, Cargill Meat Solutions Corp., Swift Beef Co., National Beef Packing Company, LLC, Tyson Foods, Inc., and Tyson Fresh Meats, Inc. ("Defendants") from serving subpoenas duces tecum on several Commercial Yards and Sales Barns.[2] The parties also refer to the prospective subpoena recipients as "feedlots."[3] For the reasons set forth below, the Court grants in part and denies in part the motion.

---

[1] The "Cattle Plaintiffs" are Ranchers Cattlemen Action Legal Fund United Stockgrowers of America, Farmers Educational and Cooperative Union of America, Weinreis Brothers Partnership, Minatare Feedlot, Inc., Charles Weinreis, Eric Nelson, James Jensen d/b/a Lucky 7 Angus, and Richard Chambers as trustee of the Richard C. Chambers Living Trust. The "Specht Plaintiffs" are James Specht, Jerry Kelsey, and Tad Larson.

[2] The "Commercial Yards" are Dinklage Feed Yard, Inc., HY-Plains Feedyard, L.L.C., 4M Feeders LLC, 4M Feeders Inc., Tejas Feeders, LLC, Sublette Feeders, LLC, Rogers & Sons, Ltd., Rafter 3 Feedyard Management, LLC, Kirkland Feedyard, Inc., Kinsley Feeders, LLC, H.J. Stephens and Sons, Inc., Hi-Gain Feedlot, Inc., Fowler Feeders, LLC, Finney County Feedyard, LLC, Bezner Cattle, LLC, USA Feedyard, LP, Keeling Cattle Feeders, Inc., Hays Feed Yard, LLC, Circle Three Feed Yards, Ltd., Brookover Feed Yards, Inc., Rex Stanley Feed Yard, Inc., and Irsik & Doll Feed Services, Inc. The "Sales Barns" are Stockmen's Livestock, Inc. and Lanesboro Sales Commission, Inc.

[3] "Feedlots," according to Defendants, are "where packers, like Defendants, purchase fed

## I.    Introduction

In general terms, as described by the Cattle and Specht Plaintiffs, the subpoenas at issue seek

> a broad array of structured data, documents, analyses, and communications from throughout this action's unstructured and structured date ranges, eight years for some requests and eleven years for others, involving, among other things, the Commercial Yards and Sales Barns' purchases and sales of various types of cattle, transactions in live cattle futures on the CME [Chicago Mercantile Exchange], profits, insurance, and costs.

(Pls.' Mem. Supp. Mot. Protective Order at 2, Dkt. No. 239.) The Cattle and Specht Plaintiffs contend that the Commercial Yards and Sales Barns are absent class members.[4] Therefore, they argue, the Cattle and Specht Plaintiffs have standing to challenge the subpoenas, and Defendants face a heightened standard to obtain discovery in response to the subpoenas. The Cattle and Specht Plaintiffs also argue that the subpoenas are overbroad and unduly burdensome, seek irrelevant information, and ask for information better obtained from other sources. The Cattle and Specht Plaintiffs therefore seek a protective order prohibiting Defendants from serving the subpoenas on the Commercial Yards and Sales Barns.

Defendants respond that at least 4, and possibly as many as 16, of the 24 potential subpoena recipients are not absent class members. (Defs.' Mem. Opp'n Mot. Protective Order at 4, Dkt. No. 252.) Thus, Defendants contend, not only do the Cattle and Specht

---

cattle." (Defs.' Mem. Opp'n Mot. Protective Order at 2, Dkt. No. 252.)

[4] No class has yet been certified, so the Court's use of the term "absent class member" is qualified to that extent.

Plaintiffs not have standing to challenge some of the subpoenas, but the heightened standard for absent-class-member discovery does not apply. Aside from the absent-class-member issue, Defendants argue that the discovery sought by the subpoenas is relevant to determining who owned the cattle sold by the feedlots to Defendants (and thus determining the members of the putative producer class), the terms and methods of the sales, and marketing studies and strategies. According to Defendants, the subpoenas also seek information that is not available from other sources, including class representatives, and are not unduly burdensome.

## II.    Legal Standards

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, No. 00-CV-4080 (MWB), 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Rule 26 also requires information sought in discovery to be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 26(c) provides for the entry of a protective order on motion by "a party or any person from whom discovery is sought." Upon a showing of good cause, the Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Correspondingly, the Court may "order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). "[T]he movant bears the burden of demonstrating the necessity of a protective order." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013).

"The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022). That said, a party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs." *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7.

## III. Discussion

The Cattle and Specht Plaintiffs contend they have standing to challenge the subpoenas because the recipients are absent class members. As of the hearing date, the Cattle and Specht Plaintiffs had confirmed that 12 of the 24 recipients were absent class

4

members. Defendants understandably felt obligated to challenge standing, given these numbers, but they no doubt realized the sensibility of and efficiencies to be gained by having the Court's ruling apply universally. In any event, the Court will not deny any part of the motion based on lack of standing. The Cattle and Specht Plaintiffs have standing to challenge 4, possibly 12, of the subpoenas, and it would serve the purposes of Federal Rule of Civil Procedure 1—justice, speed, and economy—for the Court's Order to apply to all of the potential subpoena recipients.

The Court also declines to base any part of its decision on whether any or all of the subpoenaed entities are absent class members because, even under the heightened standard advocated by the Cattle and Specht Plaintiffs, the Court concludes that some discovery should be allowed. Assuming some of the feedlots are absent class members, "the Federal Rules of Civil Procedure neither explicitly forbid[] nor authorize[] discovery to be propounded to absent class members." *Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*, No. 03-cv-3397 (DSD/JJG), 2006 WL 8445130, at *2 (D. Minn. July 5, 2006).

> [C]ourts have allowed discovery to be served on absent class members, where the defendant has demonstrated that: (1) the purpose of the discovery is not to take undue advantage of class members or reduce the size of the class; (2) the information requested is relevant to the decision of common questions of the class and unavailable from the representative parties; and (3) the matters are not known to defendants.

*Id.* at *3. The Cattle and Specht Plaintiffs do not argue that the purpose of the subpoenas is to take undue advantage of class members or to reduce the putative class size. Rather, they focus on the relevance component of the second factor and whether the information is known to Defendants or available from other sources, including the class representatives.

The Court will keep these factors in mind as it considers the specific requests in the subpoenas.

### A.     Subpoena Request No. 1

Subpoena Request No. 1 asks for structured data "maintained in the ordinary course of business sufficient to show the following categories of information for any sales of Fed Cattle that You, including pursuant to feeding arrangement or holding arrangements, made during the Structured Data Time Period (January 1, 2010 to December 31, 2020)." (McGahan Decl. Ex. 4 at 10, Dkt. No. 242-4.) The listed categories include, for example, invoice and order numbers, order details, product identification numbers and descriptions, quantity weight, purchaser, pricing and fee information, the owner, feed information, grading information, and other sales information. (*Id.*)

The Cattle and Specht Plaintiffs object to Request No. 1, first, to the extent it asks for structured data regarding Defendants' fed cattle purchases from the Commercial Yards or Sales Barns. They contend that data regarding Defendants' fed cattle purchases should be in Defendants' possession and that requiring production from the feedlots would therefore be unduly burdensome and contrary to the third factor of *Robin Drug*. Defendants respond, however, that their data does not include the ultimate owner of the fed cattle they purchased (such as the feedlot or a feedlot's client), and that information is relevant to the ascertainability, numerosity, commonality, and typicality of the putative producer class.

The Court agrees that owner information is relevant and proportional to the needs of the case and is not otherwise available. Thus, the subpoenaed entities must produce that data field for the Commercial Yards' and Sales Barns' fed cattle sales.

The Cattle and Specht Plaintiffs' second objection to Subpoena Request No. 1 targets the request for data regarding 13 independent packers, "who purchased most of the Fed Cattle not bought or raised by the Defendants." (Pls.' Mem. Supp. at 20.) The Cattle and Specht Plaintiffs point out that both they and Defendants have subpoenaed the independent packers directly, but they concede that the productions by the independent packers are incomplete and subject to ongoing negotiations. Since the Cattle and Specht Plaintiffs also have also requested, via subpoenas, structured data regarding independent packers' purchases of fed cattle, the data is relevant. The Court is further persuaded by Defendants' arguments that the data is also relevant to the Cattle and Specht Plaintiffs' allegations that Defendants (but not other packers) conspired to impact the price paid for fed cattle, and that the data will allow Defendants to compare prices paid by all packers who purchased from the independent feedlots. But the Court must balance the relevance of the information against Defendants' access to information directly from the independent packers and the burden on the feedlots of having to produce information that is or will be produced by the independent packers. At the motion hearing, the Cattle and Specht Plaintiffs provided an update to the Court that only one independent packer has said it cannot produce records. Given all of the relevant considerations, the Court will require Defendants to wait until the independent packers have completed their productions. If any information responsive to Request No. 1 is missing from those productions, Defendants may seek the information from the Commercial Yards and Sales Barns.

B.        Subpoena Request No. 2

Subpoena Request No. 2 seeks structured data "maintained in the ordinary course of business sufficient to show the following categories of information for any purchases of Feeder Cattle or Fed Cattle, including pursuant to feeding arrangements or holding arrangements, that You made during the Structured Data Time Period (January 1, 2010 to December 31, 2020)." (McGahan Decl. Ex. 4 at 10–11.) The listed categories include, for example, invoice and order information, product identification numbers and description, quantity and weight, seller information pricing and fee information, and other purchase information. (*Id.* at 11.)

The Cattle and Specht Plaintiffs deny, generally, that feedlots purchase fed cattle, explaining that is what meat packers do. They further contend that information about feeder cattle is available from more convenient sources such as the named Cattle and Specht Plaintiffs, certain Defendants who purchased feeder cattle, Defendants' former feedlots that will be excluded from the proposed class, USDA reports, and CattleFax, a marketing information service. Defendants respond that purchase data for feeder cattle is relevant to Defendants' pass-through defense in the Specht case[5] and to Plaintiffs' allegations about cattle producer margins and the effects of weather on cattle weights. Defendants further assert that data from the Cattle and Specht Plaintiffs is limited geographically (and

---

[5] According to Defendants, "[a] pass-through analysis allows the parties to test the Specht Plaintiffs' assertion that the alleged price suppression in fed cattle markets was somehow passed through the supply chain from the direct seller of fed cattle to the indirect sellers, including calf sellers like the Specht Plaintiffs, such that the prices the Specht Plaintiffs were paid for their calves 15 to 24 months earlier were adversely impacted." (Defs.' Mem. Opp'n at 25.)

essentially not available from the Specht Plaintiffs), that subpoenas on non-defendant packers have not yielded some requested information, and that data from the USDA and CattleFax is aggregated and thus insufficient for detailed analyses.

The Court finds that purchase data for fed cattle is not proportional to the needs of the case, considering that feedlots rarely purchase fed cattle. The burden of searching for a possible aberrant pen of fed cattle outweighs the likely benefit of the information.

On the other hand, the Court finds that information about purchases of feeder cattle is relevant and proportional to Plaintiffs' allegations concerning cattle producer margins, Defendants' anticipated pass-through defense, and overfeeding. As to the availability of the data from other sources, Defendants have shown that information from the named Cattle and Specht Plaintiffs is limited and that data in the USDA and CattleFax reports would not allow for detailed analyses. That said, it is likely that subpoena responses from the independent packers will contain the feeder cattle purchase data that Defendants now seek. Consequently, as with Request No. 1, Defendants should wait until the independent packers have completed their productions, and if any information responsive to Request No. 2 is missing, Defendants may seek the information from the Commercial Yards and Sales Barns.

C.    **Subpoena Request No. 3**

Subpoena Request No. 3 requests "[a]ll contracts that You have entered into for the purchase or sale of any Feeder Cattle, Fed Cattle, or calves, and for any contracts that were oral, documents sufficient to show the terms of the contracts." (McGahan Decl. Ex. 4 at

11.) This request essentially asks for the contracts related to the purchase or sale of feeder cattle or fed cattle (the subjects of Request Nos. 1 and 2), or calves.

The Cattle and Specht Plaintiffs rely on their relevance, burden, and alternative-source arguments made in response to Request Nos. 1 and 2. Defendants add that the contracts are relevant to Plaintiffs' allegations that Defendants, unlike other packers, forced alternative marketing agreements ("AMAs") on feedlots and to understand the extent to which prices were driven by specific contractual terms.

The Court finds that the requested contracts are relevant to the extent described for Request Nos. 1 and 2, but the feedlots need not produce contracts that Defendants already possess or have obtained or will obtain from independent packers. The motion for a protective order is therefore granted in part and denied in part for Request No. 3, consistent with Request Nos. 1 and 2.

### D.    Subpoena Request No. 4

Subpoena Request No. 4 seeks "[a]ll Communications with any Meat Packer regarding negotiations for the sale of Fed Cattle, and all Communications with any advisor or agent that you had about those negotiations and sales." (McGahan Decl. Ex. 4 at 11.) This request essentially asks for all of the feedlots' communications with Defendants and independent packers. The Court grants the motion for a protective order with respect to this request. Defendants have in their possession their communications with the Commercial Yards and Sales Barns, and the Cattle Plaintiffs have agreed to produce their communications with Defendants. Both the Cattle and Specht Plaintiffs and Defendants have subpoenaed independent packers for their communications with the Commercial

10

Yards and Sales Barns. As Defendants explained in their opposition memorandum, they are seeking only a "sampling" of communications not in their possession, and they have not shown that the communications from the Cattle Plaintiffs and independent packers will not suffice for a sample.

### E.    Subpoena Request No. 5

Subpoena Request No. 5 asks for "[a]ll Communications with any advisor, agent, broker, association, feedlot, or other entities about the market for Fed Cattle, Feeder Cattle, and calves, including communications about prices being offered or demanded in negotiations about the sale of the animals, the number of animals, and their weight, offered for sale." (McGahan Decl. Ex. 4 at 11.) The Cattle and Specht Plaintiffs object on the grounds of overbreadth, and the Court agrees with them that the request is overbroad. "All" communications with "any" person or entity is too broad and would impose an undue burden on the potential subpoena recipients. The Court believes that some communications could be relevant, but Defendants have not offered a narrowed scope, and "the Court will not blue-pencil Defendants' discovery requests to reflect what, based on the claims asserted in the Complaint, is relevant and proportional." *See Rodriguez v. Riley*, No. 19-CV-2707 (JRT/ECW), 2020 WL 4747610, at *3 (D. Minn. Aug. 17, 2020). The Court grants the motion for a protective order as to Subpoena Request No. 5.

### F.    Subpoena Request Nos. 6, 7, and 14

The parties address Subpoena Request Nos. 6, 7, and 14 together, and the Court will do likewise. Request No. 6 asks for "[a]ll Documents and Communications regarding Live Cattle Futures and options on the CME, including all Documents and Communications

analyzing the markets for Live Cattle Futures and options and Your hedging strategies." (McGahan Decl. Ex. 4 at 11.) Request No. 7 asks for "Structured Data . . . sufficient to show all trades of Live Cattle Futures and options that You made or that were made on your behalf including, for each transaction, the future or option traded, the transaction price, quantity traded, net profit or loss . . , and date." (*Id.* at 12.) Request No. 14 asks for "Documents sufficient to identify all entities (e.g., futures commission merchant(s), introducing broker(s)), account(s), and operator ID(s) ("Tag 50 IDs") associated with Your orders and transactions of Cattle Futures during the Structured Data Time Period." (*Id.* at 13.)

The Court finds that the requested information is relevant to Plaintiffs' allegations that Defendants' live cattle trading positions were inconsistent with—in Plaintiffs' words—"reasonable commercial hedging activity." (*See* Pls.' Mem. Opp'n Mot. Dismiss at 89, *In re Cattle Antitrust Litig.*, No. 19-cv-1222 (JRT/JFD) (D. Minn. Apr. 5, 2021), Dkt. No. 363.) To rebut Plaintiffs' claims, Defendants intend to compare their trading activity with that of the subpoenaed Commercial Yards and Sales Barns to undercut Plaintiffs' claims that Defendants' trades were unreasonable. The Cattle and Specht Plaintiffs deny that their allegations put at issue the feedlots' live cattle strategies, transaction data, or communications with brokers and others. They have not shown, however, that Defendants could not use the Commercial Yards' and Sales Barns' trading information to rebut allegations that Defendants' trading practices were "commercially irrational." (*See* Pls.' Mem. at 27.) Relevance is not limited to Plaintiffs' allegations; relevance also includes Defendants' defenses to those allegations. The information is not available from other

sources because trading on the CME is anonymous, and Defendants do not know which Futures Commission Merchants facilitated the trades. That said, Request No. 6, which requests "all" documents and communications is overbroad, and the data and documents responsive to Request Nos. 7 and 14 should be sufficient to compare Defendants' live cattle futures trading activity with that of other market participants. Accordingly, the motion for a protective order is granted as to Request No. 6 but denied as to Request Nos. 7 and 14.

### G.      Subpoena Request No. 8

Subpoena Request No. 8 asks for "[a]ll Documents and Communications relating to any Livestock Gross Margin Insurance or Livestock Risk Protection Insurance or other insurance that you had regarding Fed Cattle." (McGahan Decl. Ex. 4 at 12.) Defendants contends the information is relevant to whether feedlots expected fed cattle prices to stabilize, whether feedlots expected cattle producer margins to follow normal supply and demand factors, and whether margin-insurance or market-decline insurance could explain cattle marketing decisions.

The Court finds the requested information somewhat relevant, but that tepid relevance is offset by other concerns. The request, as drafted, is overbroad, as it requests "all" documents and communications. Additionally, Defendants have not shown why party discovery would not suffice or why they cannot obtain the information directly from insurers. The motion for a protective order is granted as to Subpoena Request No. 8.

### H.      Subpoena Request Nos. 9 and 10

The parties address Subpoena Request Nos. 9 and 10 together, and the Court will do likewise. Request No. 9 seeks:

All Documents and Communications discussing or analyzing:

    a. prices for U.S. Fed Cattle, U.S. Feeder Cattle, and U.S. calves, including, but not limited to, any changes in such prices;

    b. the supply of or demand for Fed Cattle, Feeder Cattle, or calves (including factors affecting supply and demand such as the U.S. cattle cycle or effects of weather and drought);

    c. per-head or profits margins of cow-calf operators, Fed Cattle producers, feedlot operators, Meat Packers, and Beef retailers;

    d. prices that a seller of Fed Cattle would have to receive for Fed Cattle to break even if it bought Feeder Cattle at any price;

    e. feedlot concentration or consolidation, including, but not limited to, how these matters impact Fed Cattle and/or Beef prices; and

    f. the Beef market, including, but not limited, any changes in Beef prices, Beef demand, and consumer Beef preferences.

(McGahan Decl. Ex. 4 at 12.) Request No. 10 seeks "[a]ll Documents and Communications discussing or analyzing when, how (cash, grid, etc.), and at what price to sell Fed Cattle, including all Documents and Communications analyzing or calculating the cost of gain and the weight of Fed Cattle." (*Id.* at 13.)

Defendants contend that this information is relevant to rebut Plaintiffs' allegations that it was Defendants' anticompetitive conduct that depressed fed cattle prices and diminished feedlot profits, and that Defendants used their market power to force feedlots to enter AMAs. The Cattle and Specht Plaintiffs contend that the requests are overbroad, unduly burdensome, and duplicative of requests served on the named Plaintiffs and other sources.

The Court agrees with the Cattle and Specht Plaintiffs that Request Nos. 9 and 10 are overbroad by requesting "all" documents and communications. But the Court also agrees with Defendants that the requested information is relevant, that responses from the named class representatives are too limited, and that data from the USDA, CattleFax, and other sources is insufficient to perform detailed analyses and will not reveal the information that directly influenced specific feedlots in making pricing decisions. Rather than grant a protective order, the Court will allow Defendants to include requests that are more narrowly tailored. The Court will not blue-pencil the requests, but takes Defendants' counsel at his word when he said at the motion hearing that the requests could be narrowed before the subpoenas are issued. (Mot. Hr'g Tr. at 32, Dkt. No. 273.)

## I.    Subpoena Request Nos. 11 and 12

Subpoena Request Nos. 11 and 12 may also be addressed together. Request No. 11 seeks structured data "maintained in the ordinary course of business sufficient to show the costs incurred by You, to maintain Feeder Cattle or Fed Cattle during the Structured Data Time Period . . ., including but not limited to feed, medical/veterinarian services, housing, purchase costs, and feeding, management, or holding/hoteling fees." (McGahan Decl. Ex. 4 at 13.) Request No. 12 asks for "Structured Data, Documents, and Communications sufficient to show Your profits and losses, including per head margins, and revenue, for Your Fed Cattle business on a quarterly basis, including gains and losses from trading Live Cattle Futures and options (if any)." (*Id.*)

The Cattle and Specht Plaintiffs argue the extensive structured data sought by Request Nos. 11 and 12 is unduly burdensome due to the long period of time at issue and

the necessity of engaging specialized vendors, that the requests are overbroad, and that the structured data is only marginally relevant to the costs and margins of cattle producers and live cattle traders across the proposed classes. Defendants respond that cost, profit and loss, and revenue data is relevant to the factors that impacted Plaintiffs' margins and Plaintiffs' regression model. Defendants also argue that the data is not available from government or other sources because costs, profits and losses, margins, and revenue are unique to each feedlot, and data from the named class representatives is limited.

As with Request Nos. 9 and 10, the Court agrees in part with both sides. Request Nos. 11 and 12 are overbroad and burdensome, but the requested information is relevant and not adequately obtainable from other sources. Thus, rather than grant a protective order, the Court will allow Defendants to include requests that are more narrowly tailored.

### J.    Subpoena Request No. 13

Finally, Request No. 13 asks for "Structured Data, Documents, and Communications sufficient to show any information that you provided to the U.S. Department of Agriculture, either voluntarily or mandatorily, relating to sales or purchases of Feeder Cattle, Fed Cattle, or calves." (McGahan Decl. Ex. 4 at 13.) The Cattle and Specht Plaintiffs contend that this request is duplicative of other requests and presents an undue burden to medium-sized operations that lack the resources to respond fully. Defendants concede that USDA data might be all the data an entity has in its possession to produce and, if so, that would suffice. To address the concerns of both sides, the Court will require a subpoena recipient to respond to Request No. 13 only if it had no other responsive information to produce.

16

Accordingly, **IT IS HEREBY ORDERED** that the Cattle and Specht Plaintiffs' Motion for Protective Order (Dkt. No. 237) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully above.

Date: August 7, 2023                                         _s/ John F. Docherty_
                                                                          JOHN F. DOCHERTY
                                                                          United States Magistrate Judge