# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-md-3031 (JRT/JFD) |
| | **Memorandum in Support of the Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Final Approval of the Class Action Settlement with Defendant JBS and Entry of Final Judgment** |
| This Document Relates To: | |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | |

# Table of Contents

Introduction ........................................................................................................................1

Factual Background.............................................................................................................2

    I.      The Settlement Terms ........................................................................3

    II.     The Notice Plan ...................................................................................4

    III.    Class Member Reaction ......................................................................6

Legal Standard....................................................................................................................6

Argument...........................................................................................................................7

    I.      The Settlement is Fair, Reasonable, and Adequate................................7

          A.     The Likelihood of Success on the Merits Weighed Against the Relief Offered in the Settlement Supports Final Approval....................8

          B.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval .................................................9

          C.     The Class Member Reaction Favors Final Approval...............................9

          D.     The Circumstances of the Settlement, and the Judgment of Experienced Counsel Who Have Evaluated the Case Supports Approval....................................................................................10

    II.     Notice of the Settlements was Proper Under Federal Rule of Civil Procedure 23 and Met Due Process Requirements ...............................10

          A.     There Were No Objections to the Notice Content or Plan .................12

          B.     Timing of CAFA Notices and Final Approval Order ...........................12

    III.    Certification of the Settlement Class is Appropriate ...........................12

i

A.     The Settlement Class Satisfies the Requirements of Rule 23(a) ............13

     1.     The Settlement Class is Sufficiently Numerous .........................13

     2.     Common Questions of Law and Fact Exist ...............................13

     3.     The Representative Plaintiff's Claims are Typical of Those of the Settlement Class ......................................................................14

     4.     CIIPP Class Representative and Its Counsel Have Fairly and Adequately Represented the Interests of the Class Members .......................................................................................15

B.     The Settlement Class Satisfies the Requirements of Rule 23(b) ............15

     1.     Common Legal and Factual Questions Predominate.................16

     2.     Class Actions Settlement is Superior to Other Methods of Adjudication ...................................................................................17

IV.     The Court Should Appoint Settlement Class Counsel and Class Representative................................................................................................17

Conclusion..................................................................................................................18

## Table of Authorities

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ........................................................14

*AmChem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ......................12, 13, 16, 17

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763 (8th Cir. 1971) .........13

*Blades v. Monsanto Co.*, 430 F.3d 562 (8th Cir. 2005) ......................................................................13

*Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251 (D. Minn. 2000) ....................16

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .......................................................................................17

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020) ..............16

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...........................................8, 10, 13, 14

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................................7, 11

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) .............................................13

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995)..........................................................16

*In re Pressure Sensitive Lablestock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............8

*In re UnitedHealth Grp., Inc. S'holder Derivative Litig.*,
   631 F. Supp. 2d 1151 (D. Minn. 2009) ........................................................................9, 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ...............................7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   2013 WL 716088 (D. Minn. Feb. 27, 2013) ........................................................ 7, 10, 17

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   2012 WL 5055810 (D. Minn. Oct. 18, 2012) ...................................................................11

*Jones v. Flowers*, 547 U.S. 220 (2006) .................................................................................................11

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) ..............................13

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) ...............................................6, 10

*MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533 (8th Cir. 2008) .....................................6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................11

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ...................................15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ......................... 8, 10, 11

*Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992 (8th Cir. 2016) ..........................16

*Smith v. Conoco Phillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) ...............................13

*Smith v. SEECO, Inc.*, 965 F.3d 1021 (8th Cir. 2017) ...............................................11

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .......................................9

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1982) .......................................9

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) .......................................8

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .......................................6

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) .......................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005),
     *cert. denied* 544 U.S. 1044 (2005) .......................................9

*Welsch v. Gardenbring*, 667 F. Supp. 1284 (D. Minn. 1987) .......................................9

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .......................................6

**Rules**

Federal Rule of Civil Procedure 23 .......................................7

Federal Rule of Civil Procedure 23(a) ................................... 12, 13, 15

Federal Rule of Civil Procedure 23(a)(1) .......................................13

Federal Rule of Civil Procedure 23(a)(2) .......................................13

Federal Rule of Civil Procedure 23(a)(3)................................................................................14

Federal Rule of Civil Procedure 23(a)(4)................................................................................15

Federal Rule of Civil Procedure 23(b)..........................................................................15, 16, 17

Federal Rule of Civil Procedure 23(b)(3).....................................................................10, 16, 17

Federal Rule of Civil Procedure 23(c)(2)(B)...........................................................................11

Federal Rule of Civil Procedure 23(e)......................................................................................7

Federal Rule of Civil Procedure 23(e)(1).................................................................................10

Federal Rule of Civil Procedure 23(e)(2)...................................................................................6

Federal Rule of Civil Procedure 23(g)......................................................................................18

**Statutes**

28 U.S.C. § 1715(b)..............................................................................................................12

**Other Authorities**

4 Newberg on Class Actions § 11.26 (4th ed. 2002)..................................................................6

4 Newberg on Class Actions § 11.41 (4th ed. 2002)..................................................................7

4 Newberg on Class Actions § 18.28 (4th ed. 2002)................................................................16

## Introduction

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") seek the Court's final approval of the settlement of their claims against JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., and JBS S.A. ("JBS"). Under this settlement, JBS will pay $25,000,000.00 ($25 million) to the CIIPP settlement class. The settlement also provides meaningful cooperation, which will assist the CIIPPs in their pursuit of the remaining Defendants. No class member objected to the settlement. In addition, apart from several restaurant groups who have already filed their own direct purchaser lawsuits in this litigation, there were no other opt out notices received, and the time to do so passed on August 14, 2023.

The settlement provides excellent benefits to the CIIPP settlement class considering the conduct, damage, and litigation risks related to JBS. The cash component is a reasonable compromise of the liability claim in comparison to the volume of commerce believed to be affected by JBS's conduct. The settlement also reflects the value of receiving money and cooperation now, which benefits the CIIPPs' claims against any new or non-settling Defendants.

Notice of the settlement, as required by Federal Rule of Civil Procedure 23, was provided through the notice plan the Court previously approved. The response from the members of the settlement class was uniformly positive. No class member objected to the settlement, attorney fees, litigation expenses, or request for class representative service awards. This is significant given that the settlement class consists of sophisticated businesses with their own counsel who can analyze the merits of these settlements. The favorable reception of this

settlement provides good evidence that final approval should be granted, and final judgment be entered.

**Factual Background**

This case alleges that Defendants[1] engaged in a conspiracy to artificially constrict the supply of beef[2] products in the domestic market of the United States. The CIIPPs allege that Defendants conspired to constrain the supply, and fix the price, of beef from at least 2015 through the commencement of the present action. (*See* CIIPP Second Amended Class Action Complaint (Case No. 20-cv-1319, Dkt. 262).) The CIIPPs allege that Defendants conspired to artificially restrict supply and fix prices. (*Id.* ¶¶ 2–3.) The CIIPPs allege that Defendants agreed among themselves to reduce live cattle purchasing and slaughter volumes for the purpose and effect of increasing their margins. (*Id.* ¶ 6.) The CIIPPs allege that Defendants accomplished and perpetuated this agreement through collusion at trade association conferences and industry events between executives and key employees, and through ensuing collusive relationships. (*Id.* ¶ 12.) Defendants' own transaction and slaughter data, their public calls for industrywide slaughter and capacity reductions, and measurable market conditions confirm the existence of the unlawful price fixing agreement. (*Id.* ¶¶ 6, 13–16.) The effect of this anti-competitive behavior was to increase Defendants' margins at the expense of other market

---

[1] Defendants include JBS, Cargill, Inc., Cargill Meat Solutions Corporation, National Beef Packing Company, Tyson Foods, Inc., and Tyson Fresh Meats, Inc.

[2] For this Settlement, "Beef" means boxed and case-ready meat that has been processed from cows and cattle by Defendants and other smaller, nondefendant producers, including but not limited to primals; trim or sub-primal products; further processed and value-added products; offal or variety products; rendered product and byproducts. "Beef" excludes ground beef made exclusively from culled cows. (*See* Dkt. 201-1, ¶ 1b.)

participants. (*Id.* ¶¶ 23–25.) The CIIPPs allege that the putative class members paid artificially and illegally inflated prices for beef during the Class Period.[3] (*Id.* ¶ 26.)

The cases in this coordinated litigation, unlike some civil-antitrust actions, were brought without the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program and without a formal antitrust investigation by the Department of Justice. On March 1, 2022, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Case No. 20-cv-1319, Dkt. 423.) Since filing their first complaint, the CIIPPs have continued their investigation and development of their case. During ongoing discovery, Interim Co-Lead Class Counsel negotiated a proposed settlement with JBS. The Court preliminarily approved the settlement between CIIPPs and JBS on May 25, 2023. (Dkt. 261.)

## I.    The Settlement Terms

This settlement came after substantial adversarial litigation with Defendants in this MDL and after years of investigation. CIIPPs' counsel was well informed, and the Settlement Agreement with JBS arose from arm's length and good-faith negotiations. (*See* Declaration of Shawn Raiter, ¶¶ 5, 6.) The parties participated in fact-gathering sessions, informational meetings, and more than six months of substantial negotiation. (*Id.*)

The CIIPPs negotiated a Settlement which provides a substantial cash benefit. Under the Settlement, JBS will pay $25,000,000 (twenty-five million U.S. dollars) to the CIIPP

---

[3] "Class Period" means January 1, 2015 until the date of the order granting Preliminary Approval of the Settlement Agreement and Settlement Class (May 25, 2023) (*See* Dkt 206-1, ¶ 1t).

Settlement Class.[4] Of that amount, the Court approved up to $500,000 to be used for reasonable costs of disseminating notice of the Settlement Agreement, including the cost of administration. (Dkt. 261, ¶ 10.) On top of the $25,000,000 cash payment, JBS is also required to provide the CIIPPs with various forms of cooperation. The terms of the cooperation were outlined in Paragraph 10 of the Settlement Agreement. (Dkt 206-1, ¶ 10.)

## II.      The Notice Plan

The Court preliminarily approved the settlement on May 25, 2023. (Dkt. 261.) At the same time, the Court approved the CIIPPs' proposed notice plan. (Dkt. 261, ¶¶ 11-12.)

---

[4] The Settlement Class is defined as:

> All persons and entities who during the Settlement Class Period indirectly purchased for business use in commercial food preparation in the United States, from any of the Defendants or their respective subsidiaries and affiliates, boxed or case-ready Beef processed from Fed Cattle, excluding ground beef made exclusively from culled cows.

> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which any Defendant has a controlling interest; purchasers that purchased directly from any Defendant, including those that directly purchased for resale in an unmodified and untransformed form (except to the extent they made indirect purchases that fall within the class definition); and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

(Dkt. 206-1; ¶ 5.) "Fed Cattle" means "steers and heifers raised in feedlots on a concentrated diet for the production and sale of Beef." (Dkt. 206-1; ¶ 1c.)

Pursuant to that Order, the CIIPPs effectuated the proposed notice plan through class action notice consultant Epiq Class Action & Claims Solutions, Inc. ("Epiq") and its business unit Hilsoft Notifications ("Hilsoft"). Through Epiq, Hilsoft, and Cameron Azari—a nationally-recognized expert in the field of legal notice—potential CIIPP class members were identified and mailed a long-form notice that provided information about the settlement. (*See* Declaration of Cameron Azari.) The notice consultant also sent long-form notices to email addresses associated with potential class members. (*Id.*, ¶¶ 9-15.) A multi-faceted notice program intended to provide the best notice practicable under the circumstances was therefore carried out and included:

- Individual Email Notice delivered to approximately 152,000 Class Members;
- Establishment of a Settlement Website and toll-free telephone number;
- Targeted Banner Notices on advertising networks *Google Display Network* and *Verizon (Yahoo) Audience Network*;
- Advertising on social media websites, including *Facebook* and *LinkedIn*;
- Sponsored search listings on the three most-visited search engines: *Google*, *Yahoo!*, and *Bing*; and
- An Information Release issued over PR newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television, and radio broadcast, as well as approximately 4,500 websites, online databases, internet networks, and social media networks, and also distributed to more than 530 journalists that report specifically on restaurants and the food industry.

(*Id.*, ¶¶ 13-26.) The notice plan "reached" approximately 75 percent of the potentially eligible class members. (*Id.*, ¶ 9.) Class members were notified of the Settlement Website, which provided information and case-related documents such as the long-form notice, short-form notice, and the full text of the Settlement Agreement. (*Id.*, ¶¶ 14, 17, 26-29.) The Claims-Administrator also provided instructions on how to attend the Court's fairness hearing, details

on how to object to the Settlement or opt out of the Settlement Class, and other details regarding the Settlement and approval process. (*Id.*)

## III.   Class Member Reaction

The reaction to the Settlement Agreement was uniformly positive. No class member objected to any term of the Settlement. (Azari Decl. ¶ 30; Raiter Decl. ¶ 10.) Apart from several restaurant groups who have already filed their own direct purchaser lawsuits in this litigation, there were no other opt out notices received. (*Id.*)

## Legal Standard

The district court must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993); *see MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 541 (8th Cir. 2008); *accord UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). Review of a proposed class-action settlement typically proceeds in two stages: preliminary approval and final approval. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). Between preliminary and final approval, the class must be notified of the proposed settlement and be given an opportunity to object, opt out of the class, or be heard. 4 Newberg on Class Actions § 11.26 (4th ed. 2002).

A district court "has broad discretion in evaluating a class action settlement." *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). In exercising this discretion, the court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a

proposed settlement. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41 (collecting cases). "In examining a proposed compromise for approval or disapproval … the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975) (quotation omitted).

Argument

## I.   The Settlement is Fair, Reasonable, and Adequate.

The Settlement with JBS meets the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure. It provides meaningful benefits and was reached after negotiations between experienced counsel who were armed with sufficient background about the merits of the claims and defenses to the claims asserted. The settlement reflects a reasonable compromise considering the liability, damages, and procedural uncertainties facing both the CIIPPs and JBS.

In making the determination under Rule 23(e) of whether the settlement is fair, reasonable, and adequate, the district court considers several factors, including: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). The court may also consider procedural fairness to ensure the settlement is not the product of fraud or collusion. *Id.* And the court may consider whether a settlement resulted from arm's

length negotiations, and whether a skilled mediator was involved. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

**A.    The Likelihood of Success on the Merits Weighed Against the Relief Offered in the Settlement Supports Final Approval.**

The strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement, is an important consideration in determining whether a settlement is fair, reasonable, and adequate. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). While the CIIPPs believe they have a strong case against JBS on the merits, success is by no means guaranteed. The Settlement provides, as discussed, substantial benefits in the form of cash and cooperation. The fact of certain substantial monetary compensation and cooperation is significant to this factor because, even if CIIPPs could potentially recover greater damages at trial, the non-settling defendants remain jointly and severally liable for any damages resulting from JBS's beef sales to CIIPPs during the class period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *see also In re Pressure Sensitive Lablestock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they would be able to withstand a larger judgment.").

Interim Co-Lead Counsel has investigated and analyzed, among other things, the strength of the liability claims against JBS, the volume of affected commerce, the value of the cooperation being provided, and the range of damage that could be proven at trial against JBS. Counsel believes this Settlement to be a positive outcome for the CIIPPs—it reflects both the strength of the CIIPPs' case and the risk that JBS could prevail on some or all of its arguments. (Raiter Decl., ¶ 5.) The Court may afford "great weight" to the opinions of experienced

counsel. *See, e.g., Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987). This factor weighs in favor of final approval.

**B.      The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.**

This Court has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish. This case commenced years ago, and it may continue for several more years, at significant additional expense, if litigated through an adversarial judgment and any appeals. Even then, "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (quotation omitted), *cert. denied*, 544 U.S. 1044 (2005). This factor also weighs heavily in favor of final approval.

**C.      The Class Member Reaction Favors Final Approval.**

The absence of negative reaction to a settlement favors approval. *In re UnitedHealth Grp., Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009); *accord Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class). Here, notice of the Settlement was sent and published to the potential class and no class member objected to the Settlement. In addition, apart from several restaurant groups who have already filed their own direct purchaser lawsuits in this litigation, there were no opt out

notices received. The lack of objection and small number of opt outs speaks loudly about the benefits of the Settlement. This factor counsels in support of final approval.

### D. The Circumstances of the Settlement and the Judgment of Experienced Counsel Who Have Evaluated the Case Support Approval.

There are several other miscellaneous factors the district court considers in determining whether a settlement is fair, reasonable, and adequate. All of them support final approval. The experience and opinion of counsel on both sides may be considered in determining whether a settlement is fair, reasonable, and adequate. *DeBoer*, 64 F.3d at 1178. Also, where sufficient discovery has been conducted and the parties have bargained at arm's-length (in this case through a mediator), there is a presumption in favor of the settlement. *In re UnitedHealth*, 631 F. Supp. 2d at 1158; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1959, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) ("Settlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters….").

This settlement is the result of extensive negotiations between counsel actively involved in and informed about the case. The judgment of counsel under these circumstances should be considered. *See Petrovic*, 200 F.3d at 1149. Finally, the "absence of any glaring substantive or procedural deficiencies," in conjunction with the other factors considered, supports final approval. *Martin*, 295 F.R.D. at 383.

## II. Notice of the Settlements was Proper Under Federal Rule of Civil Procedure 23 and Met Due Process Requirements.

The Court is required to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). For Rule 23(b)(3)

actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic*, 200 F.3d at 1153. A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin*, 513 F.2d at 121. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. I*n re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 (ADM/AJB), 2012 WL 5055810, at *8 (D. Minn. Oct. 18, 2012); *see also Smith v. SEECO, Inc.*, 965 F.3d 1021, 1025-26 (8th Cir. 2017) (stating that best notice practicable "is essentially an interest in due process"). Furthermore, in addition to United States mail, notice may be by electronic means or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

### A.      There Were No Objections to the Notice Content or Plan.

No member of the Settlement Class objected to or criticized the notice program. (Azari Decl., ¶ 30; Raiter Decl., ¶ 10.) Through its class administrator, the notice plan was executed and reached an estimated 75% of the potential class members. (Azari Decl., ¶ 9.) As described more fully above, potential CIIPP class members received information concerning all details of the settlement, as well as information regarding their rights to object to the Settlement or opt out of the Settlement Class. The notice program easily satisfied the requirements of Rule 23 and Due Process.

### B.      Timing of CAFA Notices and Final Approval Order.

The Class Action Fairness Act, 28 U.S.C. § 1715(b), requires that appropriate federal and state officials (here, the United States and state attorneys general) be notified of any proposed class action settlement. The Court may not grant final approval to a proposed settlement until 90 days after such notice is served. *Id.* JBS served the required notices on public officials more than 90 days ago (on or about April 20, 2023), and none of the state attorneys general has objected or requested an opportunity to be heard about the terms of the Settlement. (Raiter Decl., ¶ 12.)

## III.   Certification of the Settlement Class is Appropriate.

In its preliminary approval order, the Court found that Rule 23's requirements were met and provisionally certified—for settlement purposes only—a Settlement Class relating to the parties covered by the Settlement. It is well-established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality,

and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a) and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. Conoco Phillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015). For the reasons set forth below, the Court should now certify the Settlement Class—again for settlement purposes only—for purposes of final approval.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.    The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The notice for this Settlement was mailed to thousands of potential class members. (Azari Decl.) This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

#### 2.    Common Questions of Law and Fact Exist

Federal Rule of Procedure 23(a)(2) requires that there be "questions of law of fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer*, 64 F.3d at 1174; *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005). Common questions prevail here about

13

whether JBS illegally conspired to reduce the supply and raise the price of beef in the United States. Common questions also prevail as to whether CIIPPs were injured because of JBS' anti-competitive conduct. The Settlement Class satisfies the commonality requirement.

> 3. The Representative Plaintiff's Claims are Typical of Those of the Settlement Class

Federal Rule of Procedure Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs allege claims that arise out of the same alleged conduct of JBS—whether it illegally conspired to reduce the supply and raise the price of beef in the United States. The representative Plaintiff of the CIIPP Settlement Class—Erbert & Gerbert's, Inc.—alleges that it paid artificially inflated prices for beef, which exceeded the amount they would have paid if the price for beef had been determined by a competitive market. (*See* Case No. 20-cv-1319, Dkt. 262, ¶¶ 23–26.) Each individual class member has the same interests as the class representative, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

4.      The CIIPP Class Representative and Its Counsel Have Fairly and Adequately Represented the Interests of the Class Members

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representative has common interests with the members of the Settlement Class. It shares an interest in obtaining the best possible monetary recovery and securing cooperation against non-settling Defendants. The named representative has and will vigorously pursue this matter through qualified counsel. Undersigned counsel have significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Interim Co-Lead Counsel and Plaintiffs' Steering Committee for Commercial and Institutional Indirect Purchaser Plaintiffs, Case No. 20-cv-1319, Dkt. 413.) The Court has recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Interim Co-Lead Counsel, Case No. 20-cv-1319, Dkt. 423.) Counsel have vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations.

**B.      The Settlement Class Satisfies the Requirements of Rule 23(b).**

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

15

"The requirements of 'predominance of common issues' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

The Rule 23(b) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 at 102 ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

### 1.    Common Legal and Factual Questions Predominate

Questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, subject to common proof, include whether JBS engaged in anticompetitive conduct and/or conspired to artificially lower beef output and raise prices, and whether the CIIPPs paid artificially inflated prices for beef during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie

showing, then it becomes a common question."). Therefore, the CIIPP class satisfies the predominance requirement.

> 2.    Class Action Settlement is Superior to Other Methods of Adjudication

Plaintiffs seeking class certification must also show that a class action is superior to adjudicating individual claims. Rule 23(b) provides four pertinent considerations: (A) the interest of the class members in individually controlling the prosecution or defense of separate actions; (B) whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b) are satisfied in this case.

## IV.   The Court Should Appoint Settlement Class Counsel and Class Representative.

At preliminary approval, the Court provisionally appointed Interim Co-Lead Counsel for the CIIPPs as class settlement counsel and appointed the named CIIPP representative as the representative of the provisionally certified class settlement. (Dkt. 423.) As part of the final approval process, the Court should appoint Larson · King, LLP, Cuneo Gilbert & LaDuca,

LLP, and Barrett Law Group, P.A. as Settlement Class Counsel. These firms have represented the CIIPPs throughout the litigation and satisfy the requirements of Rule 23(g) of the Federal Rules of Civil Procedure. The Court should also appoint Erbert & Gerbert's, Inc. to serve as the representative of the Settlement Class.

**Conclusion**

For the foregoing reasons, CIIPPs respectfully request that the Court: (1) grant final approval of the Settlement with JBS; (2) certify the Settlement Class for purposes of settlement; and (3) enter final judgment as to JBS.

Dated: November 7, 2023

**Larson · King, LLP**

By ____*s/ Shawn M. Raiter*____
Shawn M. Raiter (#240424)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
(651) 312-6500
sraiter@larsonking.com

Blaine Finley (admitted *pro hac vice*)
**Cuneo, Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC  20016
(202) 789-3960
bfinley@cuneolaw.com

Sarah Sterling Aldridge (admitted *pro hac vice*)
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488 Telephone
saldridge@barrettlawgroup.com

**Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs**