## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE CATTLE AND BEEF
ANTITRUST LITIGATION

Case No. 22-md-3031 (JRT/JFD)

This Document Relates To:

THE COMMERCIAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTION

## MEMORANDUM IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, SET ASIDE FOR FUTURE LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD

Shawn M. Raiter (#240424)
**Larson · King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
(651) 312-6500
sraiter@larsonking.com

Blaine Finley (admitted *pro hac vice*)
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC  20016
(202) 789-3960
bfinley@cuneolaw.com

Sara Sterling Aldridge (admitted *pro hac vice*)
**Barrett Law Group, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488
saldridge@barrettlawgroup.com

*Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs*

**Statement of the Issues Presented**

1. Should counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"), who obtained a $25 million settlement, be awarded a portion of that settlement as attorneys' fees?

2. Should counsel for the CIIPPs be reimbursed for unreimbursed expenses they have paid in pursuing this litigation?

3. Should a portion of the settlement be set aside for future expenses incurred on behalf of the CIIPPs in this litigation?

4. Should the CIIPP representative plaintiff receive a service award for the work it has done to advance the interests of absent class members?

## Controlling or Most Apposite Authorities

*Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057 (D. Minn. 2010)

*Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039 (D. Minn. April 5, 2016)

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980 (D. Minn. 2005)

# Table of Contents

**Page**

Statement of Issues Presented ................................................................. i

Controlling or Most Apposite Authorities ................................................ ii

Table of Authorities ............................................................................. v

Background ........................................................................................ 1

A.  Counsel for CIIPPs Have Advanced Significant Resources to Obtain This Settlement ............................................................................... 2

B.  The Settlement Was Reached After Arms-Length Negotiation, Adversarial Proceedings ............................................................... 5

Legal Standard ................................................................................... 6

Argument .......................................................................................... 6

I.  The Court Should Reimburse Class Counsel for Unreimbursed Past Expenses and Should Approve a Set Aside for Future Litigation Expenses ........................... 6

    A.  Reimbursement of Costs Already Incurred .............................. 7

    B.  Future Litigation Expenses ................................................... 8

II.  The Court Should Award Attorneys' Fees to Counsel for the CIIPPs ............. 10

    A.  The Court Should Use the Percentage-of-the-Fund Approach .......... 11

    B.  The Fee Requested by Counsel for the CIIPPs is Appropriate ......... 12

    C.  Consideration of The Factors Used in this District Supports the Requested Fee Award ....................................................... 13

        1.  Counsel Secured Valuable Benefits for CIIPPs .................... 14

        2.  The Risk to Which Plaintiffs' Counsel Was Exposed .............. 16

3.     The Difficulty and Novelty of the Legal and Factual Issues
       of the Case ...............................................................................17

4.     Skill and Experience of Counsel ..............................................17

5.     The Time and Labor Involved ...................................................18

6.     The Reaction of the Class .........................................................18

7.     Comparison with Percentages Awarded in Similar Cases ...................18

III.   A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable ...................20

IV.    The Court Should Allow a Service Award For the Representative Plaintiff ................23

Conclusion...............................................................................................................26

## Table of Authorities

**Page**

**Cases**

*Austin v. Metro. Council*,
Civ. No. 11-3621 (D. Minn. Mar. 27, 2012) ................................................................. 25

*Blum v. Stenson*,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ............................................. 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ............................................... 11

*Bogosian v. Gulf Oil Corp.*,
621 F. Supp. 27 (E.D. Pa. 1985) .................................................................................. 25

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) ........................................................................ 25

*Camp v. Progressive Corp.*,
No. 01-2680, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ......................................... 25

*Carlson v. C.H. Robinson Worldwide, Inc.*,
No. 02-cv-3780 (JNE/JJG), 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ................... 19

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ..................................................................................... 25

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) ............................................................................... 25

*Heekin v. Anthem, Inc.*,
No. 1:05-CV-01908-TWP, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .................... 19

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775 JG VVP, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ..................... 10

*In re Air Cargo Shipping Serv. Litig.*,
No. 06-MD-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) .................... 10, 11, 21

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) .................................................................................. 20

v

*In re AremisSoft Corp., Sec., Litig.,*
210 F.R.D. 109 (D.N.J. 2002) ....................................................................................19

*In re Auto Parts Antitrust Litig.,*
No. 12-MD-2311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018)..........................8, 22

*In re Auto Parts Antitrust Litig.,*
No. 12-MD-2311, 2016 WL 9459355 (E.D. Mich. Nov. 29, 2016) ............................ 8

*In re Auto Parts Antitrust Litig.,*
No. 12-MD-2311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) ................................. 8, 9, 10

*In re California Micro Devices Sec. Litig.,*
965 F.Supp. 1327 (N.D. Cal. 1997) .............................................................................9

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................. 7, 13, 15

*In re CenturyLink Sales Prac. & Sec. Litig.,*
MDL No. 17-2795 (MJD/KMM), 2020 WL 7133805 (D. Minn. Dec. 4, 2020).............. 24, 25

*In re Cincinnati Gas & Elec. Co. Sec. Litig.,*
643 F. Supp. 148 (S.D. Ohio 1986)............................................................................13

*In re Combustion, Inc.,*
968 F. Supp. 1116 (W.D. La. 1997) ..................................................................... 19, 20

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
248 F.R.D. 483 (E.D. Mich. 2008) .........................................................................7, 13

*In re Diet Drugs Prod. Liab. Litig.,*
No. 1203, 2002 WL 32154197 (E.D. Pa., Oct. 3, 2002) ............................................11

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
130 F.R.D. 366 (S.D. Ohio 1990) ..............................................................................24

*In re Fasteners Antitrust Litig.,*
No. CIV.A. 08-MD-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014).......................19

*In re First Jersey Sec., Inc. Sec. Litig.,*
MDL No. 681, 1989 WL 69901 (E.D. Pa. Jun. 23, 1989)...........................................25

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................................19

*In re Folding Carton Antitrust Litig.*,
84 F.R.D. 245 (N.D. Ill. 1979)...................................................................................15

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003)...................................................9, 14, 17, 25

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 30370161 (E.D. Mich. Aug. 2, 2010) .................... 14, 15

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ...................12, 13, 16, 17

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)................................9

*In Re Polyurethane Foam Antitrust Litig.*,
No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .........................17

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................9, 15

*In re Processed Eggs Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012)........................... 14, 21

*In re Prudential Ins. Co. of America Sales Prac. Litig.*,
148 F.3d 283 (3d Cir. 1998) ....................................................................................20

*In re Ready-Mixed Concrete Antitrust Litig.*,
No. 1:05-CV-00979-SEB, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ................19

*In re Revco Sec. Litig.*,
Nos. 851 & 89CV593, 1992 WL 118800 (N.D. Ohio May 6, 1992) .........................25

*In re Se. Milk Antitrust Litig., No. 2:07-CV 208*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........................................................19

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2:12-CV-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014)...............................12

*In re St. Paul Travelers Sec. Litig.*,
No. 14-cv-3801 (JRT/FLN), 2006 WL 1116118 (D. Minn. Apr. 25, 2006)...................... 20, 21

*In re Sterling Foster & Company, Inc. Sec. Litig.*,
238 F.Supp.2d 480 (E.D.N.Y. 2002)................................................................................10

*In re Sulzer Orthopedics, Inc.*,
398 F.3d 778 (6th Cir. 2005) .........................................................................................13

*In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.*,
137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001).................................................................13

*In re Titanium Dioxide Antitrust Litig.*,
No. 10-CV-00318 RDB, 2013 WL 6577029 (D. Md. Dec. 13, 2013) .........................19

*In re Trans Union Corp. Privacy Litig.*,
629 F. 3d 741 (7th Cir. 2011) ........................................................................................16

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C 07-05634, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ....................................9

*In re U.S. Bancorp Litig.*,
291 F.3d 1035 (8th Cir. 2002) ................................................................................. 11, 19

*In re Vitamins Antitrust Litig.*,
2001 WL 34312839 (D.D.C. 2001) ..............................................................................20

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 CIV 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)......................9

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F.Supp.2d 980 (D. Minn. 2005) ......................................................................*passim*

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
No. 08-MDL-1958 (ADM/AJB), 2013 WL 716460 (D. Minn. Feb. 27, 2013) .........7

*Jorstad v. IDS Realty Trust*,
643 F.3d 1305 (8th Cir. 1981) .......................................................................................20

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) .........................................................................................20

*Koenig v. U.S. Bank,*
291 F.3d 1035 (8th Cir. 2001) ........................................................................................24

*Khoday v. Symantec Corp.,*
Case No. 11-cv-180 (JRT/TNL), 2016 WL 1637039 (D. Minn. April 5, 2016) ...............*passim*

*Krueger v. Ameriprise Fin., Inc.,*
No. 11-CV-2781 (SRN/JSM), 2015 WL 4246879 (D. Minn. July 13, 2015)............................6

*Lewis v. Wal-Mart Stores, Inc.,*
No. 02-CV-0944 CVE FHM, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006)..........................19

*Missouri v. Jenkins,*
491 U.S. 274 (1989) .......................................................................................................22

*Moore v. United States,*
63 Fed. Cl. 781 (2005) ...................................................................................................19

*Newby v. Enron Corp.,*
394 F.3d 296 (5th Cir. 2004) ...........................................................................................8

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
483 U.S. 711 (1987) .......................................................................................................22

*Petrovic v. Amoco Oil Co.,*
200 F.3d 1140 (8th Cir. 1999) ............................................................................. 6, 12, 20

*Rawlings v. Prudential-Bache Properties, Inc.,*
9 F.3d 513 (6th Cir. 1993) ..............................................................................................12

*Selzer v. Bd. of Educ. of City of N.Y.,*
No. 82 Civ. 7783, 1993 WL 42787 (S.D.N.Y. Feb 16, 1993) .........................................25

*Sheppard v. Consol. Edison Co. of New York, Inc.,*
No. 94-CV-0403, 2002 WL 2003206 (S.D.N.Y. Aug. 1, 2002) ......................................25

*Standard Iron Works v. Arcelormittal,*
No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ........................................19

*Vendo v. Lektro-Vend Corp.,*
433 U.S. 623 (1977) .......................................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................15

*Waters v. Intern. Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999).......................................................20

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .............................................24

*Williams v. Sprint/United Mgmt. Co.*,
No. CIV. 03-2200-JWL, 2007 WL 2694029 (D. Kan. Sept. 11, 2007)...................................19

*Wilson v. EverBank*, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ...................................................14

*Yarrington v. Solvay Pharm., Inc.*,
697 F.Supp.2d 1057 (D. Minn. 2010) ..............................................................*passim*

*Zillhaver v. UnitedHealth Group, Inc.*,
646 F.Supp.2d 1075 (D. Minn. 2009) ............................................................ 24, 25

**Rules**

Fed. R. Civ. P. 23(h)..................................................................... 1, 6, 7

Fed. R. Civ. P. 54(d)(2) ..................................................................... 1, 6

**Secondary Sources**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ...............................13

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004)..................................................9

MANUAL FOR COMPLEX LITIGATION (Third) (1995) ..................................................12

**Background**

After several years of litigation, counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") negotiated and presented a $25 million settlement with Defendants JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., and JBS S.A. ("JBS"). This is the first settlement for the CIIPPs in the Beef and Cattle litigation and it provides substantial benefits to the members of the settlement class. In addition to money, the settlement provides significant non-cash benefits, such as cooperation from JBS. All the net proceeds from the settlement will be paid to eligible class members—there is no *cy pres* reversion to JBS or third parties.

Counsel for the CIIPPs have zealously pursued this complex antitrust litigation against Defendants who have mounted substantial defenses. Although CIIPPs contend that Defendants committed antitrust violations, JBS and the non-settling Defendants have resolutely maintained that the CIIPPs cannot prevail on the merits. Defendants filed dispositive motions, much discovery has been conducted, and work relating to class certification is in progress. CIIPPs and their attorneys have already devoted a substantial amount of time and resources to this litigation, and the current settlement provides substantial benefits to CIIPP class members.

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Interim Co-Lead Counsel for the CIIPPs submit this motion in support of their request for: (1) reimbursement of litigation expenses already incurred; (2) leave to set aside seven percent of the settlement funds for future litigation expenses; (3) an award of attorneys' fees of $8,001,124.48 from the settlement (32% of the gross settlement proceeds); and (4) a service

award to the CIIPP representative plaintiff. Precedent from the Eighth Circuit Court of Appeals and other federal courts supports these requests, and the Court should grant this motion.

Courts in the District of Minnesota use the "percentage-of-the-fund" approach to awarding attorneys' fees. Counsel for the CIIPPs seek a fee award based on a percentage of the settlement funds that remain after the deduction of: (1) past litigation expense, and (2) a class representative service award. The requested award is well within the range of awards made by courts in this District. A lodestar cross-check confirms that the amount sought is reasonable considering the work performed and the results achieved for the class members. In addition, counsel for CIIPPs continue to devote considerable time to this litigation, further increasing their lodestar.

## A.   Counsel for CIIPPs Have Advanced Significant Resources to Obtain This Settlement.

Since this litigation started in 2020, counsel for the CIIPPs have pursued the litigation vigorously; reviewed and analyzed thousands of documents; negotiated agreements as well as court orders; negotiated this settlement; and participated in substantial discovery. (See Declaration of Shawn M. Raiter.) The conduct alleged here involves large beef and cattle producers, industry affiliates, and numerous conspiring participants. The Defendants are well-known companies who are dominant players in their industry. Unlike in some cases, there have so far been no public criminal indictments in connection with the conspiracies alleged in this lawsuit. Civil plaintiffs, like the CIIPPs, have carried the burden of establishing liability and seeking reimbursement for the damages they allege. Without the efforts of the

CIIPP plaintiffs and their attorneys, there would have been no recourse for Defendants' conduct.

Antitrust litigation is inherently risky, with high stakes, and the outcome of this litigation has been far from certain. From the outset, counsel for the CIIPPs worked on a contingent basis to advance the claims of commercial indirect purchasers of beef products. While working efficiently, they could not effectively represent these class members without committing a substantial amount of time, effort, and money.

The CIIPPs asserted damage claims under the laws of dozens of states and the District of Columbia, as well as a federal claim for injunctive relief. Some states permit indirect purchaser actions under state antitrust laws; others permit them under state consumer protection laws; and others permit them under general laws of restitution. The Defendants moved to dismiss the CIIPPs' claims, and the CIIPPs mostly prevailed on that motion.

Since 2020, attorneys for the CIIPPs have dedicated substantial work to this litigation. It has been and will continue to be a major undertaking as the case progresses through discovery, class certification, and then to trial if necessary. Counsel for the CIIPPs have performed the following work to advance this litigation:

- Research and investigation of the beef industry and the sale of beef products through commercial and foodservice distribution channels;

- Collecting information from a variety of sources, including industry sources and evidence produced by Defendants and third parties;

- Extensive research on the various aspects of the antitrust and other laws of nearly 30 states and the District of Columbia, and drafting and editing the initial and amended complaints;

- Analyzed and prepared liability and damages claims against Defendants;

- Collecting and analyzing information and discovery including voluminous discovery produced by the Defendants and third parties, such as food service distributors;

- Consultation with economic and other liability and damages experts;

- Drafting and negotiating key case-management documents, protocols, and stipulations;

- Review, in conjunction with the other plaintiff groups, thousands of pages of documents produced by the Defendants and third parties;

- Drafting, preparing for, and arguing opposition to motion to dismiss;

- Responding to discovery and other information sought by the Defendants from the CIIPPs;

- Negotiating discovery issues with defense counsel including numerous meet-and-confer sessions, each of which required substantial preparation;

- Preparing correspondence with respect to timing, stipulations, and case planning issues;

- Corresponding and attending calls with CIIPP co-counsel regarding client discovery and trial preparation issues;

- Obtaining and analyzing documents and data from the class representative;

- Locating, review, and production of documents from the class representative;

- Exchanging information and coordinating with consumer, direct purchaser, and individual action counsel regarding various issues;

- Attending calls and meetings to help formulate subpoenas and discovery from third parties;

4

- Attending status conferences with the Court;

- Performing all the tasks necessary to reach and effectuate this settlement, including formulating demands, negotiating, mediation, in-person meetings, exchange of drafts, preparing escrow agreements, drafting the settlement agreement, drafting preliminary and final approval motions, and drafting class notices, claim forms, and other settlement-related documents and coordinating with the claims administrator; and

- Coordinating with and reviewing the work product produced by retained experts in connection with class certification issues;

(*See generally*, Raiter Decl.)

The Defendants have already sought a large amount of information about significant aspects of the businesses operated by CIIPPs. Counsel for the CIIPPs have participated in meet and confers and communicated with defense counsel about the CIIPPs and their data, documents, and information. (Raiter Decl.) Defendants sought documents as well as ESI data. *Id.*

**B.    The Settlement Was Reached After Arms-Length Negotiation and Adversarial Proceedings.**

The CIIPPs reached a settlement with JBS after substantial litigation and negotiation by experienced counsel. (Raiter Decl.) The parties engaged nationally recognized mediator Eric Green, who conducted mediation and an arms' length settlement dialogue. *Id.* The settlement was reached through adversarial negotiations by counsel who were armed with transactional data, documents produced in discovery, and a strong understanding of the claims and defenses. *Id.*

5

**Legal Standard**

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized . . . by law." District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). "An award of attorney fees is committed to the sound discretion of the district court." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005) (citing *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); Fed. R. Civ. P. 23(h).

**Argument**

## I.  The Court Should Reimburse Class Counsel for Unreimbursed Past Expenses and Should Approve a Set Aside for Future Litigation Expenses.

Rule 23(h) allows the Court to reimburse counsel for costs advanced on behalf of the members of the settlement class. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger v. Ameriprise Fin., Inc.,* No. 11-CV-2781 (SRN/JSM), 2015 WL 4246879, at *3 (D. Minn. July 13, 2015).

Counsel for the CIIPPs have paid nearly $600,000 out of pocket for litigation expenses incurred to-date and have additional invoices currently totaling more than an additional $278,000. Having achieved the settlement currently before the Court, counsel for the CIIPPs should be reimbursed for these reasonable litigation expenses, which were necessary to advance the CIIPPs' claims. CIIPPs also request that the Court authorize

counsel to set aside seven percent of the current settlement to be used for future litigation expenses for the claims remaining against the non-settling Defendants. The requested amount to be set aside is $1,750,000.00. (Raiter Decl.)

### A.      Reimbursement of Costs Already Incurred.

Unreimbursed litigation expenses incurred in this case should be awarded to counsel for the CIIPPs. *See, e.g.*, Fed. R. Civ. P. 23(h); *Khoday v. Symantec Corp.*, Case No. 11–cv–180 (JRT/TNL), 2016 WL 1637039 (D. Minn. April 5, 2016) ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 (ADM/AJB), 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057, 1067 (D. Minn. 2010); *In re Delphi Corp. Sec. Derivative & ERISA Litig*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (Citation and internal quotation marks omitted); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Counsel for the CIIPPs have already incurred substantial out-of-pocket expenses totaling $981,626.55 in this litigation. (Raiter Decl.) These expenses included, among other things, transactional data acquisition and analysis, expert witness expenses, class notice and administration, costs of gathering and producing documents and electronic data, maintaining

databases for the documents produced in discovery, computerized legal and factual research, travel expenses, photocopying, telephone and conference charges, postage and delivery expenses, and filing fees. *Id.* These costs were incurred and paid by CIIPPs' counsel with no guarantee they would ultimately be recovered. These costs are reasonable, were necessary for the case, and should be reimbursed. *See Khoday*, 2016 WL 1637039, at *12; *In re Xcel*, 364 F.Supp.2d at 1000; *Yarrington*, 697 F.Supp.2d at 1068.

### B.   Future Litigation Expenses.

The class notices approved by the Court advised members of the settlement class that Interim Co-Lead Counsel for the CIIPPs intended to request that seven percent of the JBS settlement be set aside and used to pay future expenses incurred in the litigation against the remaining Defendants. (Raiter Decl.) Setting that money aside for use in this case will benefit the class members' claims against the non-settling Defendants. *Id.*

The Court has awarded future litigation expenses in other settlements reached in this litigation. Allowing a portion of class settlement funds to be used for future expenses is a well-accepted practice. *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 305-06 (5th Cir. 2004) (affirming 37.5% set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto Parts Antitrust Litig.*, No. 12-MD 2311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018) (approving request to set aside nearly $3.5 million for use in future litigation expenses); *In re Auto Parts Antitrust Litig.*, No. 12-MD 2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation expenses); *In re Auto Parts Antitrust Litig.*, No. 12-MD 2311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015) (approving request to set aside

nearly $3 million for use in future litigation expenses); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634, 2015 WL 3396829, at *3 (N.D. Cal. May. 26, 2015) (approving counsel's request for a $3 million future litigation fund); *In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519, at *13-14 (E.D. Mich. Feb. 22, 2011) (approving class counsel's request to use proceeds from early settlement to pay litigation expenses); *see also* MANUAL (Fourth) at § 13.21 ("[p]artial settlements may provide funds needed to pursue the litigation . . . ."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (concluding that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) (approving request to set aside to pay outstanding and future litigation costs); *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (creating a $5 million fund for the continuation of litigation against non-settling defendants); *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving 7.9% of approximately $19 million settlement fund for future litigation expenses).

The CIIPPs have already paid or incurred nearly $1 million in reasonable litigation expenses to achieve this $25 million settlement. (Raiter Decl.) The size and complexity of this litigation has already necessitated very significant expenses and, as the case progresses toward class certification, the expenses—particularly those associated with experts—will increase exponentially and will continue in the future. *Id.* Economic and damages models that describe the mechanisms and impact of anti-competitive behavior are common in antitrust litigation. Given the scope and complexity of the issues in this case, counsel for the

CIIPPs expects to incur millions of dollars in costs for the expert reports and opinions necessary to support class certification. *Id.*

The CIIPPs also expect to incur significant costs related to ongoing discovery from third parties and the Defendants. These costs include the significant expense of hosting and reviewing documents and electronic data, and the expert witness expenditures required in a case of this complexity. (Raiter Decl.) And, if the JBS settlement receives final approval, the cost of claims administration will total hundreds of thousands of dollars. *Id.* Counsel for the CIIPPs therefore believe that the amount they are requesting be set aside for future expenses—$1,750,000—is reasonable and would benefit the overall success of this case. *Id.*

## II.   The Court Should Award Attorneys' Fees to Counsel for the CIIPPs.

The $25 million settlement before the Court is the result of extensive work done by counsel for the CIIPPs on a contingent basis. Counsel have worked for over three years and have invested thousands of hours to pursue the CIIPP claims. Counsel for the CIIPPs request an interim award of attorneys' fees for the work done to achieve this settlement.

Interim fee awards are appropriate in large-scale litigation in which settlements are reached periodically. *See, e.g., In re Auto Parts*, 2015 WL 13715591, at*2 (approving fee award in settlements reached in ongoing litigation); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2011 WL 2909162, at *5–7 (E.D.N.Y. July 15, 2011) (interim fee award granted); *In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484-85, 489-90 (E.D.N.Y. 2002) (interim attorneys' fees awarded). Counsel for the CIIPPs have litigated this case for years and will continue to vigorously represent the interests of the CIIPPs. An award of fees on this settlement is appropriate. *See In re Air Cargo Shipping Serv.*

*Litig.*, No. 06-md-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) (awarding fourth round of interim fees); *In re Diet Drugs Prod. Liab. Litig.*, No. 1203, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding an interim fee after four years of litigation, noting that "to make them wait any longer for at least some award would be grossly unfair").

### A.   The Court Should Use the Percentage-of-the-Fund Approach.

The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478. When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

"A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered." *In re Xcel,* 364 F. Supp. 2d at 991 (citing *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorneys' fees of 36% from a $3.5 million common fund)); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.") (citations omitted). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved,

but also 'well established.'" *In re Xcel,* 364 F.Supp.2d at 991 (quoting *Petrovic,* 200 F.3d at 1157); see also *Khoday*, 2016 WL 1637039, at *8-9.[1]

### B.     The Fee Requested by Counsel for the CIIPPs is Appropriate.

The Court is well-versed with the complexity of this litigation; counsel for the CIIPPs have worked for years and have already dedicated over 9,000 attorney hours and more than 3,300 hours from legal assistants and other professionals.[2] Interim Co–Lead Counsel coordinated the efforts of counsel representing the CIIPPs to maximize efficiency and to avoid duplicative efforts and unnecessary billing. (Raiter Decl.) They have also monitored counsel to avoid unauthorized work and have been mindful of the CIIPPs' role in this litigation and the potential recoveries for their clients. *Id.*

The notices provided to the class advised that counsel for the CIIPPs would request that the Court award fees totaling one-third of the settlement funds remaining after the deduction of: (1) past litigation expenses, and (2) a class representative service award.[3]

---

[1] Other courts have expressed a preference for this method of awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See, e.g., Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 515 (6th Cir. 1993); *In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases.") (citations omitted); see also Manual for Complex Litigation (Third) § 24.12 at 189 (West 1995).

[2] *See* Raiter Decl.

[3] Although not sought here, this Court awarded the consumer plaintiffs in Pork one-third of the gross settlement fund. *See In re Pork Antitrust Litig.*, Dkt. No. 904. Similarly, other courts support applying the selected percentage to the settlement fund *before* deducting the litigation

12

Reasonable fee awards range from 20 to 50 per cent of the common fund. *In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001); *In re Cincinnati Gas & Elec. Co. Sec. Litig.,* 643 F. Supp. 148, 150 (S.D. Ohio 1986); Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002), §14:6 at 551 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.")

### C.   Consideration of The Factors Used in this District Supports the Requested Fee Award.

When using the percentage-of-the-fund approach, courts in this District will consider seven factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *See Khoday*, 2016 WL 1637039, at *9; *In re Xcel,* 364 F.Supp.2d at 993; *Yarrington,* 697 F.Supp.2d at 1062. When applied here, these factors indicate that the fee requested is fair.

---

costs and expenses. *See, e.g., In re Sulzer Orthopedics, Inc.,* 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming fee awards from a common benefit fund based on the gross settlement amount); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *17 ("The fee percentage is applied to the settlement fund before the separate award of litigation costs and expenses are deducted from the fund."); *Delphi*, 248 F.R.D. at 505 (attorneys' fees awarded on gross settlement fund); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. at 531–535 (awarding costs in addition to percentage of the fund fee).

### 1.    Counsel Secured Valuable Benefits for CIIPPs.

The result achieved for the class members is the principal consideration when awarding fees. A settlement's fairness should be evaluated in its entirety, including both monetary and non-monetary benefits, and weighed against the risks of proceeding. *See Wilson v. EverBank*, 2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("[C]ourts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class.")

As discussed in the memorandum the CIIPPs filed in support of the preliminary approval of the settlement, counsel for the CIIPPs achieved an excellent recovery. This $25 million cash settlement is coupled with meaningful cooperation from JBS that will assist with the prosecution of the claims against the non-settling Defendants. *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 276 (E.D. Pa. 2012) (granting approval of "ice-breaker" settlement with cooperation provision that "aid[ ] the Plaintiffs in prosecuting and resolving their claims against the other Defendants"); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ($7.2 million settlement had "significant value" because "early settlement with one of many defendants can "break the ice" and bring other defendants to the point of serious negotiations").

After deducting fees, notice and claims administration costs, and expenses, all the net settlement funds will be paid to eligible class members who file a valid claim. None of the money will revert to JBS or to a *cy pres* designee. In addition to the money benefits, the cooperation terms of the settlement provide significant value to CIIPPs in their prosecution of the claims against non-settling Defendants. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case

14

No. 08-MD-01952, 2010 WL 30370161, at *6 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d at 702 ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The public also benefits from civil antitrust actions. There is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem*, 218 F.R.D. at 534 ("Society also benefits from the prosecution and settlement of private antitrust litigation.") Society benefits when those who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings. *Vendo v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977) ("Section 16 undoubtedly embodies congressional policy favoring private enforcement of the antitrust laws, and undoubtedly there exists a strong national interest in antitrust enforcement."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (concluding that it is "especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws.")

**2.      The Risk to Which Plaintiffs' Counsel Was Exposed.**

Any recovery for CIIPPs needed to come through the work of lawyers working on a contingent basis. The significant expenses, combined with the high degree of uncertainty of ultimate success, make contingent fees a necessity for cases like this. Compensation in an amount appropriate to encourage skilled attorneys to assume the risks of this litigation is in the public interest. The substantial recovery counsel for the CIIPPs achieved helps serve the public policy of enforcing antitrust laws in the United States.

Counsel assumes considerable risk by pursuing cases on a contingent basis, advancing the costs of the litigation, and preparing for trial without a guaranteed recovery. *See Khoday*, 2016 WL 1637039, at *10; *In re Xcel,* 364 F.Supp.2d at 994; *Yarrington,* 697 F.Supp.2d at 1062. As the Court has seen, the Defendants have vigorously defended the claims and antitrust litigation is inherently expensive and complex. "This antitrust litigation, like all litigation of its species, promises to be extremely complex and time intensive and there is no question that if settlement fails, the Defendants will mount a strong defense." *In re Packaged Ice*, 2011 WL 6209188, at *19. Counsel for the CIIPPs were exposed to recovering nothing in this litigation (and continue to face that risk with the non-settling Defendants). "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011).

The legal and factual issues surrounding this case are extremely complex. Being rewarded only for success in this complex litigation creates a high degree of risk. The substantial risk undertaken by counsel for the CIIPPs strongly favors the fees requested. *See*

16

*Khoday*, 2016 WL 1637039, at *10; *In re Xcel,* 364 F.Supp.2d at 994; *Yarrington,* 697 F.Supp.2d at 1062.

### 3. The Difficulty and Novelty of the Legal and Factual Issues of the Case.

Antitrust class actions are inherently complex. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted). Although any antitrust action is difficult, the scale of this coordinated and MDL litigation magnifies that complexity. This litigation is decidedly challenging given the numerous parties involved, and the sheer magnitude of the conduct and affected commerce. This factor also supports the fee requested.

### 4. Skill and Experience of Counsel.

The skill and experience of counsel on both sides of the litigation is a factor courts consider in determining a reasonable fee award. *See Khoday*, 2016 WL 1637039, at *10; *In re Xcel*, 364 F.Supp.2d at 994; *Yarrington*, 697 F.Supp.2d at 1062; *In Re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at * 7; *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19.

The Court has found Interim Co-Lead Counsel for the CIIPPs to have the requisite skill and experience in class action and antitrust litigation to serve effectively as class counsel for the CIIPPs. But in assessing this factor, courts also consider the qualifications of the defense counsel opposing the class. *See Yarrington*, 697 F.Supp.2d at 1063 (reasoning that defendants' attorneys "consist of multiple well-respected and capable defense firms" which "consistently challenged plaintiffs throughout the litigation" supported the class counsel's

request for fees). Counsel for JBS (Quinn Emmanuel) are highly qualified and experienced antitrust and class action lawyers. The Court has observed the skill of the attorneys and the quality of the work done. This factor also supports the fee being requested by counsel for the CIIPPs.

### 5.      The Time and Labor Involved.

Counsel working on behalf of the CIIPPs have already invested more than 12,000 hours pursuing recoveries in this litigation. As described earlier in this brief, Interim Co-Lead counsel have coordinated a team of law firms and have worked to prepare this case for trial against large companies and their formidable counsel. Although much has been done since the case was first filed in 2020, much work remains against the non-settling Defendants. This case has, and will, require an enormous amount of work given the number of parties involved, the antitrust claims at issue, and the duration of the conspiratorial conduct. This factor supports the requested fee award.

### 6.      The Reaction of the Class.

The class notices advised that counsel would seek up to one-third of the settlement funds as attorneys' fees, would seek the past cost disbursements and future litigation fund discussed in this motion, and would request service awards. No class member objected to any aspect of this settlement. (Dkt. 386 & 387.) Six entities that are pursuing their own direct purchaser actions filed timely opt outs. (*Id.*)

### 7.      Comparison with Percentages Awarded in Similar Cases.

This Court routinely approves attorneys' fees in class actions of at least one-third of the common fund created for the settlement class. *See Khoday*, 2016 WL 1637039, at *11;

*Yarrington,* 697 F.Supp.2d at 1064 (noting that awards between 25 and 36 percent of a common fund are common); *In re U.S. Bancorp,* 291 F.3d at 1038 (affirming a fee award representing 36 percent of the settlement fund as reasonable); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases routinely approving fee awards of 33 percent); *Carlson v. C.H. Robinson Worldwide, Inc.,* Case No. 02–cv–3780 (JNE/JJG), 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35 1/2 percent of the settlement fund).[4]

The Eighth Circuit Court of Appeals and other federal courts have approved awards exceeding one-third of the settlement funds created by counsel representing the settlement class. *See, e.g., In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (fee of 36 percent); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36 per

---

[4] The same is true in other districts. *See Standard Iron Works v. Arcelormittal,* 2014 WL 77815572, at *1 (N.D. Ill. Oct. 22, 2014) (attorneys' fee award of one-third of $163.9 million settlement); *In re Fasteners Antitrust Litig.,* No. CIV.A. 08-MD-1912, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014) ("Co-Lead Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions."); *In re Se. Milk Antitrust Litig.,* No. 2:07-CV 208, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third fee from settlements totaling $158.6 million and finding that 33 percent "is certainly within the range of fees often awarded in common fund cases both nationwide and in the Sixth Circuit"); *In re Titanium Dioxide Antitrust Litig.,* No. 10-CV-00318 RDB, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third fee from $163.5 million fund); *In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees" and awarding one-third fee from $150 million fund); *Heekin v. Anthem, Inc.,* No. 1:05-CV-01908-TWP, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (awarding one-third fee from $90 million settlement fund); *In re Ready-Mixed Concrete Antitrust Litig.,* No. 1:05-CV-00979-SEB, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (approving one-third fee); *Williams v. Sprint/United Mgmt. Co.,* No. CIV. 03-2200-JWL, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007)(awarding fees equal to 35 per cent of $57 million common fund); *Lewis v. Wal-Mart Stores, Inc.,* No. 02-CV-0944 CVE FHM, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) (awarding one-third of the settlement fund and noting that a "one-third [fee] is relatively standard in lawsuits that settle before trial."); *In re AremisSoft Corp., Sec., Litig.,* 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *Moore v. United States,* 63 Fed. CI. 781, 787 (2005) ("one-third is a typical recovery").

cent and noting that "50 percent of the fund is the upper limit on a reasonable fee award from a common fund . . . . [D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292-94 (11th Cir. 1999); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10 (D.D.C. 2001) (awarding one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases."); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding fee of 45 per cent).

The requested fee, which totals approximately 32 percent of the $25 million settlement, is well within the range allowed by courts in this District. This factor supports granting this motion.

## III.   A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable.

Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). The requested percentage-of-the-fund award is compared with the "lodestar" by totaling the hours worked, multiplying them by a typical hourly fee, and then multiplying that amount by a "multiplier" that considers "the contingent nature of success, and ... the quality of the attorney's work." *Petrovic,* 200 F.3d at 1157; *Jorstad v. IDS Realty Trust,* 643 F.3d 1305, 1312–14 (8th Cir.1981). A cross-check does not require mathematical precision and it allows the Court to rely on summaries submitted by the attorneys. *In re Prudential Ins. Co. of America Sales Prac. Litig.*, 148 F.3d 283, 342 (3d Cir. 1998). Multipliers range from two to five. *See, e.g., See Khoday*, 2016 WL 1637039, at *11; *In re St. Paul Travelers*

*Sec. Litig.,* Case No. 14–cv–3801 (JRT/FLN), 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (using a multiplier of 3.9).

In litigation involving multiple cases and / or defendants, district courts consider requests for attorneys' fees from partial settlements by looking at all the work done on the cases to-date. *See, e.g., In re Air Cargo*, 2015 WL 5918273 (granting fees from settlements with multiple defendants based on an analysis of all the work done on the cases); *In re Processed Eggs Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012) (granting motion for attorneys' fees from settlement with single defendant based upon all work on case to-date).

The law firms that have worked to advance the claims of the CIIPPs have done so under the direction of Interim Co-Lead Counsel for the CIIPPs. Early discovery, data gathering and production, document review, and motion practice have been extensive. All the while, counsel for the CIIPPs have been preparing to certify a class and bring the case to trial. Counsel for the CIIPPs have vigorously prosecuted this case but have done so while being efficient and avoiding duplication. They and their professional staff have worked more than 11,000 hours on this litigation (through August 31, 2023). (*See* Raiter Decl.)

Counsel for the CIIPPs have provided their monthly time and expense documentation to Interim Co-Lead Counsel. Those reports set forth the timekeepers, customary rates, and hours worked to advance the litigation for the CIIPPs. The following table provides an aggregated summary of that lodestar through August 31, 2023:

| Lodestar Using Customary CIIPPs Rates | | |
|---|---|---|
| Category of Timekeeper | Number of Hours | Lodestar |
| Partner | 5,325.5 | $4,654,431.50 |
| Associate | 3,681.5 | $1,749,712.00 |
| Paralegal | 3,310.6 | $793,003.00 |
| Total | 12,317.6 | $7,197,146.50 |

In this litigation, the Court has found rates exceeding those used to calculate this lodestar to be reasonable. (*See, e.g.,* Dkt. No. 1364-7, 1364-15, 1364-16.) More than 12 years ago, this Court approved partner rates of up to $850 per hour and associate rates up to $410 per hour. *Yarrington*, 697 F. Supp. 2d 1057. In 2016, the Court approved rates up to $915 per hour. (*See Khoday,* Case No. 11-cv-180 (JRT/TNL) (Dkt. No. 409-1; Dkt. No. 410-1).) Five years ago, another court overseeing multidistrict antitrust matters concluded:

> The rates used by Auto Dealer counsel in this MDL are well within the parameters of reasonableness. In national markets, "partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400. (citation omitted) In specialties such as "antitrust and high-stakes litigation and appeals ... [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950." *Id.* Some "difference makers" in the most complex fields, including antitrust litigation, even charge $2,000 an hour. (citation omitted) This Court has recognized that rates in this matter "are well in line with the market, with recent reports explaining that senior lawyers at top law firms routinely charge well over $1,000." *See, e.g.,* 2:12-cv-00103-MOB-MKM (Doc. No. 578) at 7.

*In re Auto Parts Antitrust Litig.*, 2018 WL 7108072, at * 2 (internal citations omitted). Applying the customary rates to the hours reasonably expended on the case yields a "lodestar" of approximately $7,197,146 for the work done on the case since its inception.[5]

The requested fee is $8,001,124.48 which represents one-third of the funds remaining after deducting unreimbursed litigation expenses and the class representative service award.

---

[5] The use of current rates is appropriate to compensate counsel for inflation and the delay in receipt of the funds. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987).

(*See* Raiter Decl.) Using that fee award total and comparing it to the lodestar for the work done on the case results in a lodestar multiplier of 1.11 (i.e., the fee requested is 111 percent of the current lodestar). The requested fee is reasonable and well below the positive multipliers often allowed in this district. *See Khoday*, 2016 WL 1637039, at *11.

The current lodestar is conservative because it does not include the time spent prosecuting the case from August 31, 2023 or the time that will continue to be needed to bring this settlement through final approval and claim processing. While the hours already worked are substantial, they are reasonable and reflect the challenging nature of the litigation. JBS is represented by able counsel who have asserted vigorous defenses. The efforts of JBS and the other Defendants have required the CIIPPs to expend considerable effort and skill in prosecuting this case.

Given the excellent results achieved, the complexity of the claims and defenses, the real risk of non-recovery, the formidable defense teams, the delay in receipt of payment, and the substantial experience and skill of counsel, the requested multiplier on the lodestar and the resulting fee is reasonable compensation for the work done by counsel for the CIIPPs. With no guarantee about the extent of work required to conclude this case or the fees that will be generated from that work, it is possible that the multiplier on the current lodestar will decline significantly. (Raiter Decl.)

## IV.   The Court Should Allow a Service Award For the Representative Plaintiff.

The class notices advised that Interim Co-Lead Counsel would seek a service award of up to $15,000 for the representative plaintiff, whose efforts resulted in the settlement with JBS. There were no objections to, or comments about, that request. (Raiter Decl.) Because

this litigation—and the current settlement—could not have been pursued without the representative plaintiff, the Court should grant the requested award. *Yarrington,* 697 F.Supp.2d at 1069 (citations omitted) ("[I]ncentive awards ... promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.")

Courts routinely grant service awards for named plaintiffs. *See, e.g., Yarrington*, 697 F.Supp.2d at 1068 (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation"); *Zillhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009); *see also In re Xcel,* 364 F. Supp. 2d at 1000; *White v. Nat'l Football League*, 822 F. Supp. 1389, 1406 (D. Minn. 1993) (citing cases); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding two class representatives $55,000 each and three class representatives $35,000 each and citing cases).

When considering service awards, courts consider the following factors: "actions plaintiff[s] took to protect the class's interests, [the] degree to which the class has benefited from those actions, and [the] amount of time and effort [the named] plaintiff[s] expended in pursuing litigation." *Zillhaver,* 646 F.Supp.2d at 1085 (quoting *Koenig v. U.S. Bank,* 291 F.3d 1035, 1038 (8th Cir. 2001)); *In re CenturyLink Sales Prac. & Sec. Litig.*, MDL No. 17-2795 (MJD/KMM), 2020 WL 7133805, at * 13 (D. Minn. Dec. 4, 2020). Such awards also compensate representative plaintiffs who "participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit,

opening themselves up to scrutiny and attention from both the public and media." *In re CenturyLink*, 2020 WL 7133805, at * 13.

The named representative here has participated in multiple interviews and conferences with counsel, has gathered and produced documents and ESI, and has been engaged in this litigation for three years. Depositions may be conducted, and trial testimony may be needed to pursue claims that benefit all similarly situated businesses. The requested $15,000.00 service award is well within the amounts authorized by this and other district courts. *Zillhaver,* 646 F.Supp.2d at 1085 (awarding two lead plaintiffs $15,000 each from a settlement fund of $17 million); *In re Xcel,* 364 F.Supp.2d at 1000 (awarding $100,000 to be split between eight lead plaintiffs); *Khoday,* 2016 WL 1637039, at * 12 (awarding $10,000).[6]

---

[6] Numerous courts have approved class representative service awards substantially greater than what is sought here.  *See, e.g., Austin v. Metro. Council*, Civ. No. 11-3621 at ¶ 48 (D. Minn. Mar. 27, 2012) (approving $20,000 award); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding $25,000 award); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ($50,000 award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-52 (S.D. Ohio 1991) ($50,000 service awards to each of six class representatives); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 33 (E.D. Pa. 1985) (approving $20,000 award to class representatives); *Camp v. Progressive Corp.*, No. 01-2680, 2004 WL 2149079, at *6, *22 (E.D. La. Sept. 23, 2004) (awarding $102,000 to class representatives in a case in which the amount allocable to class members was $3.6 million); *In re Linerboard Antitrust*, No. MDL 1261, 2004 WL 1221350 at **18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 to each of five class representatives); *Sheppard v. Consol. Edison Co. of New York, Inc.*, No. 94-CV-0403, 2002 WL 2003206 at **6-7 (S. D. N. Y. Aug. 1, 2002) (three of six class representatives awarded $25,000 or more); *Selzer v. Bd. of Educ. of City of N.Y.*, No. 82 Civ. 7783, 1993 WL 42787 at *4 (S. D. N. Y. Feb. 16, 1993) ($47,000 awards to each of two class representatives); *In re Revco Sec. Litig.*, Nos. 851 & 89CV593, 1992 WL 118800 at *7 (N.D. Ohio May 6, 1992) ($200,000 award); *In re First Jersey Sec., Inc. Sec. Litig.*, MDL No. 681, 1989 WL 69901, *7 (E.D. Pa. Jun. 23, 1989) ($25,000 award).

**Conclusion**

For the foregoing reasons, Interim Co-Lead Counsel for the CIIPPs respectfully request that the Court grant their motion and award attorneys' fees, reimburse litigation expenses, allow the creation of a future expense fund, and award the class representative a service award.

Dated: November 7, 2023

**Larson · King, LLP**

By ____*s/ Shawn M. Raiter*____
Shawn M. Raiter (#240424)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
(651) 312-6500
sraiter@larsonking.com

Blaine Finley (admitted *pro hac vice*)
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC  20016
(202) 789-3960
bfinley@cuneolaw.com

Sarah Sterling Aldridge (pro hac vice)
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488 Telephone
saldridge@barrettlawgroup.com

**Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs**