**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| IN RE: CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-3031 (JRT/JFD) |
| This Document Relates To: COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | **ORDER REGARDING COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, SET ASIDE FOR FUTURE LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD** |

---

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") move for an award of attorneys' fees, reimbursement of litigation expenses, set aside for future litigation expenses, and a class representative service award relating to the CIIPPs' settlement with Defendants JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., and JBS S.A. ("JBS").

The Court has reviewed the memorandum submitted by the CIIPPs in support of their motion and the various declarations and submissions relating to that motion. The Court held a hearing on November 21, 2023, where appearances were noted on the record.

Based on the record and proceedings before the Court, **IT IS HEREBY ORDERED**:

1.     The CIIPPs' motion (Docket No. 391) is **GRANTED**.

2.      The Court has considered the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of expenses to the CIIPPs and their counsel are appropriate under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2).  Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that included relevant documents and pleadings.

3.      The Court has considered the reaction of the class members to this fee and reimbursement request.

4.      The Court **GRANTS** the CIIPPs' request for reimbursement of past litigation expenses (paid and currently owed) in the amount of $981,626.55.  "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses."  *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015).

5.      The past litigation expenses incurred by counsel for the CIIPPs were reasonable and necessary and were of the type normally awarded in class action litigation.  *See, e.g.*, Fed. R. Civ. P. 23(h); *Khoday v. Symantec Corp.*, No. 11–180, 2016 WL 1637039, at *12 (D. Minn. April 5, 2016) ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long

as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-1958, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010). The past litigation expenses incurred in the prosecution of this case and awarded in the Order shall be reimbursed from the settlement fund.

6.   The Court **GRANTS** the CIIPPs' request to establish a fund for future litigation expenses in the amount of $1,750,000.00. Allowing a portion of class settlement funds to be used for future expenses is a well-accepted practice. *See, e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296, 302–03 (5th Cir. 2004) (affirming 37.5% set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018); *In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); *In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-05634, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015); *see also* MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.21 (2004) ("[P]artial settlements may provide funds needed to pursue the litigation . . . ."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa.

2008); *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997).

7.     As indicated in the memorandum the CIIPPs submitted in support of this motion, the future litigation expenses will only be used for reasonable expenses incurred in the ongoing litigation against the remaining Defendants.  If the future litigation fund is not fully used, the money shall be returned for distribution to eligible settlement class members who filed valid claims.  However, if this fund is not fully used, counsel for the CIIPPs are awarded a fee of 30 percent of the unused funds.

8.     The Court previously authorized interim class counsel for the CIIPPs to pay the costs of the settlement notice and claims administration (being handled by Epiq Class Action & Claims Solutions, Inc. and Hilsoft Notifications) from the settlement fund (Docket No. 261, ¶ 10) and counsel may pay the currently outstanding invoices of $119,907.51 from the settlement fund.  Class counsel for the CIIPPs may also pay the future costs of claims administration from the settlement fund.

9.     The Court will award fees to counsel for the CIIPPs using the percentage-of-the-fund approach.  "A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered."  *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (*citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or

a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.") (citations omitted).  The percentage method of awarding attorney fees in a common-fund case is approved and well-established within the Eighth Circuit.  *In re Xcel*, 364 F. Supp. 2d at 991 (citation omitted); *see also Khoday*, 2016 WL 1637039, at *8–9.

10.    Counsel for the CIIPPs request a fee award of one-third of the settlement funds that remain after the future litigation fund, past litigation expenses, and a class representative award have been deducted.  The requested fee, which totals 32 percent of the total $25 million settlement, is well within the range allowed by courts in this District.

11.    When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.  *See Khoday*, 2016 WL 1637039, at *9; *In re Xcel*, 364 F. Supp. 2d at 993; *Yarrington*, 697 F. Supp. 2d at 1062. When applied here, these factors indicate that the requested fee is fair.

12.    **Counsel Secured Valuable Benefits for CIIPPs.**  This $25 million cash settlement is coupled with meaningful cooperation that will assist in the prosecution of

the claims against the non-settling Defendants.  None of the money will revert to JBS or to a *cy pres* designee, and the cooperation terms of the settlement provide significant value to the CIIPPs.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-01952, 2010 WL 30370161, at \*6 (E.D. Mich. Aug. 2, 2010); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d at 702.  Fee awards in antitrust actions also provide a public benefit. Awarding fees encourages attorneys to bring class actions to "vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals."  *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003).  Society benefits when those who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings.  *Vendo v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977); *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2$^d$ Cir. 2005) (noting that it is "especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws.").

13.  **Plaintiffs' Counsel Was Exposed to Risk.**  Counsel for the CIIPPs assumed considerable risk by pursuing this case on a contingent basis, advancing the costs of the litigation, and preparing for trial without a guaranteed recovery.  *See Khoday*, 2016 WL 1637039, at \*9; *In re Xcel*, 364 F. Supp. 2d at 994–95; *Yarrington*, 697 F. Supp. 2d at 1062. The Defendants have vigorously defended the claims, and antitrust litigation is inherently expensive and complex.  Counsel for the CIIPPs were exposed to recovering nothing in

this litigation.  "[W]ithin the set of colorable legal claims, a higher risk of loss does argue

for a higher fee."  *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

The risk undertaken by counsel for the CIIPPs supports the requested fee award.  *See*

*Khoday*, 2016 WL 1637039, at *9; *In re Xcel*, 364 F. Supp. 2d at 994–95; *Yarrington*, 697 F.

Supp. 2d at 1062.

14.     **The Difficulty and Novelty of the Legal and Factual Issues of the Case.**

Antitrust class actions are inherently complex.  *In re Linerboard Antitrust Litig.*, 292 F.

Supp. 2d at 639 ("An antitrust class action is arguably the most complex action to

prosecute. The legal and factual issues involved are always numerous and uncertain in

outcome.") (citations and internal quotation marks omitted).  This litigation presents

challenging legal and factual issues, and this factor also supports the fee requested.

15.     **Skill and Experience of Counsel.** Both counsel for the CIIPPs and JBS are

experienced and skilled antitrust counsel.  This factor also supports the requested fee.

*See Khoday*, 2016 WL 1637039, at *10; *In re Xcel*, 364 F. Supp. 2d at 995–96; *Yarrington*,

697 F. Supp. 2d at 1063; *In Re Polyurethane Foam Antitrust Litig.*, No. 1:10-2196, 2015 WL

1639269, at *7 (N.D. Ohio Feb. 26, 2015); *In re Packaged Ice Antitrust Litig.*, No. 08-01952,

2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011).

16.     **The Time and Labor Involved.**  Counsel working on behalf of the CIIPPs

invested thousands of hours to achieve this settlement.  The litigation has already lasted

more than three years and has and will require significant time and labor.  This factor supports the requested fee.

17.     **The Reaction of the Class.**  No class member has objected to the request for awards of fees or expenses.

18.     **Comparison with Percentages Awarded in Similar Cases.**  Courts in this District routinely approve attorneys' fees in class actions of at least one-third of the common fund created for the settlement class.  *See Khoday*, 2016 WL 1637039, at *11; *Yarrington*, 697 F. Supp. 2d at 1064–65 (noting that awards between 25 and 36 percent of a common fund are common); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming a fee award representing 36 percent of the settlement fund as reasonable); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases routinely approving fee awards of 33 percent); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02–3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35 1/2 percent of the settlement fund).

19.     The Eighth Circuit and other federal courts have approved awards equal to or exceeding one-third of the settlement funds created by counsel representing the settlement class.  *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (awarding fee of 36 percent); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36 per cent and noting that 50 percent represents the "upper limit" on a reasonable fee award); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292–95 (11th Cir. 1999) (awarding one-third of the total fund); *In re Vitamins Antitrust Litig.*, No. 99-197,

2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases"); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498–99 (D.D.C. 1981) (awarding fee of 45 percent).

20.     The Court has carefully analyzed the settlement and the factors considered by courts within the Eighth Circuit and Rule 23 and concludes that the factors are met and justify a fee award to counsel for the CIIPPs.  The $25 million settlement provides substantial cash and non-monetary benefits including cooperation from JBS.  Counsel has worked on a contingent basis, and the results of this litigation have never been certain. The legal and factual issues are complicated, and the parties have zealously asserted their claims and defenses.  Given the length and tenacity of this litigation, the Court is satisfied that the settlement was the result of arms' length negotiations between informed and experienced counsel.  The requested fee, which totals 32 percent of the total settlement, is well within the range allowed by courts in this District.

21.     Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund.  *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).  A cross-check of the lodestar incurred by counsel for the CIIPPs indicates that the fee requested constitutes fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the members of the

settlement class.   The lodestar currently totals $7,197,146 when using counsel's customary rates for complex class action litigation.

22.     Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar generated on these cases from the inception of the litigation to August 31, 2023, the requested fee results in a lodestar multiplier of 1.11, which is well below the range of reasonable multipliers awarded in similar contingent fee cases.   This multiplier is especially reasonable considering the complexity of this litigation, the result achieved for the class members, the risks assumed by counsel for the CIIPPs, and the work remaining to be done on the case and for which fees may or may not be available.   *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (multipliers typically range between two and five); *In re St. Paul Travelers Sec. Litig.*, No. 04–3801, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (using a multiplier of 3.9).

23.     The Court **GRANTS** an award of attorneys' fees to counsel for the CIIPPs in the amount of one-third of the net settlement funds available after the deduction of: (1) past litigation expenses, and (2) a class representative service award.   These attorneys' fees, totaling $8,001,124.48, shall be paid from the settlement fund.

24.     Interim Co-Lead Counsel for the CIIPPs are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the CIIPPs in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

25.     The Court also **GRANTS** the requested $15,000.00 service award to the named representative.  Courts routinely grant service awards for named plaintiffs in class action lawsuits.  *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1068 (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation"); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009); *see also In re Xcel*, 364 F. Supp. 2d at 1000; *White v. Nat'l Football League*, 822 F. Supp. 1389, 1406 (D. Minn. 1993) (citing cases).

26.     The representative plaintiff took action to benefit the interests of the CIIPPs, devoted its own time and effort, and has assisted counsel in achieving the settlement with JBS.  *Zilhaver*, 646 F. Supp. 2d at 1085 (quoting *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020).  Such awards also compensate representative plaintiffs who "participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media."  *In re CenturyLink*, 2020 WL 7133805, at *13 (citation omitted).  The requested $15,000.00 award is reasonable when compared to awards issued by courts in this District.  *Zilhaver*, 646 F. Supp. 2d at 1085 (awarding two lead plaintiffs $15,000 each from a settlement fund of $17 million); *In re Xcel*, 364 F.

Supp. 2d at 1000 (awarding $100,000 to be split between eight lead plaintiffs); *Khoday*, 2016 WL 1637039, at *12 (awarding $10,000 to each named plaintiff).

27.     Interim Co-Lead Counsel for the CIIPPs are authorized to pay from the settlement fund $15,000.00 to Erbert & Gerbert's, Inc.

DATED:  November 21, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge