UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil Action No. 18-cv-01776 |
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION | Civil Action No. 22-md-03031 |
| THIS DOCUMENT RELATES TO: *Sysco Corp. v. Agri Stats, Inc., et al.*, Case No. 21-cv-01374 (D. Minn.), and *Sysco Corp. v. Cargill Inc., et al.* Case No. 22-cv-01750 (D. Minn.) | Honorable John R. Tunheim Honorable John F. Docherty |

**SYSCO CORPORATION'S OBJECTION TO MAGISTRATE JUDGE ORDER DENYING MOTIONS FOR SUBSTITUTION OF PLAINTIFF**

Pursuant to Local Rule 72.2(a), Plaintiff Sysco Corporation ("Sysco") hereby objects to Magistrate Judge John F. Docherty's February 9, 2024, Order ("Order") denying Sysco and Carina Venture LLC's ("Carina") Joint Motions for Substitution of Plaintiff seeking to substitute Carina for Sysco as the named plaintiff in the above-captioned cases (hereafter "*Beef*" and "*Pork*"). *See* Dkt. No 545 (*Beef*); Dkt. No. 2104 (*Pork*). That decision is contrary to Eighth Circuit law and the decisions of this Court. Further, Magistrate Judge Docherty's stated public policy rationales for denying substitution are legally erroneous and improperly motivated by a separate, since-resolved dispute between Sysco and Burford Capital (Carina's affiliate) – which was neither before this Court nor at issue in the motions for substitution. As a result of

the ruling below, Sysco is forced to remain the nominal plaintiff even though Carina owns and controls the claims asserted in these actions. There is no basis for that unwieldy result. The magistrate judge's decision is contrary to law and must be set aside. *See Burroughs v. Mackie Moving Sys. Corp.*, 690 F.3d 1047, 1053 (8th Cir. 2012) (application of "public policy" is a "legal" issue); *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1021 (D. Minn. 2016) (Tunheim, J.) (district court reviews legal issues *de novo*).

## BACKGROUND

Sysco filed these cases seeking to recover damages from the Defendants' anticompetitive and unlawful manipulation of the Beef and Pork markets. Sysco's cases were then transferred and consolidated into the MDLs now before the Court. In connection with its claims, Sysco also contracted with affiliates of Burford Capital LLC (collectively, "Burford") to receive litigation financing in exchange for a portion of any future settlement or judgment, but Sysco retained ownership and control of the claims. And Sysco continued to prosecute the claims in its own name.

In the fall of 2022, Sysco and Burford disagreed on the merits of proposed settlements with a limited number of Defendants in the protein litigations, including JBS in *Pork* and *Beef*. That disagreement resulted in a dispute between Burford and Sysco over a provision added to the financing agreement when the parties resolved a prior contractual dispute. That provision stated

2

that Sysco "shall not accept a settlement offer without [Burford's] prior written consent, which shall not be unreasonably withheld." *Pork*, Dkt. No. 1952 at 2; *Beef*, Dkt. No. 283 at 2. Sysco and Burford disagreed about both the meaning and validity of this provision. Sysco also discharged its antitrust counsel in these cases – Boies Schiller Flexner LLP – over concerns about Boies Schiller's representation of Sysco in these cases.[1]

After an arbitral tribunal temporarily enjoined Sysco from finalizing the proposed settlements, Sysco petitioned to vacate the TRO in the Northern District of Illinois. *See* Pet. to Vacate Arbitration Award, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-01451 (N.D. Ill. Mar. 8, 2023), ECF. No. 1. The tribunal later superseded its TRO with a preliminary injunction that prevented Sysco from executing the settlements prior to the final merits hearing. Burford petitioned to confirm that preliminary award in New York state court – which was later removed to the Southern District of New York. *See* Notice of Removal, *Glaz LLC v. Sysco Corp.*, No. 1:23-cv-02489 (S.D.N.Y. Mar. 23, 2023), ECF. No. 1.

---

[1] After discharging Boies Schiller, Sysco sought a partial stay while it retained new counsel. *See Pork*, Dkt. No. 1843; *Beef*, Dkt. No. 164. Two weeks after the Court granted the stay, Sysco notified the court that it had retained new counsel. *See Pork,* Dkt. Nos. 1890, 1910; *Beef*, Dkt. Nos. 192, 213. The magistrate judge suggested (Order at 9) that Sysco's settlement with Burford and subsequent assignment to Carina resulted from this change in counsel. That is incorrect. Throughout its dispute with Burford, Sysco maintained separate counsel. The settlement was part of the evolution of the dispute with Burford, not an abrupt change influenced by any changes in Sysco's (or Burford's counsel).

3

Sysco's consistent position throughout – in the arbitration and its petition to vacate – was that the owner of a claim should have full control to prosecute and settle that claim.

In June 2023, Sysco voluntarily assigned its claims in *Pork* and *Beef,* as well as the Broiler Chicken and Turkey antitrust actions, to Carina, a subsidiary of Burford. The assignment was part of a hard-won settlement that served Sysco's important commercial interests. It resolved Sysco's disagreements with Burford over their respective contractual rights under the litigation-finance agreement; it resolved Sysco's dispute with Boies Schiller over its joint representation of Sysco and another Burford entity; and it alleviated Sysco's burden to pursue expensive litigation against its commercially important suppliers. This settlement ended litigation in two different federal courts and the parties' arbitration, including any future judicial proceedings arising from that arbitration.

Pursuant to the assignment agreement, Sysco assigned to Carina "all of [Sysco's] right, title and interest" in its antitrust claims. *Pork*, Dkt. No. 1940 at 4, *Beef,* Dkt. No. 277 at 4. Carina now "possesses all rights to prosecute, enforce and collect the Claims." *Id*. The assignment was intended to allow Carina to continue litigating as the named plaintiff those claims that Sysco expressly assigned to it – a core purpose of the settlement. Sysco agreed that it would continue to provide discovery to the defendants as if it remained a

party. Accordingly, Sysco and Carina jointly moved to substitute Carina as the plaintiff in these cases under Federal Rule of Civil Procedure 25(c).

## ARGUMENT

### I. Requiring Sysco to Continue to Litigate Claims It Has Voluntarily Assigned to Carina is Contrary to Rule 25.

Magistrate Judge Docherty's denial of substitution has vitiated the core benefits of Sysco's bargain – leaving it in the undesired and impracticable position of having to continue to litigate claims that it no longer owns or has any economic stake in.

The magistrate judge reached this result out of a perceived public policy interest in protecting *Sysco's* right to control over its own litigation. But in doing so, the magistrate judge was opining on a bygone dispute (the dispute between Sysco and Burford), not the dispute before the Court (Defendants' opposition to the joint motions for substitution).

Within the context of its now-settled dispute with Burford, Sysco argued to the arbitral tribunal (and to the district court on review of the arbitral award) many of the policy arguments that the magistrate judge adopted below. But that dispute is no longer live, either in arbitration or in court. Now that Sysco has assigned its claims to Carina pursuant to the resolution of its dispute with Burford, the magistrate judge erred by adopting those same policy arguments in denying Sysco and Carina's joint motion for substitution.

As the magistrate judge acknowledged, the overwhelming weight of federal precedent is that federal claims (and federal antitrust claims in particular) can be freely assigned. *See, e.g., Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969, 978 (Fed. Cir. 2021) (noting the Supreme Court's recognition that "federal causes of action" are "generally assignable"); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993) ("There is no serious doubt that an antitrust claim can be expressly assigned."); *see also* Order at 28 ("This Court does not doubt that antitrust claims are freely assignable"); *id.* at 24-25 (acknowledging that Carina has Article III and antitrust standing through assignment).

Given the valid assignment, it is *denial* of substitution that is contrary to public policy. Indeed, every decision of the Eighth Circuit and this Court has recognized that substitution is appropriate where a claim is assigned. There is no case to the contrary. *See ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995); *Columbian Bank & Tr. Co. v. Miller*, 384 F. App'x 524, 525 (8th Cir. 2010); *Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, No. 11-cv-165 (JRT/LIB), 2017 WL 1968285, at *4 (D. Minn. Apr. 18, 2017), *report and recommendation adopted*, 2017 WL 1967353 (D. Minn. May 11, 2017) (Tunheim, J.); *Couf v. Equitable Life Assurance Soc'y of the U.S.*, No. 03-1061 (JNR/JGL), 2003 WL 27384629, at *2 (D. Minn. Dec. 17, 2003).

First and foremost, the denial of substitution is contrary to Rule 25's underlying rationale: that litigation be conducted by the party that actually possesses "the right sought to be enforced." *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 569 (8th Cir. 1996) (citation omitted). Rule 17 *requires* that the litigation be prosecuted in the name of the real party in interest, and "Rule 25(c) is, in effect, the continuation of Rule 17." *Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 907 (1st Cir. 1987); *see also* 25 Fed. Proc., L. Ed. § 59:433 ("[T]he primary purpose of [Rule 25(c)] is to insure that litigation be conducted by the real party in interest.") (citation omitted). The magistrate judge's decision disregards this fundamental principle by forcing Sysco to remain the named plaintiff even though it no longer has any rights, interests, or claims left in this litigation.

The denial of substitution also runs contrary to Rule 25's purpose to "facilitate the conduct of the litigation." *Jalin Realty*, 2017 WL 1968285, at *3 (quotation marks and citation omitted). In requiring Sysco to continue to litigate claims it no longer owns or has any interest in, the magistrate judge created an impracticable situation in which Sysco must act as if it is the plaintiff prosecuting claims it does not own. The magistrate judge offered no explanation of how this arrangement would help streamline the litigation. It creates needless complexity for Sysco to have to serve as the nominal plaintiff when Carina, not Sysco, has the exclusive right to pursue, litigate, or settle the

7

claims at its own discretion. The only result that "facilitate[s] the conduct of the litigation" is to give Carina the right to directly control the claims it now owns. *Id.*

The magistrate judge's assertion that "the transfer . . . has caused serious practical problems in this litigation," Order at 3, was also misguided. The only issue the magistrate judge referenced was Sysco's request for a partial stay of its cases after it discharged Boies Schiller. *See* Order at 9 ("This Court . . . had to partially stay two of the largest cases on its docket for 60 days each while Sysco obtained new counsel."). But the impact of Sysco's replacement of counsel was negligible: the stay extended one document production deadline in *Beef*, but there was no disruption to any other cases or to MDL coordination. *See supra*, footnote 1.[2] More to the point, Sysco sought the stay in March 2023 – a full three months before the settlement and assignment with Burford – and for a completely different reason (the termination of prior counsel). That stay does not demonstrate that *substitution* would create practical problems. And it clearly will not: substitution will facilitate the litigation by letting Carina

---

[2] There were no material litigation developments in *Pork* during the stay. In *Beef*, the only practical effect of the stay was the extension of an April 3, 2023, deadline for Sysco to produce certain documents, which the magistrate judge extended by 30 days, without any objection by any Defendant. *See Pork*, Dkt. No. 1890; *Beef*, Dkt. No. 193.

directly litigate the claims that it now owns.³

## II. The Public Policies Cited by the Magistrate Judge Do Not Justify Denial of Substitution

In large part because it was focused on a prior, now-moot dispute, the magistrate judge's public policy analysis was legally flawed. The policy concerns undergirding the magistrate judge's decision actually *favor* substitution.

### A. The Policy Favoring Settlement Supports Substitution

First, the public policy favoring settlement (Order at 19) also favors substitution. Sysco's settlement with Burford was motivated in part by Sysco's desire to extricate itself from litigation and avoid the significant commercial risks and hazards associated therewith. The denial of substitution deprives Sysco of the benefit of its settlement bargain with Burford. The magistrate judge acknowledged that the law protects the "integrity of a negotiated settlement[,]" Order at 20 (quoting *Smith v. Questar Cap. Corp.*, No. 12-cv-02669 (SRN/TNL), 2015 WL 1963019, at *12 (D. Minn. Apr. 30, 2015)), but then disregarded that settlement by vitiating Sysco's right to be removed as a

---

³ For its part, Sysco has committed to provide discovery and make witnesses available to the same extent as if it was a party. *See* Hr'g Tr. at 49:2-12, Dkt. No. 2013 (*Pork*); Dkt. No. 337 (*Beef*) ("Sysco has agreed it will continue to respond to discovery as if it were a party" and Sysco offered "to enter into a stipulation that then gets ordered by the Court as far as its obligations going forward."). Those representations will ensure that substitution works no prejudice to the Defendants – a point the magistrate judge did not dispute.

9

party, *see id.* at 9 (noting that "[p]eace of a sort was restored" by Burford and Sysco's settlement, but explaining that "it was achieved in a manner that . . . this Court will not countenance").

The magistrate judge was seemingly troubled that the prior dispute between Burford and Sysco may have prevented the consummation of a proposed settlement between Sysco and JBS. But that proposed settlement is history. As much as Sysco disagrees with its conclusion, an arbitral tribunal enjoined Sysco from executing the settlement. Neither Sysco nor Burford sought review of that ruling from this Court, so the magistrate judge's policy pronouncements were outside his remit. As a practical matter, moreover, punishing Sysco – by preventing it from being substituted from the case – cannot bring that settlement back. The magistrate judge may have assumed that Sysco and JBS would revive settlement discussions if Sysco remained in control, but the litigation has progressed, additional discovery has occurred, and Sysco is now represented by new counsel. Sysco no longer has any intention to accept those prior settlement offers. Indeed, Sysco has opposed Pilgrim's effort to enforce the purported settlement in the *Chicken* litigation. *See* Sysco Corp.'s Opp'n to Pilgrim Pride Corp.'s Mot. to Enforce, *In re Broiler Chicken Antitrust Litig.* (N.D. Ill. Oct. 13, 2023), ECF. No. 6975.

More fundamentally, these claims are no longer Sysco's to settle. As Sysco has repeatedly made clear, "Carina, not Sysco, has the exclusive right to

pursue, litigate, or settle [the] claims at its own discretion." *Pork*, Dkt. No. 1992 at 7; *see also id.* at 5 ("[A]s a contractual matter, Sysco no longer has any rights, interest, or claims left in this litigation."); *id.* at 15 ("Sysco has no right, interest, or claims left in this litigation anymore."); *Beef*, Dkt. No. 313 at 3 (same). The public policy favoring settlement does not allow the Court to use Rule 25 to override the right of *Carina* – which now owns the claims – to decide whether and on what terms to settle.[4] As a procedural rule, Rule 25 is not meant to alter or abridge substantive rights. *See* 28 U.S.C. § 2072(b) ("[The Federal Rules] shall not abridge, enlarge or modify any substantive right."); *see also Great W. Cas. Co. v. Kirsch Transp. Servs., Inc.*, No. 1:18-cv-00012-SHL, 2022 WL 4182377, at *3 (S.D. Iowa June 3, 2022) ("There is little law governing how a court should exercise its discretion but the Court clearly must take care not to impair the substantive rights of the parties.") (cleaned up).

### B. Substitution Promotes Antitrust Policy

The magistrate judge also incorrectly concluded that the rationale behind the antitrust standing doctrine "[w]eighs [a]gainst [s]ubstitution."

---

[4] The magistrate judge (twice) claimed that "Sysco and Carina have forthrightly said that the assignment was intended to allow Carina to stymie settlements with Defendants." Order at 21; *see also id.* at 19 ("Sysco and Carina frankly admit that their motive to substitute Carina for Sysco is that Sysco was planning to settle these antitrust claims for lower amounts than Burford wanted."). That is not accurate. The assignment was intended to settle a multi-faceted, multi-party dispute, and it transferred to Carina all of the rights associated with the claims.

11

Order at 21. Antitrust standing doctrine may "limit[] the pool of potential antitrust plaintiffs" to those who suffered antitrust injury, *id.* at 22 – but that doctrine does not limit the right of a party that did suffer antitrust injury from assigning its claims to a third party. The magistrate judge cited no authority for its contrary conclusion, which, if adopted, would undermine both the right of antitrust plaintiffs to assign their claims to third parties and the important federal interest in vigorous enforcement of the antitrust laws.

As a direct purchaser of billions of dollars of food and other products every year, Sysco has a strong interest in making sure that the magistrate judge's flawed public policy analysis is reversed. As direct purchaser, Sysco alone has federal antitrust standing to bring claims for anticompetitive conduct. But Sysco's business is distribution, not litigation, and Sysco does not always want to assume the significant costs and hazards associated with litigation. The magistrate judge's rationale would unduly impede Sysco and other direct purchasers from transferring its claims to those that may be better positioned to prosecute the claims – a result contrary to both settled precedent and sound federal antitrust policy.

As a matter of precedent, the uniform case law on point supports the ability of a direct purchaser to assign federal antitrust claims to third parties – even those who were not themselves injured, but whose injury derives from the assignment itself. *See, e.g., Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards*

12

*& Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007) (explaining, in the context of the assignment of antitrust claims to an unrelated investment vehicle, that "[t]he purchasing of claims, whether before or after suit has been brought upon them, for the purpose of turning a profit is nonetheless not categorically forbidden"; instead "such assignments are widely permitted, presumably in order to allow holders of claims to transfer the risk of loss to someone better able or more willing to pursue the claim or to undertake the risk.") (citations omitted); *cf.* Br. for Defs.-Appellees at 9, *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, No. 06-cv-2143, 2006 WL 5004138, at *9 (2d Cir. Nov. 13, 2006) (explaining that "Cordes & Company Financial Services, Inc. ('Cordes'), is a privately owned investment vehicle for an individual speculator.").

Indeed, the Supreme Court has rejected rules that "have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (holding that substitution of a nondiverse party under Rule 25(c) did not destroy diversity jurisdiction).  And the courts have likewise explained the important policy interest supporting that rule:  in many cases unrelated third parties will be in the best position to enforce the antitrust laws. *See*, *e.g.*, *Wallach v. Eaton Corp.*, 837 F.3d 356, 370 (3d Cir. 2016) (federal law encourages an antitrust plaintiff "uninterested in pursuing its claims" to assign those claims to a "willing and interested assignee").

13

In short, federal antitrust law policy *both* limits the types of injury that allow a party to sue ("antitrust standing") *and* affirms the right of those parties to assign their claims to others ("free assignability"). By invoking antitrust standing as a basis to impede Sysco from effectuating the assignment its claims, the magistrate judge erred as a matter of federal antitrust law.

### C. The Doctrine of Champerty Favors Substitution of the Claim Owner.

The magistrate judge also reasoned (Order at 18) that the policies animating the "medieval doctrine of 'maintenance by champerty'" justified denial of substitution. That is incorrect. The magistrate judge's reasoning drew heavily from Sysco's own submissions to the arbitral tribunal – and to the district court on appeal from the tribunal's adverse ruling – arguing that a party should be allowed to control its own litigation. *See* Order at 17-18 (adopting the arguments of Sysco's expert and the dissenting arbitrator).

But the magistrate judge's denial of substitution creates the very policy concern that animates the doctrine of champerty, because it puts Sysco in the (unwanted) position of litigating claims, as the nominal plaintiff, that are actually owned by *Carina*. Thus, the magistrate judge's adoption of Sysco's arguments in different setting turns those policies on their head in the current posture.

14

## CONCLUSION

Sysco respectfully requests that the Court set aside the magistrate judge's ruling and order substitution.

Dated: February 23, 2024      Respectfully submitted,

/s/ *Christopher P. Wilson*
Michael Calhoon
Julie B. Rubenstein
Brian C. Kerr
Christopher P. Wilson
Wyatt M. Carlock
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7739
Facsimile: (202) 585-1058
michael.calhoon@bakerbotts.com
julie.rubenstein@bakerbotts.com
brian.kerr@bakerbotts.com
christopher.wilson@bakerbotts.com
wyatt.carlock@bakerbotts.com

*Counsel for Sysco Corporation*

15

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil Action No. 18-cv-01776 |
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION | Civil Action No. 22-md-03031 |
| THIS DOCUMENT RELATES TO:<br>*Sysco Corp. v. Agri Stats, Inc., et al.*, Case No. 21-cv-01374 (D. Minn.), and<br>*Sysco Corp. v. Cargill Inc., et al.* Case No. 22-cv-01750 (D. Minn.) | Honorable John R. Tunheim<br>Honorable John F. Docherty<br><br>**LR 7.1(f) & LR 72.2(d)**<br>**CERTIFICATE OF COMPLIANCE** |

I, Christopher P. Wilson, certify that the

☐ Memorandum titled:
complies with Local Rule 7.1(f).

or

☒ Objection or Response to the Magistrate Judge's Ruling complies with Local Rule 72.2(d).

I further certify that, in preparation of the above document, I:

☒ Used the following word processing program and version: Microsoft Word 365 and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

or

☐ Counted the words in the document.

I further certify that the above document contains the following number of words: 3411.

Dated:  February 23, 2024

/s/ *Christopher P. Wilson*
Christopher P. Wilson
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7739
Facsimile: (202) 585-1058
christopher.wilson@bakerbotts.com

*Counsel for Sysco Corporation*