UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-md-3031 (JRT/JFD) |
| This Document Relates To: ALL CASES | **SEALED ORDER** |

This matter is before the Court on Defendants' Motion to Compel Discovery from Witness 1 (Jason Fullerton) (Dkt. No. 403). Defendants seek to compel Mr. Fullerton to produce documents in his possession or his attorney's possession that are responsive to a subpoena but are being withheld on a claim of work product. The motion is granted in part and denied in part. Specifically, Mr. Fullerton must produce responsive documents in his possession, but he need not produce documents from his attorney's files or documents protected by the work-product doctrine.

**I.     Background**

    **A.     Cattle Counsel's Pre-Filing Investigation**

Lawyers with the law firms of Scott+Scott, Cafferty Clobes Meriwether & Sprengel LLP, and Robins Kaplan LLP (collectively, "Cattle Counsel") are counsel of record for Plaintiffs Ranchers Cattlemen Action Legal Fund United Stockgrowers of America; Farmers Educational and Cooperative Union of America; Weinreis Brothers Partnership; Minatare Feedlot, Inc.; Charles Weinreis; Eric Nelson; James Jensen d/b/a Lucky 7 Angus; and Richard Chambers as trustee of the Richard C. Chambers Living Trust (collectively "Plaintiffs"). (McGahan Decl. ¶ 1, Dkt. No. 462.) Plaintiffs retained Cattle Counsel in late

2018 to investigate and commence litigation relating to Defendants' alleged conspiratorial suppression of fed cattle prices. (*Id.* ¶ 3.)

Jason Fullerton worked at Defendant Swift's plant in Cactus, Texas until February 2018. (*See id.* ¶ 4.) Cattle Counsel interviewed Mr. Fullerton in January 2019 as part of their pre-filing investigation and in their preparation of Plaintiffs' initial Complaint and Second Amended Complaint ("SAC"). (*Id.* ¶ 5.) Cattle Counsel also emailed questions to Mr. Fullerton, and some emails referred to and attached excerpts from draft complaints. In September 2019, Cattle Counsel entered into a common interest privilege agreement and a fee payment agreement with Mr. Fullerton and his lawyer, Ted Anderson of Kilgore & Kilgore PLLC. (*Id.* ¶ 6.)

B.   **Allegations Relating to Mr. Fullerton**

Plaintiffs refer to Mr. Fullerton as "Witness 1" or "Jason F." in their Third Amended Complaint ("TAC"), which is the operative pleading. Mr. Fullerton worked for Swift as a quality assurance officer. (TAC ¶ 102, Dkt. No. 312 in Case No. 19-cv-1222.) According to Mr. Fullerton, as alleged by Plaintiffs in the TAC, "each of the Packing Defendants expressly agreed to periodically reduce their respective purchase and slaughter volumes in order to reduce the prices they would otherwise pay for fed cattle during the Class Period." (TAC ¶ 101.) Plaintiffs further allege that Mr. Fullerton "learned of Packing Defendants' collusive purchase and slaughter reduction agreement from Mr. [James] Hooker," who was the head of fabrication at the Cactus plant. (TAC ¶ 104.) "Mr. Hooker would often provide Witness 1 with detailed information as to the current and future operations of Tyson Fresh, CMS, and National Beef's nearby packing plants." (TAC ¶ 115.) In 2015, Plaintiffs allege,

2

Mr. Hooker told Mr. Fullerton "that Packing Defendants had an 'agreement' to reduce their purchase and slaughter volumes in response to what they perceived to be high cattle prices. (TAC ¶¶ 116–17.) When Mr. Fullerton allegedly asked about plants that competed with Swift's plant in Cactus, Mr. Hooker allegedly indicated that Swift Cactus and the competitor plants had an agreement to reduce their slaughter volumes when prices had been high for a while. (TAC ¶ 118.) Several other allegations about the alleged agreement and the Swift Cactus plant were based on statements from Mr. Fullerton. (*See* TAC ¶¶ 119–22.) Plaintiffs assert they could not have known about the alleged agreement until Mr. Fullerton "stepped forward and shared with Plaintiffs details of Packing Defendants' express agreement" in late January 2019. (TAC ¶ 433.)

The initial Complaint and the SAC contained similar, but not identical, allegations. For example, the initial Complaint alleged that Witness 1 was formerly employed as a quality assurance officer by a Packing Defendant, that the "Packing Defendants expressly agreed to periodically reduce or restrain their respective slaughter volumes so as to reduce demand for fed cattle," that Witness 1 heard about the purported agreement from a senior operations manager "on multiple occasions," and that the alleged agreement began in 2015. (Compl. ¶¶ 11, 80–82, Dkt. No. 1 in Case No. 19-cv-1222.) The SAC alleged, among other things, that Witness 1 had learned about "the Packing Defendants' collusive purchase and slaughter reduction 'agreement' from . . . Slaughter Plant 1's head of fabrication," that Witness 1 had multiple discussions with the fabrication manager about the Packing Defendants' reduction of "purchase and slaughter volume in order to reduce fed cattle prices when Packing Defendants viewed fed cattle prices as being or becoming 'too high'

3

for their liking," and that the manager said on one occasion that the Packing Defendants had an "agreement" to reduce purchase and slaughter volumes in response to high prices. (SAC ¶¶ 92–93.)

Defendants characterize the revisions to Mr. Fullerton's statements as material changes, but the Court disagrees. The core allegations have remained the same: Mr. Hooker told Mr. Fullerton that Defendants had an agreement to reduce their slaughter volumes when prices got too high. The revisions identified by Defendants are stylistic, not material, changes.

### C. The Subpoena Served in November 2022

In November 2022, Defendants served a subpoena on Mr. Fullerton, seeking documents related to his knowledge of the alleged conspiracy. The subpoena also sought communications between Mr. Fullerton and Plaintiffs, or between Mr. Fullerton and Cattle Counsel, "because an important issue"—according to Defendants—"is why Fullerton's story kept changing in Plaintiffs' various pleadings." (Defs.' Mem. Supp. at 9, Dkt. No. 405.) Mr. Fullerton formally objected to the subpoena, but later searched his emails, phone, and hard-copy documents for responsive, nonprivileged materials. Ultimately, Mr. Fullerton produced three email chains but no documents dated after June 2020 and no documents in his lawyer's possession. The three emails that were produced did not relate to Mr. Fullerton's knowledge about the alleged agreement between the Packing Defendants. (*See* Rashid Decl. Exs. 10–12, Dkt. No. 407-1.) A privilege log produced by Mr. Fullerton listed five emails (and two attachments) between Mr. Fullerton and Plaintiff's counsel and related to Mr. Fullerton's review of excerpts of draft complaints.

4

(*See* Rashid Decl. Ex. 9, Dkt. No. 407-1.) The privileges asserted on the log included work product, and, for example, the subject of one privilege was described as a "[c]onfidential email from Cattle Plaintiffs' counsel to Mr. Fullerton, a party sharing common legal, factual and/or strategic interests, and Mr. Fullerton's counsel requesting review of an excerpt from Cattle Plaintiffs' draft amended complaint pertaining to Mr. Fullerton's recollection, and reflecting Cattle Plaintiffs' counsel's mental impressions, legal strategy, and opinions." (*Id.*) Other subject entries were similarly worded.

### D. Defendants' Motion to Compel

Through this motion, Defendants seek to obtain documents relating to Mr. Fullerton's recollection of events and to any changes in his recollection that might be reflected through the successive complaints. Defendants request an order compelling Mr. Fullerton to (1) search for and produce documents in response to Subpoena Requests Nos. 14, 15, 17, and 20-31,[1] from January 1, 2014 through December 28, 2020; (2) search for and produce all responsive documents that are being held in the files of his attorney; and

---

[1] Defendants' Subpoena Request No. 14 seeks versions of draft complaints that Mr. Fullerton reviewed or exchanged with Plaintiff's counsel. (Rashid Decl. Ex. 1 at 6.) Request No. 15 seeks evidence of Mr. Fullerton's comments about or suggested revisions to draft complaints. (*Id.*) Request No. 17 seeks all documents about the litigation that Mr. Fullerton sent to or received from anyone. (*Id.* at 7.) Request No. 20 seeks documents about Mr. Fullerton's knowledge of the alleged conspiracy between Defendants. (*Id.*) Request Nos. 21 through 30 seek documents relating to specific allegations in the TAC about Mr. Fullerton's knowledge of the alleged conspiracy, his working relationship with Mr. Hooker, information he allegedly learned from Mr. Hooker or Mr. Hooker's colleagues, and discussions or conversations he had or overheard about the alleged conspiracy, all including communications with any Plaintiff or Plaintiffs' counsel. (*Id.* at 7–9.) Request No. 31 seeks all documents in Mr. Fullerton's possession about Defendant JBS. (*Id.* at 10.)

5

(3) produce all responsive documents withheld on the basis of Plaintiffs' work-product claim. Plaintiffs[2] and Mr. Fullerton oppose the motion.

## II. Legal Standards

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

A subpoena issued under Rule 45 may command a person "to produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). "The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022). "Pursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Keefe v. City of Minneapolis*, No. 9-CV-2941 (DSD/SER), 2012 WL 7766299, at *3 (D. Minn. May

---

[2] Defendants do not challenge Plaintiffs' standing to object to the subpoena.

25, 2012). That said, a party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs." *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7.

The work-product doctrine protects from discovery a party's "documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "There are two kinds of work product— ordinary work product and opinion work product." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Ordinary work product includes raw factual information," *id.*, and is discoverable only if the materials "are otherwise discoverable under Rule 26(b)(1)" and the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories" and is rarely discoverable. *Baker*, 209 F.3d at 1054. The party claiming work-product protection has the burden to establish the protection, and the party seeking ordinary work product has the burden to establish need and undue hardship. *Regents of the Univ. of Minn. v. United States*, No. 17-CV-3690 (DSD/ECW), 2021 WL 5042491, at *9 (D. Minn. Oct. 29, 2021) (citing *Baker*, 209 F.3d at 1054; *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)).

## III. Discussion

### A. Mr. Fullerton Must Produce Responsive, Nonprivileged Documents Dated Between January 1, 2014, and June 30, 2020, in His Possession

Defendants argue that responsive documents in Mr. Fullerton's possession are highly relevant and proportional to the needs of the case. The Court largely agrees. Mr. Fullerton's recollection about what he heard from Mr. Hooker about the alleged agreement among Defendants is at the heart of Plaintiffs' claims, and the subpoena requests in dispute are targeted toward his knowledge and recollection. As to proportionality, Mr. Fullerton's knowledge and recollection are important to the issues at stake and to a resolution of those issues. The amount in controversy is significant. Defendants have no other way to obtain the documents since they agreed not to seek them from Cattle Counsel. These factors therefore favor a finding that the subpoena requests are proportional. For the purpose of this analysis, the parties' resources are relatively equal, and this factor is therefore neutral. Mr. Fullerton has not shown that the documents would be unduly burdensome or expensive to produce. This factor thus also favors finding the requests proportional. The Court finds that responsive, nonprivileged documents in Mr. Fullerton's possession dated from January 1, 2014, and June 30, 2020, are relevant and proportional to the needs of the case and must be produced.

### B. Mr. Fullerton Need Not Produce Documents Dated After June 30, 2020

Defendants also seek documents from Mr. Fullerton dated between June 30 and December 28, 2020. Defendants believe that Mr. Fullerton was working with Cattle Counsel and Plaintiffs to prepare the TAC during this time.

The Court will not compel Mr. Fullerton to produce documents dated after June 30, 2020, for several reasons. First, the parties agreed on June 30, 2020, as the end date for unstructured-document discovery from parties, and Mr. Fullerton, a nonparty, should not bear a heavier burden of discovery than the parties. The parties agreed on the June 30, 2020, cutoff date in 2022, after the TAC was filed, and if Defendants had wanted a different end date for Mr. Fullerton's documents, they could have asked for it. The Court will not allow Defendants to do an end-run around the date for party discovery by requesting the discovery from a nonparty. Second, Defendants have not shown the relevance of documents dated between June 30 and December 28, 2020. Defendants speculate that the revisions across the three complaints are attributable to changes in Mr. Fullerton's story, but the revisions are not material changes to the narrative. They are stylistic or minor changes at best. Third, as discussed fully below, communications between Mr. Fullerton and Cattle Counsel, which comprise most, if not all, of the documents dated between June 30 and December 28, 2020, are protected work product. Accordingly, the Court denies Defendants' motion insofar as it seeks documents dated after June 30, 2020.

  **C.**  **Documents Withheld on the Basis of Plaintiffs' Work-Product Privilege**

Mr. Fullerton has identified seven documents as responsive to the subpoena that he withheld on the basis of Plaintiffs' work-product privilege. Defendants argue that communications between a lawyer and nonparties are not protected as work product. They cite *Lakehal-Ayat v. St. John Fisher College* for the "general rule that communications between counsel and third parties are not protected by the attorney work-product doctrine." *See* No. 18-CV-6916 CJS(MJR), 2022 WL 17687822, at *8 (W.D.N.Y. Dec. 15, 2022).

9

Defendants gloss over, however, the exceptions to the general rule such as communications between a lawyer and nonparty for the purpose of preparing affidavits to be used in litigation, where disclosure to a nonparty was consistent with maintaining secrecy, or where there is a common legal interest between the party and nonparty. *See id.*

"Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." *Baker*, 209 F.3d at 1054. "The work product doctrine also extends to intangible material, including 'communications with or investigations made by a party's representative.'" *Advanced Polymer Tech. Corp. v. Textile Mgmt. Assocs., Inc.*, No. 4:08-CV-0018-HLM, 2009 WL 10669413, at *3 (N.D. Ga. Aug. 10, 2009) (quoting *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, No. 3:05-CV-1232-J-12MCR, 2007 WL 842989, at *5 (M.D. Fla. Mar. 19, 2007)). "Documents or information prepared or gathered by a party's agent in anticipation of litigation, at the instruction of that party's counsel, can qualify for protection under the work product doctrine." *Id.* Documents exchanged "between Plaintiffs' counsel and witnesses . . . *obtained in anticipation of litigation* are protected under work product immunity because they were made in furtherance of anticipation of litigation." *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-00430-AWI-EPG, 2017 WL 3896327, at *3 (E.D. Cal. Sept. 6, 2017) (citation omitted) (emphasis in original). "[T]he stricter limits on disclosure of work product which results from oral communications with third parties is also necessary due to the likelihood that such documents will reveal the attorney's mental processes or litigation strategy." *In re Grand Jury Proc.*, 43 F.3d 966, 970 (5th Cir. 1994).

"Protection of witness interviews has been one of the focuses of the attorney work-product privilege since its inception in American law." *Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 31 (D. Me. 2010) (citing *Hickman v. Taylor*, 329 U.S. 495, 497, 510–11, (1947)). Email "interviews" or correspondence between a party's lawyer and potential witnesses are work product if they were created for litigation purposes. *Id.* at 33; *see also United States v. Dico, Inc.*, No. 4:10-CV-00503, 2017 WL 9049852, at *11 (S.D. Iowa Mar. 27, 2017) (concluding that email correspondence between a witness and a party's lawyer was "at least ordinary work product to which privilege might apply").

The privilege log produced by Mr. Fullerton confirms that the withheld documents, described as "confidential email chains," were created for litigation purposes. The subject lines refer to requests from Cattle Counsel for Mr. Fullerton to review excerpts from draft complaints, communications between Cattle Counsel and Mr. Fullerton about that review, questions from Cattle Counsel about Mr. Fullerton's recollection, and answers from Mr. Fullerton about his recollection. The withheld communications contained Cattle Counsel's thoughts and opinions about the litigation and what allegations were necessary to allege an agreement under Section 1 of the Sherman Act. These communications were at least ordinary work product. The draft complaints attached to the emails were also protected work product.

Assuming *arguendo* that the communications were merely ordinary work product, Defendants have not shown a substantial need for the documents or that Defendants cannot obtain the essential equivalent by other means. Defendants can depose Mr. Fullerton about his conversations with Mr. Hooker, his recollection of events, and whether his recollection

11

changed over time. *See Evans v. Krook*, No. 20-CV-2474 (MJD/ECW), 2022 WL 17176186, at *10 (D. Minn. Nov. 23, 2022) "Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party." *Baker*, 209 F.3d at 1054. Defendants cannot show substantial need for the work product because they can depose Mr. Fullerton about his recollection and knowledge of the alleged agreement between Defendants.

To the extent Defendants argue there is a substantial need for the documents to impeach Mr. Fullerton, they have not provided "more than speculative or conclusory statements that the [emails] will contain *invaluable* impeachment material." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, No. 06-cv-4112 (ADM/JSM), 2009 WL 161247, at *2 (D. Minn. Jan. 22, 2009) (quoting *Duck v. Warren*, 160 F.R.D. 80, 83 (E.D. Va. 1995)) (emphasis in *Fair Isaac*). "[T]he impeachment value must be *substantial* because every prior statement has some impeachment value and otherwise the exception would swallow the rule." *Id.* (quoting *Duck*, 160 F.R.D. at 83) (emphasis in *Fair Isaac*). Defendants have not shown that the communications are likely to contain *invaluable* impeachment material for at least three reasons. First, the revisions across the complaints are minor and stylistic, not significant and substantial. Second, the complaints are not sworn statements from Mr. Fullerton, such as testimony or an affidavit; the complaints were drafted by Cattle Counsel and contain Plaintiffs' allegations. Third, Defendants will have the opportunity to ask Mr. Fullerton about his recollection, as reflected in the various iterations of Plaintiffs' complaints, at a deposition. The Court need not review any documents *in camera* to deny this aspect of Defendants' motion.

### D.     Documents in Mr. Anderson's Files

Mr. Anderson is Mr. Fullerton's attorney. Defendants seek to compel Mr. Fullerton to obtain and produce communications between Mr. Anderson and Plaintiffs, or between Mr. Anderson and Cattle Counsel, that relate to allegations about Mr. Fullerton and that are in Mr. Anderson's possession. Defendants argue that Mr. Anderson is Mr. Fullerton's agent, and thus, documents in Mr. Anderson's possession are essentially also in Mr. Fullerton's possession, custody, or control.

The Court denies the motion as to responsive documents in Mr. Anderson's files. The Court does not agree that a client "indisputably" has possession, custody, or control over all "materials his own attorney possesses." (*See* Defs.' Mem. at 16.) Defendants rely on *MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-cv-971 (PJS/TNL), 2014 WL 12600147, at *8–9 (D. Minn. Nov. 10, 2014), but the nature of the documents at issue in *MasterMine* distinguish it from this case. *MasterMine* was a patent infringement case in which MasterMine sought to compel the production of documents from Microsoft concerning "Microsoft's pre-suit knowledge of MasterMine and its patents." *Id.* at *6. The documents were Microsoft's, and Microsoft had a legal right to them. Here, however, Defendants are seeking communications between Mr. Anderson and Plaintiffs, or between Mr. Anderson and Plaintiffs' counsel, *not* Mr. Fullerton's documents.[3]

---

[3] If Mr. Anderson has any nonprivileged, responsive documents of Mr. Fullerton's that reflect Mr. Fullerton's recollection, then the Court would agree that Mr. Fullerton has control over those documents and should produce them. The Court did not understand that to be the case, however, as Defendants said this category of documents consisted of communications between Mr. Anderson and Plaintiffs, and communications between Mr. Anderson and Plaintiffs' counsel.

The Court also declines to compel documents in Mr. Anderson's possession based on Defendants' previous agreement not to pursue Mr. Anderson's communications with Cattle Counsel. All parties agreed that they would not be required to search the files of their own in-house or outside counsel. Requiring Mr. Fullerton to do so would create a more burdensome obligation for him than the parties have. Such an order would also allow Defendants to do an end-run around their agreement and obtain the very communications they negotiated not to seek or produce: Cattle Counsel's communications with Mr. Fullerton and Mr. Anderson.

### E.  At-Issue Waiver

Defendants argue that Plaintiffs have placed their communications with Mr. Fullerton at issue by relying on those communications for a statute-of-limitations defense. Plaintiffs allege that they first learned of the alleged conspiracy when Mr. Fullerton came forward in 2019 and thus they could not have brought their claims any sooner. (TAC ¶ 444.) Defendants want to "examin[e] the actual conversations" in which Mr. Fullerton conveyed his recollection to Plaintiffs. (Defs.' Mem. at 28.)

"A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue." *Baker*, 209 F.3d at 1055. The same is true for the work-product doctrine. *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002). To determine whether work-product protection was impliedly waived, the Court considers whether Plaintiffs intended to waive it and "whether the interests fairness and consistency mandate a finding of waiver." *Id.*

14

To begin, how Mr. Fullerton conveyed his recollection to Plaintiffs matters. If Mr. Fullerton conveyed his recollection directly to Plaintiffs, the Court finds that those communications would not be covered by the attorney-client privilege or the work-product doctrine and should be produced as ordered in Part III.A. If Mr. Fullerton conveyed his recollection to Cattle Counsel, however, the Court finds that Plaintiffs have placed at issue those communications relevant *to the timing of when Mr. Fullerton shared the details of Defendants' alleged agreement*. In other words, if those communications mark when Plaintiffs first learned of the alleged agreement, then Plaintiffs have intentionally placed at issue the timing part of those communications.

Plaintiffs do not dispute the relevance of timing: "In the statute of limitations context, **what** Fullerton told Cattle Counsel is less important than **when**." (Pls.' Mem. Opp'n at 32, Dkt. No. 460) (emphasis in original). The Court agrees and finds that Defendants are entitled to discover communications between Mr. Fullerton and Cattle Counsel, the subject matter of which are when Plaintiffs knew or could have known about Defendants' alleged agreement. Plaintiffs have intentionally placed the subject matter of those communications at issue, and fairness and consistency favor a finding of implied waiver.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Compel Discovery from Witness 1 (Jason Fullerton) (Dkt. No. 403) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully above.

2. This Order shall be unsealed in its entirety in 30 days, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information, and shall file a joint letter and proposed redacted order within 14 days, identifying with specificity the redactions they believe are required and the basis for those redactions.

Date: March 5, 2024   *s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge