UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE CATTLE AND BEEF ANTITRUST LITIGATION**<br><br>*This Document Relates to:*<br>*Sysco Corp v. Cargill Inc., et al.*, Case No. 22-cv-01750 (D. Minn.) | Case No. 22-md-03031<br><br>The Honorable John R. Tunheim<br><br>The Honorable John F. Docherty |

### *BEEF* DEFENDANTS' JOINT RESPONSE TO CARINA AND SYSCO'S OBJECTIONS TO ORDER DENYING SUBSTITUTION

When a plaintiff transfers its interest in a suit to a third party while the case is ongoing—as Sysco sought to do here—the decision whether to grant substitution is vested in the sound discretion of the trial court. The plain language of Federal Rule 25(c) mandates that conclusion, as do the applicable precedents. *See* Fed. R. Civ. P. 25(c); *Fischer Bros. Aviation v. NWA, Inc.*, 117 F.R.D. 144, 145-46 (D. Minn. 1987); *Froning's, Inc. v. Johnston Feed Serv., Inc.*, 568 F.2d 108, 110 n.4 (8th Cir. 1978). Here, Magistrate Judge Docherty properly exercised the Court's discretion to deny substitution, and his decision is neither clearly erroneous nor contrary to law. Fed. R. Civ. P. 72(a). This Court should overrule movants' objections and affirm.[1]

---

[1] Despite Carina's request for a hearing, *Dkt. 566* at 1, this appeal does not present any basis to depart from the Court's ordinary practice of not holding oral argument in non-dispositive appeals from the Magistrate Judge. Should the Court find oral argument helpful, however, Defendants stand ready to participate.

1

## BACKGROUND

The *Beef* Defendants agree with the *Pork* Defendants' factual recitation and will not repeat it at length here. Suffice it to say that movants' own pleadings concede that Burford and Boies Schiller are the driving force behind this litigation. Burford approached Sysco with a funding offer three years before Sysco filed suit in *Beef*. *Dkt.* 283 at 1. Burford and Sysco then reworked that funding arrangement to give Burford a purported consent right over Sysco's settlements. *Dkt.* 565 at 2-3; *Dkt.* 566 at 3. When Sysco "negotiated what it considers to be reasonable (indeed, favorable) settlements with certain defendants" (*Dkt.* 166 at 3), including with JBS in *Pork* and *Beef* (*Dkt.* 565 at 3), Burford blocked their execution in alleged complicity with Sysco's then-counsel Boies. *Dkt.* 166, *Dkt.* 565 at 3. Sysco responded by firing Boies under allegations of disloyalty. Protracted satellite litigation between Burford and Sysco ensued. *Dkt.* 166, *Dkt.* 565 at 3-4. Ultimately, Sysco agreed to assign its claims to Carina, a newly-created Burford subsidiary represented by Boies. *Dkt.* 565 at 4. Carina and Sysco moved for substitution, which Judge Docherty denied. *Dkt.* 545 ("Substitution Decision").

## STANDARD OF REVIEW

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential." *Shukh v. Seagate Technology, LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (Tunheim, J.) (citing *Roble v. Celestica Corp.*, 627 F.Supp.2d 1008, 1014 (D. Minn. 2007)). This Court should reverse such an order "only if it is clearly erroneous or contrary to law." *Id*. (citing 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)).

# ARGUMENT

I. **The Factual Record Supports the Substitution Decision.**

Nothing in Rule 25(c) required Judge Docherty to consider the proposed substitution in a vacuum. Thus, movants' objections to his consideration of the events leading up to their motion lack merit. As movants themselves acknowledge, the substitution motion was a direct result of their attempt to resolve their disputes over whether Sysco or Burford should control this litigation. *Dkt.* 565 at 2-3; *Dkt.* 566 at 1. Those disputes are therefore relevant. *See Fischer Bros*, 117 F.R.D. at 146-47 (considering history of assignment in deciding motion to substitute). Judge Docherty did not err—much less clearly err—by considering the events leading up to the motion.

Movants also raise trivial objections to Judge Docherty's recitation of the facts. There is an element of irony to these objections, as movants forced Defendants and the Court to stitch together the pertinent facts from public sources, and objected to discovery about their assignment and their prior funding arrangements. In any event, movants do not raise any factual issues that are material to the Substitution Decision. For instance, they argue that Burford acquired the power to impede Sysco from settling this litigation as part of a revised funding agreement, rather than the original one. But what mattered to the Substitution Decision is that Burford asserted such power to block the execution of multiple settlements, and that is undisputed. Carina also argues that Judge Docherty "misunderstood" Boies's role because he thought that Boies represented Burford along with Sysco, when Boies represented Amory Investments. *Dkt.* 566 at 5 n.5. Amory Investments, however (like Carina), is "a Burford affiliate." *Id.* And the factual history

3

recounted by the *Pork* Defendants shows that Boies and Burford acted in lockstep throughout their dealings with Sysco.

Carina's remaining objections to Judge Docherty's recitation of facts are simply inaccurate. Carina asserts that Sysco never accused Burford of "obstruct[ing] Sysco's ability to retain new counsel" (*Dkt.* 566 at 4), but Sysco's filings in this Court did just that, *see Dkt.* 166 at 2 ("Burford has refused to consent to a proposed fee arrangement with new counsel. Sysco does not believe that Burford has a basis for doing so[.]"). Carina maintains that Burford's efforts to block Sysco from executing settlements "did not create an 'enormous litigation burden,'" but admits that those efforts led to arbitration, proceedings in New York state and federal court, a vacatur action in the Northern District of Illinois, and two stay motions before this Court. *Dkt.* 566 at 4. Besides, but for the dispute between Burford and Sysco, several of Sysco's claims in *Pork* and *Beef* (as well as in other protein litigations) would by now have been dismissed with prejudice as a result of Sysco's "fully-negotiated" settlements. *Dkt.* 166 at 2. The Substitution Decision's factual recitation is thus correct in every material respect.[2]

## II.    Movants Rely on Inapplicable Case Law to Answer the Wrong Question.

Setting aside their attempt to disavow their history of disputes, movants argue that the assignability of federal antitrust claims militates in favor of substitution. *See, e.g.*, *Dkt.*

---

[2] JBS views its settlements with Sysco as valid and binding and reserves all rights, including the right to seek their enforcement by this Court. Such a request has already been made in the *Broiler Chicken Antitrust Litigation* by another defendant who reached a settlement with Sysco only to have its execution blocked by Burford. *See Dkt.* 565 at 10 (citing briefing on Pilgrim Pride Corp.'s motion to enforce settlement).

4

566 at 6; *Dkt.* 565 at 13. This argument does not address the question that Judge Docherty actually resolved, nor does it provide a basis for reversal.

*First*, Judge Docherty declined to rule on the validity of the assignment and instead relied on the Court's discretion to deny substitution under Rule 25(c). *Op*. at 15. That rule presupposes that a party's interest in the case has been transferred. Fed. R. Civ. P. 25(c) ("*If* an interest *is transferred*…"). Even so, "substitution of parties under Rule 25(c) falls within the sound discretion of the trial court," *Fischer Bros*, 117 F.R.D. at 145-46, which "may refuse to substitute parties in an action." *Froning's, Inc.*, 568 F.2d at 110 n.4. Thus, even a valid assignment does not render substitution mandatory. *See FDIC v. SLE*, 722 F.3d 264, 268 (5th Cir. 2013) ("Simply put, to read a substitution requirement into Rules 25(c) and (a)(3) misconstrues their plain terms."); Wright & Miller, Fed. Practice and Procedure § 1958 ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest is transferred.")

Because Rule 25(c) allows substitution to be denied even when an assignment is valid, Judge Docherty did not have to address the validity of the underlying assignment to deny substitution. Thus, the fact that that the Substitution Decision does not recite by name movants' Eighth Circuit cases on assignability was not error, much less the "clear legal error—reversible on interlocutory appeal" that Carina threatens. *Dkt.* 566 at 7. Indeed, Judge Docherty acknowledged that antitrust claims are "freely assignable," and distinguished other assignments in this case from the unprecedented circumstances presented here. *Op.* at 18 n.9, 28. Equally baseless is Carina's contention that the Court cannot deny substitution because only the "real party in interest" can continue to litigate

5

this case. Rule 25(c) "expressly permits parties to continue in an action, *even if they do not remain the real party in interest.*" *ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (emphasis added).[3]

*Second*, to the extent the validity of the underlying assignment is a relevant consideration, the issue is not whether antitrust claims are generally assignable, but whether *this* assignment contract is enforceable even though it resulted from Burford's champerty. *See Martin v. Morgan*, 665 F.2d 598, 604, 605 n.2 (5th Cir. 1982). As to questions of champerty, "the federal courts should look to state law." *Id.*; *see also Sampliner v. Motion Picture Patents Co.*, 254 U.S. 233 (1920). That makes sense: courts normally consider the validity of assignment contracts under state law. *See, e.g.*, *Stuart C. Irby Co., Inc. v. Tipton*, 796 F.3d 918, 923-25 (8th Cir. 2015). Indeed, even movants' own assignment contract identifies state law, not federal law, as the governing source of "all matters…relating in any way whatsoever to this Agreement." *Dkt.* 277 at 5. While Judge Docherty did not reach state law issues because he decided the motion based on the discretion granted under Rule 25(c), *Op.* at 14, movants cannot have it both ways by conflating the federal rule of decision for substitution motions with state law governing the enforceability of champertous contracts.

Unsurprisingly, the caselaw cited by movants says nothing about the enforceability of a mid-case assignment to a litigation funder—much less to one who blocked the original

---

[3] Carina cites *Kuelbs v. Hill* for a contrary rule, but that case involves substitution "when a party becomes incompetent" under Rule 25(b). 615 F.3d 1037, 1042 (8th Cir. 2010). *Kuelbs* distinguishes that situation from Rule 25(c), which allows the action to continue "by or against the original party" in case of a transfer of interest. *Id.*

party in interest from executing settlements. At least one precedent granting substitution based on an assignment distinguished the facts before it from those that are presented here. *Fischer Bros*, 117 F.R.D. at 145-46 (approving assignment where the new party's involvement was ***not*** "an investment gambit by a disinterested party trying to collect a windfall"). As Judge Docherty recognized, movants could not point to a single case granting substitution under the circumstances presented here. *Op*. at 25-28.

### III.   Judge Docherty Properly Considered Public Policy In Exercising Discretion To Deny Substitution.

Movants also object to the Substitution Decision's consideration of public policy. While Carina now asserts that public policy is "an improper consideration when exercising discretion under Rule 25," *Dkt*. 566 at 2, it took the opposite approach before Judge Docherty, *see Hr'g Tr.* at 26:16-17, Aug. 21, 2023 (counsel for Carina "laying out the public policy in favor of free assignment of federal antitrust claims"); *Pork*, *Dkt*. 1991 at 21 (same). Accordingly, Carina has waived any objection to the consideration of public policy. *See United States v. Sukhtipyaroge*, 1 F.4th 603, 606 (8th Cir. 2021) (argument waived when inconsistent with what the party argued below). And Sysco continues to rely on public policy. *See Dkt*. 565 at 9 ("the policy concerns undergirding the magistrate judge's decision actually favor substitution"). Thus, Judge Docherty's consideration of public policy was appropriate, and the only remaining question is whether his analysis warrants reversal. As explained below, it does not.

### A. Judge Docherty Correctly Described the Relevant Public Policies.

The parties largely agree on the public policies addressed in the Substitution Decision. No one disputes that public policy favors both settlements and vigorous antitrust enforcement. While the parties did not brief the policies animating antitrust standing doctrine before Judge Docherty, that doctrine indisputably entrusts private antitrust enforcement decisions to plaintiffs who have a sufficient factual and causal nexus to the claims. *See Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 520 (8th Cir. 1992) (discussing antitrust standing factors).

As for the public policy against champerty, movants greatly exaggerate reports of its demise. *See, e.g.*, *Boling v. Prospect Funding LLC*, 771 F. App'x 562, 577-85 (6th Cir. 2019) (litigation funding contract void for champerty); *Dougherty v. Carlisle Transp. Prod's, Inc.*, 610 F. App'x 91, 93-94 (3d. Cir. 2015) (invalidating champertous assignment); *Accrued Fin. Serv's, Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 297-300 (4th Cir. 2002) (invalidating assignment contracts for violating "strong public policy against the stirring up [of] litigation…for the benefit of the promoter rather than for the benefit of the litigant"). Far from becoming obsolete, champerty "has become such a background principle of law that it is invoked under its own name infrequently." Paul Bond, "Making Champerty Work: An Invitation to State Action," 150 U. Pa. L. Rev. 1297, 1302 (2002).

Even where champerty is no longer recognized as a defense, courts have made clear that "litigation financiers" may not "attempt to control the course of the underlying litigation." *Maslowski v. Prospect Funding Partners, LLC*, 944 N.W.2d 235, 241 (Minn. 2020). Champerty merely prohibits disinterested parties from investing in lawsuits, and a

8

funder who asserts substantive authority over the litigation goes much further. *See id.* Movants do not cite a single case approving such control. And as Judge Docherty observed, Burford's own ethics expert has argued that a litigation funder's attempts to interfere with the parties' settlement authority "would be seen as against public policy in every state." *Op.* at 16. Perhaps for this reason, Burford publicly represents—in contrast to its conduct here—that it "is a passive financier and does not control the legal assets in which [it] invest[s]." *Introduction to Legal Finance*, Burford, www.burfordcapital.com/ introduction-to-legal-finance/.

> B. *Judge Docherty Did Not Err In Finding That Public Policy Disfavors Substitution Here.*

Because the Substitution Decision correctly identified each of the relevant public policies, it was not contrary to law. *Shukh*, 295 F.R.D. at 235 ("A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure") (quoting *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008)). This Court can affirm on that ground, and need not re-weigh the public policy considerations. *Id.* If this Court were to re-examine the public policy considerations, however, it would find ample support for Judge Docherty's decision.

*First*, by Sysco's own admission, Burford and Boies blocked the execution of "months-old, fully-negotiated settlements with multiple defendants in this case" in an effort to force the parties "to continue to litigate before this Court against their will." *Dkt.* 166 at 2. As Judge Docherty observed, Burford and Boies acted in the hope that blocking the settlements would yield a greater return on their investment and halt broader momentum

9

toward settlements in the MDL. *Op.* at 17. To reward that interference by granting Burford and Boies full control through a substitution of Carina for Sysco is inimical to any public policy favoring settlement.

Movants emphasize that their assignment is itself the product of a settlement. But public policy favors settlements because they "obviate the need for expensive and time-consuming litigation." *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1163 (5th Cir. 1985). A favored settlement "avoids the expense of litigation, promotes certainty for the parties, and relieves a strained judicial system." *Gustin v. FDIC*, 835 F. Supp. 503, 507 (W.D. Mo. 1993). Movants' settlement does the opposite: it seeks to permit a litigation funder to *continue* litigation the original plaintiff agreed to resolve. Thus, Judge Docherty correctly determined that the policy favoring settlement does not weigh in favor of granting substitution. *Op.* at 20-21. And, as Defendants pointed out below, movants' agreement injects additional uncertainty into this case because it remains unclear whether Carina is willing and able to assume *all* of Sysco's obligations. *See Dkt.* 293 at 15-17.

*Second*, the proposed substitution runs contrary to the public policy considerations that animate state champerty laws, described *supra* at [8-9]. "It is difficult to conceive of any stipulation more against public policy than a contract term requiring the litigation financier's permission to settle the underlying litigation." *Maslowski*, 944 N.W.2d. at 241. Granting substitution here would allow funders like Burford to use mid-litigation assignments to accomplish the very control that champerty law forbids, rendering

10

meaningless the principle that litigation funders may not "control the course of the underlying litigation." *Id.*[4]

*Third*, Judge Docherty appropriately recognized that public policy favors vigorous antitrust enforcement. The issue here, however, is not whether someone may press Sysco's antitrust claims, but *who* should do so: Sysco or its litigation funder. The policy in favor of federal antitrust enforcement does not resolve that question. And the fact that Sysco negotiated what it viewed as fair and reasonable settlements does not make Carina the better enforcer. To the contrary, a settlement is "not ordinarily contrary to public policy simply because it involves antitrust claims." *Richard's Lumber & Supply Co. v. U.S. Gypsum Co.*, 545 F.2d 18, 20 (7th Cir. 1976); *accord In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1088 (11th Cir. 2023).

*Fourth*, because antitrust litigation is particularly burdensome, the policy favoring antitrust enforcement is not without limits. As the Supreme Court put it, it is "reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages." *Blue Shield v. McCready*, 457 U.S. 465, 476-77 (1982). Antitrust standing principles thus protect the "efficient use of the resources of the courts" by permitting "only those parties who can

---

[4] Sysco now asserts that it would be champertous for *it* to remain in control of the litigation now that Carina owns its claims. *See Dkt.* 565 at 14. This argument is not well taken. Champerty is the practice of funding a suit in which you have no interest in return for "a share of the fruits of the litigation as a reward for…[the] interference." *Roberts v. Cooper*, 61 U.S. 467 (1857). Sysco's present conundrum illustrates some of the reasons why that practice has for so long been rejected. But it is Burford's champerty, and not the Substitution Order, that has placed Sysco in that position.

11

most efficiently vindicate the purposes of the antitrust laws" to bring suit. *Kochert v. Greater Lafayette Health Serv.'s, Inc.*, 463 F.3d 710, 715-16 (7th Cir. 2016).

For this reason, Judge Docherty did not err in considering the public policy animating the antitrust standing doctrine along with other policy considerations. As the party with an alleged antitrust injury, Sysco was in a position to vindicate the antitrust laws, and it reached settlements to do just that. Granting substitution to Burford's special purpose entity here would encourage litigation funders throughout the country to use mid-litigation assignments and substitutions as an end-run around state champerty laws and federal antitrust standing requirements, at serious risk to "the efficient use of the resources of the courts." *Kochert*, 463 F.3d at 716.

Finally, movants suggest that the Substitution Decision "limit[s] the ability of plaintiffs who suffered cognizable harm to assign their claims to third parties." *Dkt.* 566 at 10. This argument attacks a straw man. Judge Docherty recognized that plaintiffs with antitrust standing may assign their claims to third parties, including to those who otherwise lack antitrust standing. *Op.* at 24. But that is not what happened here. Instead, Sysco—the purportedly injured party—filed suit on its own behalf and reached settlements. Burford blocked the execution of those settlements and sought to wrest all control of the case from Sysco. Burford now seeks to substitute Carina as the plaintiff not because of any public policy in favor of antitrust enforcement, but for the naked pursuit of litigation as a means of financial speculation. None of movants' cases on the benefits of antitrust assignments comes close to addressing this situation, and Judge Docherty did not err, clearly or otherwise, in exercising the Court's discretion to deny substitution.

## CONCLUSION

Movants have identified nothing in Judge Docherty's analysis that warrants reversal. Defendants respectfully request that the Court overrule movants' objections and affirm the Substitution Decision.

Date: March 8, 2024                                   Respectfully submitted,

                <u>s/ Kosta S. Stojilkovic</u>
                Beth A. Wilkinson
                Kosta S. Stojilkovic
                Sarah Neuman
                **WILKINSON STEKLOFF LLP**
                2001 M Street, NW, 10th Floor
                Washington, DC 20036
                (202) 847-4010
                bwilkinson@wilkinsonstekloff.com
                kstojilkovic@wilkinsonstekloff.com
                sneuman@wilkinsonstekloff.com

                Moira Penza
                **WILKINSON STEKLOFF LLP**
                130 W 42nd Street, Floor 24
                New York, NY 10036
                (212) 294-8914
                mpenza@wilkinsonstekloff.com

                X. Kevin Zhao, Reg. No. 0391302
                Holley C. M. Horrell, Reg. No. 0399636
                Davida S. McGhee Williams, Reg. No.
                  0400175
                Emily M. McAdam, Reg. No. 0400898
                **GREENE ESPEL PLLP**
                222 S. Ninth Street, Suite 2200
                Minneapolis, MN 55402
                (612) 373-0830
                kzhao@greeneespel.com
                hhorrell@greeneespel.com
                dwilliams@greeneespel.com
                emcadam@greeneespel.com

                Jacob D. Bylund (*pro hac vice*)
                Robert C. Gallup
                **FAEGRE DRINKER BIDDLE & REATH LLP**
                801 Grand Avenue, 33rd Floor
                Des Moines, IA 50309
                (515) 248-9000
                jacob.bylund@faegredrinker.com
                robert.gallup@faegredrinker.com

Bennett Rawicki
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, TX 75230
(469) 640-6842
brawicki@hilgersgraben.com

Britt M. Miller (*pro hac vice*)
Matthew Provance (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

William H. Stallings (*pro hac vice*)
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006-1101
(202) 263-3338
wstallings@mayerbrown.com

*Counsel for Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation*


s/ Benjamin L. Ellison
Benjamin L. Ellison, Reg. No. 0392777
Chelsea A. Bollman, Reg. No. 0401297
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Tel.: (612) 217-8862
bellison@jonesday.com
cbollman@jonesday.com

Julia E. McEvoy (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel.: (202) 879-3867
jmcevoy@jonesday.com

Michelle Fischer (*pro hac vice*)
**JONES DAY**

15

901 Lakeside Avenue
North Point
Cleveland, OH 44114
Tel.: 216-586-3939
mfischer@jonesday.com

Tiffany Lipscomb-Jackson (*pro hac vice*)
**JONES DAY**
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Tel.: 614-281-3939
tdlipscombjackson@jonesday.com

Eddie Hasdoo (*pro hac vice*)
**JONES DAY**
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Tel.: 312-269-4214
ehasdoo@jonesday.com

*Counsel for Defendant National Beef Packing Company, LLC*


s/ Sami H. Rashid
Michael Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Tel.: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com

Donald G. Heeman, Reg. No. 0286023
Jessica J. Nelson, Reg. No. 0347358
Randi J. Winter, Reg. No. 0391354
**SPENCER FANE**
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Tel.: (612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Lewis A. Remele, Jr., Reg. No. 90724
Christopher R. Morris, Reg. No. 230613
**BASSFORD REMELE, P.A.**
100 South 5th Street, Suite 1500
Minneapolis, MN 55402
Tel.: (612) 333-3000
lremele@bassford.com
cmorris@bassford.com

William F. Hargens (*pro hac vice*)
Patrick E. Brookhouser, Jr. (*pro hac vice*)
**MCGRATH NORTH MULLIN & KRATZ, PC LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Tel: (402) 341-3070
whargens@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com

*Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc., Swift Beef Company, and JBS S.A.*


s/ Susan E. Foster
Susan E. Foster (*pro hac vice*)
Ulrike B. Connelly (*pro hac vice*)
Tiffany Lee (*pro hac vice*)
Hannah Parman (*pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
tiffanylee@perkinscoie.com
hparman@perkinscoie.com

Jon B. Jacobs (*pro hac vice*)
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, DC 20005
Tel: (202) 654-1758
jbjacobs@perkinscoie.com

Barry G. Stratford (*pro hac vice*)
**PERKINS COIE LLP**
2901 N. Central Avenue
Suite 2000
Phoenix, Arizona 85012-2788
Tel: (602) 351-8000
bstratford@perkinscoie.com

Caroline Gizem Tunca (*pro hac vice*)
**PERKINS COIE LLP**
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606
Tel: (312) 324-8400
ctunca@perkinscoie.com

David P. Graham, Reg. No. 0185462
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Tel: (612) 486-1521
dgraham@dykema.com

***Counsel for Defendants Tyson Foods, Inc., and Tyson Fresh Meats, Inc.***