**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE: CATTLE AND BEEF ANTITRUST LITIGATION

This Document Relates To:

THE DIRECT PURCHASER PLAINTIFFS

MDL No. 22-3031 (JRT/JFD)

**ORDER REGARDING DIRECT PURCHASER PLAINTIFFS' MOTION FOR INTERIM PAYMENT OF ATTORNEYS' FEES AND SERVICE AWARDS**

---

The above matter came before the Court on the Direct Purchaser Plaintiffs' ("DPPs") motion for interim payment of attorneys' fees and service awards relating to the DPPs' settlement with Defendants JBS S.A. and JBS USA Food Company (collectively, "JBS").  (Mot., Jan. 30, 2024, Docket No. 538.)

The Court has received the memorandum submitted by the DPPs in support of their unopposed motion and has reviewed the various declarations and submissions relating to that motion.  Based on the record and proceedings before the Court, **IT IS HEREBY ORDERED** that:

1. The DPPs' motion for interim payment of attorneys' fees and service awards [Docket No. 538] is **GRANTED**.

2. The Court has considered the relevant case law and authority and finds that interim payment of attorneys' fees to counsel for the DPPs is appropriate under Fed. R. Civ. P. 23(h).  Notice of the request for fees was provided to the potential class members

via direct and published notice and a settlement website that included relevant documents and pleadings.

3. The Court has considered the reaction of the class members to this fee request.

4. The Court will award interim fees to counsel for the DPPs using the percentage-of-the-benefit approach. "A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.") (citations omitted). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel*, 364 F. Supp. 2d at 991 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday v. Symantec Corp.*, No. 11-180, 2016 WL 1637039, at *8–9 (D. Minn. Apr. 5, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

5. Counsel for the DPPs requests an interim fee award of one-third of the settlement fund, including interest. The requested fee, which totals $17,500,000, plus interest, is within the range allowed by courts in this District.

6. When using the percentage-of-the-benefit approach, the Court considers the following factors: "(1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." *Khoday*, 2016 WL 1637039, at *9 (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010)); *see also In re Xcel*, 364 F. Supp. 2d at 993. When applied here, these factors indicate that the fee requested is fair and reasonable.

7. **Counsel Secured Substantial Benefits for DPPS.** This $52,500,000 settlement is coupled with meaningful cooperation from JBS that will assist in the prosecution of the claims against the non-settling Defendants and provides DPPs with significant value. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Fee awards in antitrust actions also provide for a public benefit. There is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *see also In re Cardizem CD*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("Society also benefits from the prosecution and settlement of private antitrust litigation."). Society benefits when those

who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2$^{d}$ Cir. 2005) ("[I]t is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws.").

8. **Counsel Was Exposed to Risk.**  Antitrust class actions are inherently risky, due in part to their unpredictable nature, as well as the tremendous time and expense required to obtain a successful resolution.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 721680, at *17 (N.D. Cal. Jan. 28, 2016); *see In re Cardizem CD*, 218 F.R.D. at 530 (emphasizing a strong public interest in encouraging settlement of complex, class-action lawsuits because they are unpredictable and settlement preserves judicial resources).  In the face of these risks, Class Counsel represented DPPs and obtained a substantial recovery on behalf of the Class thus far.

9. **The Difficulty and Novelty of the Legal and Factual Issues.**  Antitrust class actions are inherently complex.  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome." (citations and internal quotation marks omitted)).  This litigation presents challenging legal and factual issues, and this factor also supports the fee requested.

10. **Skill and Expertise of Counsel.**  Both Class Counsel for the DPPs and counsel for JBS are experienced and skilled antitrust counsel.  This factor also supports the requested fee.  *See, e.g., In re Schering-Plough Corp. Enhance Secs. Litig.*, No. 08- 2177, 2013 WL 5505744, at *25 (D.N.J. Oct. 1, 2013); *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, No. 1871, 2012 WL 6923367, at *5 (E.D. Pa. Oct. 19, 2012) (considering "the performance and quality of opposing counsel" as a factor in awarding attorneys' fees); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. 2012) (concluding the skill and efficiency of the attorneys involved favored approval of attorneys' fees in part because the settling defendants were represented by experienced attorneys from prominent law firms); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 357–58 (S.D.N.Y. 2005) (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country.").

11. **Time and Labor Involved.**  Class Counsel working on behalf of the DPPs invested thousands of hours to achieve this settlement.  The litigation has already lasted more than three years and has and will require significant time and labor.

12. **The Reaction of the Class.**  No class member has objected to the request for awards of fees or expenses.

13. **Comparison with Percentages Awarded in Similar Cases.**  A fee award of one-third of the settlement fund is a generally accepted percentage in the Eighth Circuit. Indeed, this Court and others in this District routinely approve attorneys' fees in class

actions of at least one-third of the common fund created for the settlement class.  *See Khoday*, 2016 WL 1637039, at *11; *Yarrington*, 697 F. Supp. 2d at 1064 (noting that awards between 25 and 36 percent of a common fund are common); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases routinely approving fee awards of 33 percent); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35 1/2 percent of the settlement fund).

14. The Court has carefully analyzed the settlement and the factors considered by courts within the Eighth Circuit and Rule 32 and concludes that the factors are met and justify an interim fee award to counsel for the DPPs.  The $52,500,000 settlement provides substantial cash and non-monetary benefits including cooperation from JBS.  Counsel has worked on a contingent basis and the results of this litigation have never been certain. The legal and factual issues are complicated, and the parties have zealously asserted their claims and defenses.  Given the length and tenacity of this litigation, the Court is satisfied that the settlement was the result of arms' length negotiations between informed and experienced counsel.  The requested fee of $17,500,000, plus interest, which totals one-third of the total settlement, is within the range allowed by courts in this District.

15. Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund.  *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).  A cross-check of the lodestar incurred by Class Counsel for the DPPs indicates that the fee requested constitutes fair and reasonable compensation for

the risks assumed, the work done, and the benefits achieved for the members of the settlement class. The lodestar currently totals $13,555,094.50 when using Class Counsel's historic rates.

16. Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar generated on these cases from the inception of the litigation to December 31, 2022, the request fee results in a lodestar multiplier of 1.38, which is well within the accepted ranges awarded in similar contingent fee cases. This multiplier is especially reasonable considering the complexity of this litigation, the result achieved for the class members, the risks assumed by counsel for the DPPs and the work remaining to be done on the case and for which fees may or may not be available. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (multipliers typically range between two and five).

17. The Court **GRANTS** an interim award of attorneys' fees to Class Counsel for the DPPs in the amount of $17,500,000, plus interest. These attorneys' fees shall be paid from the settlement fund.

18. Interim Co-Lead Counsel for the DPPs are authorized to allocate that attorneys' fees awarded herein among Class Counsel who performed work on behalf of the DPPs in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

19. The Court also **GRANTS** the requested $15,000 in service awards to each of the three named DPP Class Representatives, totaling $45,000. Courts in this circuit regularly

CASE 0:22-md-03031-JRT-JFD   Doc. 705   Filed 06/11/24   Page 8 of 9

see fit to compensate class representatives for their service to the class. *See Khoday*, 2016 WL 1637039, at *12; *Yarrington*, 697 F. Supp. 2d at 1068; *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009).

20. The representative plaintiffs took action to benefit the interest of the DPPs, devoted their own time and effort, and have assisted Class Counsel in achieving the settlement with JBS. *Zillhaver*, 646 F. Supp. 2d at 1085 (quoting *Koenig v. U.S. Bank*, 291 F.3d 1035, 1038 (8th Cir. 2002)).  They have exposed themselves to a substantial business risk by filing this lawsuit against the producers of beef who are or were key suppliers for their businesses.  Throughout this litigation, the Class Representatives advised Class Counsel and approved pleadings, reviewed and responded to written discovery, searched for, gathered, preserved, and produced documents, are preparing for and will sit for depositions, have kept up to date on the progress of the case, and performed other similar activities.  Further, the named DPPs have or had a direct business relationship with the Defendants and have exposed themselves to a substantial business risk by filing this lawsuit against the producers of beef who are key suppliers for their businesses.  The requested $15,000 for each of the three named DPPs is reasonable and deserved.

21.  Interim Co-Lead Counsel for the DPPs are authorized to pay from the settlement fund $15,000 for each of the three named DPPs ($45,000 total).


DATED:  June 11, 2024
at Minneapolis, Minnesota.

_John R. Tunheim_

JOHN R. TUNHEIM
United States District Judge