**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| *IN RE CATTLE AND BEEF ANTITRUST LITIGATION*<br><br>This Document Relates To: ALL CASES | Case No. 22-md-03031 (JRT/JFD) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL THE DEPOSITIONS OF WESLEY BATISTA FILHO
<u>AND ANDRE NOGUEIRA</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

I.      Introduction ....................................................................................................... 1

II.     Background ......................................................................................................... 3

III.    Legal Standard ................................................................................................... 6

IV.     Argument ........................................................................................................... 8

        A.      Messrs. Batista Filho and Nogueira Will Provide Unique,
                Highly Relevant Testimony Unavailable from Other Witnesses ................. 8

                1.      Mr. Batista Filho and Mr. Nogueira Were Involved In,
                        and had Decision-Making Authority Regarding Cattle
                        Procurement, Beef Sales, Slaughter Plans, Margins,
                        and Market Share Targets .................................................................. 8

                2.      Mr. Batista Filho and Mr. Nogueira Directly Communicated
                        with Competitors ............................................................................ 15

        B.      Plaintiffs Have Exhausted Other Less Intrusive Discovery Methods ........ 18

V.      Conclusion ....................................................................................................... 19

i

# TABLE OF AUTHORITIES

## CASES

*Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259 (N.D. Cal. 2012) ......................... 7

*Audino v. Glob. IVR Sols., LLC*, 2018 WL 11451041(W.D.N.Y. Apr. 25, 2018) ............. 6

*Azarax, Inc. v. Wireless Commc'ns Venture LLC*,
   2018 WL 1773965 (D. Minn. Apr. 13, 2018) .............................................. 6, 7

*Blair v. CBE Grp. Inc.*, 2015 WL 3397629 (S.D. Cal. May 26, 2015) ............................ 18

*Cardenas v. Prudential Ins. Co. of Am.*, 2003 WL 21293757 (D. Minn. May 16, 2003) ... 7

*Gudelj v. Vitality Works, Inc.*, 2019 WL 13318138 (D.N.M. Dec. 16, 2019) ................... 7

*In re Blue Cross Blue Shield Antitrust Litig.*,
   2017 WL 10410066 (N.D. Ala. Apr. 25, 2017) ........................................... 14

*In re Cattle Antitrust Litig.*, 2021 WL 7757881 (D. Minn. Sept. 14, 2021) ................... 15

*In re Mentor Corp. Obtape Transobturator Sling Product Liability Litig.*,
   2009 WL 4730321 (M.D. Ga. Dec. 1, 2009) ................................................ 14

*In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968 (N.D. Ohio 2015) .... 15, 16

*In re Pork Antitrust Litig.*, 2021 WL 5310590 (D. Minn. Nov. 14, 2021) ......................... 6

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
   2014 WL 939287 (N.D. Cal. Mar. 6, 2014) ................................................. 17

*Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 2101251 (D. Kan. Apr. 30, 2020) ........... 18

*PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust
Midas Life Settlements LLC*,
   2012 WL 12896244 (D. Minn. Sept. 21, 2012) ............................................. 2

*Pohle v. Union Pac. R.R. Co.*, 2023 WL 6552769 (S.D. Iowa July 12, 2023) ................. 7
*Scott-Iverson v. Independent Health Association, Inc.*,

2016 WL 1458239 (W.D.N.Y. Apr. 14, 2016) ................................................................ 6

*SourceOne Dental, Inc. v. Patterson Companies, Inc.*,
310 F. Supp. 3d 346 (E.D.N.Y. 2018) ....................................................................... 15

*Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*,
2021 WL 5095281 (D. Minn. Mar. 12, 2021)......................................................*passim*

## STATUTES & RULES

28 U.S.C. § 1407 ............................................................................................................ 6

Fed. R. Civ. P. 30(a)(1) ................................................................................................. 6

Fed. R. Civ. P. 37(a)(1) ................................................................................................. 6

Fed. R. Civ. P. 45(a)(1)(B) ............................................................................................ 6

Plaintiffs[1] respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Compel the Depositions of Wesley Batista Filho and Andre Nogueira,[2] a current and former employee and document custodians of JBS.[3]

## I.   Introduction

Two critical JBS document custodians, Messrs. Batista Filho and Nogueira, refuse to sit for depositions noticed by Plaintiffs. Mr. Batista Filho was the Head of Fed Beef for JBS USA Food Company and President of Swift Beef Company in 2016 and 2017, and currently serves as the CEO of JBS USA. Mr. Nogueira served as CEO of JBS USA Food Company throughout the relevant time period. JBS refuses to produce Mr. Batista Filho because it wrongly claims the "apex doctrine" grants him a free pass from a deposition in this price-fixing case. And with respect to Mr. Nogueira, JBS simply stated that Mr. Nogueira "does not agree to Plaintiffs' request to depose him," claiming his deposition is not proportional to the needs of the case because he was not involved in the day-to-day management of JBS's beef business. Neither contention is correct nor excuses Messrs. Batista Filho and Nogueira from appearing for their depositions.

---

[1] Excluding the Commercial Indirect and Direct Purchaser classes that have settled with JBS.

[2] Submitted herewith is the Declaration of Daniel O. Herrera in Support of Plaintiffs' Motion to Compel the Depositions of Wesley Batista Filho and Andre Nogueira (the "Herrera Decl."). Unless otherwise stated, all references to "Ex." or "Exs." and to "¶" or "¶¶" are to the Herrera Declaration.

[3] Unless otherwise stated, "JBS" collectively refers to Defendants JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., and JBS S.A.

First, Messrs. Batista Filho and Nogueira will provide highly relevant testimony unavailable from other witnesses. JBS's document productions confirm Messrs. Batista Filho and Nogueira were heavily involved in relevant operational decisions regarding annual slaughter budgets, the volume of cattle JBS slaughtered at its plants, and the number of hours its plants would operate each week. And, most importantly given Plaintiffs' price-fixing allegations, Messrs. Batista Filho and Nogueira regularly communicated with their co-conspirators' key executives—often meeting in person, in addition to communicating by phone and email. Given their central involvement in the alleged conspiracy, Plaintiffs are entitled to depose these key JBS witnesses and probe, at a minimum, their knowledge and involvement in the alleged conspiracy. This is particularly true of Mr. Nogueira, who is no longer employed by JBS and resides beyond the Court's trial subpoena power. Thus, the testimony to be secured from these witnesses is clearly relevant, necessary, and proportional to the needs of the case.

Second, the apex doctrine, which allows a court to "bar a deposition of a high level executive who lacks unique or personal knowledge related to the case[,]" is inapplicable here. *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-cv-609, 2021 WL 5095281, at *3 (D. Minn. Mar. 12, 2021) (quoting *PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust Midas Life Settlements LLC*, No. 10-cv-03001 (PJS/TNL), 2012 WL 12896244, at *4 (D. Minn. Sept. 21, 2012)). Mr. Batista Filho (and Mr. Nogueira) are intimately involved in matters central to the alleged conspiracy, including providing feedback and direction on slaughter plans and volumes, maintaining and increasing JBS's margins through lower cattle prices and higher beef prices, and achieving JBS's "targeted"

market shares. Because "there is evidence in the record now before the Court that they possessed and exercised some independent decision-making authority," Mr. Batista Filho (and Mr. Nogueira) cannot hide behind the apex doctrine. *Speed RMG Partners, LLC*, 2021 WL 5095281, at *5.

At base, permitting these witnesses to avoid depositions will deprive Plaintiffs of the ability to probe their involvement in the alleged conspiracy and to obtain sworn testimony from them on core issues to Plaintiffs' case. It would also deprive Plaintiffs the ability to lay the evidentiary foundation for the admission of Messrs. Batista Filho's and Nogueira's custodial documents at trial. Accordingly, Plaintiffs respectfully request the Court grant this motion and compel the depositions of Messrs. Batista Filho and Nogueira.

## II.   Background

On May 3, 2024, Plaintiffs noticed the depositions of Messrs. Batista Filho and Nogueira for August 4, 2024 and July 25, 2024, respectively.[4] On May 17, 2024, counsel for JBS emailed Plaintiffs to advise that "JBS does not agree to Plaintiffs' request to depose … [Mr.] Batista Filho."[5] On June 3, 2024, counsel for JBS finally confirmed they would represent Mr. Nogueira, a former employee, and accept service on his behalf.[6] However, days later, counsel for JBS informed Plaintiffs that "Mr. Nogueira does not agree to Plaintiffs' request to depose him."[7]

---

[4] Ex. A; Ex. B.
[5] Ex. C at 9.
[6] *Id.* at 5-6.
[7] *Id.* at 4-5.

Shortly thereafter, Plaintiffs asked to meet and confer with counsel for JBS in order to understand why Messrs. Batista Filho and Nogueira refused to be deposed.[8] During a June 14, 2024 videoconference, counsel for JBS asserted the apex doctrine prohibited Plaintiffs from deposing Mr. Batista Filho, and that Mr. Nogueira's deposition would be disproportional to the needs of the case because he did not participate in day-to-day management of JBS's beef business during the relevant time period.[9] Herrera Decl. at ¶ 9. Counsel advised that JBS would reconsider its position only if Plaintiffs detailed their grounds for deposing Messrs. Batista Filho and Nogueira by identifying documents reflecting the witnesses' involvement in relevant operational matters. *Id.* at ¶ 12.

Plaintiffs explained to JBS's counsel that they would not do so, because they were not required to. *Id.* First, JBS produced most of the documents on which Plaintiffs premised their requests to depose Messrs. Batista Filho and Nogueira; JBS thus was equally capable of reviewing its own productions to assess the relevance of its custodians' likely testimony. *Id.* at ¶ 13. Second, JBS's offer created a one-way valve that benefitted JBS and prejudiced Plaintiffs. Were they to identify specific documents for JBS's counsel, Plaintiffs would, for all intents and purposes, have disclosed to the very attorneys who will prepare the witnesses for their depositions the subjects and communications about which the witnesses will be examined *in advance of the depositions themselves*. *Id.* at ¶ 12.  That's not how litigation works. Adopting such a "prove it" approach for important, top-level executives

---

[8] *Id.* at 3-4.
[9] Counsel also asserted that although they were representing Mr. Nogueira and would accept service on his behalf, the fact that he is a non-party former employee was "another factor to consider." Herrera Decl. at ¶ 9.

in a price-fixing case would merely incentivize foot-dragging strategies to gain pre-deposition intelligence on the specific documents that will be covered with the witness.

Nevertheless, in the interest of compromise, during their June 14 call, Plaintiffs provided several reasons for deposing Messrs. Batista Filho and Nogueira: (i) each held a relevant role during the relevant time period and was designated as a custodian accordingly; (ii) each was involved in highly relevant operational decisions, including the creation and modification of slaughter plans and plant schedules and thus will provide unique testimony concerning the same; (iii) each monitored JBS's margins and market shares in order to inform those decisions; and (iv) each spoke, communicated, and met with competitors—interactions at the heart of this price-fixing case about which only Messrs. Batista Filho and Nogueira have personal knowledge. *Id.* at ¶ 10. Moreover, JBS agreed to schedule the depositions of Bill Rupp and Tim Schellpeper, who preceded and followed Mr. Batista Filho in the same role as Head of Fed Beef during the relevant period. *Id.* at ¶ 11.

On June 20, 2024, following the parties' meet and confer, JBS's counsel confirmed that "Mr. Nogueira does not agree to Plaintiffs' request to depose him, and JBS does not agree to Plaintiffs' request to depose Mr. Batista Filho."[10] Plaintiffs then issued a subpoena on July 11, 2024 for Mr. Nogueira to testify at a deposition, given his status as a former employee of JBS.[11] Plaintiffs now bring this motion moving to compel the depositions of Messrs. Batista Filho and Nogueira.

---

[10] Ex. C at 1.
[11] Ex. D.

### III.   Legal Standard

"A party generally, with certain exceptions, may depose any person without leave from the Court." *Speed RMG Partners*, 2021 WL 5095281, at *2 (citing Fed. R. Civ. P. 30(a)(1)). Indeed, "[i]t is basic that parties are required to appear for a duly noticed deposition and that an unjustified failure to do so will warrant a court order directing the noticed party to appear for such deposition[.]" *Audino v. Glob. IVR Sols., LLC*, No. 16-CV-796V(F), 2018 WL 11451041, at *2 (W.D.N.Y. Apr. 25, 2018) (citing *Scott-Iverson v. Independent Health Association, Inc.*, No. 13-CV-451V(F), 2016 WL 1458239, at *3 (W.D.N.Y. Apr. 14, 2016)). Similarly, non-parties who have been served with a Rule 45 subpoena are required to appear to provide testimony.[12] *See* Fed. R. Civ. P. 45(a)(1)(B). In either instance—whether by way of a Rule 30 deposition notice or a Rule 45 subpoena—when a witness refuses to appear, the party seeking his or her testimony may move to compel the appearance. *See Azarax, Inc. v. Wireless Commc'ns Venture LLC*, No. 16-CV-3228 (JRT/LIB), 2018 WL 1773965, at *8 (D. Minn. Apr. 13, 2018) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.") (quoting Fed. R. Civ. P. 37(a)(1)); Fed. R. Civ. P. 30(a)(1). Ultimately, Federal Rule of Civil Procedure 26(b)(1) describes the permissible scope of discovery,

---

[12] Pursuant to 28 U.S.C. § 1407, "[t]he judge or judges to whom [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b); *see also In re Pork Antitrust Litig.*, No. 18-1776 (JRT/HB), 2021 WL 5310590, at *3 n.1 (D. Minn. Nov. 14, 2021) (Tunheim, J.) ("the language of 28 U.S.C. § 1407(b) … explicitly grants authority to the MDL judge to oversee nonparty depositions outside its district.") (collecting cases).

regardless of whether that discovery is directed to parties or non-parties. *See Azarax, Inc.*, 2018 WL 1773965, at *8; *Gudelj v. Vitality Works, Inc.*, No. CV 19-14 KG/JFR, 2019 WL 13318138, at *2 (D.N.M. Dec. 16, 2019).

"When considering whether to protect a high-level corporate executive from deposition, the Court begins its analysis from the premise that although 'there is no per se rule barring depositions of top corporate executives,' courts afford senior executives special consideration before allowing their depositions to proceed." *Speed RMG Partners, LLC*, 2021 WL 5095281, at *3 (quoting *Cardenas v. Prudential Ins. Co. of Am.*, No. CIV.99-1421(JRT/FLN), 2003 WL 21293757, at *1 (D. Minn. May 16, 2003)). In determining whether to allow an apex deposition, courts consider: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Speed RMG Partners, LLC*, 2021 WL 5095281, at *3 (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)). But "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Id.* Indeed, "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances. When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition. A claimed lack of knowledge, by itself it is insufficient to preclude a deposition." *Id*. Likewise, arguments such as "inconvenience alone" are "insufficient to bar [a] … deposition[.]" *Pohle v. Union Pac. R.R. Co.*, No. 421CV00317SMRHCA, 2023 WL 6552769, at *3 (S.D. Iowa July 12, 2023).

## IV.    Argument

### A. Messrs. Batista Filho and Nogueira Will Provide Unique, Highly Relevant Testimony Unavailable from Other Witnesses

Messrs. Batista Filho and Nogueira each held roles in which they oversaw JBS's cattle and beef operations during the relevant time period. ███████████████

█████████████████████████████████████████████████

███████████████████████████████ Mr. Batista Filho and Mr. Nogueira also routinely met and communicated with JBS's competitors outside the presence of colleagues and subordinates. Messrs. Batista Filho and Nogueira thus possess "unique first-hand, non-repetitive knowledge of the facts at issue in the case," *Speed RMG Partners, LLC*, 2021 WL 5095281, at *3, and their depositions are proportional to the needs of the case. Plaintiffs' motion should be granted accordingly.

### 1. Mr. Batista Filho and Mr. Nogueira Were Involved In, and had Decision-Making Authority Regarding Cattle Procurement, Beef Sales, Slaughter Plans, Margins, and Market Share Targets

During the relevant time period, 2013 to 2020, Mr. Batista and Mr. Nogueira each served in roles at JBS that are highly relevant to this action.

**Mr. Batista Filho.** Mr. Batista Filho served as Head of Fed Beef for JBS USA Food Company and President of Swift Beef Company in 2016 and 2017. Documents produced in this case reveal that Mr. Batista Filho's day-to-day responsibilities in JBS's beef business included decision-making authority related to cattle procurement, slaughter plans, plant operation, and beef sales and pricing, and that he personally played an active role in

JBS's beef business. Based on the unique, non-duplicative information he possesses, it is both appropriate and necessary for him to sit for deposition.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

Documents produced by JBS demonstrate Mr. Batista Fihlo's direct involvement in JBS's slaughter plans, cattle procurement, and beef sales.  Below, Plaintiffs summarize Mr. Batista Filho's involvement—as demonstrated by JBS's own production—in these areas.

_Directing JBS's Slaughter Plans and Cattle Procurement_. ████████████████

██████████████████████████████████████████

---

[13] Ex. E; Ex. F; Ex. G.
[14] Ex. H; Ex. I.
[15] Ex. J at 1-2.



*See, e.g.*, TAC at ¶ 311 ("Packing Defendants would also direct their field buyers and other staff to drive past their competitors' plants to determine and report upon those plants' operating levels (for

---

[16] Ex. GG at 84:24-86:9.
[17] Ex. HH at 170:10-180:19.
[18] Ex. J at 1-2.
[19] Ex. K.
[20] Ex. L.

example, whether the plant had reduced labor hours or was operating on Saturday).").

████████████████████████████████████████████████

██████████████████████████████████████

*Involvement in Beef Sales.* █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

**Mr. Nogueira**. Mr. Nogueira served as the CEO of JBS USA Food Company

throughout the relevant time period. Herrera Decl. at ¶ 4. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[21] Ex. M; Ex. N; Ex. O (" ████████████████████████████
████████████████████████████████████████████████
████████████ ").
[22] Ex. P; Ex. Q.
[23] Ex. R.
[24] Ex. S at 12:9-14:24.
[25] Ex. T at 2.
[26] *Id.*
[27] *Id.*

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

Documents produced by JBS confirm that Mr. Nogueira was deeply involved in, and had decision-making authority regarding, pertinent matters, including JBS's slaughter plans, margins and market share targets. Below, Plaintiffs summarize Mr. Nogueira's involvement—as demonstrated by JBS's own production—in these areas.[30]

*Directing JBS's Slaughter Plans.* ██████████████████████████



██████████████████████████████████. *See, e.g.*, TAC at ¶ 10 ("Most egregiously, Packing Defendants all engaged in periodic and parallel slaughter reductions

---

[28] Ex. U at 5-8.
[29] Ex. V at 1-2.
[30] JBS's production reflects many similar instances, but Plaintiffs are reluctant to identify them for reasons explained above.
[31] Ex. W.
[32] Ex. X at 180:11-182:25.

throughout the Class Period."); ¶ 244 ("As the supply of fed cattle decreased into the fourth quarter of 2018, each Packing Defendant reduced its slaughter volumes, posting similar quarter-over-quarter declines: Tyson (-3.7%), JBS (-4.2%), Cargill (-4.0%), and National Beef (-4.1%).").

*Managing JBS's Margins*. ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

*JBS's Market Share Targets*. ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[33] Ex. Y.



*See, e.g.*, TAC at ¶ 96 ("During this time, Packing Defendants' relative market shares as against each other remained remarkably stable.").

****

The documents in this case demonstrate that Messrs. Batista Filho and Nogueira each have unique non-duplicative personal knowledge regarding many key mechanisms of the alleged conspiracy such as setting slaughter plans, margins, and market shares. Accordingly, Plaintiffs are entitled to probe both custodians' knowledge about these issues and their roles in setting JBS's priorities on these issues.

Where, as here, "the executive has personal knowledge of and involvement in certain relevant matters or where conduct and knowledge of the highest corporate levels are relevant in the case, a deposition of the executive is generally permitted." *In re Blue Cross Blue Shield Antitrust Litig*., No. 2:13-CV-20000-RDP, 2017 WL 10410066, at *2 (N.D. Ala. Apr. 25, 2017) (quoting *In re Mentor Corp. Obtape Transobturator Sling Product Liability Litig.* 2009 WL 4730321, at *1 (M.D. Ga. Dec. 1, 2009)). Here, Messrs. Batista Filho and Nogueira have personal knowledge of matters central to the alleged conspiracy—█████████████████████████████████ Moreover, as

---

[34] Ex. Z.

14

demonstrated above, both witnesses "possessed and exercised some independent decision-making authority" regarding relevant matters. *Speed RMG Partners, LLC*, 2021 WL 5095281, at *5-6 (ordering deposition of high-level corporate executives).

At base, "[t]he knowledge and reasons behind the decisions made by Mr. [Batista Filho] and Mr. [Nogueira] under their own independent, executive decision-making authority related to the at-issue products cannot be more easily obtained from lower-level employees." *Speed RMG Partners, LLC*, 2021 WL 5095281, at *6. Plaintiffs therefore "have made a sufficient threshold showing that [they] likely possess some unique first-hand, non-repetitive knowledge that is relevant to the claims and defenses at issue in this case." *Id.*

### 2. Mr. Batista Filho and Mr. Nogueira Directly Communicated with Competitors

J███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ Plaintiffs are entitled to examine witnesses concerning their interactions with competitors, which is at the very heart of antitrust litigation. *See In re Cattle Antitrust Litig.*, No. CV 19-1129 (JRT/HB), 2021 WL 7757881, at *4 (D. Minn. Sept. 14, 2021) (Tunheim, J.) (recognizing inter-firm communications are evidence supporting the existence of an unlawful conspiracy).[35]

---

[35] *See also SourceOne Dental, Inc. v. Patterson Companies, Inc.*, 310 F. Supp. 3d 346, 359 (E.D.N.Y. 2018) ("a high volume of communications, or communications that represent a departure from the ordinary pattern of communications among defendants, can be probative of an agreement"); *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d

**<u>Mr. Batista Filho's Inter-Competitor Communications.</u>** █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

**<u>Mr. Nogueira's Inter-Competitor Communications.</u>** ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

968, 983-84 (N.D. Ohio 2015) (concluding "[e]vidence of communications between competitors can serve as circumstantial evidence of price-fixing" and noting "this extensive summary judgment record reveals a fairly dense web of communications between high-level competitor employees, almost all of who had pricing authority for the foam product that was the subject of discussions.").

[36] Ex. AA.

[37] Ex. BB.

[38] Ex. CC.

[39] *Id.*

███████████████████████████████████████████████████████

███████████████████████ *See, e.g.*, TAC at ¶¶ 300, 301 (describing Mr. Nogueira's ample

involvement in trade associations and industry events). ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

        Plaintiffs should therefore be allowed to depose Messrs. Batista Filho and Nogueira

regarding these and other in-person meetings and communications with competitors. *See

In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C-07-05634 CRB

(DMR), 2014 WL 939287, at *3 (N.D. Cal. Mar. 6, 2014) (ordering deposition of employee

who "attended several key meetings between [defendants] that took place in November and

December of 2004 when the companies allegedly began colluding").

---

[40] Ex. U at 14-15; Ex. DD at 1.
[41] Ex. EE.
[42] *Id.*
[43] Ex. FF.

17

### B.  Plaintiffs Have Exhausted Other Less Intrusive Discovery Methods

Plaintiffs have established a sufficient basis to take Messrs. Batista Filho's and Nogueira's depositions and have "exhausted other less intrusive discovery methods." *Speed RMG Partners, LLC*, 2021 WL 5095281, at *3 (finding this a consideration under the apex doctrine).

For example, Plaintiffs thus far have conducted 8 depositions of JBS's employees and have noticed 7 more, excluding Mr. Nogueira and Batista. *See* Herrera Decl. at ¶ 18. However, none of these lower-level employees had the same input, decision-making authority, and access to competitors' high-level executives as Messrs. Batista Filho and Nogueira. And, in any event, "Plaintiffs are not required to depose every lower-level employee with knowledge" to demonstrate exhaustion. *Speed RMG Partners, LLC*, 2021 WL 5095281, at *6.

Beyond these depositions, Plaintiffs have issued multiple sets of requests for production and interrogatories to JBS (and the other Defendants). Yet, none of the documents produced, or interrogatory responses received, is an adequate replacement for Mr. Batista Filho's and Mr. Nogueira's sworn testimony under oath about their knowledge of the facts at issue in this case. Herrera Decl. at ¶ 19. As courts recognize, "The purpose of depositions is to determine the facts of the case while the witness is under the scrutiny of examination. The purpose is certainly not to find out how the witness answers questions with the ability to calmly reflect on the responses for 30 days in collaboration with counsel." *Blair v. CBE Grp. Inc.*, No. 13-CV-00134, 2015 WL 3397629, at *10 (S.D. Cal. May 26, 2015); *see also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100, 2020 WL

2101251, at *10 (D. Kan. Apr. 30, 2020) ("document production also is not an adequate substitute for [a] deposition" and a party "is entitled to question a witness about those documents").

Testimony from each witness is also necessary to lay the appropriate evidentiary foundation for records created by Messrs. Batista Filho and Nogueira, so that they may be admitted into evidence at trial. The need for these depositions is critical given Defendants' present unwillingness to enter into any evidentiary stipulation—beyond merely authentication—concerning records produced in this litigation, or otherwise admit that documents they produced qualified as business records. Herrera Decl. at ¶ 20.

Accordingly, Plaintiffs have exhausted less intrusive discovery methods, which in any event, are inadequate substitutes for sworn testimony from Messrs. Batista Filho and Nogueira.

**V.      Conclusion**

Plaintiffs respectfully request that the Court grant their Motion to Compel the Depositions of Wesley Batista Filho and Andre Nogueira.

Date: July 22, 2024                              Respectfully submitted,

*/s/ Daniel O. Herrera*
Daniel O. Herrera (*pro hac vice*)
Jennifer W. Sprengel (*pro hac vice*)
Kaitlin Naughton (*pro hac vice*)
Ellen Meriwether (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
Tel.: 312-782-4882
Fax: 312-782-4485

19

dherrera@caffertyclobes.com
jsprengel@caffertyclobes.com
knaughton@caffertyclobes.com
emeriwether@caffertyclobes.com

David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (Bar No. 0398250)
**SCOTT + SCOTT**
**ATTORNEYS AT LAW LLP**
156 Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: 860-537-5537
Fax.: 860-537-4432
david.scott@scot-scott.com
alawrence@scott-scott.com
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT + SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
jguglielmo@scott-scott.com

***Interim Co-Lead Counsel for the Cattle***
***Plaintiffs***

K. Craig Wildfang (Bar No. 0117043)
Thomas J. Undlin (Bar No. 0183751)
Stacey P. Slaughter (Bar No. 0296971)
Geoff Kozen
Eric P. Barstad
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

Tel.: 612-349-8500
Fax: 612-339-4181
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
sslaughter@robinskaplan.com
gkozen@robinskaplan.com
ebarstad@robinskaplan.com

Kellie Lerner
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel.: 212-980-7400
Fax: 212-980-7499
klerner@robinskaplan.com

***Liaison Counsel for the Cattle Plaintiffs***

Shana E. Scarlett (*pro hac vice*)
Rio S. Pierce (*pro hac vice*)
Abby R. Wolf (*pro hac vice*)
Sarah E. Dupree (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, California 94710
T: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com
abbyw@hbsslaw.com
sarahd@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel.: (206) 623-7292
steve@hbsslaw.com

Brian D. Clark ( #0390069)
W. Joseph Bruckner ( #0147758)
Arielle S. Wagner ( #0398332)

21

Kyle Pozan (pro hac vice)
Simeon A. Morbey (#0391338)
Develyn J. Mistriotti (#0403684)
Stephen M. Owen (#0399370)
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
wjbruckner@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
kjpozan@locklaw.com
samorbey@locklaw.com
djmistriotti@locklaw.com
smowen@locklaw.com

***Counsel for Plaintiffs and the Proposed
Consumer Indirect Purchaser Classes in the
Peterson Action***

Richard M. Paul III
Ashlea G. Schwarz
David W. Bodenheimer
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com
David@PaulLLP.com

Francisco "Frank" Guerra, IV.
Shalimar Wallis
Michael Montaño
Alexis Garcia
**GUERRA LLP**
345 California St., Ste. 600
San Francisco, CA 9110
Telephone: (210) 447-0500
fguerra@guerrallp.com
swallis@guerrallp.com
mmontano@guerrallp.com
argarcia@guerrallp.com

22

Tab Turner
**TURNER & ASSOCIATES, P.A.**
4705 Somers Avenue
North Little Rock, Arkansas 72116
Telephone: (501) 791-2277
tab@tturner.com

***Counsel for the Feeder Cattle Plaintiffs***

David B. Esau
Kristin A. Gore
Garth T. Yearick
Amanda R. Jesteadt
Casey Hardy McGowan
**CARLTON FIELDS, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Tel: (561) 659-7070
Fax: (561) 659-7368
desau@carltonfields.com
kgore@carltonfields.com
gyearick@carltonfields.com
ajesteadt@carltonfields.com
chardymcgowan@carltonfields.com

Roger S. Kobert
Carter J. Wallace
**CARLTON FIELDS, LLP**
405 Lexington Avenue, 36th Floor
New York, New York 10174-3699
Tel: (212) 785-2577
Fax: (212) 785-5203
rkobert@carltonfields.com
cwallace@carltonfields.com

Aaron A. Holman
**CARLTON FIELDS, LLP**
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Tel: (407) 849-0300
Fax: (407) 648-9099
aholman@carltonfields.com

Holli M. Credit

23

**CARLTON FIELDS, LLP**
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Tel: (305) 530-0050
Fax: (305) 530-0055
hcredit@carltonfields.com

Scott L. Menger
**CARLTON FIELDS, LLP**
2029 Century Park East, Suite 1200
Los Angeles, California 90067
Tel: (310) 843-6300
Fax: (301) 843-6301
smenger@carltonfields.com

*Counsel for Subway Protein Litigation Corp., as Litigation Trustee of the Subway® Protein Litigation Trust; Cheney Brothers, Inc.; ARCOP, Inc.; CKE Restaurants Holdings, Inc.;  Restaurant Services, Inc.; Sonic Industries Services Inc.; Whatabrands LLC; Whataburger Restaurants LLC; WB Supply & Merchandising LLC; and McLane Plaintiffs*

Philip J. Iovieno
Jack G. Stern
Mark A. Singer
Justin V. Arborn
**CADWALADER, WICKERSHAM & TAFT LLP**
200 Liberty Street
New York, NY 10281
philip.iovieno@cwt.com
jack.stern@cwt.com
mark.singer@cwt.com
justin.arborn@cwt.com

*Counsel for Direct Action Plaintiffs Aramark Food and Support Services Group, Inc., BJ's Wholesale Club, Inc., Gordon Food Service, Inc. and Glazier Foods Company, Jetro Holdings, LLC,*

24

***Quality Supply Chain Co-Op, Inc.,
Sherwood Food Distributors, L.L.C, Harvest
Meat Company, Inc., Western Boxed Meat
Distributors, Inc., and Hamilton Meat, LLC,
Target Corporation, and Co-Counsel for
Kraft Heinz Foods Company***

Patrick J. Ahern
Theodore B. Bell
**AHERN & ASSOCIATES, P.C.**
Willoughby Tower
8 South Michigan Ave., Suite 3600
Chicago, IL 60603
Tel: (312) 404-3760
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com

***Counsel for Direct Action Plaintiffs Winn-
Dixie Stores, Inc., Bi-Lo Holdings, LLC and
Co-Counsel for Kraft Heinz Foods Company***

Michael Calhoon
Christopher P. Wilson
Wyatt M. Carlock
**BAKER BOTTS LLP**
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
michael.calhoon@bakerbotts.com
christopher.wilson@bakerbotts.com
wyatt.carlock@bakerbotts.com

Ariel D. House
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-2501
ariel.house@bakerbotts.com

***Counsel for ALDI Inc., Sodexo Inc.
and Sodexo Operations, LLC***

25

David C. Eddy
Dennis J. Lynch
Travis. C. Wheeler
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277
deddy@maynardnexsen.com
dlynch@maynardnexsen.com
twheeler@maynardnexsen.com

*Attorneys for Plaintiffs Conagra Brands, Inc., and Compass Group USA, Inc.*