IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

*In re Cattle and Beef Antitrust Litigation*

This Document Relates to:                    Case No. 22-md-3031 (JRT/JFD)

ALL ACTIONS

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
COMPEL ASSIGNEES TO PROVIDE ASSIGNOR DISCOVERY**

# TABLE OF CONTENTS

BACKGROUND ................................................................................................... 1

I.    Supervalu .................................................................................................. 2

  A.    Supervalu Has the Right to Seek Documents, Information, and Testimony from Its Assignors But Has Refused to Do So .................................................. 3

  B.    In Discovery, Supervalu Glossed Over Its Assigned Claims, Except to Offer Data that Supervalu Found Helpful ......................................................... 4

II.   CKE ........................................................................................................... 6

  A.    CKE Has the Right to Seek Documents, Information, and Testimony from Its Assignors But Has Refused to Do So .................................................... 7

  B.    In Discovery, CKE Glossed Over Its Assigned Claims, Except to Offer Data that CKE Found Helpful ........................................................................ 7

III.  Defendants Identified the Omission of Assignor Discovery from Multiple DAPs and Pushed Globally for a Solution ......................................................... 9

ARGUMENT ................................................................................................... 10

I.    Legal Standard ....................................................................................... 10

II.   Assignee DAPs Must Bear Discovery Obligations Related to the Claims They Choose to Pursue ..................................................................................... 13

III.  Defendants Have Timely Pursued This Discovery ................................. 16

IV.   Defendants Seek Relevant Discovery and Would Be Prejudiced If Forced to Seek This Discovery Elsewhere ............................................................... 18

  A.    Requests for Production (*Supervalu and CKE Issue*) .......................... 18

  B.    Interrogatories (*Supervalu and CKE Issue*) ...................................... 21

  C.    30(b)(6) Testimony (*CKE Issue*) ........................................................ 22

CONCLUSION ............................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AcBel Polytech Inc. v. Fairchild Semiconductor Int'l, Inc.*,
No. 13-13046-DJC, 2016 WL 10894661 (D. Mass. Feb. 4, 2016) ............................ 12

*Baxter Bailey & Assocs., Inc. v. Hovnanian Enterprises, Inc.*,
No. JKB-16-1649, 2017 WL 4174965 (D. Md. May 8, 2017) ....................... 11, 12, 13

*Bellingham v. BancInsure, Inc.*,
No. 13-0900, 2014 WL 12600277 (D. Minn. May 13, 2014) ................................... 10

*Comas v. Schaefer*,
No. 10-04085-CV-C-FJG, 2010 WL 2927280 (W.D. Mo. July 21, 2010) ................. 15

*In re Hallmark Capital Corp.*,
534 F. Supp. 2d 981 (D. Minn. 2008) ........................................................................... 14

*JPMorgan Chase Bank v. Winnick*,
228 F.R.D. 505 (S.D.N.Y. 2005) ........................................................................ *passim*

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
673 F. Supp. 3d 345 (S.D.N.Y. 2023) ................................................................... 12, 23

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
No. 14 MD 2542 (VSB) (SLC), 2023 WL 1879521 (S.D.N.Y. Feb. 10,
2023) ........................................................................................................................... 21

*Lynch v. Experian Info. Sols., Inc.*,
569 F. Supp. 3d 959 (D. Minn. 2021), *aff'd*, 581 F. Supp. 3d 1122 (D.
Minn. 2022) ............................................................................................................ 10, 17

*MAO-MSO Recovery II, LLC v. Mercury Gen. Corp.*,
No. 17-CV-02525-AB, 2019 WL 2619637 (C.D. Cal. May 10, 2019) ...................... 12

*In re Pork Antitrust Litig.*,
No. 18-CV-1776 (JRT/HB), 2022 WL 972401 (D. Minn. Mar. 31, 2022) ..... 14, 15, 16

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
314 F.R.D. 341 (S.D.N.Y. 2016) ................................................................... 11, 13, 20

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    No. 1:12-MD-2343, 2014 WL 129814 (E.D. Tenn. Jan. 10, 2014)........... 10, 11, 13, 16

*Southampton Pointe Prop. Owners Ass'n, Inc. v. OneBeacon Ins. Co.*,
    No. 2:12-CV-03035-RMG, 2013 WL 12241830 (D.S.C. Aug. 27, 2013) ................. 12

*Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing, Inc.*,
    No. 1:10-CV-00604-BLW, 2013 WL 6681240 (D. Idaho Dec. 18, 2013)................. 12

## Other Authorities

Federal Rule of Civil Procedure 26(b)(1)........................................................................ 1, 10

Federal Rule of Civil Procedure 37(a)(3)(B).................................................................... 10

Federal Rule of Civil Procedure 45(d)(1)......................................................................... 20

UNFI, *Creating North America's Premier Food Wholesaler; UNFI to
    Acquire SVU* Investor Presentation (July 26, 2018),
    https://s22.q4cdn.com/589001886/files/doc_presentations/Investor-
    Presentation-7-26-18-Final-vF.pdf ........................................................................... 2, 3

This motion concerns certain Direct Action Plaintiffs' (DAPs) attempts to avoid producing discovery relevant to their claims for millions of dollars in damages for purchases of beef. These DAPs (the "assignee DAPs") assert claims for beef purchases by nonparties that have purportedly assigned their claims to the DAPs. It is Litigation 101 that a party is entitled to proportionate discovery relevant to another party's claims. Fed. R. Civ. P. 26(b)(1). The mere fact that a claim was assigned cannot, of course, shield the party asserting that claim from the discovery obligations that come with it. And here, the case is even clearer because the operative assignment agreements give these assignee DAPs the right and ability to obtain the relevant documents and information that Defendants seek (*e.g.*, "███████████████████████████████████████████

███████████████████████████████████████████

████████████"). Yet the assignee DAPs continue to resist providing discovery for their assigned claims, including improperly disclaiming possession or control despite the plain language of their assignment agreements. The Court should not condone these tactics.

Defendants continue to meet and confer with some DAPs, and the Defendants may need to file additional motions to compel assignor discovery. The disputes with Supervalu, Inc. ("Supervalu") and CKE Restaurants Holdings, Inc. ("CKE"), however, are ripe for resolution. Defendants therefore move to compel these assignee DAPs to comply with basic discovery obligations related to their assigned claims.

## BACKGROUND

Supervalu and CKE refuse to produce certain responsive nonparty assignor discovery. They both refuse to produce documents from, or answer interrogatories with

1

information from, their nonparty assignors.[1] CKE has also failed to adequately prepare its 30(b)(6) corporate representative on topics related to its assignors.

## I.    Supervalu

Supervalu is a self-proclaimed "leader in U.S. wholesale food distribution," operating around 114 corporate retail stores—including under the Cub banner in the Twin Cities and elsewhere—and 29 distribution centers across the country during the relevant time period, generating a projected $15.6 billion in revenues in 2019.[2] According to Defendants' preliminary analysis of data produced in this case, Supervalu's assignors Tony's Fine Foods ("Tony's"), Unified Grocers, Inc. ("Unified"), Associated Grocers of Florida, Inc. ("AGFL"), and United Natural Foods, Inc. ("UNFI") purchased over $2.5 ***billion*** of beef from Defendants between 2015 and 2022.

Supervalu asserts claims "on its own behalf and its assignors . . . , *each of which directly purchased beef from one or more Defendants . . . .*"[3] Supervalu defines

---

[1] Supervalu is also pursuing assigned claims from another DAP, Topco Associates ("Topco"). This Motion only seeks to compel assignor discovery pertaining to *nonparty* assignors. For claims assigned to DAPs by other parties to this action, Defendants have been working to get necessary discovery through the assignor DAPs but reserve their rights to file additional motions to compel if those efforts are unsuccessful.

[2] UNFI, *Creating North America's Premier Food Wholesaler: UNFI to Acquire SVU*, Investor Presentation 9–10 (July 26, 2018), https://s22.q4cdn.com/589001886/files/doc_presentations/Investor-Presentation-7-26-18-Final-vF.pdf.

[3] Consolidated Compl. ¶ 56, Case No. 22-md-3031, ECF No. 132 (D. Minn. Jan. 30, 2022) (emphasis added); *see also* Compl. ¶ 33, Case No. 22-cv-2450, ECF No. 1 (D. Minn. Sept. 15, 2022).

"SUPERVALU" as "includ[ing] SUPERVALU's assignors but only with respect to the assigned claims."[4]

### A. Supervalu Has the Right to Seek Documents, Information, and Testimony from Its Assignors But Has Refused to Do So

Between March 2023 and June 2024, Supervalu produced roughly 53,700 documents. Setting aside UNFI,[5] *only about 200* of Supervalu's produced documents contain even a reference to the names of the assignors.[6]

Among those few documents were copies of the assignments at issue. According to those assignment agreements, UNFI is ████████████████████, and AGFL, Unified, and Tony's are ████████████████████████████.[7] Defendants understand that ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████.[8]

---

[4] Consolidated Compl. ¶ 56, Case No. 22-md-3031, ECF No. 132 (D. Minn. Jan. 30, 2022).

[5] UNFI acquired Supervalu in 2018. *See supra*, at n.2. UNFI's name appears on some Supervalu documents after acquisition. *See* Horrell Decl. Ex. 1 (excerpt of Dave Butler deposition at 40:25–41:12).

[6] Horrell Decl. ¶ 2. All references to "Ex." in this brief refer to exhibits to the Horrell Declaration, unless otherwise specified.

[7] Ex. 2 at 1 (SVU-BEEF-0112162).

[8] *See* Ex. 3 at 1 (SVU-BEEF-0112159).

The assignment agreements specify that, as assignee, ███████████████████
████████████████████████████. UNFI, AGFL, Unified, and Tony's
agreed:



Topco also agreed:

### B.    In Discovery, Supervalu Glossed Over Its Assigned Claims, Except to Offer Data that Supervalu Found Helpful

In its initial disclosures and negotiations over custodians and noncustodial sources, Supervalu mostly omitted any reference to its assignors, instead simply naming people and titles without noting their affiliation.[11] The one time Supervalu explicitly referred to its assignors, it was to disclose that it likely *would* rely on data related to its assignments.[12]

---

[9] Ex. 2 at 3 (SVU-BEEF-0112162) (emphasis added).

[10] Ex. 3 at 2 (SVU-BEEF-0112159) (emphasis added).

[11] *See generally* Ex. 4 at 7–8 (Publix DAPs' Disclosures Pursuant to the Court's Second Order on Discovery Pending Resolution of Motions to Dismiss); Ex. 5 at 3 (Publix DAPs' Initial Custodian Proposal).

[12] Ex. 6 at 3, § B.2 (Initial Disclosures) (disclosing that it may use "[d]ata in electronic format showing each of the Plaintiffs' purchases (*including, as applicable, purchases as assignees*) of Beef") (emphasis added).

Supervalu's responses and objections to Defendants' written discovery requests were also opaque. For example, Supervalu's Responses and Objections to Defendants' First Set of Requests for Production did not refer explicitly to its assigned claims. Rather, Supervalu noted vaguely in a series of boilerplate general objections that they would produce only documents in their possession, custody, or control—for example:

> Plaintiffs further object to the extent the Requests for Production call for the production of documents or intend to call for the production of documents that are outside the possession, custody, or control of a Plaintiff. Plaintiffs will search for information responsive to a given request in the files of: (a) Plaintiffs' designated custodians; and (b) files located elsewhere in Plaintiffs' corporate headquarters that would reasonably likely contain responsive, non-cumulative, reasonably accessible documents, and electronically stored information ("non-custodial files"). This objection is referred to as Plaintiffs' "Custody or Control Objection."[13]

Supervalu then limited all of its offers of production by incorporating this general "Custody and Control Objection." Nowhere in these responses and objections did Supervalu once refer specifically to its assigned claims or any of its assignors.

Supervalu avoided answering interrogatory questions about how Supervalu's assignors purchased or procured beef during the relevant time period. In response to Defendants' Interrogatory No. 1, for example, which asked about the DAP's and its assignors' beef procurement, Supervalu objected generally to the definition of "You" without ever specifically referring to its assignors. After Defendants followed up,

---

[13] Ex. 7 at 5-6 ¶ 13 (Direct Action Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Production to Direct Action Plaintiffs, dated Jan. 10, 2023); *see also id.* at 2 ¶ 3 (similar general objection).

Supervalu confirmed that it was not responding on behalf of any of its assignors and would not do so.[14]

Then, in negotiating search terms for Supervalu and its co-Plaintiffs to run against documents, Supervalu agreed to include two strings related to its assignors.[15] In agreeing to these search terms, Defendants did not waive any rights to discovery from Supervalu's assignors. Defendants expressly noted that they "reserve[d] their rights to seek additional discovery and designate additional custodians and non-custodial data sources."[16]

## II.    CKE

CKE purchases beef for sale at its thousands of restaurants, operated under the Carl's Jr. and Hardee's brands. CKE is pursuing claims assigned to it by various distribution centers and processors that it contracted with to manufacture beef products on its behalf. Defendants move to compel discovery only from CKE's processor assignors.

---

[14] Ex. 8 at 10 (AGS Responses and Objections to Defendants' First Set of Interrogatories, verified by Supervalu on May 24, 2024); Ex. 9 at 1-3.

[15] Ex. 10 (agreed search strings for Supervalu and other DAPs represented by the Kenny Nachwalter, P.A. and Sperling & Slater law firms, with Search String Nos. 20 and 49 relating to assignors (*e.g.*, "*((Assign\* OR [Name of assignors]) w/10 (antitrust OR claim\* OR lawsuit OR sue\* OR litigation\*)) w/50 (beef OR cattle)*")).

[16] Ex. 10 (emails between Defendants' counsel and counsel for the DAPs represented by Kenny Nachwalter, P.A. and Sperling & Slater) (*see* Gallup March 20, 2023 email at 11).

**A.    CKE Has the Right to Seek Documents, Information, and Testimony from Its Assignors But Has Refused to Do So**

The contracts that govern the assignment of claims from CKE's assignors to CKE provide that as the assignee, ███████████████████████████████████████.

CKE's assignors agreed to, for example, the following:



**B.    In Discovery, CKE Glossed Over Its Assigned Claims, Except to Offer Data that CKE Found Helpful**

CKE did not initially reference assignors at all in its initial disclosures and negotiations over custodians and noncustodial sources, instead simply naming people and titles without noting their affiliation.[19] When CKE amended its Rule 26 disclosures to reflect the existence of its assignors, it emphasized that CKE's assignors *did* have information that support its claims, but noted that such documents were not in Plaintiff's possession, custody, or control:

---

[17] Ex. 11 at 2 (CKE-BEEF_0000181) (SSI Foods, LLC assignment); Ex. 12 at 2 (CKE-BEEF_0000183) (CLW Foods, Inc. assignment).

[18] Ex. 13 at 1 (CKE-BEEF_0000191) (Kenosha Beef International LTD assignment).

[19] *See generally* Ex. 14 (CKE's Rule 26 Initial Disclosures and Attachment 1 Disclosures); Ex. 15 (CKE's Initial Custodian Proposal).

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████.[20]

CKE even acknowledged in its subsequent noncustodial negotiations that, "[t]o the extent the data and documents to be produced by CKE does not cover third-party Assignor information relevant to CKE's claims, CKE intends to pursue additional information from its Assignors."[21] This did not happen. Instead, CKE limited all of its responses to Defendants' Requests for Production by clarifying that it would only be producing documents from CKE directly, not its assignors or any other entities.[22] Later, in response to Defendants' request for documents from CKE's assignors, CKE pointed Defendants to "additional data and documents obtained from" three of its assignors—Birchwood, SSI, and CLW. These documents were minimal both in quantity and relevance, and appear to consist only of a few spreadsheets containing structured data.[23] They provide no insight into *how* CKE's processor-assignors purchased beef products or otherwise negotiated with Defendants.[24] Similarly, in its responses to Defendants' interrogatories, CKE made no mention of its assignors, including how they purchased or procured beef during the relevant

---

[20] Ex. 16 (CKE's Amended Rule 26 Initial Disclosures and Attachment 1 Disclosures).

[21] Ex. 17 (CKE's April 12, 2023 Letter re: Non-Custodial Sources).

[22] *See, e.g.*, Ex. 18 (CKE's Objections and Responses to Defendants' Second Set of Requests for Production to All Plaintiffs).

[23] *See* Ex. 19 at 1–2 (Gore Sept. 16, 2024 Ltr. to Beaudoin).

[24] *See, e.g.*, Ex. 20 (CKE-BEEF_1357427).

time period, and objected to the interrogatories' definition of "You" to the extent it encompassed anyone other than CKE itself.[25]

## III.    Defendants Identified the Omission of Assignor Discovery from Multiple DAPs and Pushed Globally for a Solution

Defendants identified the absence of assignor discovery from a number of DAPs, including Supervalu and CKE, and first raised the issue in a set of coordinated letters to relevant DAPs on August 19, 2024.[26] When Defendants proposed a global meet-and-confer to discuss the assignment issues in September, DAPs' counsel instead insisted on separate meet-and-confers.[27] Defendants accordingly scheduled separate meetings with different counsel groups representing different DAPs over the following weeks. Those meet-and-confers have concluded at different times.

Defendants bring this motion to compel assignor discovery from the DAPs that have reached impasse on this issue, while continuing to wrap up meet-and-confers with others. Supervalu has refused to collect or produce documents from its assignors or supplement its interrogatory responses with information from its assignors about, for example, their procurement practices.[28] CKE has similarly refused and also will not prepare a corporate representative to testify about noticed topics related to its assignors.[29]

---

[25] Ex. 21 at 3–8 (CKE's Objections and Responses to Defendants' First Set of Interrogatories to Direct Action Plaintiffs).

[26] *E.g.*, Exs. 22 and 23.

[27] Ex. 24 at 2 (Marquiss emails with DAP counsel).

[28] Ex. 9 at 1–3.

[29] Ex. 32 at 1–2.

# ARGUMENT

## I.    Legal Standard

Parties are entitled to obtain discovery about any nonprivileged matter that "is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The goal of Rule 26 is to ensure parties equal access to the material facts. *See Bellingham v. BancInsure, Inc.*, No. 13-0900 (SRN/JJG), 2014 WL 12600277, at *1 (D. Minn. May 13, 2014). When discovery requests are relevant, but a responding party has failed to produce the requested information or documents, the requesting party may move to compel the responding party's production. Fed. R. Civ. P. 37(a)(3)(B). Once the party seeking the discovery has made a threshold showing of relevance, the burden shifts to the resisting party to demonstrate why the documents should not be produced. *See, e.g.*, *Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021), *aff'd*, 581 F. Supp. 3d 1122 (D. Minn. 2022) ("The burden of showing undue burden and disproportionality is on the party resisting disclosure.").

Parties asserting claims pursuant to an assignment "step into the shoes of the assignors" for purposes of the litigation. *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2014 WL 129814, at *2 (E.D. Tenn. Jan. 10, 2014). Assignees cannot accept the power to assert those claims without assuming the "attendant discovery obligations" as a claimant. *Id.* That is, assignees cannot "divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants." *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005).

Any other rule would be "wholly unfair" because it would allow assignments to work "as an end-run around discovery." *Skelaxin*, 2014 WL 129814, at *2. An assignee would be able to avoid discovery related to its claims and improperly force the "risks and burdens of discovery" on the requesting party. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 347 (S.D.N.Y. 2016). Requiring the requesting party, for example, to seek the discovery through third-party subpoenas would be "expensive, time-consuming, and cumbersome, with no corresponding guarantee of success." *Id*.

Moreover, the assignee is plainly better positioned to obtain its assignor's documents than its adversary. *Id.* Thus, requiring the assignee to produce documents from its assignor promotes the "just, speedy, and inexpensive determination" of the action. *See id.* at 346 (quoting Fed. R. Civ. P. 1). On the other hand, allowing the assignee to resist producing documents from its assignor would "undercut those goals, and elevate form above substance . . . ." *Id.*

For these reasons, federal courts that have addressed this issue overwhelmingly agree that the assignee should bear the same discovery obligations that the assignor would carry if it were a party. *See Baxter Bailey & Assocs., Inc. v. Hovnanian Enterprises, Inc.*, No. JKB-16-1649, 2017 WL 4174965, at *1 (D. Md. May 8, 2017); *see also Royal Park*, 314 F.R.D. at 344 (citing cases). The majority of courts require production regardless of whether the assignee's right to the documents is "contractual, practical, or otherwise." *Royal Park*, 314 F.R.D. at 347. These courts require the assignee to provide responsive

"information and documents . . . to the full extent of its **and** [its assignor's] possession, custody, and control." *Baxter Bailey*, 2017 WL 4174965, at *1 (emphasis added).[30]

The rule that an assignee must provide discovery from its assignor is not limited to document productions. Courts also require assignees to provide information from assignors in response to interrogatories. *E.g.*, *Winnick*, 228 F.R.D. at 508 (warning of sanctions if the assignee did not "provide [assignor] information in response to interrogatories"). And courts require assignees to provide 30(b)(6) testimony on behalf of the assignor. *Id.* at 507–508 (requiring the assignee to produce "witness testimony to which defendants would be entitled in discovery from parties . . . just as if the [assignors] had brought this action themselves on their own claims"); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 350 (S.D.N.Y. 2023).

Stated simply, claims originally held by an assignor "cannot be asserted" by an assignee "without the concomitant obligation to produce relevant discovery to defendants." *Winnick*, 228 F.R.D. at 507.[31]

---

[30] A few courts have focused on whether the assignment agreement at issue provides the assignee a contractual right to obtain documents from the assignor for discovery related to the assigned claims. *See, e.g.*, *MAO-MSO Recovery II, LLC v. Mercury Gen. Corp.*, No. 17-CV-02525-AB (AFMX), 2019 WL 2619637, at *4 (C.D. Cal. May 10, 2019) (requiring production of assignor documents over which the assignee had "control" based on its contractual right to obtain responsive documents from the assignor). The majority rule is cleaner and fairer.

[31] *See also AcBel Polytech Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 13-13046-DJC, 2016 WL 10894661, at *2 (D. Mass. Feb. 4, 2016); *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing, Inc.*, No. 1:10-CV-00604-BLW, 2013 WL 6681240, at *2-3 (D. Idaho Dec. 18, 2013); *Southampton Pointe Prop. Owners Ass'n, Inc. v. OneBeacon Ins. Co.*, No. 2:12-CV-03035-RMG, 2013 WL 12241830, at *3 (D.S.C. Aug. 27, 2013).

## II.    Assignee DAPs Must Bear Discovery Obligations Related to the Claims They Choose to Pursue

Supervalu and CKE should be required to provide discovery for their assigned claims based on established precedent and principles of fairness. That their assignment agreements give them control over their assignors' documents and discoverable information makes the decision even more clearcut.

As shown above, the case law overwhelmingly establishes that a plaintiff steps into the shoes of an assignor for purposes of the case, *including* providing discovery. *E.g.*, *Skelaxin*, 2014 WL 129814, at *2. Otherwise, assignments would allow plaintiffs to deprive defendants of discovery related to the claims or create unnecessary obstacles contrary to the Federal Rules. *See, e.g.*, *Royal Park*, 314 F.R.D. at 346–47. The Court should grant the motion based on this rule alone, recognizing as many other courts have that the assignee must produce documents that are in its assignors' possession, custody, and control, regardless of whether the assignee has a strict legal right to obtain the documents and information. *E.g.*, *Baxter Bailey*, 2017 WL 4174965, at *1; *Royal Park*, 314 F.R.D. at 347. Supervalu and CKE are the parties asserting these claims, for which they are seeking millions of dollars in damages. They cannot duck their obligations to provide discovery relevant to the claims they have chosen to assert.

The Court's decision is made even easier here because Supervalu and CKE have both a demonstrated practical ability and a legal right to obtain their assignors' documents and information.

*First*, both assignee DAPs have shown they can get information and documents from their assignors when they want to. *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *3–4 (D. Minn. Mar. 31, 2022) (noting that "control" may include demonstrating a "practical ability to obtain the documents"); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 981, 982 (D. Minn. 2008) (providing that "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action" (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)). Supervalu obtained and produced structured data from its assignors that Supervalu deemed helpful to produce.[32] CKE produced some data from its assignors and represented in its negotiations regarding noncustodial data that it intended to pursue additional information from its assignors to seek the admittedly relevant information in its assignors' possession, custody, and control.[33] A "strong argument can be made" that if a party has "leveraged" its relationship with a nonparty to "obtain documents for its own use in the litigation, fairness would require that it also be required to do so for purposes of responding to discovery." *In re Pork*, 2022 WL 972401, at *4.

*Second*, Supervalu and CKE both have legal rights to obtain documents, information, and even testimony from their assignors under the relevant legal assignments.

---

[32] *See* Ex. 6 at 4, § B.2 (AGS Initial Disclosures); *see also* Ex. 9 at 3 (Nov. 7, 2024 Rodriguez email to Horrell (noting that Supervalu produced some structured data pertaining to its assignors' beef purchases)).

[33] *See* Ex. 17 (CKE's April 12, 2023 Letter re: Non-Custodial Sources).

14

*See, e.g.*, *Comas v. Schaefer*, No. 10-04085-CV-C-FJG, 2010 WL 2927280, at *1-2 (W.D. Mo. July 21, 2010) (finding that contractual provisions gave the defendants "control over the documents which the plaintiffs are requesting").[34] Supervalu's and CKE's assignors all agreed to ███████████████████████████████████████████

███████████████████████████████. CKE's assignment agreements provided, for example:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████.[35]

And Supervalu's assignors likewise promised to "███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████.[36] The other agreements were materially similar.[37]

    Thus, even under a strict possession, custody, or control analysis, Supervalu and CKE have "control" of their assignors' documents and information.

---

[34] The Eighth Circuit has not decided whether control includes a "practical ability" to obtain documents or is limited to a "legal right" to obtain the documents. *In re Pork*, 2022 WL 972401, at *4. The Court need not decide the question here, because the assignment agreements at issue demonstrate that Supervalu and CKE have control under either standard.

[35] Ex. 11 at 2 (CKE-BEEF_0000181) (SSI Foods, LLC assignment); Ex. 12 at 2 (CKE-BEEF_0000183) (CLW Foods, Inc. assignment) (emphasis added).

[36] Ex. 2 at 3 (SVU-BEEF-0112162) (emphasis added).

[37] *See supra*, at 4, 7.

These assignee DAPs cannot have it both ways. They cannot pick and choose when they want to step into the shoes of their assignors and when they do not. *Skelaxin*, 2014 WL 129814, at *2. They cannot take the claims—and seek millions of dollars for them—without the concomitant discovery obligations. *Winnick*, 228 F.R.D. at 507. And they cannot obtain and produce *some* data, documents and information that they deem helpful to their case, while refusing to provide other documents and information based on an illusory possession, custody, and control objection. Allowing Supervalu and CKE to take this selective approach to discovery would be fundamentally unfair. *See In re Pork*, 2022 WL 972401, at *4.

## III.    Defendants Have Timely Pursued This Discovery

During the meet-and-confer process, Supervalu and CKE raised the question of timeliness. Defendants never waived this issue and have timely pushed for this discovery.

As detailed above, Supervalu never clearly disclaimed that Supervalu did not have, and would not gather, documents and information from its assignors. If anything, its several allusions to assignors—such as defining "Supervalu" in its Complaint as including its assignors, disclosing that it may rely on data from its assignors, and agreeing to search terms related to its assignors[38]—arguably suggested that Supervalu would provide assignor discovery. And in responding to Defendants' Requests for Production, Supervalu asserted only boilerplate objections to producing documents outside "the possession, custody, or

---

[38] Consolidated Compl. ¶ 56, Case No. 22-md-3031, ECF No. 132 (D. Minn. Jan. 30, 2022); Ex. 6 at 3–4 (Initial Disclosures); Ex. 10.

control of a Plaintiff,"[39] without ever explicitly referring to its assignors. Boilerplate objections do not suffice. *Lynch*, 569 F. Supp. 3d at 963. Here especially, the objection was inapt at best and misleading at worst because the assignment agreements give Supervalu control over its assignors' documents for purposes of discovery in this action.[40]

In any event, in the absence of any express discussion of the point, Defendants did not waive any right to seek assignor documents from Supervalu; to the contrary, Defendants expressly reserved rights to seek additional discovery.[41] And as detailed above, Defendants have been diligently pushing for assignor discovery from multiple DAPs on (at DAPs' insistence) separate meet-and-confer tracks.[42]

Similar arguments by CKE are also red herrings. Defendants raised their concerns about CKE's deficient interrogatory responses and corporate testimony in August 2024, with months left in the discovery period, and have been pursuing the issue with CKE, in parallel with other DAPs, since then.[43]

---

[39] Ex. 7 at 5-6 ¶ 13 (Direct Action Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Production to Direct Action Plaintiffs, dated Jan. 10, 2023).

[40] Exs. 2 (SVU-BEEF-0112162) & 3 (SVU-BEEF-0112159).

[41] Ex. 10 (emails between Defendants' counsel and counsel for the DAPs represented by Kenny Nachwalter, P.A. and Sperling & Slater) (*see* Gallup March 20, 2023 email at 11).

[42] *See supra*, at 4–9.

[43] Horrell Decl. Ex. 23 at 4-5 (Beaudoin Aug. 19, 2024 Ltr. to Gore).

**IV.    Defendants Seek Relevant Discovery and Would Be Prejudiced If Forced to Seek This Discovery Elsewhere**

The real issue here is *not* the relevance of the information Defendants seek, but rather Supervalu and CKE's refusal to produce *any* responsive assignor information (aside from selective data productions), apparently on the basis of a flawed possession, custody, and control objection. Given Supervalu's and CKE's blanket refusals, there is no particular discovery request in dispute. Put differently, Defendants do not seek a ruling that Supervalu and CKE must respond only to *certain* requests—nor would it be fair for the DAPs to seek such a detailed assessment by the Court without having first met and conferred with Defendants over particular requests. Rather, Defendants request that the Court simply order the DAPs to provide assignor discovery.

To be clear, though, Defendants seek relevant discovery. And as detailed below, if these DAPs were successful in avoiding their obligations to produce discovery related to their claims—whether in response to document requests, interrogatories, or deposition notices—Defendants would be prejudiced.

**A.    Requests for Production (*Supervalu and CKE Issue*) [44]**

Defendants' Requests for Production seek documents directly relevant to Supervalu's and CKE's assigned claims. Defendants seek documents concerning how the direct purchasers (here, the assignors) procured beef, which is relevant to the DAPs' claims

---

[44] A full copy of Defendants' First Set of Requests for Production of Documents to All Plaintiffs is included as Exhibit 25 to the Horrell Declaration. Defendants only move to compel as to this set of requests.

that the supply of beef was constrained, and so they paid artificially high prices for that beef. [45] Documents showing, for example, the assignors' practices of seeking competing bids from Defendants and other packers and of moving business from one packer to another to secure better pricing or service are relevant to Plaintiffs' claims that the Defendants coordinated rather than competed. And documents demonstrating, for example, which products the assignors purchased, at what time of year, and at what level of urgency (*e.g.*, to fulfill a last-minute need) are relevant to at least Plaintiffs' damages theories in light of the many varied factors that impact beef pricing. Defendants also seek documents concerning the assignors' sales of the beef they bought, which is relevant to at least the indirect purchaser classes' claims.[46] Defendants also seek documents related to how and when the assignors learned of the alleged conspiracy, which is relevant to Defendants' statute of limitations defenses. And as a final example, Defendants seek documents relating

---

[45] *See, e.g.*, Ex. 7 (AGS's Resps. & Objs. to Defendants' First Set of Requests for Production to DAPs) at 22 (**RFP 12**: "All documents regarding any Defendant, including but not limited to all documents regarding your purchases of beef from any Defendant(s)."), 29 (**RFP 18**: "All documents regarding any factors you considered when purchasing Beef including . . . the availability and price of Beef or other products; consumer (or customer) demand . . . ; and seasonal demand fluctuations for Beef . . . ."), 30 (**RFP 19**: "All documents regarding contracts, agreements, or terms and conditions, including any amendments, between you and any Defendant(s)."), 31 (**RFP 20**: "All documents regarding the pricing of Beef You purchased or sought to purchase from Defendants or Other Packers . . . .").

[46] *See, e.g.*, Ex. 7 (AGS's Resps. & Objs. to Defendants' First Set of Requests for Production to DAPs) at 24 (**RFP 14**: "All documents regarding your profit margins on or profits from Your sales of Beef."), 53 (**RFP 40:** analyses of beef pricing and sales, including of factors that could affect pricing). Defendants understand that DAPs have asserted objections to "downstream discovery." But those particular objections are not at issue in this Motion.

to the conspiracy allegations (*e.g.*, about cattle supplies or purported packer boycotts), which could undermine the credibility of Plaintiffs' allegations, including by pointing to market factors that explain non-conspiratorial changes in beef prices.[47]

Supervalu and CKE agreed to produce their own documents in response to many of Defendants' requests—thus effectively conceding the relevance and proportionality at least to the extent of the scope of production they offered. And CKE even shared early on that it intended to seek such documents from its assignors directly.[48] But Supervalu has simply refused to search for or produce *any* documents (only data) from its assignors in response to *any* requests, while CKE has ended up simply pointing to structured data within its own production referencing its assignors.[49]

If Defendants were forced to seek documents through third-party subpoenas to Supervalu's and CKE's assignors, Defendants would incur extra expense and time to serve and negotiate over them, with no guarantee that the assignors will agree to produce documents. *See Royal Park*, 314 F.R.D. at 346–47. Defendants could serve these subpoenas only to have the nonparty assignors, citing burden arguments under Federal Rule of Civil Procedure 45(d)(1), point back to Supervalu and CKE—which are actively

---

[47] *See, e.g.*, Ex. 7 at 10 (RFP 1) (AGS's Resps. & Objs. to Defendants' First Set of Requests for Production to DAPs), 39–41 (**RFPs 27–29**: documents regarding any alleged packer boycott of ranchers or feedlots, regarding the allegedly anticompetitive cattle procurement practices alleged in the complaints, and regarding alternative marketing agreements as reference in the complaints).

[48] *See* Ex. 17 (CKE's April 12, 2023 Letter re: Non-Custodial Sources).

[49] *See* Ex. 9 at 1–2; Ex. 32 at 1–2.

asserting claims in the litigation—as the more appropriate source of documents. Moreover, Defendants' experience in this litigation has been that third parties typically are slower to respond to discovery requests.[50] For reasons like these, courts regularly order assignees to produce documents from their assignors, particularly where, as here, the assignees have selectively gathered some assignor data or documents. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MD 2542 (VSB) (SLC), 2023 WL 1879521, at *4 (S.D.N.Y. Feb. 10, 2023).

Finally, requiring Defendants to use some of their limited number of third-party subpoenas to seek assignor discovery would unfairly force Defendants to deprioritize other nonparty discovery unless the Court were to increase that discovery limit for Defendants.[51]

### B.    Interrogatories (*Supervalu and CKE Issue*)[52]

Supervalu and CKE have also refused to provide interrogatory responses on behalf of their nonparty assignors, despite their assignors' agreement to assist with such efforts.[53]

---

[50] For instance, one nonparty responding to subpoenas in this action, despite reaching agreement on search terms with both Plaintiffs' and Defendants' counsel by June 2024, did not make its first production from those searches until mid-November 2024. Horrell Decl. ¶ 3.

[51] *See* Scheduling Order, Case No. 20-cv-1319, ECF No. 571, at 8 (D. Minn. June 22, 2022). Notably, the Court set that limit before many DAPs joined the litigation and before this assignor discovery issue became apparent.

[52] Both sets of interrogatories that are subject to this Motion are attached to the Horrell Declaration as Exhibits 27 and 28.

[53] Exs. 2 (SVU-BEEF-0112162) & 3 (SVU-BEEF-0112159); Exs. 11 (CKE-BEEF_0000181) & 12 (CKE-BEEF_0000183) & 13 (CKE-BEEF_0000191).

[53] Ex. 26 (Rodriguez Sept. 4, 2024 ltr. to McAdam).

This includes interrogatories seeking fundamentally relevant information about assignors' purchases of beef, core decisionmakers with respect to assignors' beef purchasing, and assignors' agreements with Defendants regarding purchases of beef.[54]

DAPs' efforts to evade providing full interrogatory responses, if successful, would leave Defendants with no way of obtaining this form of discovery because there is no procedural vehicle for serving interrogatories on third parties. So it is for good reason that courts require assignees to answer. *E.g.*, *Winnick*, 228 F.R.D. at 508.

## C.    30(b)(6) Testimony (*CKE Issue*)

Defendants have also sought discovery from DAPs, including CKE, related to their assignors via Rule 30(b)(6) testimony, requesting, among other things, that the DAPs produce a witness knowledgeable about the DAP's "receipt of any assignment of any right to pursue or maintain an antitrust or other legal claim against any Beef Suppliers (such as claims against the Defendants in this case), including the terms of any such assignment, the consideration provided for the assignment, and ***the source and basis of the right receive[d]***."[55] CKE refused to prepare its witness to respond on the topic of its assignors and the basis for their claims, instead agreeing only to prepare a witness to provide

---

[54] Ex. 27 (Defs.' First Set of Interrogatories to Direct Action Plaintiffs) at 3 (**Interrogatory No. 1**: "describe in detail the process by which You purchase or procure Beef from any Meat Packer . . . ;" **Interrogatory No. 2**: "identify each individual responsible for decision-making in each part of Your process for the purchase or procurement of Beef from any Meat Packer"); Ex. 28 (Defs.' Second Set of Interrogatories to All Direct Action Plaintiffs) at 3 (**Interrogatory No. 3**: "Identify . . . all agreements related to Your purchase of Beef from any Defendant").

[55] Ex. 29 at 15 (Defendants' Notice of Rule 30(b)(6) Deposition of CKE Restaurants Holdings, Inc.).

testimony about its assignments of claims as "limited to the information on the face of those written assignments."[56]

This refusal to prepare its witnesses bore out during the deposition, as CKE's witness testified that he was unprepared to discuss any information regarding its assignors' claims in the case: "████████████████████████████████████████████ ████████████████████████████████████."[57] When Defendants raised this failure to provide testimony with CKE after the fact, CKE stood on its refusal to provide testimony.[58]

If Defendants are forced to issue third-party deposition subpoenas to obtain competent testimony about CKE's assignors, this outsourcing of discovery to nonparties would again unfairly increase the burdens on Defendants and cause delay. Thus, for the same reasons that courts require assignees to produce assignor documents without the runaround of third-party subpoenas, courts require assignees to provide deposition testimony about assignors. *See Keurig Green Mountain*, 673 F. Supp. 3d at 350; *Winnick*, 228 F.R.D. at 508.

## CONCLUSION

In the interests of fairness, justice, and expediency, the Court should grant Defendants' motion to compel assignor discovery from Supervalu and CKE.

---

[56] Ex. 30 at 20 (CKE's Responses and Objections to Defendants' Rule 30(b)(6) Notice of Deposition).

[57] Ex. 31 at 279:13–17 (CKE 30(b)(6) Dep. Tr.) (objection omitted).

[58] Ex. 32 (Dec. 4, 2024 email from Gore to Beaudoin).

Dated: December 5, 2024                    Respectfully submitted,

*/s/ Holley C. M. Horrell*
X. Kevin Zhao, Reg. No. 0391302
Holley C. M. Horrell, Reg. No. 0399636
Davida S. McGhee Williams, Reg. No. 0400175
Nicholas Scheiner, Reg. No. 0402470
Emily M. McAdam, Reg. No. 0400898
Taofikat Ninalowo-Olaofe, Reg. No. 0403432
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
kzhao@greeneespel.com
hhorrell@greeneespel.com
dwilliams@greeneespel.com
emcadam@greeneespel.com
nscheiner@greeneespel.com
tninalowo-olaofe@greeneespel.com

Beth A. Wilkinson
Kosta S. Stojilkovic
Sarah Neuman
Blake Neal
**WILKINSON STEKLOFF LLP**
2001 M Street, NW, 10th Floor
Washington, DC 20036
(202) 847-4010
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
bneal@wilkinsonstekloff.com

Moira Penza
Owen Gallogly
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, Floor 24
New York, NY 10036
(212) 294-8910
mpenza@wilkinsonstekloff.com
ogallogly@wilkinsonstekloff.com

Jacob D. Bylund
Robert C. Gallup, Reg. No. 0399100
Dasha Ternavska
**FAEGRE DRINKER BIDDLE & REATH LLP**
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
robert.gallup@faegredrinker.com
dasha.ternavska@faegredrinker.com

Joan A. Akalaonu
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
(312) 569-1000
joan.akalaonu@faegredrinker.com

***Counsel for Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation***

/s/   Benjamin L. Ellison
Benjamin L. Ellison, Reg. No. 0392777
Chelsea A. Bollman, Reg. No. 0401297
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Tel.: (612) 217-8800
bellison@jonesday.com
cbollman@jonesday.com

Julia E. McEvoy (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel.: (202) 879-3867
jmcevoy@jonesday.com

Michelle Fischer (*pro hac vice*)
**JONES DAY**

25

901 Lakeside Avenue
North Point
Cleveland, OH 44114
Tel.: 216-586-3939
mfischer@jonesday.com

Tiffany Lipscomb-Jackson (*pro hac vice*)
**JONES DAY**
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Tel.: 614-281-3939
tdlipscombjackson@jonesday.com

Eddie Hasdoo (*pro hac vice*)
**JONES DAY**
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Tel.: 312-269-4214
ehasdoo@jonesday.com

*Counsel for Defendant National Beef Packing Company, LLC*

/s/   Sami H. Rashid
Donald G. Heeman, Reg. No. 0286023
Jessica J. Nelson, Reg. No. 0347358
Randi J. Winter, Reg. No. 0391354
**SPENCER FANE**
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Tel.: (612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Sami H. Rashid (*pro hac vice*)
Kevin A. Janus (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010

26

Tel.: (212) 849-7000
samirashid@quinnemanuel.com
kevinjanus@quinnemanuel.com

Michael D. Bonanno (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
mikebonanno@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3685
jeremyandersen@quinnemanuel.com

Lewis A. Remele, Jr., Reg. No. 90724
Christopher R. Morris, Reg. No. 230613
**BASSFORD REMELE, P.A.**
100 South 5th Street, Suite 1500
Minneapolis, MN 55402
Tel.: (612) 333-3000
lremele@bassford.com
cmorris@bassford.com

William F. Hargens (*pro hac vice*)
Patrick E. Brookhouser, Jr. (*pro hac vice*)
**MCGRATH NORTH MULLIN & KRATZ,
PC LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Tel: (402) 341-3070
whargens@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com

27

***Counsel for Defendants JBS USA Food
Company, JBS Packerland, Inc., Swift Beef
Company, and JBS S.A.***

/s/   Ulrike B. Connelly
Susan E. Foster (*pro hac vice*)
Ulrike B. Connelly (*pro hac vice*)
Tiffany Lee (*pro hac vice*)
Hannah Parman (*pro hac vice*)
Sarah L. Schirack
Breanna C. Philips
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
tiffanylee@perkinscoie.com
hparman@perkinscoie.com
Sschirack@perkinscoie.com
Bphilips@perkinscoie.com

Jon B. Jacobs (*pro hac vice*)
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, DC 20005
Tel: (202) 654-1758
jbjacobs@perkinscoie.com

Barry G. Stratford (*pro hac vice*)
Kristine J. Beaudoin
Samantha J. Burke
**PERKINS COIE LLP**
2525 E. Camelback Road
Suite 500
Phoenix, Arizona 85016-4227
Tel: (602) 351-8000
bstratford@perkinscoie.com
KBeaudoin@perkinscoie.com
SBurke@perkinscoie.com

28

Caroline Gizem Tunca (*pro hac vice*)
**PERKINS COIE LLP**
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606
Tel: (312) 324-8400
ctunca@perkinscoie.com

David Chiappetta
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
DChiappetta@perkinscoie.com

Kristina Kaluza
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Tel: (612) 486-1520
kkaluza@dykema.com

*Counsel for Defendants Tyson Foods, Inc., and Tyson Fresh Meats, Inc.*