## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: PORK ANTITRUST LITIGATION | Case No. 18-cv-1776 (JRT/JFD) |
| IN RE: CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-md-3031 (JRT/JFD) |
| This Document Relates To:<br>*Sysco Corp. v. Agri Stats, Inc.*, Case No. 21-cv-1374 (D. Minn.), and *Sysco Corp. v. Cargill Inc.*, Case No. 22-cv-1750 (D. Minn.) | **REPORT & RECOMMENDATION** |

This matter is before the Court on a Motion to Enforce a settlement agreement allegedly concluded between plaintiff Sysco Corporation and some of the defendants in these two cases. (*In re: Pork Antitrust Litigation*, Case No. 18-cv-1776 ("*Pork*"), at Dkt. No. 2327; *In re: Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 ("*Cattle*"), at Dkt. No. 834.) The defendants are three JBS defendants: JBS USA Food Company ("JBS USA"), JBS Packerland, Inc. ("Packerland"), and JBS S.A.; plus defendant Swift Beef Company ("Swift"). The Court refers to these defendants collectively as "JBS".

The Court must decide whether and to what extent Sysco and JBS created a binding agreement between the parties to settle Sysco's claims against JBS for participating in a conspiracy "to fix, raise, maintain, and stabilize the price of pork[ and/or beef]" in violation of federal antitrust law. Complaint, *Sysco Corp. v. Agri Stats, Inc.*, No. 21-cv-1374 (D. Minn. filed Mar. 8, 2021) (Dkt. No. 1) ¶¶ 4, 228.

1

The U.S. District Court for the Northern District of Illinois, the Honorable Thomas Durkin, has found a settlement agreement between JBS and Sysco existed, and has further found that settlement agreement enforceable so as to terminate Sysco's claims against JBS in these two Minnesota cases and another MDL pending in the Northern District of Illinois. Principles of claim and issue preclusion bar relitigating the issue of whether the Sysco/JBS settlement agreements existed.

In addition, analyzing the settlement agreements from the perspective of Minnesota and Illinois contract law, the Court finds that the settlement agreements are enforceable because there is an agreement between the parties that is supported by consideration, notwithstanding that the agreement was not formally executed. The Court therefore recommends that JBS's motion be granted, that the settlement agreement be enforced, and that part of that enforcement of the settlement agreement be that Sysco's claims against the JBS defendants in both *Pork* and *Cattle* be dismissed with prejudice.

## **BACKGROUND**

### I.    **Factual & Procedural Background**

Sysco, a large food distributor and a direct-action plaintiff in these two cases, financed its litigation expenses through Burford Capital, which holds itself out as "the world's largest provider of commercial legal finance." *See* https://www.burfordcapital.com/about-us/ (last visited Jan. 6, 2025). The litigation finance contract between Sysco and Burford was amended to give Burford the authority to approve or disapprove of settlements. (Order Denying Mot. to Substitute Party 2, Dkt. No. 545.) After Sysco substantially completed negotiations to settle with the JBS defendants in these

cases on terms Burford did not favor, but before the settlement agreement was signed, Burford refused to permit the settlements. (*Id*.) The dispute between Sysco and Burford over settlement authority eventually generated an arbitration proceeding in New York, a New York state court action (later removed to the U.S. District Court for the Southern District of New York) to enforce the arbitration award, an action in the U.S. District Court for the Northern District of Illinois to stay the arbitration award, a Motion to Enforce Settlement in *In re: Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 (N.D. Ill.) ("*Broiler Chicken*") in the Northern District of Illinois, an appeal to the Seventh Circuit, and a Motion for Summary Judgment in *Broiler Chicken*.

Sysco changed legal counsel during the litigation over settlement authority, with Sysco's former counsel taking over representation of Carina, a "special purpose vehicle" established by Burford. Sysco assigned its claims in these cases (and in *Broiler Chicken*) to Carina, which appeared to have no assets other than Sysco's claims in these antitrust cases. Carina then moved under Fed. R. Civ. P. 25(c) to substitute itself for Sysco in the cases before the District of Minnesota. The Court denied the substitution motions. JBS now seeks to enforce the settlement agreements it asserts it negotiated to finality before the litigation over settlement authority and substitution of parties delayed entry of judgment.

At issue here is the enforceability of the agreement negotiated by Sysco and JBS before Burford obtained an arbitral panel injunction preventing Sysco from formally executing the settlement document. Because relitigation of the enforceability of the JBS/Sysco settlement agreement is barred by both claim preclusion and issue preclusion,

3

*and* because JBS and Sysco created a binding (though not formally executed) contract, the Court recommends that JBS's Motion to Enforce the settlement be granted.

### A.     *In re: Pork Antitrust Litigation*, Case No. 18-cv-1776

In March of 2021, Sysco filed suit in the Southern District of Texas against Defendants Agri Stats, Inc.; Clemens Food Group, LLC; Clemens Family Corporation; Hormel Foods Corporation; JBS USA Food Company; Seaboard Foods, LLC; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. *See* Complaint, *Sysco Corp. v. Agri Stats, Inc.*, No. 21-cv-1374 (D. Minn. filed Mar. 8, 2021) (Dkt. No. 1). Sysco's Complaint alleged a conspiracy among all the Defendants "to fix, raise, maintain, and stabilize the price of pork" in violation of Section One of the Sherman Act. *Id.* ¶¶ 4, 228. Sysco sought treble monetary damages under Section Four of the Clayton Act, *id.* ¶¶ 11, 239, and an injunction against further anticompetitive behavior under Section 16 of the Clayton Act, *id.* ¶¶ 11, 240.

On March 22, 2021, Sysco moved to transfer the action to the District of Minnesota for coordination with this MDL. Notice of Motion for Transfer filed with the Judicial Panel on Multidistrict Litigation ("JPML"), *Sysco Corp. v. Agri Stats, Inc.*, No. 21-cv-1374 (D. Minn. filed Mar. 22, 2021) (Dkt. No. 18). The JPML transferred the case, and it was consolidated into the MDL on November 14, 2021. *Sysco Corp. v. Agri Stats, Inc.*, No. 21-cv-1374, slip op. at 11 (D. Minn. filed Mar. 22, 2021) (Dkt. No. 34). The operative Complaint is the consolidated complaint filed by the direct-action plaintiffs, including Sysco, in *In re: Pork* MDL at Dkt. No. 1659.

### B.     *In re: Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031

4

In June of 2022, Sysco filed suit in the Southern District of Texas against Defendants Cargill, Inc.; Cargill Meat Solutions Corporation; JBS S.A; JBS USA Food Company; Swift Beef Company; JBS Packerland, Inc.; National Beef Packing Company; Tyson Foods, Inc.; and Tyson Fresh Meats, Inc. *See* Complaint, *Sysco Corp. v. Cargill, Inc.*, No. 22-cv-1750 (D. Minn. filed June 24, 2022) (Dkt. No. 1). Sysco's Complaint alleged a conspiracy among all the Defendants "to limit the supply, and fix the prices, of beef sold to Plaintiff in the U.S. wholesale market" in violation of Section One of the Sherman Act. *Id.* ¶¶ 2, 346. Sysco sought treble monetary damages under Section Four of the Clayton Act, *id.* ¶¶ 25, 357, and an injunction against further anticompetitive behavior under Section 16 of the Clayton Act, *id.* ¶¶ 25, 358–59. The case was transferred to the District of Minnesota on July 12, 2022, and consolidated into the *In re: Cattle* MDL on October 12, 2022. *Sysco Corp. v. Cargill, Inc.*, No. 22-cv-1750, slip op. at 4 (D. Minn. Oct. 12, 2022) (Dkt. No. 17). The operative Complaint is a consolidated complaint filed by the direct-action plaintiffs, including Sysco, in the *In re: Cattle* MDL at Docket No. 132.

### C.    *In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 (N.D. Ill.)

The third "protein" MDL relevant to this motion is *In re: Broiler Chicken Antitrust Litigation*, Case No. 16-cv-8637 (N.D. Ill.). JBS, Sysco, and Burford all play the same roles in *Broiler Chicken* as they do in *Pork* and *Cattle*, and the causes of action are the same, except that their subject is the broiler chicken industry, rather than the pork or beef industries. The *Broiler Chicken* case, unlike the Minnesota MDLs, is being heard by the Honorable Thomas Durkin, Senior District Judge in the Northern District of Illinois, and the litigation of the *Broiler Chicken* case is further along than are *Pork* and *Cattle*.

5

*Broiler Chicken* is relevant here because the settlement agreement at issue in these motions in *Pork* and *Cattle* purported to settle all claims between JBS and Sysco in all three cases. In addition, Judge Durkin has made significant rulings in *Broiler Chicken* that affect how the Court addresses the motions here, including an order granting JBS's motion to enforce settlement agreements in all three cases, *Beef, Pork*, and *Broiler Chicken*. *In re Broiler Chicken Antitrust Litig.*, 2024 WL 3011350, at *1 (N.D. Ill. June 14, 2024) ("June Durkin Order"),[1] and an order granting JBS's Motion for Summary Judgment. *In re Broiler Chicken Antitrust Litig.*, 2024 WL 5119953, at *2 (N.D. Ill. Dec. 16, 2024) ("December Durkin Order"). Judge Durkin also entered judgment as to Sysco's claims against JBS on December 24 and December 31 of 2024. *See In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 (N.D. Ill.) at Dkt. No. 7466 and 7469. Because Judge Durkin's orders were entered before this Report and Recommendation, they affect the Court's approach to these Minnesota motions.

## II.    <u>Legal Standards</u>

"It is well established that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Butler v. LeeAnn Chin's Cuisine*, No. CIV 07-cv-3317 (PJS/JJG), 2008 WL 819767, at *2 (D. Minn. Mar.

---

[1]  The effect of Judge Durkin's <u>June</u> order on JBS's motion to enforce the settlement both here and in *Broilers* is not free of ambiguity, in light of the Seventh Circuit's construction of Judge Durkin's order as not directing the parties to take any action. (*See* Sep. 5, 2024 Mandate of USCA Regarding Notice of Appeal, *In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 (N.D. Ill.), Dkt. No. 7373 ("[T]he order issued by the district court [is] not an injunction and places [appellants] under no obligations, and thus deprives us of appellate jurisdiction.")) To be clear, this Court considers Judge Durkin's <u>December</u> orders to have preclusive effect, as analyzed and discussed below.

25, 2008) (citing *Luigino's Inc. v. Societes des Produits Nestle S.A.*, No. Civ. 03–4186 (ADM/RLE), 2005 WL 735919, at *1 (D.Minn. Mar. 30, 2005). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Jackson v. Fed. Rsrv. Emp. Ben. Sys.*, No. CIV. 08-4873 (DSD/FLN), 2009 WL 2982924, at *2 (D. Minn. Sept. 14, 2009). Generally, under Minnesota law, "the party who asserts the validity of the alleged contract, maintains the burden of persuading the trier-of-fact that a contract actually exists, as well as in establishing the actual terms and conditions of that contract." *Upsher-Smith Lab'ys, Inc. v. Mylan Lab'ys, Inc.*, 944 F. Supp. 1411, 1425 (D. Minn. 1996) (citing *UFE Inc. v. Methode Electronics, Inc.*, 808 F.Supp. 1407, 1412–13 (D. Minn. 1993)).

### A. Preclusive Effect of *Broiler Chicken* Orders

Preclusion is a general term used to describe two distinct legal doctrines: claim preclusion (also referred to as *res judicata*) and issue preclusion (occasionally referred to as collateral estoppel). As their names imply, claim preclusion bars a court from hearing a legal claim that was or could have been brought in a previous case, while issue preclusion bars relitigation of issues that were previously established in another case.

> Under the doctrine of [claim preclusion], a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. … Under the doctrine of [issue preclusion], on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, (1979). As the Supreme Court stated in *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008):

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion . . . Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id*., at 748–749. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154 (1979).

The preclusive effect of a judgment under one state's law on a proceeding in a different state is governed by the law applied in the first judgment. *See Anderson v. City of St. Paul, Minnesota*, 849 F.3d 773, 777 (8th Cir. 2017) (citing Restatement (Second) of Judgments § 86; *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997)). Here, Judge Durkin's orders enforcing the settlement agreement in *Broiler Chicken* did so under Illinois law, *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2024 WL 3011350, at *2 (N.D. Ill. June 14, 2024) (citing *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (finding that "oral settlements are enforceable under Illinois law")), so the Court analyzes claim and issue preclusion as to this motion under Illinois law, as well.

In Illinois law, claim preclusion has three elements that must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there

is an identity of cause of action, and (3) there is an identity of parties or their privies. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (2001) (citing *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883 (1998). Illinois's requirements for the application of issue preclusion are very similar: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 478 (2001) (citing *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 744 N.E.2d 845 (2001); *American Family Mutual Insurance Co. v. Savickas*, 739 N.E.2d 445 (2000); *Talarico v. Dunlap*, 685 N.E.2d 325 (1997)). As it applies to claim and issue preclusion, "privity" means "a person so identified in interest with another that he represents the same legal right." *In re Marlar*, 267 F.3d 749, 754 (8th Cir. 2001); *see also Jones v. Syntex Lab'ys, Inc.*, 1 F. App'x 539, 542 (7th Cir. 2001) (Under Illinois law, privity exists "between parties who adequately represent the same interests.").

## B. Minnesota Contract Law

Independent of the preclusion issues presented here, the Court analyzes the validity of the settlement agreement under Minnesota law.[2] The correct standard under which the

---

[2] The parties disagree on whether to apply Minnesota or Illinois law to this dispute. (JBS Memo. in Supp. 3, n. 1, Dkt. No. 836; Sysco Memo. in Opp. 21–22, Dkt. No. 937.) The Court finds that the result is the same—enforcement of the settlement agreement—whether Minnesota or Illinois law applies. Ultimately, the jurisprudence on the validity and enforcement of settlement agreements is similar enough in the two states that, for the purposes of this analysis, there is no functional difference between the two. For the purposes of this motion, the Court will apply Minnesota law in its discussion of the validity of the parties' agreement. The result would not be different under Illinois law.

Court should address a motion to enforce a settlement agreement is the same as if the motion was one for summary judgment under Fed. R. Civ. P. 56. *Transclean Corp. v. Motorvac Techs., Inc.*, 2002 WL 31185886, at *2 (D. Minn. Sept. 30, 2002) ("[A] Motion to Enforce Settlement is dispositive and should therefore be treated as a motion for summary judgment."). This means that a motion to enforce a settlement presents a dispositive question. Therefore, the undersigned U.S. Magistrate Judge will only recommend that JBS's Motion be granted under Minnesota contract law if "there is no genuine dispute as to any material fact" regarding the formation of the agreement. Fed. R. Civ. P. 56(a).

"It is well established that settlement agreements are governed by principles of contract law." *Jackson v. Fed. Rsrv. Emp. Ben. Sys.*, No. CIV. 08-4873 (DSD/FLN), 2009 WL 2982924, at *2 (D. Minn. Sept. 14, 2009) (citing *MLF Realty L.P. v. Rochester Ass'n*, 92 F.3d 752, 756 (8th Cir. 1996) and *N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695, 697 (8th Cir. 1985)); *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971)). "Oral settlements are enforceable under well-established Minnesota law." *Schultz v. Dorel Juv. Grp., Inc.*, No. CIV. 13-558 (MJD/JSM), 2014 WL 1260734, at *4 (D. Minn. Mar. 24, 2014) (citing *Sabri v. Sabri*, No. C4–99–1844, 2000 WL 1051970, at *2 (Minn. Ct. App. Aug. 1, 2000) and *Jallen v. Agre*, 119 N.W.2d 739, 742–43 (Minn. 1963)). The requirements for enforcing oral settlement agreements are the same for the enforcement of any other contract, those being "offer, acceptance, and a meeting of the minds on the settlement's essential terms." *Id.* (citing *TNT Props., Ltd. v. Tri–Star Developers LLC*, 677 N.W.2d 94, 100–01 (Minn. Ct. App. 2004)). In establishing whether there has been offer and

acceptance, courts ignore the parties' intent and only consider "outward manifestation[s] of assent" to the settlement. *Id*. "When a settlement agreement has been reached on the material terms, that agreement may be enforced even where the parties expressly contemplated the subsequent execution of a written agreement." *Smith v. Unum Life Ins. Co. of Am.*, No. 19-cv-1659 (MJD/LIB), 2020 WL 1172028, at *3 (D. Minn. Feb. 5, 2020) (citing *Jackson v. Fed. Reserve Emp. Ben. Sys.*, No. 08-4873 (DSD/FLN), 2009 WL 2982924, at *3 (D. Minn. Sept. 14, 2009)). Once a court establishes that an attorney entered an agreement to settle a case on behalf of a client, "the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given. … This is a heavy burden." *Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 646 (8th Cir. 1987).

Minnesota law highly favors the settlement of claims without litigation, and settlement agreements are not lightly set aside by courts. *Johnson v. Sitzmann*, 413 N.W.2d 541, 545 (Minn. Ct. App. 1987) The party opposing enforcement of a settlement therefore bears the burden of defeating the settlement agreement. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). Finally, "an agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them." *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992). "Only those terms upon which the settlement hinges are considered material terms." *Smith v. Unum Life Ins. Co. of Am.*, No. 19-cv-1659 (MJD/LIB), 2020 WL 1172028, at *3 (D. Minn. Feb. 5, 2020). This

caselaw sets a high bar for Sysco in its efforts to avoid enforcement of its purported agreement with JBS.

## DISCUSSION

There are three key reasons why the Court recommends that JBS's motion be granted and Sysco's claims be dismissed. First, Sysco's claims against JBS are inactionable because they have been dismissed by Judge Durkin's orders in *Broiler Chicken* and are therefore precluded from further litigation. Second, Sysco is barred from relitigating the issue of whether there is an enforceable settlement agreement between Sysco and JBS by the doctrine of issue preclusion. Third, even if the Court could reach the merits of the parties' arguments under Minnesota contract law, there is an enforceable settlement agreement between JBS and Sysco, such that Sysco's claims against JBS should be dismissed.

## I.    Claim Preclusion

In his order granting JBS's motion to enforce the settlement agreement between JBS and Sysco, Judge Durkin wrote that his enforcement of the agreement, "will not interfere with the Minnesota proceedings between [JBS] and []Sysco—it will end them. There will no longer be any pending claims for which there is jurisdiction to interfere with." *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2024 WL 3011350, at *3 (N.D. Ill. June 14, 2024). This Court agrees.

Judge Durkin's orders in *Broiler Chicken* disposed of any claims Sysco brought in this case against JBS in *Pork* and *Cattle* because he found that the agreement, which settles the claims in all three cases, was enforceable. In order to establish under Illinois law that a

claim is barred by the doctrine of claim preclusion, a party must show: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (2001) (citing *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883 (1998)). There can be no genuine dispute that each of these elements are met.

There was no serious debate between the parties either in their briefing or in oral argument that the latter two elements of claim preclusion are met. The broad cause of action in all three of the relevant "protein" cases is the same: that JBS and other defendants violated federal antitrust law by engaging in anticompetitive behavior, which resulted in increased cost to Sysco of beef, pork, or chicken, as the case may be. While the different cases address different products, the legal allegations in all three cases are identical. More specifically, the claim at issue in this motion (i.e., that Sysco was violating the settlement agreement it concluded with JBS by continuing this litigation) is also identical to that addressed in Judge Durkin's June and December Orders. Additionally, there is no real debate over the identity of the parties in these cases. Though Judge Durkin refers to "Pilgrim's Pride" extensively in his order, the parties and the Court both know that Pilgrim's Pride is a chicken-specific subsidiary of JBS and was throughout the events at issue. Additionally, Sysco, Burford, and Carina are all in contractual privity with one another through their litigation funding agreement. The actions that gave rise to the agreement that Judge Durkin found to be binding on the parties were the same actions taken

by the same individuals that created the same contract to settle all three cases. It is hard to

imagine two cases with greater identity between the claims and parties as this one.

The only element of claim preclusion that was ever in doubt or genuinely contested

here was whether Judge Durkin had entered final judgment on the merits, satisfying the

first element of claim preclusion under Illinois law. As of December 31, 2024, there can

be no doubt that element was met. Though it came in multiple steps, *see In re Broiler*

*Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill.) (Dkt. Nos. 7272, 7451, 7466, 7469),

Judge Durkin made it abundantly clear that his December Order on JBS's Motion for

Summary Judgment in *Broiler Chicken* constituted a final judgment on the merits.

> The Court's 12/16/2024 Order, Dkt. 7451 (the "SJ Order"), is *a final order*
> in that it disposes of Carina's claims against Pilgrim's Pride Corporation
> ("Pilgrim's") [JBS]. And because there will be minimal factual overlap
> between the appeal from this judgment and any future appeal in the case, an
> entry of *final judgment* would serve the interest in judicial economy, meaning
> there is *no just reason for delay*. Accordingly, the Court enters *final judgment*
> in favor of Defendant Pilgrim's [JBS] on the claims identified in the SJ
> Order.

Judgment, *Broiler Chicken*, No. 16 C 8637 (N.D. Ill. Dec. 31, 2024) (Dkt. No. 7469)

(emphasis added). That Judgment and Judge Durkin's order granting JBS's Motion for

Summary Judgment barred "Carina [from] continuing prosecution [of] the claims against

[JBS]." December Durkin Order at 4. Although Judge Durkin stated that the claims "in the

District of Minnesota are not the subject of this motion for summary judgment, and the

Court need not address them further," *id.*, the December order, along with the entries of

judgment enforcing it, disposed of any claims Sysco and Carina may have had against JBS

in *Broiler Chicken*, *Pork*, and *Cattle* because the agreement itself, which Judge Durkin

found to be valid, was a "global settlement" of all three cases. *Id*. at 3; June Durkin Order at 6. There is simply nothing more to be decided on the issue of whether the settlement between JBS and Sysco is enforceable in this case.[3]

## II.    <u>Issue Preclusion</u>

Whether there is an enforceable contract between Sysco and JBS also cannot be relitigated because it is barred by issue preclusion, a doctrine which is similar to, but distinct from, claim preclusion. Illinois's requirements for the application of issue preclusion are nearly identical to its requirements for claim preclusion: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 478 (2001).

An issue preclusion analysis focuses on whether this Court may address the enforceability of the settlement agreement between JBS and Sysco, such as whether there was offer, acceptance, and consideration (i.e., a "meeting of the minds") supporting the existence of an enforceable agreement between the two. The Court finds it is precluded from considering whether JBS and Sysco entered a valid and binding settlement agreement before Sysco was enjoined from executing the contract because that issue was fully decided on the merits in *Broiler Chicken*. Judge Durkin clearly stated, in his December 16 order

---

[3]  In itself, this decision is sufficient to dispose of JBS's motion to enforce. The Court continues for completeness and because Judge Durkin's orders are currently being appealed to the Seventh Circuit.

granting JBS's motion for summary judgment in *Broiler Chicken*, that "the documentary evidence demonstrated an unambiguous meeting of the minds regarding settlement" and that "no reasonable fact finder could find otherwise." *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2024 WL 5119953, at *1 (N.D. Ill. Dec. 16, 2024)

Comparing the question now before this Court with the question asked of Judge Durkin in June and December shows that under Illinois law issue preclusion bars relitigation. Each of the three elements of issue preclusion is met. First, the issue is the same: whether JBS and Sysco reached an enforceable settlement agreement in 2022 when their respective in-house counsels communicated via phone and email about the agreement. Judge Durkin definitively answered that question in the affirmative.

Second, as discussed above, there was a final judgment on the merits in *Broiler Chicken* as to JBS and Sysco on December 31, 2024 (at the very latest), when judgment was entered by the Clerk of Court for the Northern District of Illinois. *Broiler Chicken* at Dkt. No. 7469. That judgment unequivocally states that the judgment is final as to these parties for the purposes of appeal, and there is no reason a judgment may be final for appeal and not final for issue preclusion. To the contrary, courts have found that the standards are the same. *Allian v. Allian*, No. 18 C 3825, 2018 WL 6591422, at *4 (N.D. Ill. Dec. 14, 2018) ("The 'final and appealable' standard governing claim preclusion under Illinois law is akin to the standard governing whether an appellate court has jurisdiction to review a trial court's order. … Indeed, Illinois courts generally treat as interchangeable finality for appeal purposes and finality for preclusion purposes."); s*ee also Abbott Lab'ys v. Dey, L.P.*, 110 F. Supp. 2d 667, 671 (N.D. Ill. 2000) ("[T]he law in the Seventh Circuit is clear that

exhaustion of appellate remedies is not a normal requirement of issue preclusion, and a final judgment by a district court has preclusive effect even though judgment is pending on appeal.").

Finally, there is no question that the party against whom issue preclusion is asserted (here, Sysco or Carina or both) was either a party or in privity with a party to the prior adjudication. Sysco, Burford, and Carina are all in privity with one another by virtue of their litigation funding agreement, which assigns Sysco's interest in these cases to Carina, a wholly owned subsidiary of Burford. So, for purposes of issue preclusion, they effectively stand as one party. Because all three elements for issue preclusion under Illinois law are met as to the enforceability of the settlement agreement between JBS and Sysco, the Court may not reach the merits of that issue and must recommend that JBS's Motion to Enforce the Settlement be granted, that judgment be entered in favor of JBS, and that Sysco's claims be dismissed with prejudice.

## III.  **Minnesota Contract Law**

If the Court could reach the merits of JBS's motion,[4] the determinative question would be whether JBS and Sysco entered into a binding settlement agreement that bars Sysco or the assignee of its interest in this litigation, Carina, from continuing to litigate this case. The Court agrees with Judge Durkin's analysis in his June and December orders[5] and

---

[4]  The Court includes this discussion even though the preclusion issues discussed above are dispositive of this motion. The Court is aware, however, that appellate litigation concerning Judge Durkin's decision is pending.

[5]  Judge Durkin analyzed the issue under Illinois law, but the Court analyzes the issue under Minnesota law. The Court does so not because it believes that Judge Durkin's choice of

finds that *independent of previous litigation over this issue*, there is no genuine dispute of material fact that JBS and Sysco entered a binding agreement to settle Sysco's claims against JBS, even though Sysco did not formally execute the agreement.

Minnesota follows the basic common law approach to contract formation, so because settlement agreements are simply a class of contracts, JBS must prove that either JBS or Sysco made an offer to enter the settlement agreement, that the other of the two accepted that offer, that the agreement was supported by consideration, and that the two parties had "a meeting of the minds on the settlement's essential terms." *Schultz v. Dorel Juv. Grp., Inc.*, No. CIV. 13-558 (MJD/JSM), 2014 WL 1260734, at *4 (D. Minn. Mar. 24, 2014) (citing *TNT Props., Ltd. v. Tri–Star Developers LLC*, 677 N.W.2d 94, 100–01 (Minn. Ct. App. 2004)). In establishing whether there has been offer and acceptance, courts only consider "outward manifestation[s] of assent" to the settlement. *Id*. A meeting of the minds "does not require a subjective mutual intent … but may be based on objective manifestations whereby one party by his words or by his conduct, or by both, leads the other party reasonably to assume that he assents to and accepts the terms of the other's offer." *Christianson v. Jansen*, No. A11-1833, 2012 WL 2368914, at *1 (Minn. Ct. App. June 25, 2012) (quoting *Holt v. Swenson*, 252 Minn. 510, 516, 90 N.W.2d 724, 728 (1958)).

Minnesota law has a strong public policy favoring the settlement of civil actions. *Johnson v. Sitzmann*, 413 N.W.2d 541, 545 (Minn. Ct. App. 1987). After the moving party presents a *prima facie* showing that an agreement is enforceable, the party opposing

---

law analysis was incorrect but to illustrate that, regardless of whether it is assessed under Minnesota or Illinois law, the parties' agreement is enforceable.

enforcement bears the burden of defeating it. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). Additionally, "an agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them." *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992). "Only those terms upon which the settlement hinges are considered material terms." *Smith v. Unum Life Ins. Co. of Am.*, No. 19-cv-1659 (MJD/LIB), 2020 WL 1172028, at *3 (D. Minn. Feb. 5, 2020).

The analysis here is straightforward. JBS and Sysco exchanged a series of offers and counteroffers throughout 2021 and 2022, as they negotiated the terms of their settlement agreement. (Sysco Memo. in Opp. 10–11, Dkt. No. 937.) After mediation in early 2022 but before Sysco filed its claim in *Cattle*, Sysco stated that it would make a "global demand" to settle all three cases. (*Id*. at 12.) In June, after its *Cattle* complaint was filed, Sysco demanded a specific amount of compensation in exchange for dismissal of its claims in *Broiler Chicken*, *Pork*, and *Cattle*. (*Id*.) JBS made a counteroffer, and in both offers, the parties were clear that their intentions were to settle all three cases together, rather than individually. (*Id*.)

By the end of August 2022, the parties, through their respective in-house counsels, had reached a dollar amount with which they were each satisfied, and that satisfaction was memorialized in an email exchange between Ted Sangalis, representing JBS, and Barrett Flynn, representing Sysco. After the two spoke via telephone on August 24, 2022, Mr. Sangalis wrote an email to Mr. Flynn putting the agreement in writing, saying "We have a

deal at ███ for settlement of Broilers, Pork, and Beef antitrust cases."[6] (*Id.* at 13.) After not receiving a response that day, Mr. Sangalis wrote Mr. Flynn again on August 25, saying "JBS and Pilgrim's are *offering* [amount redacted] for a global settlement of Broilers, Pork, and Beef antitrust cases." (*Id.*) (emphasis added) Two weeks later, on September 9, Mr. Flynn responded, "Ted – sorry for the delay. *We accept*." (JBS Memo. in Supp. 11, Dkt. No. 836 (emphasis added).) That email also asked Mr. Sangalis to work with Sysco's outside counsel to complete the agreement and work on drafting the details. (*Id.*)

JBS argues that this exchange was enough to create a binding settlement agreement because there was an offer by JBS, acceptance by Sysco, and the material terms of their agreement (i.e., the amount of money to be paid for the dismissal of Sysco's claims) all existed and were agreed to, unequivocally. (JBS Memo. in Supp. 23–26, Dkt. No. 836.) Sysco makes several arguments regarding the exchange including that neither party manifested an intent to be bound by the email exchange, that their agreement was always meant to be memorialized in a written, executed instrument, and that the parties did not agree on certain material terms of the agreement. (Sysco Memo. in Opp. 29–39, Dkt. No. 937.)[7] Sysco's chief argument here is that there are genuinely disputed material facts regarding the parties' settlement negotiations that require the issue of the enforceability of the agreement to be submitted to a jury. (*Id.* at 8–9.)

---

[6] The parties do not dispute the amount of money agreed to be paid for the dismissal of Sysco's claims. This payment satisfies the consideration element of contract formation.

[7] Sysco's arguments here are the same arguments rejected by Judge Durkin in *Broilers*.

The Court finds that an agreement was reached between JBS and Sysco, and that agreement should be enforced. While the parties certainly did not finalize every detail of the agreement they envisioned, they came to an enforceable agreement and there are no grounds for setting that agreement aside. Mr. Sangalis's offer of a specific dollar amount "for a global settlement of Broilers, Pork, and Beef" was accepted by Mr. Flynn when he said, unambiguously, "[w]e accept." The terms of the agreement are that in exchange for the specified amount of money, Sysco would dismiss its claims against JBS in the three cases. Sysco goes to great lengths to discuss various provisions that the parties had discussed including in their formal agreement, arguing that they were all material terms on which lack of agreement nullifies the agreement that they did reach.

Essentially, Sysco is advocating that the Court nullify the core of the agreement (a specific amount of money in exchange for the dismissal of claims) because certain non-core provisions still needed working out. The Court finds this argument unpersuasive. While the agreement may not have taken the form the parties initially imagined or included every detail (or even every important detail), Mr. Sangalis and Mr. Flynn, on behalf of JBS and Sysco, entered *an* agreement to settle the cases for a specific amount of money with clear manifestations of assent. As trained attorneys, they knew that contracts could be entered without formal execution and that, as long as there exists an offer, acceptance, and consideration, a contract will be formed. Knowing those things, these lawyers used words with specific legal meanings ("JBS and Pilgrim's are *offering*"; "*We accept*.") in their email exchange through their companies' respective email systems, with their email signatures included on each message.

Sysco also argues, in a footnote, that "there remains a serious question about whether a ███████ settlement in complex litigation would ever be consummated through a one-line email exchange between mid-level in-house counsel." (Sysco Memo. in Opp. 35–36 n. 11, Dkt. No. 937.) The "heavy burden" of proving that an attorney entering a settlement agreement on behalf of a client was not authorized to do so is placed on the party seeking to avoid enforcement. *Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 646 (8th Cir. 1987). Here, Sysco's argument is simply to express incredulity that anyone would think these lawyers had the authority to conclude a settlement agreement but makes no substantive argument under agency law that Mr. Sangalis and Mr. Floyd were not authorized to enter the agreement. The "heavy burden" has not been met. For the sake of completeness, however, the Court concludes that Sysco and JBS bestowed upon Mr. Sangalis and Mr. Floyd the requisite authority to settle the claims at issue. Both parties characterize the two attorneys as "primary" or "principal" negotiators, and their respective titles were "Corporate Counsel" and "Associate General Counsel – Litigation & Regulatory". (JBS Memo. in Supp. 10, Dkt. No. 836; Sysco Memo. in Opp. 30, Dkt. No. 937; Sealed Ex. A to JBS Memo. in Supp. 11, Dkt. No. 838.) These roles, assigned to Mr. Sangalis and Mr. Floyd by their respective employers, represent sufficient "conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him to act in a particular manner on the principal's account" to equip each with express authority to enter into the settlement agreement. *Harris v. Arkansas State Highway & Transp. Dep't*, 437 F.3d 749, 751 (8th Cir. 2006).

While each and every provision of their various draft agreements may not be enforceable because the parties left the bargaining table without finalizing the formal agreement, *an* agreement—dismissal of claims by Sysco in exchange for a specific amount of money from JBS—was reached and must be enforced. Here, JBS has performed its contractual duties by rendering payment of the agreed-upon amount into Sysco's bank account, (Sysco Memo. in Opp. 25, Dkt. No. 937) but Sysco refuses to perform by dismissing its claims voluntarily. This is proper grounds for JBS's Motion to Enforce Settlement in both *Pork* and *Cattle* to be granted in full.

## CONCLUSION

The Court finds that Sysco's claims against the JBS Defendants in *Pork* and *Cattle* cannot be further litigated in the District of Minnesota because those claims are precluded by the proceedings in the Northern District of Illinois before Judge Thomas Durkin. Even if Sysco's claims are not entirely barred from litigation in this District, the issue of the enforceability of the settlement agreement between Sysco and JBS is precluded from further litigation because Judge Durkin issued a final judgment as to that issue. Finally, even if the Court could reach the merits of the parties' arguments regarding the enforceability of the agreement, there is no genuine dispute of material fact as to whether JBS and Sysco entered an enforceable settlement agreement under Minnesota law wherein Sysco agreed to dismiss its claims in *Broiler Chicken*, *Pork*, and *Cattle* in exchange for a specified sum of money by virtue of an email exchange between Mr. Sangalis and Mr. Floyd in August and September of 2022.

23

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant JBS's Motion to Enforce Settlement with Sysco Corporation in *In re: Pork Antitrust Litigation*, Case No. 18-cv-1776 (Dkt. No. 2327) be **GRANTED**;

2. Defendant JBS's Motion to Enforce Settlement and Summary Dismissal of Sysco Corporation's Claims in *In re: Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 (Dkt. No. 834) be **GRANTED**; and

3. Plaintiff Sysco Corporation's claims in both *In re: Pork Antitrust Litigation*, Case No. 18-cv-1776 and *In re: Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 be **DISMISSED**.

Date: January 30, 2025                              *s/ John F. Docherty*
                                                   JOHN F. DOCHERTY
                                                   United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).