# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE CATTLE AND BEEF ANTITRUST LITIGATION*<br><br>This Document Relates to:<br><br>*Consumer Indirect Purchaser Plaintiff Action* | No. 0:22-md-03031-JRT-JFD |

**DECLARATION OF SHANA E. SCARLETT IN SUPPORT OF CONSUMER INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS WITH CARGILL AND TYSON DEFENDANTS AND APPROVAL OF NOTICES, <u>PLAN OF NOTICE AND PLAN OF ALLOCATION</u>**

I, Shana E. Scarlett, state under oath, as follows:

1. I am a partner at Hagens Berman Sobol Shapiro LLP. I am admitted to this Court *pro hac vice* and am one of the Interim Co-Lead Counsel (along with Lockridge Grindal Nauen PLLP) appointed by the Court to represent the Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") in this litigation. I have full knowledge of the matters stated herein and would testify to these facts if called upon.

2. Consumer IPPs seek preliminary approval of the settlement with Cargill, Inc. and Cargill Meat Solutions Corporation ("Cargill"). This settlement provides $32.5 million in total relief to the Consumer IPP class. The settlement is the result of arm's-length negotiations, which provides substantial monetary and non- monetary relief to the Consumer IPP class.

3. Consumer IPPs also seek preliminary approval of the settlement with Tyson Foods, Inc. and Tyson Fresh Meats, Inc. ("Tyson"). This settlement provides $55 million in total relief to the Consumer IPP class. The settlement is the result of arm's-length negotiations, which provides substantial monetary and non- monetary relief to the Consumer IPP class.

4. Consumer IPPs provided Cargill and Tyson with a copy of this, motion, the accompanying documents, and the proposed notices. They do not have any objections, although Cargill disagrees with the inclusion of Kroger as one of the options for class members to select for digital payments. Co-Lead Counsel's judgment, as well as the claims administrator, is that inclusion of Kroger is in the best interests of the class with respect to this settlement as it has the broadest availability to class members nationwide with respect

to selecting a grocery store option in payment for releasing claims relating to a price-fixed grocery product (i.e., beef). Cargill's concern is based on Kroger being a Direct Action Plaintiff (DAP) in this action that would experience a potential windfall from the Consumer settlement if Kroger is included as an option for digital payments. In Consumer IPPs view, that Kroger has sued Cargill directly in the MDL is not relevant to the claims administration of the Consumer IPP class. While it is unfortunate that Cargill disagrees with this piece of the distribution plan, because the grievance is not relevant to the Consumer IPP case, and because Kroger is an important piece of the distribution plan, Consumer IPPs have not acquiesced to Cargill's concern.

5. From the beginning of the litigation, Hagens Berman and LGN have acted as Co-Lead Counsel on behalf of the Consumer IPP class. As Co-Lead Counsel, these two firms have spent tens of thousands of hours pursuing the claims of the class. This case has involved intense depositions: 79 depositions of Defendant employees, 13 non-party depositions noticed by plaintiffs; 25 non-party depositions noticed by Defendants; defending the depositions of the 28 Consumer IPP class representatives; deposing Defendants' class certification expert (Dr. Stiroh) and defending the deposition of Consumer IPPs' class certification expert (Dr. Mangum).

6. Document discovery in this case has been no less intense. Defendants have produced over 3.6 million documents that have been reviewed, catalogued, and distilled by attorneys representing the classes, including many attorneys representing the Consumer IPPs. And Consumer IPPs subpoenaed 36 non-parties for data and information relating to

their claims and data to perform an analysis of the pass-through of overcharges to the consumer class.

7. Unlike many other civil antitrust actions, this case was developed and brought without the benefit of any adverse findings by the U.S. Department of Justice ("DOJ") or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the alleged conspiracy was identified by Consumer IPPs through the use of investigators and economists, leading to their initial complaint filed against beef producers by downstream purchasers – the Consumer IPP complaint. Cargill and Tyson deny the alleged conspiracy and any involvement in it.

8. The settlement between Cargill and Consumer IPPs is the product of confidential, intense, arm's-length negotiations and includes both monetary relief for the class and cooperation in the Consumer IPPs' litigation against the non-settling Defendants. Both parties were represented by experienced and highly sophisticated counsel. The negotiations were contentious, hard-fought, and fully informed and lasted nearly five months. The long-form settlement agreement was signed by both parties on August 22, 2025 ("Cargill Settlement Agreement"). In my opinion as co-lead counsel for the Consumer IPP class, this settlement is fair and reasonable in light of Cargill's market share of class products, the factual record as to Cargill, and the significant cooperation that Cargill agrees to provide.

9. The Cargill Settlement Agreement allows Cargill to terminate the agreement at its sole discretion if a certain number of class members request exclusion. In the opinion

of Co-Lead Counsel, the likelihood of such a provision being invoked is very low and does not present a significant risk to this settlement.

10. The settlement between Consumer IPPs and Tyson required the work of an experienced mediator, Fouad Kurdi. The parties first began discussing settlement in April 2025. Discussions lasted months, and were the product of confidential, intense, arm's-length negotiations. Both parties were represented by experienced and highly sophisticated counsel. The long-form settlement agreement was signed by both parties on September 29, 2025 ("Tyson Settlement Agreement"). In my opinion as co-lead counsel for the Consumer IPP class, this settlement is fair and reasonable in light of Tyson's market share of class products and the significant cooperation that Tyson agrees to provide.

11. The proposed Tyson Settlement Class is the same as the one contained in the Cargill Settlement Agreement, and the same as the one currently proposed in Consumer IPPs' motion for class certification.

12. The Tyson Settlement Agreement allows Tyson to terminate the agreement at its sole discretion if a certain number of class members request exclusion. In the opinion of Co-Lead Counsel, the likelihood of such a provision being invoked is very low and does not present a significant risk to this settlement.

13. Consumer IPPs have had a chance to adequately assess the merits of their claims and Cargill's and Tyson's defenses. The investigation into this conspiracy began months before the filing of the complaint, as Consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by Defendants,

press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission.

14. After the motions to dismiss were mostly denied in September 2021, discovery began in earnest. Discovery was intense, involving several rounds of written discovery, dozens of defense witness depositions, production of millions of pages of documents, and subpoenas to dozens of non-parties. In his expert report in support of the Consumer IPPs' motion for class certification, Dr. Russell W. Mangum relied upon approximately 118 gigabytes of cleaned data from Defendants (which equals 46,616,919 transactions (rows) with 78 fields (columns), and 143 gigabytes of cleaned data from non-parties (which equals 138,296,057 transactions (rows) with 72 fields (columns). To put this vast amount of data in context, a single Microsoft Word document with a file size of 261 gigabytes would be approximately 16,965,000 pages in length. The work behind this litigation has been significant.

15. These settlements provide significant relief for the Consumer IPP class. Consumer IPPs' expert, Dr. Mangum, estimates that Cargill has approximately 21.8 percent of the market for Consumer IPP class products; Tyson is estimated to have 34 percent. The Cargill settlement reflects a valuation of approximately $1.49 million for every market share point. Said differently, if all Defendants settled on the same terms as Cargill, adjusted for their market shares, the case would settle in total for $149 million. The Tyson settlement reflects a valuation of $1.62 million per market share point, reflecting a total settlement of $162 million if all Defendants settled on the same terms as Tyson.

16. Looked at through a different lens, Cargill settled for approximately 8.0 percent of the single damages attributable to them by Dr. Mangum in this litigation, and Tyson settled for approximately 8.6 percent of the single damages attributable to them by Dr. Mangum in this litigation.[1] The following chart shows these measurements:

| Def. | Mkt. Share Class Products | Settlement | Consumer Mkt. Share Pt. | Damages | % Recovery |
|---|---|---|---|---|---|
| Cargill | 21.8% | $32,500,000 | $1.49 | $408,662,702 | 8.0% |
| Tyson | 34.0% | $55,000,000 | $1.62 | $636,466,772 | 8.6% |
| **Total** | | **$87,500,000** | | | |

17. Class counsel has discussed these settlements with each of the named representatives. Each representative has approved the terms of this settlement and remains apprised of the status of the case.

18. In selecting a notice and claims administrator, class counsel sent a request for proposal to multiple nationwide claims administrators. Class Counsel reviewed the bids and tried to align the bids to be as close a comparison as possible. Class Counsel required each vendor to make the following commitments:

- [The Administrator] will disclose all related entities that it intends to engage in this litigation.

- [The Administrator] does not have and will not enter into an agreement or financial arrangement with another entity by which it receives any financial

---

[1] Dr. Mangum estimates total damages to the Consumer IPP class as $1.9 billion. Mangum Reply ¶ 268. ECF No. 1267.

compensation in any way related to this Settlement or Litigation other than compensation expressly agreed to and directed by Class Counsel.

- [The Administrator] does not have a personal relationship (including but not limited to familial, romantic, or financial/business) with any Class Counsel employee, partner, and/or owner.

- [The Administrator] agrees that any digital payment cards and gift cards that are never redeemed, claimed, or activated shall be treated the same as uncashed checks.

19. In addition to these commitments, Class Counsel asked each vendor to commit to a cap of costs for notice and distribution in this case. Epiq met all of these conditions. Epiq has committed to a cap of $1.772 million for the notice and claims distribution in this case. If there is a change of circumstances that warrants a deviation, Class Counsel will return to this Court to provide an explanation. Epiq has agreed to this process. Class Counsel believes that these disclosures and commitments are in the best interests of the class and ensure that the class's funds are being zealously guarded. Consumer IPPs request appointment of Epiq as the notice and claims administrator.

20. Consumer IPPs subpoenaed and received contact information for approximately 36 million potential class members (although deduplication has not yet occurred), from non-parties Walmart, Sam's Club, and Costco. Amazon has agreed to provide direct notice to another significant number of class members who purchased class products.

21. Attached hereto as **Exhibit A** is a true and correct copy of the Long-form Settlement Agreement Between Consumer Indirect Purchaser Class Plaintiffs and Cargill, dated August 22, 2025.

22. Attached hereto as **Exhibit B** is a true and correct copy of the Long-form Settlement Agreement Between Consumer Indirect Purchaser Class Plaintiffs and Tyson, dated September 29, 2025.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 6th day of October in Park City, Utah.

             */s Shana E. Scarlett*
             SHANA E. SCARLETT

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system. Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF system.

DATED: October 6, 2025                    *s/ Shana E. Scarlett*
                                                            SHANA E. SCARLETT