# EXHIBIT A

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE CATTLE AND BEEF ANTITRUST LITIGATION* | No. 0:22-md-03031 (JRT/JFD) |
| This Document Relates to: | Honorable John R. Tunheim |
| *CONSUMER INDIRECT PURCHASER PLAINTIFFS' ACTION* | Honorable John F. Docherty |

### LONG-FORM SETTLEMENT AGREEMENT BETWEEN CONSUMER INDIRECT PURCHASER CLASS PLAINTIFFS AND CARGILL, INC. AND CARGILL MEAT SOLUTIONS CORPORATION

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 22nd day of August, 2025 ("Execution Date") by and between the Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs" or "Plaintiffs")[1] on behalf of a proposed Settlement Class, as defined herein, through Interim Co-Lead Counsel[2] for the proposed Settlement Class, and Cargill, Incorporated, Cargill Meat Solutions Corporation, and all of their predecessors; successors; assigns; and any and all past, present, and future parents, owners, divisions, departments, subsidiaries, affiliates, directors, officers, agents, and employees (collectively, "Settling Defendant" or "Cargill," and, together with the Consumer IPPs, the "Parties") in the above-captioned action (the "Action").

WHEREAS, Consumer IPPs on behalf of themselves and as representatives of the Settlement Class of similarly situated persons or entities allege in the Action, among other things,

---

[1] As used herein, "Consumer IPPs" or "Plaintiffs" shall mean: Kenneth Peterson, Jason Falbo, Sharon Dawson-Green, Lisa Melegari, Cindy Abernathy, Andrew Cohen, Marcelo Lopez, Stacey Troupe, Eric Gauchat, Sharon Killmon, Karen Carter, Charlie Morgan, Brent Rasmussen, David Renz, Kent Winchester, Brenda King, Robert Trepper, Michelle Oversen, William Gee, Jacquelyn Watson, John Shupe, Martin Jarmulowicz, Harold M. Nyanjom, Mark Sperry, Dan Campbell, Craig Margulies, Lindsey Lemoi, and Leigh Tiller.

[2] As used herein, "Interim Co-Lead Counsel" shall mean: Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen PLLP. *See* No. 19-01129 (D. Minn.), ECF No. 68.

that Cargill participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – "from at least 2015 to the present to fix, raise, maintain, and stabilize the price of beef." (Consumer IPPs' Sixth Amended Class Action Complaint, ECF No. 757, ¶ 5);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent the proposed class of indirect purchasers of Beef (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Cargill in any way arising out of or relating in any way to the indirect purchase of Beef (as hereinafter defined) produced, processed or sold by Cargill or any of the other Defendants or their co-conspirators for consumer use;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, Consumer IPPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of Consumer IPPs to enter into this Settlement Agreement with Cargill to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Consumer IPPs and the Settlement Class;

WHEREAS, Cargill denies all allegations of wrongdoing in the Actions. However, despite its belief that it is not liable for, and has good defenses to, the claims alleged in the Action, Cargill desires to settle the Action, and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation of the Action or of any action or proceeding relating to the matters being fully settled and finally put to rest in this Settlement Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the Parties that the claims of the Consumer IPPs and the

Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Cargill subject to Court approval:

1.  <u>General Definitions</u>. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

    a.  "Action" means the putative class action filed by Consumer IPPs in the above-captioned proceeding.

    b.  "Beef" means beef, whether fresh or frozen, made from chuck, loin, rib, or round primal cuts. For this lawsuit, beef excludes any product that is marketed as USDA Prime, organic, No Antibiotics Ever ("NAE"), antibiotic free, 100% grass-fed, kosher, halal, certified humane, Wagyu, "American-Style Kobe Beef," as well as any products that are ground, marinated, seasoned, flavored, breaded, or cooked.

    c.  "Cargill Released Parties" "Released Entities" means, collectively and individually, Cargill together with any and all of Cargill's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Released Entities" does not include any Defendant other than Cargill named by the Consumer IPPs in the Action, either explicitly or as a third-party beneficiary.

    d.  "Complaint" means the Consumer Indirect Purchaser Plaintiffs' Sixth Amended Class Action Complaint, ECF No. 757.

    e.  "Covered Conduct" means any actual or alleged act, failure to act, agreement, negligence, statement, error, omission, breach of any duty, conduct, event,

transaction, agreement, service, work, misstatement, misleading statement, or other activity of any kind whatsoever, from August 1, 2014 through the date the Court grants Preliminary Approval of this Settlement Agreement, arising from or relating in any way to the factual predicate of the Action, including, but not limited to, allegations that Cargill and co-conspirators agreed, or that Cargill otherwise engaged in anticompetitive conduct, to: (1) fix, maintain, stabilize, and/or suppress fed cattle slaughter or beef production; (2) fix, maintain, stabilize, and/or suppress the amount or timing of fed cattle cash purchases; (3) fix, maintain, stabilize, and/or suppress market share levels; and/or (4) fix, maintain, stabilize, and/or increase prices paid by purchasers for beef. For the sake of clarity, this release is not meant to release claims brought on behalf of the classes in the *Cattle Action* or *the Indirect Seller Action* in *In re Cattle and Beef Antitrust Litigation.*

f.   "Court" means the United States District Court for the District of Minnesota.

g.   "Defendants" means JBS USA Food Company, Swift Beef Company, JBS Packerland, Inc., Cargill, Inc., Cargill Meat Solutions Corporation, National Beef Packing Company, LLC, Tyson Foods, Inc., and Tyson Fresh Meats, Inc.

h.   "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Cargill for the benefit of the Settlement Class.

i.   "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and Consumer IPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 9 and 10 below.

j.   "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement and the settlement pursuant to Federal

Rule of Civil Procedure 23 and dismisses Cargill with prejudice from the Action.

k. "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

l. "Interim Co-Lead Counsel" means Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen PLLP.

m. "Indirect Purchaser States" means Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

n. "Person" means without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business.

o. "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

p. "Released Claims" means any and all claims, (including, but not limited to, any Sherman Act, Clayton Act, Packers and Stockyards Act, Commodity Exchange Act, and/or federal, state, or common law unfair competition or anticompetitive conduct claims) including unknown claims, against the Released Entities that directly or indirectly are based on, arise out of, or in any way relate to or concern

the Covered Conduct occurring prior to the Court's Order Preliminary Approving this Settlement Agreement. Without limiting the foregoing, "Released Claims" include any claims that have been, are, or could be asserted against the Released Entities by any Releasor in any federal, state, or local action or proceeding (whether judicial, arbitral, or administrative) directly or indirectly based on, arising out of, or relating to, in whole or in part, the Covered Conduct, whether or not such Releasor has brought such action or proceeding. The Parties intend that this term be interpreted broadly.

q. "Releasors" means, collectively and individually, Consumer IPPs, the Settlement Class, and all members of the Settlement Class, including the Consumer IPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally.

r. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

s. "Settlement Class" means the class defined in Paragraph 5 below.

t. "Settlement Class Period" means August 1, 2014 until December 31, 2019.

u. "Settlement Fund" means $32,500,00 (thirty two million, five-hundred thousand U.S. dollars), the amount Cargill shall pay or cause to be paid into an

interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 9 and 10 below.

2.    The Parties' Efforts to Effectuate this Settlement Agreement. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.    Mutual Litigation Standstill. Cargill and its counsel shall cease all litigation activities against the Consumer IPPs except to the extent expressly authorized in the Settlement Agreement. The Consumer IPPs and their counsel shall cease all litigation activities against Cargill except to the extent expressly authorized in the Settlement Agreement. Cargill acknowledges that Consumer IPPs have the right to continue litigating their claims in the Action against non-settling Defendants[3] and alleged co-conspirators (other than Cargill). The Consumer IPPs acknowledge that Cargill has the right to continue fully defending itself against claims asserted by parties other than the Consumer IPPs in the litigation, including any claims brought in state courts, arbitration, or other forums, ("Non-CIPP Claims") and that Cargill may cooperate with non-settling Defendants in the joint defense of such claims. Once no Non-CIPP Claims are operative against Cargill, Cargill shall cease all litigation activities, including any cooperation with the non-settling Defendants. To minimize disputes regarding the Mutual Litigation Standstill, Cargill and Consumer IPPs agree to the following specific requirements and authorizations:

    a.    Proof of Alleged Conspiracy. Consumer IPPs and their retained experts necessarily must present arguments and evidence concerning the existence of an antitrust conspiracy, which Cargill strongly denies, and in doing so will make such arguments relating to Cargill. Pursuant to the Summary Judgment and Trial provisions below, however, Cargill shall have the right to rebut any arguments and evidence relating to it, including any argument or evidence put

---

[3] "Non-Settling Defendant" means any defendant in the Action, other than Cargill, that has not entered into a settlement resolving the claims of the Consumer IPPs against it as of the execution date of this Term Sheet.

forward by the Consumer IPPs, to the extent necessary in its reasonable judgment to defend any Non-CIPP Claim.

b. <u>Access to Witnesses</u>. If Cargill receives a request for testimony at trial from any Non-Settling Defendant for any trial in the Action involving the Consumer IPPs, through a subpoena or through any informal means, it will provide notice to the Consumer IPPs involved in the trial within five (5) business days. If Cargill allows a Non-Settling Defendant to meet with, or otherwise communicate with, a potential Cargill trial witness, Cargill will allow Consumer IPPs a reasonable opportunity for access of similar scope.

c. <u>Authentication and Admissibility of Documents</u>. Upon request by the Consumer IPPs, Cargill agrees to cooperate in the provision of records and/or a declaration with true and correct facts relevant to the authenticity or admissibility of documents produced in the Action; *provided, however*, that Cargill will not be required under this provision or any other provision of this Term Sheet to assist in the authentication or admissibility of documents for the purpose of a motion for summary judgment or at a trial in which Non-CIPP Claims are contested.

d. <u>Experts</u>. Cargill has jointly retained experts with Non-Settling Defendants and may continue those engagements—including coordination and/or cost-sharing with any other defendant in the Action—and may enter any future similar engagements as necessary to defend Non-CIPP Claims or for any other purpose that is not adverse to the interests of the Consumer IPPs in pursuing their claims against Non-Settling Defendants. Cargill will make explicit to any such joint experts, and in any joint expert reports, that they are not offering testimony or opinions on behalf of Cargill against any of the Consumer IPPs.

e. <u>Summary Judgment</u>. Should Cargill submit an individual brief, declaration or affidavit, or evidence in support of a motion for summary judgment in the

Action, Cargill will include language clarifying that such a submission is directed solely to Non-CIPP Claims. Cargill may join a joint or omnibus brief submitted on behalf of multiple Defendants in the Action that addresses issues relevant to the defense of Non-CIPP Claims (such as whether Defendants agreed to the alleged conspiracy), but will include a statement in that brief it is not filed with respect to the Consumer IPP case by Cargill. In the Action, Cargill will not join a brief or contribute to briefing that solely addresses issues unique to the Consumer IPPs and/or the claims of the Consumer IPPs.

    f.   <u>Trial</u>.

        i.   In any trial in the Action limited to the Consumer IPPs and not including any Non-CIPP Claims, Cargill will not participate in the proceedings in any way, other than preparing witnesses for testimony at trial or complying with the Access to Witnesses or Admissibility of Documents provisions above.

       ii.   In any trial in the Action that includes both the Consumer IPPs and any Non-CIPP Claims pending against Cargill, Cargill shall have the right to participate in the trial to the extent necessary, in its reasonable judgment, to defend any Non-CIPP Claim.

    g.   <u>All Rights Reserved</u>. Except as otherwise expressly set forth herein, the Parties reserve all rights with respect to the litigation of the Action. Nothing herein shall limit Cargill's right or ability to seek contribution or indemnification from any entity that is not a party to the Settlement Agreement.

4.    <u>Motion for Preliminary Approval</u>. Within a time agreed to by the Parties after the Execution Date, Consumer IPPs will file a notice of settlement with the Court, maintaining confidentiality of the settlement amount. No later than thirty (30) days, or earlier if agreed to by the parties, after the Execution Date, unless extended by mutual agreement, Consumer IPPs will move the Court for Preliminary Approval of this Settlement Agreement. Within a reasonable time

in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Class Counsel to Cargill for its review. To the extent that Cargill objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Class Counsel, and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class.

5.    <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this Settlement, Consumer IPPs shall seek, and Cargill shall take no position with respect to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following "Settlement Class" for settlement purposes only:

> All persons and entities who indirectly purchased for personal consumption one or more of the following beef products in the Repealer Jurisdictions[4] between August 1, 2014 to December 31, 2019: beef from Defendants (whether fresh or frozen) made from chuck, loin, rib or round primal cuts. For this lawsuit, beef excludes any product that is marketed as USDA Prime, organic, No Antibiotics Ever ("NAE"), antibiotic free, 100% grass-fed, kosher, halal, certified humane, Wagyu, "American-Style Kobe Beef," as well as any products that are ground, marinated, seasoned, flavored, breaded, or cooked.
>
> Excluded from the class are Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action. Further excluded are purchases of products that contain ingredients other than beef (except for salt or water).

The Settlement Class does not include any person or entity that has or will submit a timely and valid exclusion request.

---

[4] The Repealer Jurisdictions are: Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

6.      <u>Settlement Notice</u>. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

    a.  To the extent reasonably practicable, individual notice of this settlement shall be mailed, emailed, or otherwise sent and/or published by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

    b.  Neither the Settlement Class, Interim Co-Lead Counsel, nor Cargill shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval. Cargill shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $1,000,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

    c.  Interim Co-Lead Counsel shall use best efforts to send out class notice to the Settlement Class within three (3) months of Preliminary Approval by the Court of the Settlement Agreement. If further time is necessary, Interim Co-Lead Counsel will work cooperatively with Cargill regarding an extension of this deadline. Any costs of notice up to a maximum of $1,000,000 that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.      <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and certifies the Settlement Class, then Consumer IPPs, through Interim Co-

Lead Counsel—in accordance with the schedule set forth in the Court's Preliminary Approval—shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Cargill for their review. To the extent that Cargill objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel, and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a. Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement;

b. Determining that the Settlement Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c. Dismissing the Action with prejudice as to Cargill;

d. Discharging and releasing Cargill Released Parties from all Released Claims;

e. Requiring Interim Co-Lead Counsel to file with the Court a list of potential Settlement Class members that timely excluded themselves from the Settlement Class;

f. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

g. Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Cargill shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

8.      This Settlement Agreement shall become final only when (a) the Court has entered an order finally approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered Final Judgment dismissing the Action against Cargill on the merits with prejudice as to all Settlement Class members and without costs, and (c) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of a Final Judgment as described in clause (b) above has expired or, if appealed, approval of this Settlement Agreement and the Final Judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review or any such appeal is otherwise disposed of. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining if the conditions for final approval have been satisfied. On the Execution Date, Consumer IPPs and Cargill shall be bound by the terms of this Settlement Agreement, and the Settlement Agreement shall not be rescinded except in accordance with Paragraph 21 of this Settlement Agreement.

9.      Escrow Account. The Escrow Account shall be administered by Interim Co-Lead Counsel for the Consumer IPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

10.     Settlement Consideration. In consideration for the release of Released Claims and the dismissal of the Action, within thirty (30) business days of the Court's grant of Preliminary Approval, Cargill shall pay or cause to be paid the Settlement Fund of $32,500,000 (thirty-two million five hundred thousand dollars) into the Escrow Account.

11.     Additional Reduction Term. Consumer IPPs have been provided with a copy of the agreement entered into by certain Defendants dated June 28, 2023 (hereinafter referred to as "Defendants' Agreement"). Terms used in this Paragraph 11 shall have the same meaning as defined terms in the Defendants' Agreement. Consumer IPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, Consumer IPPs shall reduce the dollar amount collectible from the Parties to the Defendants' Agreement pursuant to any Final Judgment

by a percentage equal to the Sharing Percentage of Cargill, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Cargill had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. Consumer IPPs agree that this undertaking is also for the benefit of any Defendant that is a Party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries thereof. Any ambiguity in this Paragraph 11 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including without limitation, Sections 6.D.1 and 6.D.2 thereof. Consumer IPPs further represent and warrant that they have not reached any agreement to provide any portion of the Amount Paid in Settlement to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for any amounts received by Consumer IPPs' attorneys as attorneys' fees or costs. Consumer IPPs agree that they may not divulge any terms of Defendants' Agreement except as required by applicable law, statute, regulation, rule, or court order.

12.     <u>Distribution of Settlement Fund to Settlement Class</u>. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against the Cargill Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Cargill Released Parties beyond that described in Paragraph 10 above. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. Consumer IPPs, members of the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class.  Cargill and the other Cargill Released Parties shall not be liable for any costs, fees, or expenses of any of Consumer IPPs' and Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund. Consumer IPPs will propose a

distribution plan for the proceeds of the settlement that includes Walmart cards as one available option, if feasible and cost-effective for class members.

13.    Fee Awards, Costs and Expenses, and Service Awards to Consumer IPPs: Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses and costs incurred, and service awards to the Consumer IPPs to be paid from the proceeds of the Settlement Fund. Cargill shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses. Within 15 days after any order by the Court awarding attorneys' fees, expenses, class representative service awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become Final or the amount of attorneys' fees, costs, or service award is reversed or modified, within 15 days of the order from a court of appropriate jurisdiction, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund.

14.    Release. Upon the date that an order granting final approval of the Settlement Agreement becomes final and non-appealable (the "Effective Date"), Releasors shall release and forever discharge the Released Entities from all Released Claims, covenant not to sue the Released Entities with respect to any such Released Claim, and expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by California Civil Code § 1542 and similar laws.

15.    Further Release. In addition to the provisions of Paragraph 14, the Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasors have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16.    <u>Non-Disparagement</u>. The Parties agree they will not disparage this Action or one another, such as by making public statements to the media that disparage either of the parties or their conduct in connection with the Lawsuit.

17.    This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

18.    This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

19.    <u>Consumer IPPs' and Cargill's Option to Rescind</u>. If the Court does not approve this Settlement Agreement in all material respects, or if the Court does not grant Preliminary Approval of the Settlement Agreement, or if the Court does not enter Final Approval and Final Judgment as provided for in Paragraphs 1(k) and 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraphs 1(k) and 7 of this Settlement Agreement, then the Consumer IPPs and Cargill shall each, in their sole discretion, have the option to rescind

this Settlement Agreement in its entirety within ten (10) business days of the event giving rise to such option.

20.     Effect of Rescission. If the Consumer IPPs or Cargill rescind this Settlement Agreement under Paragraph 19, then: (a) this Settlement Agreement shall become null and void; (b) this Settlement Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Cargill or the Consumer IPPs, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in the Action, and shall not be used directly or indirectly, in any way, whether in the Action or in any other proceeding, unless such documents and/or information is otherwise obtainable by separate and independent discovery permissible under the Federal Rules of Civil Procedure; (c) the Parties shall return to their litigation positions before the Execution Date; (d) the Consumer IPPs shall in no way whatsoever be prejudiced in resuming full discovery and adjudication of the Action as they stood as of the Execution Date, and Cargill shall be prohibited from arguing to Consumer IPPs or the Court that any agreements with other plaintiffs or parties in any way limit Consumer IPPs' ability to do so; (e) with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(b), all other funds in the Escrow Account shall be returned to Cargill within five (5) business days of the Escrow Agent receiving notice of rescission; (f) Interim Co-Lead Class Counsel shall immediately consent to such return of remaining funds in the Escrow Account; and (g) the Parties' position shall be returned to the status quo ante.

21.     Termination Provision. If a total of ▮▮▮ or more members of the Settlement Class opt out of the Settlement, Cargill may, in its sole discretion, terminate the Settlement Agreement within fourteen (14) calendar days following receipt by Cargill of the official report of the notice administrator detailing the opt outs from the Settlement.

22.     Choice of Law and Dispute Resolution. Any disputes relating to this Settlement Agreement shall be governed by Minnesota law without regard to conflicts of law provisions, and

with the exception of any dispute regarding the provisions of Paragraphs 14 or 15, any and all disputes regarding this Settlement Agreement will be discussed in good faith by the Parties prior to any Party seeking Court involvement.

23.    <u>Mandatory and Exclusive Jurisdiction</u>. The Parties and any Releasor hereby irrevocably agree to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14 or 15, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14 or 15 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14 or 15 are asserted by any Cargill Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Cargill Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasors irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personal jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

24.    <u>Class Action Fairness Act</u>. Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Cargill, at its sole expense, shall submit all materials required to be served upon appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, shall arrange for such notices to be served, and shall confirm to Consumer IPPs' Interim Co-Lead Class Counsel that such notices have been served.

25.  <u>Costs Relating to Administration</u>. The Cargill Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

26.  <u>Binding Effect</u>. This Settlement Agreement constitutes a binding enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class, the Releasors, and the Cargill Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the Consumer IPPs shall be binding upon all members and potential members of the Settlement Class and Releasors who have not validly excluded themselves from the Settlement Class.

27.  <u>Sole Remedy</u>. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Cargill Released Party, and upon entry of Final Judgment, the Releasors shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Cargill Released Party.

28.  <u>Counsel's Express Authority</u>. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

29.  It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

30.  <u>Notices</u>. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given by: (a) email, and either (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; or (d) Federal Express or similar overnight courier.

If directed to Consumer IPPs, the Settlement Class, or any member of the Settlement Class, notice shall be sent to:

For Plaintiffs:
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
shanas@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
steve@hbsslaw.com

Brian D. Clark
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

*Co-Lead Counsel for the Consumer Indirect Purchaser Plaintiff Class*

For Defendant(s):

Jacob D. Bylund
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
jacob.bylund@faegredrinker.com

*On behalf of Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation*

Or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

31.    No Admissions. Cargill's agreement to this Settlement Agreement is for the sole purpose of settlement, and nothing herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Cargill expressly denies. Nor may anything herein be taken as a waiver or limitation of any defense otherwise available to Cargill.

32.    <u>No Third-Party Beneficiaries</u>. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Cargill Released Party, Consumer IPPs, member of the Settlement Class, or Interim Co-Lead Class Counsel.

33.    <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

34.    <u>Headings</u>. The headings used in this agreement are inserted for convenience only and shall not constitute a part hereof.

35.    <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36.    <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

37. <u>Integrated Agreement</u>. This Settlement Agreement comprises the entire complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. In entering into this Settlement Agreement, the Consumer IPPs and Cargill have not relied upon any representation or promise made by the Consumer IPPs or Cargill that is not contained in this Settlement Agreement. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38. <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached through extensive arm's-length negotiations, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39. <u>No Rule 11 Violations</u>. The Settling Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the Judgment and Order of Dismissal shall contain a finding that all Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.

40. <u>Confidentiality</u>. The Parties agree that the existence of this Settlement Agreement, any terms herein, any additional terms negotiated by the Parties, and any other evidence of negotiations between the Parties shall remain confidential until a time to be agreed upon by the Parties but not to precede the filing of a motion for preliminary approval of the Settlement Agreement. Notwithstanding anything to the contrary in this paragraph, Cargill may provide Non-Settling Defendants with a copy of the executed Settlement Agreement, as required by the JSA. Furthermore, notwithstanding anything to the contrary in this paragraph, Cargill may inform individuals who are bound by the Protective Order (i.e., Non-Settling Defendants, other Plaintiffs,

Dated: September 29, 2025

Shana E. Scarlett
Abby R. Wolf
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
abbyw@hbsslaw.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
T: (206) 623-7292
F: (206) 623-0594
steve@hbsslaw.com

Dated: September 29, 2025

Brian D. Clark
W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
bdclark@locklaw.com
wjbruckner@locklaw.com

Kyle Pozan
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Telephone: (312) 205-8968
kjpozan@locklaw.com

*Interim Co-Lead Counsel for the Consumer Indirect
Purchaser Plaintiff Class*

- 24 -

Telephone: (312) 205-8968
kjpozan@locklaw.com

*Co-Lead Counsel for the Consumer Indirect
Purchaser Plaintiff Class*

Dated: August 22, 2025

Jacob D. Bylund (*Pro Hac Vice*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
T: (515) 248-9000
F: (515) 248-9010
jacob.bylund@faegredrinker.com

*On behalf of Defendants Cargill, Incorporated
and Cargill Meat Solutions Corporation*