**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-md-3031 (JRT/JFD) |
| This Document Relates To: | **Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Tyson and for Leave to Disseminate Notice** |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | |

**Table of Contents**

I.     Introduction.................................................................................................................1

II.    Background and Basic Settlement Terms............................................................1

III.   Preliminary Approval of the Settlement Should be Granted............................7

     A.    The Proposed Settlement Is the Result of Arm's-Length Negotiations.............8

     B.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ..............................................................9

IV.   The Court Should Certify the Proposed Settlement Class...............................13

     A.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).......14

          1.    Numerosity ................................................................................14

          2.    Commonality .............................................................................14

          3.    Typicality....................................................................................15

          4.    Adequacy of Representation ...................................................16

     B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3)..............................................................................................16

V.    The Court Should Approve the Form and Manner of Notice to the Proposed Settlement Class Members.................................................................................19

     A.    The Proposed Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(e) and Due Process..........................................................19

     B.    The Proposed Manner of Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(c) ..............................................................19

     C.    The Proposed Notice Provides Class Members with Sufficient Information About the Details of the Settlement .................................................19

          1.    Plan of Allocation .....................................................................19
          2.    Costs, Attorneys' Fees, and Service Awards ...........................19

D.      The Court Should Enter the Proposed Order, Which Schedules the Final
        Approval Hearing and Establishes Other Deadlines...........................................19

VI.    Conclusion      .................................................................................................................20

## Table of Authorities

**Cases**

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996) ........................................................ 15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 13, 17, 18

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 1971) ......... 14

*Blades v. Monsanto Co.*, 430 F.3d 562 (8th Cir. 2005) ................................................................... 15

*Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251 (Minn. 2000) ......................... 17

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ................................................................................... 18

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020) ............... 17

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 14, 15

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................................... 9

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979) ..................................................... 12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................... 9, 10, 11

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ................................................ 10

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981) ............. 11, 12

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
     481 F.3d 1119 (9th Cir. 2007) ................................................................................................ 10

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) ............................................ 14

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) .............................. 9, 11, 12

*In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) .... 12

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 150427
     (E.D. Mich. Dec. 13, 2011) ..................................................................................................... 9

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) ...................................................... 17

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008)..............12

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................11

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980) .......................................................12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...............................................11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ................................8

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012)..........19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........9, 18

*Jones v. Flowers*, 547 U.S. 220 (2006) ............................................................................................19

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) .............................14

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) ......................................................... 7, 8, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................................19

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982)..............................................................16

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..............................................................19

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997)..........................................................11

*Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992 (8th Cir. 2016)..............................17

*Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) ..............................................13

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988).........................................................................7

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ................................................8

**Statutes & Rules**

28 U.S.C. § 1715 ............................................................................................................................7

Fed. R. Civ. P. 23...................................................................................................................*passim*

Fed. R. Civ. P. 23(e)(2)....................................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................................13

**Other Authorities**

Class Actions Fairness Act of 2005, 28 U.S.C. § 1715 ..................................................................

Manual for Complex Litigation (Third) § 30.41 ...........................................................................

4 Newberg on Class Actions § 13.10 (6th ed.) ............................................................................

4 Newberg on Class Actions § 13.14 (6th ed.) ............................................................................

## I.   Introduction.

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully request the Court's preliminary approval of the settlement of their claims against Tyson Foods, Inc. and Tyson Fresh Meats, Inc. ("Tyson") and certification of a Settlement Class for this settlement. CIIPPs further seek approval of the form and manner of notice related to this settlement and leave to disseminate that notice to potential members of the Settlement Class. The proposed settlement includes a payment by Tyson of $47,000,000 and non-monetary relief. CIIPPs request that the Court grant preliminary approval of the proposed settlement because it is well within the range of possible approval and is in the best interest of the class members.

The Court should preliminarily certify the proposed Settlement Class for settlement purposes because it satisfies the requirements of Rule 23. And the Court should grant CIIPPs leave to disseminate notice according to the proposed form and manner of notice, as the notice plan complies with Rule 23 requirements and provides the best notice practicable under the circumstances. Finally, the Court should schedule a final fairness hearing, at which Class Counsel will seek entry of a final order and judgment dismissing Tyson and retaining jurisdiction for implementation and enforcement of the Settlement Agreement.[1]

---

[1] Unless otherwise set forth herein, capitalized terms in this memorandum that are defined in the Settlement Agreement between CIIPPs and Tyson shall have the same meaning as ascribed to them in the Settlement Agreement. (*See* Exhibit A to the Declaration of Shawn Raiter in Support of Motion for Preliminary Approval of Class Action Settlement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Tyson and for Leave to Disseminate Notice ("Raiter Decl.")).

**II.     Background and Settlement Terms.**

This case alleges that Defendants engaged in a conspiracy to artificially constrict the supply of Beef products in the domestic market of the United States. The CIIPPs allege that Defendants conspired to constrain the supply and fix the price of Beef from at least 2015 through the commencement of the present action. (*See* Dkt. 445 (CIIPPs' Third Amended Class Action Complaint)). Defendants' conspiracy involved, among other acts, agreeing to reduce live cattle purchasing and slaughter volumes for the purpose and effect of increasing their margins. (*Id.* ¶¶ 2-9). Defendants accomplished and perpetuated this agreement through collusion at trade association conferences and industry events between executives and key employees, and through ensuing collusive relationships. (*Id.* ¶ 12). Defendants' own transaction and slaughter data, their public calls for industrywide slaughter and capacity reductions, and measurable market conditions confirm the existence of the unlawful price fixing agreement. (*Id.* ¶¶ 6, 13-16). The effect of this anti-competitive behavior was to increase Defendants' margins at the expense of other market participants. (*Id.* ¶¶ 23-25). The CIIPPs allege that the putative class members paid artificially and illegally inflated prices for Beef as a result. (*Id.* ¶ 26).

On March 1, 2022, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Case No. 20-cv-1319, Dkt. 423). After extensive discovery and prosecution of this case, Interim Co-Lead Class Counsel negotiated the proposed settlement with Tyson. This is the second settlement the CIIPPs have negotiated in this action. This settlement with Tyson came after substantial adversarial litigation with Defendants. Class Counsel was well-informed, and the Settlement Agreement with Tyson arose from arm's-

length and good-faith negotiations reached after mediation with an experienced antitrust mediator. (*See* Raiter Decl. ¶¶ 2-5). If approved, in combination with the CIIPPs' earlier settlement with Defendant JBS (*see* Dkt. 451), this settlement would bring CIIPPs' total monetary relief to-date to $72 million.

Settlement Class: The Settlement Agreement defines the "Settlement Class" as:

> All entities in the United States that indirectly purchased one or more of the following types of raw beef, fresh or frozen: brisket, chuck, loin, rib, or round, sold by Defendants in the United States from January 1, 2015, to [the day on which the Court grants Preliminary Approval of this settlement], for their own use in commercial food preparation. For this lawsuit, beef products exclude non-fed beef, ground beef, trim beef, beef identified as cooked, beef products with non-beef ingredients other than seasonings, or any product marketed as USDA Prime.

> Excluded from this Class are: natural persons who purchased beef for their personal use and not for commercial food preparation; purchases of beef for resale in unaltered form; purchases of beef from an intermediary who has further processed the beef; the Defendants and their Co-Conspirators; the officers, directors or employees of any Defendant or Co-Conspirator; any entity in which any Defendant or their Co-Conspirator has a controlling interest; any entity with an interest, controlling or non-controlling, in a Defendant or their Co-Conspirator; any (in whole or in part), affiliate, legal representative, heir or assign of any Defendant or their Co-Conspirator; any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

(Settlement Agreement ¶ 5).

Settlement Fund: Tyson will pay $47,000,000 by paying, or causing to be paid, such sum into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class. (*Id.* ¶¶ 10-11).

3

Other Terms: Tyson agrees that it will assist with the authentication of Tyson documents that CIIPPs may use at trial and will provide CIIPPs with notice of any request for testimony from a non-Settling Defendant. (Settlement Agreement, ¶¶ 3b, 3c). Tyson agrees to provide the following categories of cooperation to the CIIPPs:

• **Notice of Witnesses**. Notice of Defendants' request for testimony from Tyson witnesses. (Settlement Agreement at ¶ 3).

• **Authentication and Admissibility of Documents**. Cooperation in establishing the authenticity or admissibility of documents produced by Tyson in the action; provided, however, that it is not required to assist in the authenticity or admissibility of documents for summary judgment or at a trial in which non-CIIPP claims are contested. *Id.*

• **Experts**. Tyson has jointly retained experts with non-settling Defendants but will make explicit to any such joint experts, and in any joint expert reports, that they are not offering testimony or opinions on behalf of Tyson against the CIIPPs. *Id.*

• **Summary Judgment**. Tyson will not advance arguments at summary judgment against the CIIPPs. *Id.*

Released Claims: In consideration for the $47,000,000 payment and other terms described above, the CIIPPs agree, upon Final Judgment, to release Tyson (and other Tyson Released Parties) from:

> any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasing Parties, or any of them, ever had or now has directly, representatively, derivatively or in any other capacity against any of the Released Parties, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might

> be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of where it occurred at any time prior to the date of Preliminary Approval concerning the Released Parties' purchase or slaughter of cattle or their purchase or sale of beef, including without limitation, claims based in whole or in part on the conduct, facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, whether arising under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust enrichment, civil conspiracy law, fraud, RICO, or any other law, code, rule, or regulation of any country or jurisdiction worldwide, including under federal or state law, and regardless of the type or amount of damages claimed, from the beginning of time through the day the Court grants Preliminary Approval of this settlement (the "Released Claims").

(*Id.* ¶ 16). In addition, with respect to the Released Claims, CIIPPs agree to release any provisions, rights, and benefits conferred by Section 1542 of the California Civil Code. (*See id.* ¶ 17). The Released Claims, however, do not include:

> any individual claim for product liability, violation of the Uniform Commercial Code, personal or bodily injury, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract, breach of warranty or tort based on any factual predicate in this Action).

(*Id.* ¶ 16).

Termination: The settlement provides either party the right to rescind the Settlement Agreement upon the occurrence of specified conditions, including if the Court does not approve the Settlement Agreement, declines to enter a Preliminary Approval order, does not enter an order of Final Approval and a Final Judgment, if the Court approves the Settlement Agreement in a materially modified form, or if the Court does enter a Final Approval order and Final Judgment but such order and judgment is reversed on appeal. (*Id.* ¶ 21).

Notice: The Settlement Agreement also requires Tyson—within 10 business days of filing the Settlement Agreement with the Court in connection with CIIPPs' motion for preliminary approval—to submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (*Id.* ¶ 25).

## III.    Preliminary Approval Should be Granted.

When parties propose to settle a class action, the Court must review the settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in evaluating a class-action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). Review of a proposed class-action settlement typically proceeds in two stages. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). At the preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement.[2] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). A court's preliminary evaluation of proposed settlements is simply to determine whether it is within the range of possible approval and, thus, whether notice to the class of the terms and conditions of the settlement, and scheduling a formal fairness hearing, are worthwhile. 4 Newberg on Class Actions § 13.10 (6th ed.).

---

[2] In making a final determination of settlement approval, the district court ultimately is required to consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). But, at the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies … and [the settlement] appears to fall within the range of possible approval." Manual for Complex Litigation (Third) § 30.41. "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White*, 822 F. Supp. 2d at 1416. The proposed settlement between the CIIPPs and Tyson should be granted preliminary approval because the settlement is well within the range of reasonableness and possible approval. (*See* Raiter Decl. ¶ 6).

### A.    The Proposed Settlement Agreement Is the Result of Arm's-Length Negotiations.

Courts determining preliminary approval consider "whether the agreement arose out of arm's-length, non-collusive negotiations." 4 Newberg on Class Actions § 13.14 (6th ed.); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The preliminary determination establishes a presumption of fairness when a settlement "has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). The court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *Id.*

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted). The Settlement here is within the range of possible approval because there are no glaring substantive or procedural deficiencies. The CIIPPs and Tyson are

represented by experienced counsel, and the Settlement was reached after significant litigation. (*See* Raiter Decl. ¶¶ 2-5). By the time the settlement was reached, the CIIPPs had developed and assessed both their claims and Tyson's defenses after years of hard fought litigation. (*Id.*).

**B.      The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex."). Motions have already been vigorously contested, and the discovery process has been and will be complex.[3]

Tyson has asserted various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly regarding damages, making the outcome of such trial uncertain for both parties. *See, e.g., Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist.

---

[3] Because Class Counsel may have to litigate against other Defendants through trial and appeal, their duties preclude a more detailed discussion of the potential litigation risks.

8

LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time."). Hence, "the certain and immediate benefits to the Class represented by the

Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. (*See* Raiter Decl. ¶ 6). Tyson's $47,000,000 payment provides compensation that will be available much earlier than if litigation against Tyson continued through trial and appeal. Settlements of this type create value beyond their direct pecuniary benefit to the class. *See Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981).

Moreover, the Settlement Agreement requires Tyson to provide non-monetary benefits like cooperation to the CIIPPs by authenticating records for trial and providing CIIPPs notice of non-Settling Defendants' request for witnesses, among other things. (Settlement Agreement ¶¶ 3b, 3c). This is valuable and provides a class-wide benefit. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The Settlement Agreement provides significant relief to the proposed Settlement Class members, far greater than the threshold "adequate" relief required by Fed. R. Civ. P. 23(e)(2)(C). (*See* Raiter Decl. ¶ 6). The Settlement Agreement requires Tyson to pay the Settlement Fund into the Escrow Account within 30 calendar days of the Court's preliminary approval. (Settlement Agreement ¶ 10). The Settlement Fund will be used to compensate members of the Settlement Class in *Illinois Brick* repealer states for damages suffered and expenses incurred, and potentially for the benefit of pursuing claims against non-settling Defendants. As noted above, in addition to the monetary relief it offers, the terms of the Settlement Agreement require Tyson to provide non-monetary benefits to the CIIPPs for use in their pursuit of claims against the non-settling Defendants. The Court should therefore grant preliminary approval of the settlement.

CIIPPs' settlement with Tyson also contains a provision relating to the judgment sharing agreement between the Defendants, removing Tyson's portion of damages from any award after a CIIPPs trial. (Settlement Agreement at ¶ 37). The Settlement Agreement allows CIIPPs to recover their full damage proven at trial, reduced by the settlement amount paid by Tyson. *Id.* In this regard, the Settlement Agreement is similar to the settlements in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from other current or future defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also* ; *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979).

## IV.    The Court Should Preliminarily Certify the Settlement Class.

At the preliminary approval stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a), and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015).

The CIIPPs seek certification of a Settlement Class defined as:

> All entities in the United States that indirectly purchased one or more of the following types of raw beef, fresh or frozen: brisket, chuck, loin, rib, or round, sold by Defendants in the United States from January 1, 2015, to [the day on which the Court grants Preliminary Approval of this settlement], for their own use in commercial food preparation. For this lawsuit, beef products exclude non-fed beef, ground beef, trim beef, beef identified as cooked, beef products with non-beef ingredients other than seasonings, or any product marketed as USDA Prime.

> Excluded from this Class are: natural persons who purchased beef for their personal use and not for commercial food preparation; purchases of beef for resale in unaltered form; purchases of beef from an intermediary who has further processed the beef; the Defendants and their Co-Conspirators; the officers, directors or employees of any Defendant or Co-Conspirator; any entity in which any Defendant or their Co-Conspirator has a controlling interest; any entity with an interest, controlling or non-controlling, in a Defendant or their Co-Conspirator; any (in whole or in part), affiliate, legal representative, heir or assign of any Defendant or their Co-Conspirator; any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

12

(Settlement Agreement ¶ 5). The proposed Settlement Class satisfies the threshold requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). Accordingly, the CIIPPs request that the Court preliminarily certify the proposed Settlement Class as defined in the Settlement Agreement. (*Id.*).

### A.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.    Numerosity

Rule 23(a)(1), Fed. R. Civ. P., requires that the class be "so numerous that joinder of all members is impracticable." The CIIPPs estimate that there are at least several hundred thousand Settlement Class members. This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

#### 2.    Commonality

Rule 23(a)(2), Fed. R. Civ. P., requires that there be "questions of law or fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005).

13

The CIIPPs contend that common questions prevail here about whether Defendants illegally conspired to fix the supply and price of Beef in the United States and as to whether the CIIPPs were injured because of Defendants' anti-competitive conduct. The Settlement Class thus satisfies the commonality requirement.

### 3.    Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs' claims arise out of the same alleged conduct of Defendants—that they illegally conspired to reduce the supply and thereby raise the price of Beef in the United States. (*See* Dkt. 445 (CIIPPs' Third Amended Class Action Complaint)). The representative plaintiffs of the proposed Settlement Class allege that they paid artificially inflated prices for Beef, which exceeded the amount they would have paid if the price for Beef had been determined by a competitive market. (*Id.*) The CIIPPs contend that each individual class member has the same interests as the class representatives, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives

14

have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representatives have common interests with the members of the Settlement Class. They share interests in obtaining the best possible monetary recovery and securing non-monetary relief like cooperation against non-settling Defendants. The named representatives have and will vigorously pursue this matter through qualified counsel. Collectively, the undersigned counsel have significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Interim Co-Lead Counsel and Plaintiffs' Steering Committee for Commercial and Institutional Indirect Purchaser Plaintiffs, Case No. 20-cv-1319, Dkt. 413). The Court has recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Interim Co-Lead Counsel, Case No. 20-cv-1319, Dkt. 423). Counsel thus far has vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations. The adequacy requirement is also satisfied.

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule

15

23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 (4th ed.). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

The CIIPPs contend that questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, which the CIIPPs believe are subject to common proof, include whether Defendants engaged in anticompetitive conduct and/or conspired to artificially lower Beef output and raise prices, and whether the CIIPPs paid artificially inflated prices for Beef during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.") Therefore, the Settlement Class satisfies the predominance requirement.

Plaintiffs seeking class certification must also show that a class action is superior to individual claims. Rule 23(b)(3) provides four pertinent considerations: (A) the interest of the class members in individually controlling the prosecution or defense of separate actions; (B)

16

whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A)-(D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b)(3) are satisfied in this case.

The Court may also certify a class under Rule 23 (b)(2) where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Claims for non-monetary relief, like those asserted under federal law which does not recognize claims for money damages by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2). Because the Settlement Class satisfies each requirement set forth in Rule 23(a) and the provisions set forth in Rule 23(b)(2)&(3), the Court should preliminarily certify the Settlement Class for purposes of this settlement.

17

**V.     The Court Should Approve the Form and Manner of Notice to the Proposed Settlement Class Members.**

After preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(3)(1)(B). For a class certified under Rule 23(b)(3), whether litigated or by settlement, the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*

To design and implement the proposed notice plan, Class Counsel has retained Epiq Class Action & Claims Solutions, Inc., an industry leader in class action administration, and Epiq Legal Noticing aka Hilsoft Notifications, a business unit of Epiq Class Action & Claims Solutions, Inc. that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans (collectively, "Epiq"). (*See* Declaration of Cameron Azari ("Azari Decl.") ¶¶ 3, 4). Epiq has been involved with legal noticing in more than 700 cases, including more than 75 multi-district litigation settlements. (*Id.* ¶ 4). Cameron Azari, a nationally recognized expert in the field of legal notice, is a Senior Vice President of Epiq Class Action & Claims Solutions, Inc. and the Managing Director of Epiq Legal Noticing. (*Id.* ¶ 3). As with the notice plan approved by this Court for the CIIPPs' settlement with Defendant

JBS, Class Counsel has worked with Mr. Azari and his team to develop both the proposed form of class notice and the plan for dissemination of the notice. (*See id.* ¶ 5).

### A. The Proposed Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(e) and Due Process.

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *8. In addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

CIIPPs propose providing notice through several different channels. Individual notice (the "Email Notice") will be emailed to a nationwide list of restaurants identified as potential members of the class. (*See* Azari Decl. ¶¶ 24-26, Attachment 2). The Email Notice will be drafted in such a way that the subject line, the sender, and the body of the message overcome spam filters and ensure readership to the fullest extent practicable. (*Id.*). The Email Notice will provide an embedded link to the settlement website where recipients may obtain additional

information about the Settlement with Tyson. (*Id.*).

The current settlement website will be updated to allow class members to obtain detailed information about the case and review key documents, including: Complaints, Long Form Notice, Settlement Agreement, Preliminary Approval, Motions for Attorneys' Fees and Expenses, Final Approval Order, as well as answers to Frequently Asked Questions (FAQs), instructions for how Settlement Class members may opt-out (request exclusion) from or object to the settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. (*Id.* ¶ 39). The website address will be displayed prominently on all notice documents. (*Id.*). The proposed notice plan also provides a toll-free telephone number for Settlement Class members to call for additional information, listen to answers to FAQs, and request that a Long Form Notice be mailed to them. (*Id.* ¶ 40). The toll-free number will also be prominently displayed on all notices, and the automated phone system will be available 24 hours per day, 7 days per week. (*Id.*). Finally, the proposed notice plan establishes a post office box and email address for correspondence about the case, allowing class members to contact the Settlement Administrator with any specific requests or questions. (*Id.* ¶ 41).

To supplement direct Email Notice, the proposed notice includes a comprehensive media plan. The notice plan includes Digital Notices on selected advertising networks, which will be targeted to class members. (*Id.* ¶¶ 27-35). The internet Digital Notices will link directly to the settlement website, thereby allowing visitors easy access to relevant information and documents. (*Id.*). The internet Digital Notices (*id.*, Attachment 4) will be placed on the advertising networks *Google Display Network* and *Yahoo Audience Network*, which together cover

90% of the United States' population that is online.[4] (*Id.* ¶¶ 32-33). The proposed notice plan also includes Digital Notice advertising on social media websites *Facebook* and *LinkedIn*, which have more than 196.9 million and 250 million members, respectively, in the United States. (*Id.* ¶ 31). In total, the proposed comprehensive media plan is expected to generate over 182 million targeted impressions nationwide over the course of approximately 31 days. (*Id.* ¶ 34). On top of these impressions, the proposed notice plan includes sponsored search listings on the three most highly visited search engines: *Google*, *Yahoo!*, and *Bing*. (*Id.* ¶ 36).

To further supplement the direct Email Notice and comprehensive Digital Notice advertising, the proposed notice plan includes an Informational Release to be issued broadly over PR newswire to approximately 13,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States, as well as approximately 4,000 websites, online databases, internet networks, and social networking media. (*Id.* ¶¶ 37-38). This Informational Release also will be distributed to approximately 160 contacts in the food industry and 450 in the restaurant industry. (*Id.*).

This plan is nearly the same as the plan approved by the Court for CIIPPs' prior settlement with JBS, and the methods of notice proposed here are the best available under the circumstances. The proposed methods are well-designed to reach potential Settlement Class members and to comply with due process. The proposed notice program is expected to reach at least 70% of the Settlement Class, with an average frequency of 2.1 times each. (*Id.* ¶¶ 23,

---

[4] According to MRI-Simmons syndicated research, 97% of all adults are online and 85% of all adults use social media. (Azari Decl. ¶ 27).

21

47). Additionally, as this will be the second notice for a CIIPP settlement, numerous potential Settlement Class members will have already received notice about the prior settlement. The "notice reach" for this notice plan easily exceeds due process requirements and the that of notice plans approved in other cases. *See, e.g.*, *Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2009 WL 1228443, at *11 (D. N.J. Apr. 30, 2009) ("No case stands for the proposition that a publication notice reach of 49-53 percent is disallowed.").

**B.    The Proposed Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23(c).**

For a class proposed under Rule 23(b)(3), whether litigated or by settlement, the notice must "clearly and concisely state in plain, easily understood language" seven types of information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Both the Email Notice and Long Form Notice satisfy the requirements under Federal Rule of Civil Procedure 23(c)(2)(B). The proposed notices state in clear and concise plain language the nature of the action, the definition of the Settlement Class, and the class claims, issues, and defenses. (*See* Azari Decl., Attachment 3 (Long Form Notice)). Mr. Azari has attested that the proposed notices are designed to be "noticed" and reviewed by Settlement Class members, and they are written in plain language so the notices will be understood by Settlement Class members. (*Id.* ¶¶ 42-45). The proposed notices follow the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov

22

and are written in simple, plain language to encourage readership and comprehension.[5] (*Id.*). The proposed notice plan informs the class that they may request to be heard at the final fairness hearing by following certain procedures, and it clearly identifies the class members' right to opt out of the Settlement Class if they desire. (*Id.*, Attachments 3 & 4). The proposed notice plan also clearly identifies the procedure through which a class member may opt out, in addition to the binding effect of a class judgment on Settlement Class members under Rule 23(c). (*Id.* ¶¶ 42-45).

The Court should approve the proposed notice plan because it satisfies the requirements under Federal Rule of Civil Procedure 23 and comports with due process. (*Id.* ¶¶ 46-50). At final approval, the CIIPPs will show that the form and content of the notices, together with the manners of dissemination, were reasonably calculated to reach the members of the Settlement Class and were the best form of notice available under the circumstances, in satisfaction of federal law and due process.

### C. The Proposed Notice Provides Class Members with Sufficient Information About the Details of the Settlement.

The notice plan provides potential members of the Settlement Class with information about the benefits available under the Settlement, their options, and the attorneys' fees, costs, and service awards that may be requested at final approval. The notice also advises that a proposed plan of allocation will be submitted in the future for consideration by the Court.

---

[5] *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *8 (D. Minn. Feb. 27, 2013) (approving notices with form and content that is consistent with the principles articulated by the Federal Judicial Center).

23

### 1. **Plan of Allocation**.

The notice plan will advise Settlement Class members that information about a plan of allocation will be published on the settlement website when sufficient information is available to issue such a plan. (*See id.*, Attachment 3). In this motion, the CIIPPs do not ask the Court to approve a plan of allocation, but the Court may grant final approval before approving a plan of allocation. *See* Manual for Complex Litigation (Fourth) § 21.312 ("Often … the details of allocation and distribution are not established until after the settlement is approved."). Information about how the Settlement Fund will be allocated through one or more plans of allocation will be published after the CIIPPs and any allocation consultants have determined how settlement proceeds should be allocated and the Court has approved the plan.

### 2. **Costs, Attorneys' Fees, and Service Awards**.

Class Counsel will seek reimbursement of certain litigation expenses already incurred during this litigation. *See, e.g.*, Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and untaxable costs that are authorized by law or by the parties' agreement."); *In re Endotronics, Inc.*, Civ. No. 4-87-130, 1989 WL 6746, at *1 (D. Minn. Jan. 30, 1989) (citing *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 723 (1974)).

The notice plan advises Settlement Class members that Class Counsel will request a portion of the Settlement Fund be used for a service award for businesses that served as class representatives. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2008) (Class representatives are "an essential ingredient of any class action" and incentive awards are appropriate to induce a business or consumer to participate in worthy class action lawsuits). The CIIPP representative plaintiffs have shouldered a substantial discovery burden and continue to face

24

discovery and a trial with the non-settling Defendants. Considering the substantial benefits provided to the class, an award from the Court recognizing class representatives' efforts is appropriate.

The proposed notice plan also provides the Settlement Class with notice of Class Counsel's intent to request that the Court allow them to set aside a portion of the Settlement to be used for future litigation expenses incurred in pursuing additional claims against non-settling Defendants on behalf of the Settlement Class. Allowing a portion of the Settlement Fund to be used for future expenses is well accepted. *See, e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296, 302–03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *see also* Alba Conte, 1 Attorney Fee Awards § 2:20 (3d ed.) (collecting cases in which courts have "permitted class plaintiffs who have settled with fewer than all defendants to expend class-settlement monies, or a portion thereof, for litigation expenses to prosecute the action against remaining, non-settling defendants").

### D.  The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.

The CIIPPs respectfully request that the Court hold a Final Approval hearing in connection with the settlement. At the hearing, the Court should consider: whether the settlement is fair, reasonable, and adequate; whether to approve a request for attorneys' fees and reimbursement of litigation expenses; whether to approve a request to set aside a portion of the settlement monies to fund future litigation expenses on behalf of the Settlement Class against non-settling Defendants; and whether to approve a request for service awards for the named class representatives. At the final fairness hearing, members of the Settlement Class, and counsel, may offer argument in support of the settlement's approval. And members of

the Settlement Class may be heard regarding the proposed Settlement and objections if they choose.

The CIIPPs propose the following schedule of events necessary for disseminating notice to the Settlement Class and the final fairness hearing:

| DATE | EVENT |
|---|---|
| Within 21 days from order directing notice | Settlement Administrator to provide direct mail and email notice, and commence implementation of the publication notice plan |
| 75 days after commencement of Notice | Last day for Settlement Class members to request exclusion from the Settlement Class; for Settlement Class members to object to the Settlement; and for Settlement Class members to file notices to appear at the Final Fairness Hearing |
| 10 days after last day to request exclusion from the Settlements | CIIPPs to provide Tyson with information concerning all persons and entities who have timely and adequately requested exclusion from the Settlement Class |
| 14 days before the Final Settlement Fairness Hearing | CIIPPs shall file a motion for final approval of the settlement and all supporting papers, and CIIPPs and Tyson may respond to any objections to the proposed Settlement |
| 30 days after last day to request exclusion from the Settlement or as soon thereafter as the matter may be heard by the Court | Final fairness hearing |

## VI.    Conclusion.

The CIIPPs respectfully request that the Court preliminarily approve the Settlement Agreement with Tyson and preliminarily certify the Settlement Class. In addition, the Court should authorize Class Counsel to disseminate notice of the settlement according to the proposed notice plan.

Dated: March 27, 2026

By    *s/ Shawn M. Raiter*

Shawn M. Raiter (MN #240424)
**Larson · King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com

Michael Flannery (*pro hac vice*)
**Cuneo Gilbert Flannery & LaDuca, LLP**
Two CityPlace Drive
Second Floor
St. Louis, MO 63141
(314) 226-1015
mflannery@cuneolaw.com

Sterling Aldridge (*pro hac vice*)
**Barrett Law Group. P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
saldridge@barrettlawgroup.com

**Co-Lead Counsel for the Commercial and
Institutional Indirect Purchaser Plaintiffs**

27