**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| IN RE: CATTLE AND BEEF ANTITRUST LITIGATION | Case No. 22-3031 (JRT/JFD) |
| | **ORDER GRANTING CONSUMER INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENTS WITH CARGILL AND TYSON DEFENDANTS AND GRANTING MOTION FOR INTERIM ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS** |
| This Document Relates To: CONSUMER INDIRECT PURCHASER PLAINTIFF ACTION | |

---

The Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") move for final approval of settlement agreements with Defendants Cargill, Inc. and Cargill Meat Solutions Corporation (collectively, "Cargill"), and Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively, "Tyson"). (Consumer IPPs' Mot. Final Approval Settlement with Cargill and Tyson Defs., Apr. 28, 2026, Docket No. 1578.) Consumer IPPs also request for an award of interim attorneys' fees, reimbursement of litigation costs, and class representative service awards. (Consumer IPPs' Mot. for Interim Payment Attys Fees, Reimbursement Litigation Costs, and Service Awards, Mar. 16, 2026, Docket No. 1541.) Tyson and Cargill take no position on either motion.

Having carefully reviewed the relevant portions of the record including the Settlement Agreements (Decl. of Shana E. Scarlett (Scarlett Decl.) ¶¶ 21–22 & Exs. A (Cargill), B (Tyson) ("Settlement Agreements" or "Settlements"), Oct. 6, 2025, Docket No.

1

1446),[1] and having held a hearing on May 26, 2026, the Court concludes that it has jurisdiction over this action and each of the parties to the Settlement Agreements, and it will grant the Consumer IPPs' motions.

## I.    MOTION FOR FINAL APPROVAL OF SETTLEMENT

In its Order preliminarily approving the Settlement Agreements, this Court provisionally certified the Cargill and Tyson Settlement Classes, each defined as:

> All persons and entities who indirectly purchased for personal consumption one or more of the following beef products in the Repealer Jurisdictions[2] between August 1, 2014 to December 31, 2019: beef from Defendants (whether fresh or frozen) made from chuck, loin, rib or round primal cuts.  For this lawsuit, beef excludes any product that is marketed as USDA Prime, organic, No Antibiotics Ever ("NAE"), antibiotic free, 100% grass-fed, kosher, halal, certified humane, Wagyu, "American-Style Kobe Beef," as well as any products that are ground, marinated, seasoned, flavored, breaded, or cooked.
>
> Excluded from the class are Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.  Further excluded are purchases of products that contain ingredients other than beef (except for salt or water).

---

[1] Terms used in this Order that are defined in the Settlement Agreements are, unless otherwise defined herein, used as defined in the Settlement Agreements.

[2] The Repealer Jurisdictions are: Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

*In re Cattle & Beef Antitrust Litig.*, Civ. No. 22-3031, 2025 WL 3539205, at *1 (D. Minn. Dec. 10, 2025), as amended 2025 WL 3674629, at *1 (D. Minn. Dec. 16, 2025). This class definition is in all material respects the same as the settlement class proposed in the Consumer Indirect Purchaser Plaintiffs' Sixth Amended Class Action Complaint (July 29, 2024, Docket No. 758 (redacted) & Docket No. 757 (sealed)), and the class definitions as set forth in the Settlement Agreements.

The Court previously appointed the law firms of Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen PLLP as Co-Lead Counsel for the Cargill and Tyson Settlement Classes ("Settlement Class Counsel"). *In re Cattle & Beef*, 2025 WL 3674629, at *1.

Upon review of the record, the Court finds that the Settlement Agreements are fair, reasonable, and adequate settlements for the Settlement Classes within the meaning of Federal Rules of Civil Procedure 23.

    a. The proposed Settlement Agreements have been negotiated at arm's length and are entitled to a presumption of fairness.

    b. The Settlements provide substantial relief for the Settlement Classes in the form of a total of $87.5 million in monetary compensation and certain injunctive relief as well as cooperation from Cargill and Tyson in the ongoing litigation. (Decl. of Brian D. Clark ("Second Clark Decl.") ¶¶ 11–12, Apr. 28,

2026, Docket No. 1581.)  Weighed against the uncertainty of relief at this stage of the litigation, this factor supports final approval.

c. Defendants' financial condition is a neutral factor in this analysis.

d. The complexity and expense of further litigation support final approval.  The legal and factual issues involved are numerous and uncertain in outcome. Because the Settlement Agreements yield a certain, substantial, and prompt recovery, without further delay and expense, they substantially benefit the Consumer IPP class, and approval is appropriate.

e. The Settlement Classes' members' positive reactions support final approval.  Of the millions of potential class members reached by the Consumer IPPs' direct and indirect notice efforts, thirteen have opted out of the Settlement Classes, and only two timely objected to both the Settlements.  (Decl. of Cameron A. Azari ("Azari Decl."), Apr. 28, 2026, Docket No. 1582, ¶¶ 37–38.)

The Court finds that the proposed Settlement Classes meet all prerequisites of Rule 23(a) based on a preliminary inquiry behind the pleadings and, assuming that if the Consumer IPPs' general allegations are true, evidence could suffice to make out a prima facie case for the class.

a. The numerosity requirement of Rule 23(a)(1) is satisfied.  The proposed class spans four years, and the product (beef) is nearly ubiquitous in American households.

4

b.  The commonality requirement is satisfied.  Consumer IPPs are relying on several common contentions, including: (1) defendants conspired to stabilize the price and supply of beef in the United States; and (2) defendants' conduct caused overcharges for beef consumers.

c.  The typicality requirement is satisfied.  Claims by members of the Consumer IPPs class are based on the same antitrust conspiracy.  Consumer IPP class members are relying on common contentions, including: (1) each class member has suffered the same harm through the purchase of beef in grocery stores that was subject to an overcharge; (2) no individual class member could have known of the conspiracy; and (3) each individual class representative has the same interests in pursuing these claims on behalf of the absent class.

d.  The adequacy requirement is satisfied.  The named plaintiffs have no material conflict with other class members.  Consumer IPP class members' claims rely on common contentions, including: (1) each class member purchased beef from grocery stores, unaware of the existence of the defendants' alleged agreement to fix, raise, maintain, and stabilize beef prices, and suppress beef output, and no one individual class member could avoid the claimed overcharges; and (2) each named plaintiff is aligned with the class in intending to establish the defendants' liability and maximize class-wide damages.  The named plaintiffs have fulfilled their duties as class representatives by actively

participating in the litigation, and each representative has approved the terms of the Settlements and remains apprised of the status of the case.

The Court finds that the proposed Settlement Classes satisfy Rule 23(b)(3). Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. The Court has made a preliminary inquiry behind the pleadings and finds that, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the classes. Specifically, the Court has reviewed Consumer IPPs' Sixth Amended Complaint and finds the allegations therein, if proven true, would constitute ample common evidence of: (a) Defendants' conduct—common to all beef consumers— illegally agreeing to stabilize price and supply; (b) inflated wholesale prices—again, common to all beef consumers—that broke significantly from the Defendants' pre-class-period margins; and (c) analyses of the consumer price index showing that overcharges were passed through from producers to all consumer indirect purchaser plaintiffs. The Court finds that the focus of this litigation would be on the conduct of Defendants and the stabilization of the pricing and supply of beef. The Court further finds that the Consumer IPP class members have not expressed interest in individually controlling the prosecution of their claims, and that separate proceedings would produce duplicate efforts, generate unnecessary litigation costs, create an "unwarranted burden on this

6

Court and other courts throughout the country," and risk inconsistent results for similarly situated parties. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995).

The Court concludes that counsel for Consumer IPPs have executed the best notice practicable under the circumstances of the Settlement Agreements and notice constituted due and sufficient notice for all other purposes to all persons entitled to receive notice. Notice efforts reached approximately 35,000,000 potential class members through their direct notice e-mail program. (Azari Decl. ¶ 13.) Notice efforts also reached millions of potential class members through the indirect notice efforts conducted in both English and Spanish. (*Id.* ¶¶ 17–25.) The notice itself informed class members of the nature of the action, the terms of the proposed Settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed Settlements.

The plan of allocation is fair, reasonable, and adequate. The Settlements provide for a total cash payment of $87.5 million which has been deposited into the Settlement Fund. (Second Clark Decl. ¶¶ 11, 17–18.) The Settlement Agreements provide that the Settlement Fund will fund the payment of valid claims of Settlement Class members, costs of notice, claims administration, payment for service awards to the Named Plaintiffs, and attorneys' fees and costs.

The proposed Settlements treat class members equitably relative to each other. Funds will be awarded based on the pro rata share per class member of qualifying class

7

products purchased and will be distributed through an electronic method.  For efficiency's

sake, the plan of distribution and the distribution itself may wait until later in the litigation

when more settlement monies may be available for distribution.

### A.    Objections to the Settlements

Two members of the Cargill and Tyson Settlement Classes timely objected to the

Settlements.  (Second Clark Decl. ¶ 14 & Azari Decl., ¶¶ 38–39, Exs. 10–11.)[3]  The Court

will overrule their objections.

The objectors argued the Settlements do not provide adequate relief for the

Settlement Classes.  The Court concludes the objectors are mistaken.  Cargill settled for

approximately 8% of the single damages attributable to them as calculated by Consumer

IPPs' expert, Dr. Russell Mangum, and Tyson settled for approximately 8.6% of the single

damages attributable to them as calculated by Dr. Mangum.  (Consumer IPPs' Mem. in

Supp. Preliminary Mot. for Approval at 12–13, Oct. 6, 2025, Docket No. 1445.)  Moreover,

Consumer IPPs' settlement with Tyson exceeds the amount of the Commercial and

---

[3] A further objection was received by the Consumer IPPs after the March 30, 2026 deadline.  (*See* Notice of Late Obj., May 19, 2026, Docket No. 1593.)  Although the Court need not address these late-filed objections, it does note that many of the objector's arguments are similar to those addressed below.  To the extent that objector argues that the Settlements do not require the defendants to admit damage (*id.*, Ex. A), the Court notes that requiring such an admission would decrease the likelihood of settlements in private antitrust cases and that, in turn would decrease the likelihood of private enforcement of antitrust violations.  *See* Harry M. Reasoner & Scott J. Atlas, The Settlement of Litigation as a Ground for Antitrust Liability, 50 Antitrust L.J. 115, 126 (1981). ("Too great a willingness to find antitrust violations in settlement arrangements would significantly inhibit settlements of many types of cases at real cost to the administration of justice, with little likelihood of any contervailing benefit to the public interest.")

Institutional Indirect Purchaser Plaintiffs' settlement with Tyson[4] and is approximately two-thirds of the amount of the Direct Purchaser Plaintiffs' settlement with Tyson.[5]

The objectors separately protested about the possibility that class members will need to submit documentation to support their claims. But that requirement applies only to claims with a "potentially suspicious number of purchases or amount of costs claimed." (Azari Decl. ¶ 40.) Even so, the Eighth Circuit has held that "requiring proofs of purchase is a valid technique for preventing fraudulent claims." *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017).

One of the objectors contended that most class members are unaware of this lawsuit and the Settlements. However, the notice plan resulted in the delivery of direct email notice to almost 35 million potential class members. (*See* Azari Decl. ¶¶ 12–13.) The website received 315 million impressions from publication notice efforts. (*Id.* ¶ 24.) The notice administrator confirmed that at least 75% of the potential class received notice of the Settlements (*id.* ¶ 25), which is well within the range of what is constitutionally required.

---

[4] The Consumer IPPs settled with Tyson for cash payments totaling $55,000,000 (Second Clark Decl. ¶ 18); the Commercial and Institutional Indirect Purchaser Plaintiffs settled with Tyson for cash payments totaling $47,000,000 (Decl. of Sean M. Raiter at ¶ 2, Mar. 27, 2026, Docket No. 1557).

[5] The Direct Purchaser Plaintiffs settled with Tyson for a total of $82.5 million dollars. (Decl. of Megan E. Jones ¶ 23, Apr. 17, 2026, Docket No. 1568.)

One objector complains that private antitrust enforcement raises the costs of goods for consumers.  This argument runs contrary to the purpose of the antitrust laws and courts' interpretation of them.  In fact, the Supreme Court has recognized that "Congress created the treble-damages remedy of § 4 precisely for the purpose of encouraging private challenges to antitrust violations," observing that "private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).

The other objector complained that the Settlements "do[] nothing to address the long-term nutritional deficit and health impacts caused by making healthy, fresh meat unaffordable for the average household."  (Azari Decl., Ex. 10.)  The antitrust laws, however, are not designed to remedy nutritional deficits—their aim is to protect competition for the benefit of consumers.  Furthermore, increasing competition in the beef market will result in lower prices or greater supply of beef products.  And enforcement of the antitrust laws is the best way for the legal system to ensure beef prices remain competitive.

Accordingly, the Court will grant the Consumer IPPs' motion for final approval.

## II.     MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, SERVICE AWARDS

Consumer IPPs seek an award of interim attorneys' fees in an amount not to exceed $29,567,998.60, which represents 33 1/3% of the Cargill and Tyson gross settlement funds, plus interest; request reimbursement of $8,871,642.26 in litigation

10

expenses; and request $2,000 service awards to each of the 28 named class representatives. The Court will address each request in turn.

### A.    Attorneys' Fees

The Court will grant Consumer IPPs' request for an interim award of attorneys' fees because the amount is fair and reasonable and the terms of Consumer IPPs' proposed interim award of attorneys' fees, including timing of payment, satisfy Rule 23(e)(2)(C)(iii).

The Court will award fees to counsel for Consumer IPPs using the percentage-of-the-fund approach. "A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel*, 364 F. Supp. 2d at 991 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday v. Symantec Corp.*, Civ. No. 11-180, 2016 WL 1637039, at *8–9 .

When using the percentage-of-the-fund approach, the court considers seven factors: "(1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the

11

skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." *Khoday*, 2016 WL 1637039, at *9 (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010)); *see also In re Xcel*, 364 F. Supp. 2d at 993. The Court will evaluate these factors in turn.

The Settlements confer clear benefits to the classes. In addition to the $87,500,000.00 in monetary relief provided to Consumer IPPs by the Settlements, the Settling Defendants have also agreed to assist in the prosecution of the claims against the non-settling defendants and provide other non-monetary relief. The cooperation terms in the Settlements provide significant value to Consumer IPPs. *See, e.g., In re Packaged Ice Antitrust Litig.*, MDL No. 08-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Fee awards in antitrust actions also provide a public benefit. There is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("Society also benefits from the prosecution and settlement of private antitrust litigation."). Society benefits when those who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings. *Vendo v. Lektro-Vend Corp.*, 433 U.S. 623, 635

(1977); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("[I]t is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws."). The benefits conferred on the class by these Settlements support the requested attorneys' fees.

Counsel for the Consumer IPPs assumed considerable risk by pursuing this case on a contingent basis, advancing the costs of the litigation, and preparing for trial without a guaranteed recovery. *See Khoday*, 2016 WL 1637039, at *9; *In re Xcel*, 364 F. Supp. 2d at 994; *Yarrington*, 697 F. Supp. 2d at 1062. Defendants have strenuously defended the claims throughout the course of this case. Counsel for the Consumer IPPs risked recovering nothing in this litigation. "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011). The risk undertaken by Class Counsel in pursuing this litigation and reaching this recovery for the Consumer IPPs supports the requested attorneys' fees. *See Khoday*, 2016 WL 1637039, at *9–11; *In re Xcel*, 364 F. Supp. 2d at 994; *Yarrington*, 697 F. Supp. 2d at 1062.

Antitrust class actions are inherently complex. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (internal citations and quotation marks omitted).

13

This litigation presents challenging legal and factual issues that support the requested fees and expenses.

Consumer IPPs, Cargill, and Tyson are all represented by experienced and skilled counsel who specialize in class action and antitrust cases, which supports awarding the requested fee. *See Khoday*, 2016 WL 1637039, at *10; *In re Xcel*, 364 F. Supp. 2d at 994; *Yarrington*, 697 F. Supp. 2d at 1063; *In re Polyurethane Foam Antitrust Litig.*, MDL No. 10-2196, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015); *In re Packaged Ice Antitrust Litig.*, MDL No. 08-1952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011).

Counsel for Consumer IPPs have invested tens of thousands of hours litigating this case (*see* Second Clark Decl. ¶ 6), resulting in the instant Settlements. This case has been pending for over seven years and will continue to require significant time and labor. Past and ongoing time and labor expended by Settlement Class Counsel supports awarding the requested fees.

The Consumer IPPs notified the Settlement Classes of the Settlements and their motion for attorneys' fees, litigation expenses, and class representative service award through the court-approved notice plan which included direct email notice and an indirect public campaign. (*See* Consumer IPPs' Mem. Supp. Mot. for Final Approval of Settlements at 7–8, Apr. 28, 2026, Docket No. 1580; *see also* Azari Decl.) The reaction of the Cargill and Tyson Settlement Classes has been largely positive. Of the estimated tens of millions of people in the Consumer IPP Settlement Classes, only two individuals submitted timely

objections to the Settlements, and only one of those objectors addressed attorneys' fees. Because that objection was filed before the fee petition, however, the objection can be taken to be an objection to attorneys' fees generally and not the specific amount of fees requested in this case. But the Court has an obligation to "the silent majority as well as the vocal minority . . . ." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("While we agree that these vocal objectors should also be considered, we do not believe that disapproval of the settlement is warranted in this case."). The Court notes that the number of class members that have objected to these Settlements or the pending motion for attorneys' fees is far below what the Eighth Circuit has deemed "minuscule" compared to other settlements it has approved. *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (describing approval of classes when 14 out of a class of 3.5 million objected; almost half the class objected; and 5 out of a class of 300,000 objected). The near-unanimous positive reaction of the Settlement Classes supports awarding the requested fee.

Courts in this district routinely approve attorneys' fees of at least one-third of the common fund created for the settlement class. *See Khoday*, 2016 WL 1637039, at *11; *Yarrington*, 697 F. Supp. 2d at 1064 (noting that awards between 25 and 36 percent of a common fund are common); *In re U.S. Bancorp Litig.*, 291 F.3d at1038 (affirming a fee award representing 36 percent of the settlement fund as reasonable); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases routinely approving fee awards of 33 percent); *Carlson*

*v. C.H. Robinson Worldwide, Inc.*, Civ. No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35.5 percent of the settlement fund). The requested 33 1/3% fee is consistent with fees awarded in similar cases in this District.

The Court concludes that an award of 33 1/3% of the Net Settlement Funds as attorneys' fees is reasonable and warranted for the reasons set forth in the Consumer IPPs' Memorandum in Support of their Motion for Interim Payment of Attorneys' Fees, Reimbursement of Litigation Costs, and Class Representative Service Awards (("Consumer IPPs' Fee Mem.") Mar. 16, 2026, Docket No. 1543), including the following: the result obtained for the Class: payment by Settling Defendants Cargill and Tyson of $87,500,000; the quality and quantity of work performed by Class Counsel, including extensive motion practice; substantial discovery efforts and mediation, all involving complex issues of fact and law that were zealously litigated since the first amended complaint was filed in 2019; and the risks faced through litigation, which existed from the outset and will continue beyond settlement given that Consumer IPPs still have charges pending against two other groups of defendants.

Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). A cross-check of the lodestar incurred by counsel for the Consumer IPPs indicates that the fee requested constitutes fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the

16

members of the Settlement Classes.  (*See* Consumer IPPs' Fee Mem. at 14–15.)  The Court concludes that Settlement Class Counsel's lodestar as of January 31, 2026,[6] based on historical hourly rates, is reasonable.  Settlement Class Counsel's requested fee award of 33 1/3% of the Net Settlement Fund represents a lodestar multiplier of approximately 0.83 based on their historical hourly rates.  (*Id.*; *see also* Decl. of Brian D. Clark ("First Clark Decl.") ¶ 28, Ex. 6, Mar. 16, 2026, Docket No. 1544.)[7]  This multiplier is especially reasonable considering the complexity of this litigation, the result achieved for the Consumer IPP Class members, the risks assumed by counsel for the Consumer IPPs, and the work remaining to be done on the case and for which fees may or may not be available.  *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (multipliers typically range between two and five); *In re St. Paul Travelers Sec. Litig.*, No. 14-3801, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving fees having a multiplier of 3.9).

The Court will grant the Consumer IPPs' motion for attorneys' fees and will authorize Settlement Class Counsel for the Consumer IPPs to allocate the attorneys' fees among the counsel who performed work on behalf of the Consumer IPPs in accordance

---

[6] Class Counsel have continued to incur attorneys' fees since January 31, 2026, which are not included in this lodestar calculation.

[7] Counsel for Consumer IPPs request interim attorneys' fees in an amount of $29,567,998.60. They report that they spent 72,108.25 hours across the three firms.  Using the historical hourly rates of each firm, the lodestar would be $35,519,864,  Accordingly, the lodestar multiplier is $29,567,998.60/35,519,864.00 = 0.83.

with Settlement Class Counsel's assessment of each firm's contribution to the prosecution of this litigation.

### B.      Litigation Costs

The Court will grant the requested reimbursement of $8,871,642.26 in litigation expenses, which represents the amount Settlement Class Counsel have spent funding this litigation up to January 31, 2026.  "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses."  *Krueger v. Ameriprise Fin., Inc.*, Civ. No. 11-2781, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015).

The Court concludes that the past litigation expenses incurred by counsel for the Consumer IPPs were reasonable and necessary and were of the type normally awarded in class action litigation.  *See, e.g.*, Fed. R. Civ. P. 23(h); *Khoday*, 2016 WL 1637039, at *12 ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, MDL No. 08-1958, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington*, 697 F. Supp. 2d at 1067 (D. Minn. 2010).  The Court will direct that the past litigation expenses incurred in the prosecution of this case shall be reimbursed from the settlement funds.

C.    **Service Awards**

The Court will grant the requested $2,000 service awards to each of the 28 named class representatives.  Courts routinely grant service awards for named plaintiffs.  *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1068 (granting service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation"); *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009); *see also In re Xcel*, 364 F. Supp. 2d at 1000; *White v. Nat'l Football League*, 822 F. Supp. 1389, 1406 (D. Minn. 1993) (collecting cases).

Each of the class representatives has remained apprised of the status of the litigation, actively participated in invasive discovery including searching for and producing documents, and responding to written discovery.  (*See* Scarlett Decl. ¶ 17.)  All class representatives sat for depositions and were questioned for hours.  (*See id.* ¶ 5.)  The class representatives took a risk both financially and otherwise in representing the Class in this lawsuit.  *See Zillhaver*, 646 F. Supp.2d at 1085 (quoting *Koenig v. U.S. Bank*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *In re CenturyLink Sales Prac. & Sec. Litig.*, MDL No. 17-2795, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020).  The Court concludes that such awards will compensate representative plaintiffs who "participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media."  *In re*

19

*CenturyLink*, 2020 WL 7133805, at *13.   Further, the requested $2,000 award is reasonable when compared to awards issued by other courts in this District.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    The Consumer IPPs' Motion for Final Approval of the Settlement Agreements with the Cargill and Tyson Defendants (Docket No. [1578]) is **GRANTED** as follows:

a. The objections received to the Settlements by members of the Settlement Classes are **OVERRULED**.

b. The Action with respect to Consumer IPPs' Claims is dismissed with prejudice as to the Cargill and Tyson Released Parties (as that term is defined in the Settlement Agreements).

c. The Court retains continuing and exclusive jurisdiction over the Settlement Agreements for all purposes

d. Neither this Order nor the Settlement Agreements shall be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Settling Defendants Cargill or Tyson, or of the truth of any of Consumer IPPs' Claims or allegations, nor shall it be deemed or construed to be an admission nor evidence of Released Parties' defenses.

2.     The Consumer IPPs' Motion for Interim Payment of Attorneys' Fees, Reimbursement of Litigation Costs, and Class Representative Service Awards (Docket No. [1541]) is **GRANTED** as follows:

a.  The requested award of interim attorneys' fees in an amount not to exceed $29,567,998.60, which represents 33 1/3% of the Cargill and Tyson gross settlement funds, plus interest, is **GRANTED**.

b.  Settlement Class Counsel for the Consumer IPPs are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the Consumer IPPs in accordance with Co-Lead Class Counsel's assessment of each firm's contribution to the prosecution of this litigation.

c.  The requested reimbursement of $8,871,642.26 in litigation expenses, which represents the amount Settlement Class Counsel have spent funding this litigation up to January 31, 2026, is **GRANTED**.

d.  The past litigation expenses incurred in the prosecution of this case shall be reimbursed from the settlement funds.

e.  The requested $2,000 service awards to each of the 28 named class representatives are **GRANTED**.

f.  Settlement Class Counsel for the Consumer IPPs are authorized to pay from the Net Settlement Fund $2,000 to each of these 28 class representatives: Cindy Abernathy; Dan Campbell; Karen Carter; Andrew Cohen; Sharon Dawson-

22

Green; Jason Falbo; Eric Gauchat; William Gee; Martin Jarmulowicz; Sharon Killmon; Brenda King; Lindsey Lemoi; Marcelo Lopez; Craig Margulies; Lisa Melegari; Charlie Morgan; Harold Nyanjom; Michelle Oversen; Kenneth Peterson; Brent Rasmussen; David Renz; John Shupe; Mark Sperry; Leigh Tiller; Robert Trepper; Stacey Troupe; Jacquelyn Watson; and Kent Winchester.

DATED:  May 27, 2026
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge