**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE CATTLE AND BEEF ANTITRUST LITIGATION

MDL No. 22-3031 (JRT/JFD)

This Document Relates To:

COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION

**MEMORANDUM OPINION AND ORDER GRANTING COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, SET ASIDE FOR FUTURE LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

---

Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")[1] entered into a Settlement Agreement (the "Settlement") with Defendants Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. (collectively, "Tyson") for $47,000,000.00. CIIPPs now move for an award of attorneys' fees, reimbursement of litigation expenses, a set aside for future litigation expenses, and class representative services awards. (Mot., Sept. 23, 2026, Docket No. 1679.)

---

[1] The current CIIPP representative plaintiffs are: Maquoketa Care Center; The Grady Corporation II formerly d/b/a Whole Hog Cafe; Steve Sizemore formerly d/b/a Longhorn's Steakhouse; Pearlz Oyster Bar; Park Tavern; Union Public House; Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli; Max and Bella's Smokehouse, LLC; Yoland Shegian d/b/a LA Shawarma; BW-SS, Inc.; Fernando's Street Kitchen; Jim's Place Grille; and Farah's Courtyard Deli, Inc. (Decl. of Shawn M. Raiter ¶ 33, Sept. 23, 2026, Docket No. 1683; Mem. in Supp. of Mot. at 13 n.4, Sept. 20, 2026, Docket No. 1673.)

The Court, having reviewed the CIIPPs' motion, the accompanying memorandum, and the declarations and exhibits thereto, and after hearing the arguments of counsel, will grant the CIIPPs' motion.

**DISCUSSION**

The Court has considered the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of expenses to the CIIPPs and their counsel are appropriate under Federal Rules of Civil Procedure 23(h) and 54(d)(2). Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that identified and provided copies of relevant documents and pleadings.

The Court has considered the reaction of the class members to this fee and reimbursement request. No class member has objected to or commented on the request.

The Court will grant the CIIPPs' request for reimbursement of past litigation expenses in the amount of 3,129,470.24. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger v. Ameriprise Fin., Inc.*, Civ. No. 11-2781, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015).

The Court concludes that the past litigation expenses incurred by counsel for the CIIPPs were reasonable and necessary and were of the type normally awarded in class

action litigation. *See, e.g.*, Fed. R. Civ. P. 23(h); *Khoday v. Symantec Corp.*, Civ. No. 11-180, 2016 WL 1637039, at *12 (D. Minn. Apr. 5, 2016) ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, MDL No. 08-1958, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010). The past litigation expenses incurred in the prosecution of this case shall be reimbursed from the Settlement fund. When claim administration occurs, the cost of the claims administration may also be paid from the Settlement fund.

The Court will grant the CIIPPs' request to establish a fund for future litigation expenses in the amount of $2,820,000.00. Allowing a portion of class settlement funds to be used for future expenses is a well-accepted practice.[2]

The Court will order that the future litigation expenses shall only be used for reasonable expenses incurred in the ongoing litigation against the remaining Defendants.

---

[2] *See, e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) (affirming 37.5% set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto Parts Antitrust Litig.*, MDL No. 12-311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018) (approving a request to set aside $3.5 million for use in future litigation); *In re Auto Parts Antitrust Litig.*, MDL No. 12-2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-5634, 2015 WL 3396829, at *3 (N.D. Cal. May. 26, 2015) (approving request to set aside $3 million for future litigation expenses); *In re WorldCom, Inc. Sec. Litig.*, Civ. No. 02 3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (approving request to set aside $5 million for future litigation expenses).

If the future litigation fund is not fully used, the money shall be returned for distribution to eligible settlement class members who filed valid claims. However, if this fund is not fully used, counsel for the CIIPPs will be awarded a fee of 30 percent of the unused funds.

The Court previously authorized class counsel for the CIIPPs to pay the costs of the settlement notice and claims administration (being handled by Epiq Class Action & Claims Solutions, Inc. and Epiq Legal Noticing ("Epiq")) from the Settlement Fund. *In re Cattle & Beef Antitrust Litig.*, MDL No. 22-3031, 2026 WL 1246913 (D. Minn. May 6, 2026). Class counsel for the CIIPPs may also pay the future costs of claims administration from the Settlement fund.

The Court will award fees to counsel for the CIIPPs using the percentage-of-the-fund approach. "A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (citations omitted)); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel*, 364

F. Supp. 2d at 991 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday*, 2016 WL 1637039, at *8-9.

Counsel for the CIIPPs request a fee award of 31.2 percent of the Settlement funds. The requested fee, which totals $14,686,666.66, is well within the range allowed by courts in this district.

When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Khoday*, 2016 WL 1637039, at *9; *In re Xcel*, 364 F. Supp. 2d at 993; *Yarrington*, 697 F. Supp. 2d at 1062. When applied here, these factors indicate that the requested fee is fair.

**Counsel Secured Valuable Benefits for CIIPPs.** The $47,000,000.00 Settlement fund is coupled with meaningful assistance in the prosecution of the claims against the non-settling Defendants. None of the money will revert to Tyson, or to a cy pres designee, and the terms of the settlement provide significant value to the CIIPPs. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, MDL No. 08-1952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Fee awards in antitrust actions also provide a public benefit. There is a "need

in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("Society also benefits from the prosecution and settlement of private antitrust litigation.") Society benefits when those who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings. *Vendo v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977) ("[T]here exists a strong national interest in antitrust enforcement."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("[I]t is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws.").

**Plaintiffs' Counsel Was Exposed to Risk**. Counsel for the CIIPPs assumed considerable risk by pursuing this case on a contingent basis, advancing the costs of the litigation, and preparing for trial without a guaranteed recovery. Defendants have vigorously defended the claims, and antitrust litigation is inherently expensive and complex. Counsel for the CIIPPs were exposed to recovering nothing in this litigation. "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011). The risk undertaken by counsel for the CIIPPs supports the requested fee award. *See Khoday*,

2016 WL 1637039, at *9; *In re Xcel*, 364 F. Supp. 2d at 994; *Yarrington*, 697 F. Supp. 2d at 1062–63.

**The Difficulty and Novelty of the Legal and Factual Issues of the Case**. Antitrust class actions are inherently complex. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." (citations and internal quotation marks omitted)). This litigation presented challenging legal and factual issues and this factor also supports the fee requested.

**Skill and Experience of Counsel**. Counsel for the CIIPPs and Tyson are experienced and skilled antitrust counsel. This factor also supports the requested fee. *See Khoday*, 2016 WL 1637039, at *10; *In re Xcel*, 364 F. Supp. 2d at 995–96; *Yarrington*, 697 F. Supp. 2d at 1063; *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19.

**The Time and Labor Involved**. Counsel working on behalf of the CIIPPs invested tens of thousands of hours to achieve the Settlement and the other CIIPPs settlements. The litigation has already lasted eight years and has and will continue to require significant time and labor. This factor supports the requested fee.

**The Reaction of the Class**. No class member has objected to the request for awards of fees or expenses.

**Comparison with Percentages Awarded in Similar Cases**. Courts in this district routinely approve attorneys' fees in class actions of at least one-third of the common fund

created for the settlement class. *See e.g.*, *Khoday*, 2016 WL 1637039, at *11; *Yarrington*, 697 F. Supp. 2d at 1064 (noting that awards between 25 and 36 percent of a common fund are common and awards of between 30 and 36 percent have also been approved); *In re U.S. Bancorp*, 291 F.3d at 1038 (affirming a fee award representing 36 percent of the settlement fund as reasonable); *In re Xcel*, 364 F. Supp. 2d at 998–99 (collecting cases routinely approving fee awards of 33 percent); *Carlson v. C.H. Robinson Worldwide, Inc.*, Civ. No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35.5 percent of the settlement fund).

The Eighth Circuit and other federal courts have approved awards exceeding one-third of the settlement funds created by counsel representing the settlement class. *See, e.g.*, *In re U.S. Bancorp*, 291 F.3d at 1038 (affirming a fee of 36 percent); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10 (D.D.C. 2001) (awarding one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292-94 (11th Cir. 1999) (affirming a fee of one-third of the settlement fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding fee of 45 percent); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36 per cent and noting that "[u]sually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund").

The Court has carefully analyzed the Settlement and the factors considered by courts within the Eighth Circuit and Federal Rule of Civil Procedure 23 and concludes that the factors are met and justify a fee award to counsel for the CIIPPs. The Settlement provides substantial cash benefits and additional non-monetary benefits from Tyson. CIIPPs' counsel has worked on a contingent basis, and the results of this litigation have never been certain. The legal and factual issues are complicated, and the parties have zealously asserted their claims and defenses. Given the length and tenacity of this litigation and the involvement of a private mediator, the Court is satisfied that the Settlement was the result of arms' length negotiations between informed and experienced counsel who used an experienced mediator. The requested fee, which totals 31.2% of the Settlement fund, is reasonable.

Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). A cross-check of the lodestar incurred by counsel for the CIIPPs indicates that the fees requested constitute fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the members of the class.

Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar generated on these cases from the inception of the litigation to July 31, 2026, the requested fee results in a lodestar multiplier of 0.76, which is well within the range of reasonable multipliers awarded in similar contingent fee cases. (*See* Decl. of

Shawn M. Raiter ¶ 32, Sept. 23, 2026, Docket No. 1683.) This multiplier is reasonable considering the complexity of this litigation, the result achieved for the class members, the risks assumed by counsel for the CIIPPs, and the work remaining to be done on the case and for which fees may or may not be available. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (indicating that multipliers typically range "from two to five"); *In re St. Paul Travelers Sec. Litig.*, Civ. No. 14-3801, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving a settlement with a lodestar multiplier of 3.9).

The Court will grant an award of attorneys' fees to counsel for the CIIPPs in the amount of 14,686,666.66 which shall be paid from the Settlement fund.

Co-Lead Counsel for the CIIPPs will be authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the CIIPPs in accordance with Co-Lead Counsel's assessment of each firm or attorney's contribution to the prosecution of this litigation.

The Court will also grant the requested $10,000.00 service awards to each of the named representatives. Courts routinely grant service awards for named plaintiffs. *See, e.g., Yarrington*, 697 F. Supp. 2d at 1068 (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation"); *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (awarding $15,000 service

awards); *see also In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 to be distributed among the eight lead plaintiffs).

The representative plaintiffs took action to benefit the interests of the CIIPPs, devoted their own time and effort, and have assisted counsel in achieving this settlement. See *Zillhaver*, 646 F. Supp. 2d at 1085 (quoting *Koenig v. U.S. Bank*, 291 F.3d 1035, 1038 (8th Cir. 2002)); *In re CenturyLink Sales Prac. & Sec. Litig.*, MDL No. 17-2795, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020). Such awards also compensate representative plaintiffs who "participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media." *In re CenturyLink*, 2020 WL 7133805, at *13. The requested $2,500.00 award is reasonable when compared to awards issued by courts in this District. *Zillhaver*, 646 F. Supp. 2d at 1085 (awarding two lead plaintiffs $15,000 each from a settlement fund of $17 million); *In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 to be split between eight lead plaintiffs); *Khoday*, 2016 WL 1637039, at *12 (awarding $10,000 service awards).

Co-Lead Counsel for the CIIPPs will be authorized to pay from the Settlement fund $10,000.00 to each of the named class representative plaintiffs.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, Set Aside

for Future Litigation Expenses, and Class Representation Service Awards (Docket No. [1679]) is **GRANTED**, as follows:

1. The Court **GRANTS** the CIIPPs' request for reimbursement of past litigation expenses in the amount of $3,129,470.24. When claim administration occurs, the cost of the claims administration may also be paid from the Settlement fund.

2. The Court **GRANTS** the CIIPPs' request to establish a fund for future litigation expenses in the amount of $2,820,000.00.

   a. The future litigation expenses will only be used for reasonable expenses incurred in the ongoing litigation against the remaining Defendants. If the future litigation fund is not fully used, the money shall be returned for distribution to eligible settlement class members who filed valid claims. However, if this fund is not fully used, counsel for the CIIPPs are awarded a fee of 30 percent of the unused funds.

   b. Class counsel for the CIIPPs may also pay the future costs of claims administration from the Settlement fund.

3. The Court **GRANTS** an award of attorneys' fees to counsel for the CIIPPs in the amount of 14,686,666.66, which shall be paid from the Settlement fund.

   a. Co-Lead Counsel for the CIIPPs are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of

the CIIPPs in accordance with Co-Lead Counsel's assessment of each firm or attorney's contribution to the prosecution of this litigation.

4. The Court **GRANTS** the requested $10,000.00 service awards to each of the named representatives.

   a. Co-Lead Counsel for the CIIPPs are authorized to pay from the Settlement fund $10,000.00 to each of the named class representative plaintiffs: Maquoketa Care Center; The Grady Corporation II formerly d/b/a Whole Hog Cafe; Steve Sizemore formerly d//b/a Longhorn's Steakhouse; Pearlz Oyster Bar; Park Tavern; Union Public House; Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli; Max and Bella's Smokehouse, LLC; Yoland Shegian d/b/a LA Shawarma; BW-SS, Inc.; Fernando's Street Kitchen; Jim's Place Grille; and Farah's Courtyard Deli, Inc.

DATED: October 8, 2026
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge